# EXHIBIT 1

## ESI AND DOCUMENT PRODUCTION PROTOCOL AND ORDER

Pursuant to Fed. R. Civ. P. 26(f), the Parties mutually agree on the ESI protocol described below.

**A.     Duty of Cooperation**

The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

**B.     ESI Liaisons**

To promote transparency, communication, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be Ricardo M. Martinez-Cid, or his designee, the ESI liaison for Boeing shall be Christopher Ledford, or his designee., and the ESI liaison for Rosemount Aerospace, Inc. and Rockwell Collins, Inc. shall be Shane Nichols, or his designee.  All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaison and lead counsel, and any identified designees.

**C.     Definitions**

1.     **"Defendants"** means and refers to the named defendants in the above-captioned matter.

2.     **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

3.     **"Electronic Document or Data"** means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic

communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., .jpg).

4.      "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

5.      "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

6.      "**Native Format**" means and refers to an electronic document's associated file structure defined by the original creating application.

7.      "**Metadata**" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in The Sedona Conference Glossary:  E-Discovery & Digital Information Management (Fourth Edition).

8.      "**Media**" means an object or device, whether real or virtual, including but not limited to, a disc, tape, computer, or other device on which data is or was stored.

9.      "**Optical Character Recognition**" or "**OCR**" means a technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and searched.

10.      "**Party**" means and refers to the Plaintiff and/or Defendant in the above-captioned matter, either individually or collectively when used in the plural form.

11.     **"Plaintiff"** means and refers to the named plaintiffs and any plaintiffs subsequently added to this consolidated matter.

12.     **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a mathematical algorithm applied to the characteristics of the data set.

13.     **"Confidentiality Designation"** means the legend affixed to Documents for Confidential Discovery Information as defined by, and subject to, the terms of the Protective Order entered by the Court on October 9, 2019 in this Litigation.

14.     **"Searchable Text"** means the text extracted from an Electronic Document or Optical Character Recognition version generated from a Hard-Copy Document.

15.     **"Load files"** means a file that relates to a set of scanned images or electronically processed files that indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends.  A load file may also contain data relevant to the individual documents, such as selected metadata, coded data, and extracted text.

**D.     Preservation**

1.     The Parties represent that they have issued litigation hold notices to those custodians with data, and persons responsible for maintenance of non-custodial data that are relevant to the claims and defenses in this litigation.

2.     Preservation Not Required. The Parties need not preserve the following categories of electronic information:

(a) Electronic data stored on smartphones or tablets, such as calendar or contact data or notes, that is substantially duplicative of data that are more accessible elsewhere; and,

(b) Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

3. **Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving information for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI except as expressly provided herein.

## E. Document and Data Sources

1. Within twenty-one (21) days from entry of this Order, or, for a Party served after the entry of this Order, within twenty-one (21) days from entry of an appearance in this litigation, each Party shall identify and describe non-custodial data sources identified after a reasonable investigation, not listed in paragraph D(2)(a) above, that contain data relevant to the claims and defenses.[1]

2. Within twenty-one (21) days from entry of this Order, or, for a Party served after the entry of this Order, within twenty-one (21) days from entry of an appearance in this litigation, each Party shall identify the names and titles of the custodians that have relevant information related to the claims and defenses, based on a reasonable, good faith investigation.[2]

---

[1] By agreeing to identify relevant sources of non-custodial data, Defendants are not waiving any objections that discovery from such non-custodial data sources is not proportional to the claims and defenses.
[2] By agreeing to identify relevant sources of custodial data, Defendants are not waiving any objections that discovery from such custodians is not proportional to the claims and defenses.

3.     Any other Party may identify additional custodians or non-custodial data sources that may have relevant information related to the claims or defenses to be collected, searched, and/or produced.  If a producing Party declines to include in the collection process any custodian or data source suggested by another Party, the matter shall be disclosed to the requesting Party and may be submitted to the Court for determination.

4.     The Parties shall timely supplement such disclosure to the extent new custodians or custodial sources are identified.

**F.     Identification of Responsive ESI**.  Unless otherwise order by the Court, the Parties will meet and confer about the most appropriate search methodology to efficiently, effectively, and expeditiously identify, cull, and/or review ESI and documents for production in this matter.

**G.     Mobile and Handheld Device Documents and Data.**

The Parties agree to meet and confer regarding the contents of mobile devices which may contain unique information that is relevant to the claims and defenses and, if so, how and whether such information should be collected and reviewed for production.

**H.     Production Format and Processing Specifications**

1.     **Paper Records:**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

> (a) TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.
>
> (b) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized based on Logical Document Determination

*page 5 of 20*

(or "LDD")). The parties will make their best efforts to have their vendors unitize documents correctly and will commit reasonable resources to address situations where there are improperly unitized documents.

(c) For document found in folders or other containers with labels, table, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post It notes shall be scanned both with and without the Post It, with the image of the page with the Post It preceding the image of the page without the Post It.

(d) Objective Coding Fields. The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; (6) source location/custodian; (7) confidential; (8) redacted; and (9) redaction reason.

(e) OCR Text Files. The parties agree to exchange text. Document -level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text shall be OCR'ed using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

2.    **Electronically Stored Information**

The parties will produce electronically stored information ("ESI") in TIFF format according to the following specifications:

(a) All TIFF formatted documents will be single page, Group 4 TIFF, at 300 X 300 dpi resolution, and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

(b) An image load file, in standard Opticon format, showing the Bates number of each page and the unitization of the documents, will accompany all document images.

(c) Each imaged version of an electronic document will be created directly from the original electronic document.

(d) Color documents (e.g., color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with

the technical specifications set forth above, unless the production in black and white alters or obscures the substance of the document or if ordered by the Court. If color images are required, the files shall be delivered in single page, JPEG format. Documents produced in color must be produced with agreed compression. A Party may request that a reasonable number of documents be produced in a color format upon review of the other Party's production.

(e) Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

(f) The following metadata fields, if associated with the electronic document, will be produced; the parties are under no obligation to manually populate these fields. Because different platforms use different nomenclature for these metadata fields, the below offers a common name and description, with the expectation that each party produce that field or its substantial equivalent.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| All Custodian | Name of custodian(s) or non-custodial data source of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | x |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| DateLastModified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email | x | |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| | will have either a TimeSent or TimeRecvd, but not both) | | |
| FileType | The type of document | x | x |
| All FilePath | File path storage location of the document or email if the source application allows for the creation of folders. Any email container name should included in the path. | x | x |
| NativeLink (if natives are exchanged) | Relative path to any files produced in native format | x | x |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| Confidentiality Designation | Confidentiality Designation | x | x |
| Export Control | Export Control Designation | x | x |
| DocExt | File extension for email or e-doc. | x | x |

*page 9 of 20*

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|:---:|:---:|
| Pages | Number of pages in the produced document (not applicable to native file productions). | x | x |
| LastModBy | Last Modified/Saved By information as derived from the properties of the document. | x | x |
| ConversationID | Email ConversationID | x | |
| MsgID | Email MsgID | x | |
| AttachCount | Number of attachments | x | |
| AttachNames | Filenames of attachments | x | |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Redacted | "Y" if document is redacted | x | x |
| RedactionReason (or provided by redaction log) | Reason(s) for Redaction | x | x |
| ProdVol | Name of the Production Volume | x | x |
| HasRevisions | Y if a word processing document with revisions | x | x |
| HasComments | Y if a word processing or spreadsheet document with comments | x | x |
| HasHiddenContent | Y if a word processing, presentation, or spreadsheet document has hidden content. | x | x |

3. The parties will produce the following ESI types in in native file format files with TIFF placeholder images:

- Electronic spreadsheets

- Audio/video files

- Animations

For files types of which TIFF placeholder images cannot be reasonably generated, the Parties may produce the file natively.

The Parties will produce word processing (e.g., Microsoft Word), presentation (e.g. Microsoft PowerPoint), and image (e.g., jpeg, gif) documents in native format upon a reasonable request identifying the need for the native, after receiving the TIFF images.

4. Any document produced in native format, will be produced according to the following specifications:

(a) A unique document number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be:

"BOE_ETH_00000001_Confidential.doc."

(b) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value" or other Hash Value; (iii) the original name of the file; and (iv) a document control number.

(c) Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file.

5. **Other File Types**

*page 12 of 20*

The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

6.     **Alternate Formats**

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this Order.

7.     **Searchable Text File.**

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

In the case of files with redacted text, OCR'd text of the redacted documents may be provided in lieu of extracted text, with the exception of spreadsheets. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

(a) Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

(b) In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

8.     **Redacted Files**

With the exception of spreadsheets, extracted text will ***not*** be provided for electronic documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

9.     **Data Load Files/Cross-Reference Files**

Fielded data should be exchanged via a document-level-database load file in standard Concordance (DAT) delimited format. All image data should be delivered with a corresponding image load file in the following format: Opticon (OPT). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

10.     **De-duplicating Documents**

The parties may deduplicate globally (i.e., across all custodians) using hash values. This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "All Custodian" field and "All File Paths" field. The Parties shall de-duplicate stand-alone documents only against stand-alone documents and shall de-duplicate email documents with families only against email documents with families. De-duplication shall not break apart families. ESI that is not an exact duplicate may not be removed, and the methodology for calculating hash values for emails and email families shall be promptly disclosed.

11.     **Most Inclusive Email Productions**

Email threads are email communications that contain prior or lesser-included email communications which also may exist separately in the Party's electronic files. A most inclusive email thread is one in which, at a minimum, (i) all participants (From, To, CC, BCC) in any email

in the thread is included as a participant to every email in the thread, (ii) all attachments to any email in the thread are attachments to every email in the thread, (iii), the subject line of every email in the thread is identical except for the addition of "RE:", "FWD", and the like, and (iv) the full body text of all lesser-included emails in the thread are included in the most inclusive email without alterations such as subsequently added in-line comments. Parties may produce most-inclusive email threads and not separately produce lesser-included emails contained in those same threads. For the avoidance of doubt, under this provision, only email messages included in a produced most-inclusive thread, as herein defined, need not be produced, and any relevant email included in a thread that is not a most-inclusive thread, as defined herein, must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged. Upon reasonable request, the Parties agree to provide individual emails within an email thread.

      12.    **Foreign Language Documents.**

Responsive hard-copy documents and ESI that contain languages other than English, in whole or in part, shall be produced in the original language(s), along with any translations of the searchable text that exist in the files of the Party. A Party shall be under no obligation to provide translations for documents that do not pre-exist.

**I.**    **Processing**

      1.    **Date Fields Time Zone.**

The parties shall process ESI with a single time zone and a date and time setting that is consistent across that party's productions. The time zone used shall be either Pacific Daylight time (PDT) or Coordinated Universal Time (UTC).

2.      **Exception Files.**

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

3.      **De-NISTing.**

Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4.      **Proprietary Software.**

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

5.      **Source Code.** This Stipulation does not address measures for limiting access to and protecting the confidentiality of Source Code. The Parties agree to meet and confer regarding an appropriate protocol for the review and production of necessary Source Code, if any.

6.      **Encrypted or Password Protected ESI.**

For any ESI that exists in encrypted format or is password protected, the producing Party will provide the other Parties access to those files to the extent possible.

**J.      Databases, Structured, Aggregated or Application Data.**

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.   The Parties will reasonably cooperate in the exchange of information concerning such databases and data sources.

**K.      Production Media.**

1.      The producing Party will use the appropriate electronic media (CD, DVD, or hard drive) or secure electronic transfer for its ESI production, and, if physical media is being provided, will cooperate in good faith to use the highest-capacity available media to minimize associated overhead.  The producing Party will label the physical media with the producing Party, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

2.      Encryption.  For productions made under this Order, industry-standard encryption tools and practices may be used when transferring data between Parties.  Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

**L.      Privilege Log**

Within a reasonable period after each production (not to exceed thirty days), Defendants shall provide Plaintiffs with a log of the documents withheld or redacted for privilege from that

*page 17 of 20*

production.  The privilege log shall include at least the following fields: Custodian, From, To, CC, BCC,  File Name, File Path, Date Created or Sent, Date Last Modified, Description (sufficient to allow Plaintiffs to evaluate the merits of the claim), Basis of Withholding/Redaction.  If there is more than one redaction in a document, each redaction shall be addressed in the log with sufficient information to allow Plaintiffs to understand the basis for each redaction.  The format and contents of any log for materials withheld pursuant to Annex 13 or related federal regulations shall be negotiated separately.

**M.     Limitations and Non-Waiver.**

This protocol provides a general framework for the production of ESI and paper documents on a going forward basis.  The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney-client or work-product privileges, except as specifically required herein, and any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein.

**N.     General Provisions.**

1.     Unless this Court orders otherwise, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

2.     Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

3.    Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

4.    All data produced shall comply with the international laws and regulations governing privacy to which such data sources are jurisdictionally subject, including but not limited to, the European Union's General Data Protection Regulation ("GDPR").

5.    Nothing in this protocol shall relieve a Party of its obligation to produce or log documents of which they have actual knowledge and which are subject to discovery under Rule 26, subject to any objections.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert A. Clifford | Dan K. Webb |
| *rac@cliffordlaw.com* | *dwebb@winston.com* |
| Kevin P. Durkin | Christopher B. Essig |
| *kpd@cliffordlaw.com* | *cessig@winston.com* |
| Tracy A. Brammeier | Julia Mano Johnson |
| *tab@cliffordlaw.com* | *jmjohnson@winston.com* |
| John V. Kalantzis | WINSTON & STRAWN LLP |
| *jvk@cliffordlaw.com* | 35 W. Wacker Dr. |
| CLIFFORD LAW OFFICES, P C. | Chicago, Illinois 60601 |
| 120 N. LaSalle Street Suite 3100 | (312) 588-5600 |
| Chicago, Illinois 60602 | |
| (312) 899-9090 | Mack H. Shultz, Jr. |
| | *MShultz@perkinscoie.com* |
| Justin T. Green | Bruce D. Campbell |
| Anthony Tarricone | *BCampbell@perkinscoie.com* |
| Brian J. Alexander | Michael Scoville |
| Daniel O. Rose | *MScoville@perkinscoie.com* |
| Megan W. Benett | Christopher M. Ledford |
| Andrew J. Maloney III | *CLedford@perkinscoie.com* |
| Erin R. Applebaum | PERKINS COIE LLP |
| KREINDLER & KREINDLER LLP | 1201 Third Avenue Suite 4900 |
| 750 Third Avenue | Seattle, Washington 98101-3099 |
| New York, NY 10017-5590 | 206-359-8000 |
| | |
| Steven C. Marks | Jonathan R. Buck |
| | *jbuck@perkinscoie.com* |

| | |
|---|---|
| Ricardo M. Martinez-Cid<br>Kristina M. Infante<br>PODHURST ORSECK, P.A.<br>SunTrust International Center, Suite 2300<br>One S.E. Third Avenue<br>Miami, Florida 33131<br>**On behalf of all Plaintiffs** | Daniel T. Burley<br>*dburley@perkinscoie.com*<br>PERKINS COIE LLP<br>131 South Dearborn St.<br> Suite 1700 Chicago, IL 60603<br>312-324-8400<br>**Attorneys for The Boeing Company** |
| | Garrett Joseph Fitzpatrick<br>garrett.fitzpatrick@fitzhunt.com<br>FITZPATRICK & HUNT, PAGANO,<br>AUBERT, LLP<br>12 E. 49th Street<br>31st Floor<br>NY, NY 10017<br>212-937-4002<br><br>Nicholas C. Bart<br>*nick.bart@fitzhunt.com*<br>Shane B. Nichols<br>*Shane.nichols@fitzhunt.com*<br>FITZPATRICK & HUNT, PAGANO,<br>AUBERT, LLP<br>20 S. Clark St.<br>Suite 2620 Chicago, IL 60603<br>312-728-4902<br>**Attorneys for Rosemount Aerospace, Inc.** |

**IT IS SO ORDERED.**

Dated _____

_____
Hon. M. David Weisman
U.S. Magistrate Judge

*page 20 of 20*