IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH<br><br>Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY, a Delaware corporation; ROSEMOUNT AEROSPACE, INC., a Delaware corporation; ROCKWELL COLLINS, INC., a Delaware corporation,<br><br>Defendants. | Lead Case No. 19-cv-02170<br><br>*This Filing Relates to All Actions*<br><br>Hon. Jorge L. Alonso<br><br>Hon. M. David Weisman |
| PLAINTIFFS' EXECUTIVE COMMITTEE,<br><br>Movant,<br><br>v.<br><br>VON RIBBECK AND KELLY WOOD-PRINCE,<br><br>Respondents. | |

**RESPONSE TO (1) MOTION FOR ENTRY OF ORDER TO SHOW CAUSE; AND (2) SUPPLEMENTAL SUBMISSION IN SUPPORT OF PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION FOR ENTRY OF ORDER TO SHOW CAUSE**

COME Respondents, Manuel von Ribbeck and Monica R. Kelly Wood-Prince, by their attorneys, and for their Response to: (1) Motion for Entry of Order to Show Cause; and (2) Supplemental Submission in Support of Plaintiffs' Executive Committee's Motion for Entry of Order to Show Cause, state:

**INTRODUCTION**

Plaintiffs' Executive Committee's (hereafter "Movant") Motion began as a "Motion for Entry of Order to Show Cause" (hereafter "Motion") based upon Respondents' alleged violations

1

of Rule 4.2 of the Model Rules of Professional Conduct. (Doc. # 929.) The opening paragraph of the Motion stated:

> "Plaintiffs' Executive Committee, by and through its undersigned attorneys, moves this Honorable Court for the entry of an order against Manuel von Ribbeck and Monica R. Kelly Wood-Prince, both of the Ribbeck Law firm, to <u>show cause</u> why they should not be <u>sanctioned</u> by this Court …" (Doc. # 929, p. 1 (emphasis added).)

The Motion concluded by requesting:

> "an order requiring the Respondents to show why they should not be <u>sanctioned</u> by this Court; or for such further, alternative, or additional relief as the Court may deem proper." (Doc. # 929, p. 6 (emphasis added).)

According to a case cited by Movant (see Motion, ¶¶ 4, 11): "Sanctions may include, not only disqualification, but also attorneys' fees, costs, and other monetary penalties." *Moore v. Club Exploria, LLC*, 2021 U.S. Dist. Lexis 13741, *35 (N.D. Ill. January 26, 2021); 2021 WL 260227.

"Sanctions" do not include suspension from the practice of law or disbarment.

When the Motion was presented to the Court on 3/3/2021, Respondents pointed out that Rule 4.2 was not implicated by the alleged misconduct. (3/3/2021 transcript, p. 9 attached as **<u>Exhibit 1</u>**.) Realizing that Rule 4.2 is not implicated, Movant filed a "Supplemental Submission in Support of Plaintiffs' Executive Committee's Motion for Entry of Order to Show Cause" (hereafter "Supplement") on 3/15/2021. (Doc. # 1053.)

The "Supplement" pivoted away from Rule 4.2 and alleged, for the first time, a violation of Rule 7.3 (Solicitation of Clients) and requested, in addition to the "sanction" requested in the Motion, that the Court enter some sort of injunctive relief and "discipline". The Supplement states:

> "[] Movant therefore files this Supplemental Submission (1) to provide this Court with further documentation of Respondents' improper communications; to (2) to [sic] request that this Court initiate a formal investigation against Respondents to determine the extent of Respondents' actions and what communication have been made to Movant's clients; and (3) to request that the this [sic] Court impose appropriate <u>sanctions and/or discipline</u> against Respondents for such unethical conduct and violations of both ABA Model Rules of Professional Conduct 4.2 and 7.3." (Supplement, ¶ 3 (emphasis added).)

As set forth below, Movant presents Respondents with a moving target and threatens to add to its charges with additional evidence Movant claims to have (Supplement, ¶ 4) but refuses to disclose (See **Exhibit 2** and **Exhibit 3**). This approach is contrary to due process.

Movant concludes the Supplement by requesting as a "proposed remedy" an order summarized as follows:

1. Barring Respondents from having any *ex parte* communication – either directly or indirectly – with any person who is represented by legal counsel in connection with this litigation.

2. Appointing a Special Master, similar to what is provided in Local Rule 83.29, to fully investigate the extent of Respondents' misconduct.

3. Finding that Respondents violated their ethical obligations by engaging in the misconduct alleged herein and in Movant's Motion; and

4. Awarding Plaintiffs' Executive Committee the attorneys' fees they reasonably incurred in bringing Respondents' ethical violations to the Court's attention. (Supplement, ¶ 19.)

The parties again appeared before the Court telephonically on March 18, 2021. At that time, Movant indicated that it now sought a special master for the purpose of considering suspension and/or disbarment. (3/18/2021 transcript, pp. 7 – 8 attached as **Exhibit 4**.)

As set forth below, the Motion and Supplement should be denied.

## ARGUMENT

### A. A CIVIL CASE IS NOT THE APPROPRIATE FORUM TO *INVESTIGATE* OR *PROSECUTE* ATTORNEY DISCIPLINARY MATTERS.

Movant is comprised of the Respondents' competitors. Respondents' competitors seek a critical public investigation conducted by this Court. Movant asks the Court to "appoint a Special Master, *similar to* what is provided in Local Rule 83.29, to fully *investigate* the extent of Respondents' misconduct". (Supplement, ¶ 19 (emphasis added).) Movant also seeks an order suspending or disbarring Respondents. (Supplement, ¶ 3; 3/18/2021 transcript, p. 8: 2 – 6.) In

3

doing so, Movant disregards this Court's Local Rules relating to Attorney Discipline and instead asks this Court to lead a public investigation against two of the attorneys appearing before the Court. Attorney Discipline matters before the Northern District are governed by Local Rules. (See **Group Exhibit 5**.)

An existing civil action is not the proper forum to <u>investigate</u> or <u>prosecute</u> allegations of attorney misconduct. Attorney disciplinary matters are not the same as contempt or sanction proceedings. While this Court has the inherent authority to control its docket, attorney disciplinary matters are handled by *the* Executive Committee. Movant is the "Plaintiffs' Executive Committee". Movant should not be confused with *the* Executive Committee which is charged with investigating alleged attorney misconduct. IOP02 make this clear.

> "The Executive Committee shall be composed of the chief judge, the next district court judge eligible to be chief judge, four regular active judges of the Court, the presiding magistrate judge, and the clerk of the Court. The chief judge or, in the absence of the chief judge, the next district court judge eligible to be chief judge, shall preside over the meetings of the Executive Committee. The clerk shall serve as secretary to the Executive Committee. []" IOP02(b) attached as **Exhibit 6**.

Local Rule 83.25(b) states: "The Executive Committee shall serve as the disciplinary committee of the Court." LR 83.25.

The Committee Comment to LR 83.25 explains: "The Executive Committee is the disciplinary committee of the Court. In those circumstances where an evidentiary hearing may be required as part of the disciplinary proceeding, the Committee may direct that the proceeding be assigned to an individual judge. (LR83.28(e))."

Local Rule 83.25(c) indicates the disciplinary rules are not intended to diminish or usurp the authority of a judge in maintaining order in that judge's courtroom or in enforcing compliance with that judge's orders. Disciplinary proceedings are not alternatives to contempt proceedings.

Additionally, pursuant to Local Rule 83.25(e), Respondents are entitled to a confidential investigation before the Executive Committee. LR83.25 states in relevant part:

> **"(e) Confidentiality.** Proceedings before the Executive Committee shall be confidential, except that the Committee may in the interests of justice and on such terms it deems appropriate authorize the clerk to produce, disclose, release, inform, report, or testify to any information, reports, investigations, documents, evidence or transcripts in the clerk's possession. Where a disciplinary proceeding is assigned to a judge of this Court pursuant to these rules, the record and hearings in the proceeding before that judge shall be public, unless for good cause that judge shall in writing order otherwise. Final orders in disciplinary matters shall be a matter of public record and may be published at the direction of the Executive Committee or the assigned judge."
>
> **"(f) Filing.** An answer to a rule to show cause, a statement of charges, and any other document filed in connection with a disciplinary proceeding before the Executive Committee shall be filed with the attorney admissions coordinator or such other deputy clerk as the Clerk may in writing designate."
>
> The Committee Comment to Local Rule 83.25 further states:
>
> "Section (f) makes explicit what has been a practice of long standing: materials relating to disciplinary proceedings before the Executive Committee are to be filed with the Attorney Admissions Coordinator. This procedure enables more effective control over the documents in disciplinary proceedings, a control necessary to assure that the confidentiality of such proceedings is maintained. ...."

The Northern District provides the public with recent Executive Committee orders. https://www.ilnd.uscourts.gov/DisciplineFilers.aspx.

Movant ignores this established procedure because it seeks to make their accusations into a highly public proceeding with a public investigation for the purpose of damaging a competitor. That is likely why a reasonable effort at settlement failed. This purpose is further demonstrated by Movant's filing which refers to various newspaper articles and other matters which are unrelated to the known charges, are not admissible and are misleading. On information and belief, Movant is currently using its filing to cause negative articles to be published in Kenya and intends to cause other articles to be published in the U.S. using a reporter (Negroni). Movant has no legal basis to

5

do so, and this Court should not allow Movant to use this process to obtain a competitive advantage.

B. **THE PROCEDURE ADVOCATED BY MOVANT VIOLATES RESPONDENTS' RIGHT TO DUE PROCESS.**

Movant seeks sanctions and penalties against Respondents, including asking this Court to bar them from appearing in federal court. Given the punitive demand, Respondents are entitled to know what exactly they are being accused of and what evidence Movant believes it has to support the charges before they respond. That is, Respondents must receive sufficient notice of the allegations against them prior to being called upon to defend themselves. See *In re Ruffalo*, 390 U.S. 544, 550 (1968) (attorney disciplinary case).

Here, it is impossible to know the charges or evidence. What started out as an alleged violation of Rule 4.2 has morphed into an allegation of a violation of Rule 7.3 (by way of filing the Supplement) with the Movant stating that it attached "a small portion of the direct solicitations…" (Supplement, ¶ 4.) (None of the exhibits demonstrate "direct solicitations".) The evidence offered against Respondents is, as Movant admits, incomplete because Movant is apparently holding evidence in reserve. (Supplement, ¶ 4.) Respondents requested any other supposed "evidence". (**Exhibit 2**.) The request was mischaracterized and denied. (**Exhibit 3**.)

C. **THERE WAS NO VIOLATION OF RULE 4.2.**

1. *Rule 4.2 is not implicated by the alleged conduct.*

A violation of Rule 4.2 requires that the communication by the offending lawyer be made "[i]n representing a client[.]" This is clear by the plain language of Rule 4.2. Rule 4.2 (Communication with Person Represented by Counsel) states:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the

6

matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." (A copy is attached as **Exhibit 7** (emphasis added).)

Movant does not explain how the alleged communications were made by or on behalf of Respondents "[i]n representing a client". Instead, according to Movant, the communications were some sort of solicitation effort. Solicitation is not done "[i]n representing a client". The definition of "solicitation" is that the "motive for the lawyer's doing so is the lawyer's or law firm's pecuniary gain []". (ABA Model Rule 7.3(b) attached as **Exhibit 8**.)

The fact that Rule 4.2 governs a lawyer's contact with their client's adversary is illustrated by the authority cited by Movant which deals with lawyers contacting opponent's clients. In any event, none of the cases which found sanctions appropriate included suspension or disbarment.

Rule 4.2 prevents Respondents from communicating with defendants such as Boeing. Rule 4.2 does not prevent a conversation between a lawyer and a prospective client. Cases belong to clients, not lawyers. Clients can consult other lawyers about possibly changing lawyers. Clients have the right to terminate a lawyer at any time. *Herbster v. North American Co. for Life & Health Ins.*, 150 Ill. App. 3d 21, 28 (2nd Dist. 1986). The right to terminate the relationship includes the client's right to substitute other counsel. *Id.* Rule 4.2 does not apply to this scenario.

No case cited by Movant stands for the proposition that a lawyer who does not represent the opposing side is prohibited from communicating with a prospective client. Relevant authority is the opposite. For example, ISBA Professional Conduct Advisory Opinion No. 18-03 concluded that Rule 4.2 does not bar lawyers from communicating with prospective clients about a potential matter even when the prospective client is currently represented by another lawyer in connection with that same matter. (**Exhibit 9**.) Other bar associations have taken the same view. See **Exhibit 10** (New York State Bar Association, Ethics Opinion 1010), **Exhibit 11** (Florida Bar Ethics Opinion 02-05), **Exhibit 12** (Philadelphia Bar Association Ethics Opinion 2004-1). Further, any

7

communications the Respondents may have had with a prospective client would be protected from disclosure by the Rules of Professional Conduct. See Rule 1.18 (Duties to Prospective Client; attached as **Exhibit 13**). Therefore, to the extent any prospective clients approached Respondents, Respondents are prohibited from disclosing the information to Movant. As noted by Movant at paragraph 18 of the Supplement, certain people may not want it known that they communicated with another lawyer.

2. ***Movant's position that clients may not communicate with other lawyers violates public policy.***

Movant's position that clients of Movant cannot consult with the Respondents violates public policy. Movant's Supplement requests an order "barring Respondents from having <u>any</u> *ex parte* communication – either directly or indirectly – with any person who is represented by legal counsel in connection with this litigation[.]" (Supplement, ¶ 19 (underline emphasis added).) The request, if entered, violates public policy.

Clients have the absolute right to discuss their matters with the lawyer of their choosing. Clients also have the absolute right to change (or not change) lawyers. The client's lawyer has no right to learn what the client may have discussed with another lawyer. This means that lawyers cannot be barred from having these conversations and the prospective lawyer should not be compelled by the Court to reveal a prospective client's confidential information. Clients sometimes change lawyers. (See **Exhibit 14**.)

The relief request by Movant is revealing. It would make clients the property of the lawyer, treating clients as a commodity. It would also mean that a lawyer could not take a call from someone unhappy with their present lawyer or simply seeking a second opinion. In application, this would mean that a lawyer would need to give the client permission to retain co-counsel or ask for a second opinion regarding the lawyer's strategy.

Additionally, an agreement not to consult with certain prospective clients raises additional concerns. Rule 5.6 (Restrictions on Right to Practice) holds that a lawyer shall not participate in offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

Further, Movant is effectively requesting preemptive disqualification. Courts are hesitant to deny a client his or her chosen counsel. The authorities cited by Movant explains that the party moving for disqualification bears the burden "to show facts necessitating disqualification." *Moore*, 2021 U.S. Dist. Lexis 13741, *27 (internal citation omitted) (Motion at ¶ 4.) "That burden is a heavy one." *Id*. "Disqualification is understood to be a drastic measure, one that courts are hesitant to impose." *Id*. Movant has not met this heavy burden. Respondents should not be disqualified from representing parties who choose Respondents as their lawyers based on the record before this Court, which is nothing more than speculation and unsupported allegations.

### D. **RULE 7.3 WAS NOT VIOLATED.**

#### 1. *The Motion and Supplement do not allege unlawful solicitation.*

Rule 7.3 prohibits lawyers from soliciting potential clients face to face. Rule 7.3 (Solicitation of Clients) states in part: "(a) 'Solicitation' or 'solicit' denotes a communication initiated by or on behalf of a lawyer or law firm that is directed to a specific person the lawyer knows or reasonably should know needs legal services in a particular matter and that offers to provide, or reasonably can be understood as offering to provide, legal services for that matter." (**Exhibit 8**.)

Respondents agree that lawyers may not unlawfully solicit, and they have not done so here. Movant's allegations do not describe solicitation in violation of Model Rule 7.3.

Comment No. 2 to Rule 7.3 specifically states that "text messages or other written communications that recipients may easily disregard" are not live person-to-person contact in violation of Model Rule 7.3. Comment No. 2 to Rule 7.3 states:

> "[2] 'Live person-to-person contact' means in-person, face-to-face, live telephone and other real-time visual or auditory person-to-person communications where the person is subject to a direct personal encounter without time for reflection. Such person-to-person contact **does not include chat rooms, text messages or other written communications that recipients may easily disregard**. A potential for overreaching exists when a lawyer, seeking pecuniary gain, solicits a person known to be in need of legal services. This form of contact subjects a person to the private importuning of the trained advocate in a direct interpersonal encounter. The person, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult to fully evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon an immediate response. The situation is fraught with the possibility of undue influence, intimidation, and overreaching." (Emphasis added.)

WhatsApp is no different than email, text, chat, or similar communication. Comment Number 2 to the Model Rule specifically exempts the alleged [third party] "solicitation". The alleged communications do not violate Model Rule 7.3 because they may be "easily disregard[ed]". Respondents' alleged behavior is also consistent with Illinois Rule 7.3. See Ill. Sup. Ct. R. Prof'l Conduct, R 7.3, Comment No. 3. The Motion and Supplement do not allege a violation of Rule 7.3.

2. *<u>The allegations of misconduct are plain wrong.</u>*

Movant alleges that certain individuals are the agents of the Respondents. (Motion, ¶¶ 3, 6.) "Agency" is a conclusion. See *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 670 (N.D. Ill. 2005). There are no facts supporting the "agency" conclusion. In any event, allegations of agency are negated by those persons alleged to be the Respondents' agents.

As explained in the Declaration of Mohamed Farrag Mohamed Megali (**Exhibit 15**), Mr. Megali is a satisfied client. **Exhibit 15**, ¶¶ 6, 9, 10, 14, see also Megali declaration, generally. Mr.

Megali wanted to tell those who share his unfortunate circumstance of his legal success to help those like him through their tragic situation. *Id.* at ¶¶ 10, 12, 14, 16. Respondents did not direct Mr. Megali to contact anyone. *Id.* at ¶¶ 12 – 18.

Magdalyne Nuzuma's nephew was killed in the crash. (See Nuzuma declaration attached as **Exhibit 16**, ¶ 2) Her sister was the victim's mother and represented by Mr. von Ribbeck and his co-counsel Njoroge. *Id*. at ¶ 4. Ms. Nuzuma involved herself in WhatsApp chats to communicate with others regarding her loss. *Id*. at ¶6. Nuzuma reviewed "Exhibit 4" to the Motion. *Id*. at ¶ 7. Nuzuma states that Allan contacted her through WhatsApp and that she did not act at the direction of Mr. von Ribbeck and was not employed by von Ribbeck. *Id*. at ¶ 8. Nuzuma was not directed by Mr. von Ribbeck or any other person to communicate with Allan. *Id*. at ¶ 10.

David Njoroge is a Kenyan lawyer who has worked as co-counsel with Mr. von Ribbeck. (See Njoroge declaration attached as **Exhibit 17**, ¶¶ 2, 4.) Njoroge confirms that Allan initiated contacted through Caroline Wangari and requested to have a meeting. *Id*. at ¶ 5. Allan had previously tried to reach von Ribbeck. *Id*. at ¶ 6. Von Ribbeck declined to meet with Allan at the time. *Id*. at ¶ 6. Allan was not solicited. See *Id*. at ¶¶ 5 – 8.

Caroline Wangari is a young Kenyan lawyer and advocate. (See Wangari declaration attached as **Exhibit 18**, ¶¶ 1 - 3.) Ms. Wangari learned of the assistance that von Ribbeck was able to secure for clients. *Id* at ¶¶ 4 -5, see also Wangari declaration, *generally*. Wangari spoke to others and learned some were dissatisfied or concerned. *Id*. at ¶¶ 6 - 10. She was interested in helping those in her community. See *Id*. Ms. Wangari is not an agent or representative of the Respondents, but she does recommend them in her discretion. *Id*. at ¶¶ 11 – 14, 16, 19. No one told Wangari not to state von Ribbeck's name. *Id.* at ¶ 18. Ms. Wangari's conduct was within the Kenyan ethical code. *Id*. at ¶¶ 15 – 19.

In any event, Rule 7.3 does not state that a lawyer is responsible for another lawyer or non-lawyer's allegedly unlawful solicitation. Rule 5.1(c) states that a lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if: (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved. (See also Rule 5.3 regarding nonlawyer assistance.) There is no allegation, or evidence, this has occurred.

E. **THE MOTION AND SUPPLEMENT DO NOT IMPLICATE MONICA KELLY WOOD-PRINCE.**

The Motion and Supplement are directed against von Ribbeck and Kelly Wood-Prince. However, there are no allegations in support of a request for sanctions, discipline, or other relief against Kelly Wood-Prince. Ms. Kelly Wood-Prince has the right to due process, and this includes the right to know the charges against her and have an opportunity to defend herself. There is no basis set forth to assert any claim against Kelly Wood-Prince. Ms. Kelly Wood-Prince should be dismissed.

F. **MOVANT DOES NOT ESTABLISH AN EVIDENTIARY FOUNDATION FOR THE COURT TO CONSIDER THE WHATSAPP MESSAGES**

1. *The WhatsApp messages are incomplete, hearsay, lack foundation and have not been authenticated.*

The WhatsApp messages do not contain communications by Respondents but are offered by Movant as supposed proof of the Respondents' speculative intent. The WhatsApp messages should be excluded.

  a) *Rule 106. Remainder of or Related Writings or Recorded Statements.*

There is no statement that the WhatsApp communications are complete. They appear, on their face, to be incomplete. Respondents have sought the full communications and have been denied. (See **Exhibit 2** and **Exhibit 3**.) Respondents are entitled to the full communications. Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party

may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time").

It is critical that the Court and the Respondents view the messages in context. Selected portions of a communication lack context including the communications leading to the statements offered to the Court. Movant consists of law firms who represent individuals who Movant says were improperly contacted. Movant should have access to complete communications. Without the context of the full communication, there should be no assumptions, conclusions, or criticisms of what may have transpired. Respondents object to the use of partial written statements. Respondents demand the full communications.

### b) *Movant offers inadmissible hearsay.*

The WhatsApp messages are inadmissible hearsay because Movant seeks to use Movant's client's and/or client's family member's out-of-court statements *with third parties* against the Respondents. See *U.S. v. Harry*, 816 F.3d 1268, 1279 (10th Cir. 2016) ("To begin with, the text was hearsay, since it was an out-of-court statement offered 'to prove the truth of the matter asserted in the statement'—that is, that Victim was flirting. Fed. R. Evid. 801(c). A statement by a party is not hearsay when offered by the opposing party, *see* Fed. R. Evid. 801(d)(2); so Defendant's texts could be offered by the prosecution. But none of his texts could be offered by him for their truth unless a hearsay exception applies. *See* Fed. R. Evid. 802.")

Movant seeks to introduce essentially their own selected one-sided communications *with people other than Respondents* to prosecute and publicly defame Respondents. Movant seeks to have the Court accept these messages for the truth of the matter asserted. (See, for example, Motion, ¶ 7.) The statements should not be considered because they are inadmissible hearsay.

### c) *The WhatsApp messages lack foundation and are not properly authenticated.*

13

The WhatsApp messages lack foundation and are not properly authenticated. Fed. R. Evid. 602 and Fed. R. Evid. 901.

There is no foundation provided to authenticate the messages. There is no explanation as to why the supposed recipients of the messages did not authenticate the alleged communications. Instead, third parties who do not purport to be involved in the communications seek to authenticate communications to which they do not claim to have been a party or have even witnessed the communications transpire. Without a sufficient foundation, a third party cannot authenticate communications he was not a party to and did not witness. See *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 532 (M.D.N.C. 2008) ("While wide discretion is accorded a decision on admissibility of recordings, here the report is third hand and these deficiencies render Flinchum's affidavit inadmissible.")

Neither the recipients of the messages nor the author of the responses have attested under oath that the WhatsApp messages are the complete string of messages or that the messages are being presented in full so that that their full context and meaning can be understood or even that they are accurate. See Fed Rules Evid R 901(b). For example, "Exhibit 4" is confusing. It appears to be screenshots of conversations by and between different individuals. Additionally, many of the messages are undated. Context cannot be determined.

G. **THE ALLEGATIONS ARE NOT CONSISTENT WITH THE EXHIBITS.**

Movant complains that someone allegedly falsely indicated Boeing or its insurer(s) may go out of business. However, Movant's "Exhibit 3" is an article which states: "When asked about the impact of paying $1 billion dollars in compensation will have on the Boing Company, von Ribbeck remarked: 'The Boeing company should not be greatly affected by it.' 'Most of the payments will be made by their insurance and reinsurance companies and as stated by Wall Street

firms, Boeing can afford that cost: Boeing has posted record revenues of $101 billion last year and $10.6 billion in profits.'" ("Exhibit 3" to Motion, page 3.) Movant's allegation is contradicted by Respondents themselves in the press and attached to the Movant's Motion.

## CONCLUSION

Movant asks this Court for an "investigation" so that they can "undo" any "damage". (Supplement, ¶ 3.) No "damage" has been alleged. Movant does not allege that they lost a single client. Movant does not attach any motion to substitute filed by the Respondents.

Movant also seeks disciplinary action *similar to* what is provided in LR 83.29 (Supplement, ¶ 19) instead of submitting a request to the appropriate body. Movant instead makes these public filings. The motive for this strategy is plain; an attempt to destroy a competitor. The Motion should be denied. In the alternative, Respondents request an evidentiary hearing.

By: /s/ Adrian Vuckovich
      Attorney for Respondents

Adrian Vuckovich (av@cb-law.com)
Kathryne Hayes (khayes@cb-law.com)
COLLINS BARGIONE & VUCKOVICH
One North LaSalle Street, Suite 300
Chicago, Illinois 60602
Telephone: (312) 372-7813

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically on April 29, 2021. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:   /s/ Adrian Vuckovich
       Attorney for Respondents

Adrian Vuckovich (av@cb-law.com)
Kathryne Hayes (khayes@cb-law.com)
COLLINS BARGIONE & VUCKOVICH
One North LaSalle Street, Suite 300
Chicago, Illinois 60602
Telephone: (312) 372-7813