# EXHIBIT 8



**ABA/BLOOMBERG LAW LAWYERS' MANUAL ON PROFESSIONAL CONDUCT**

# Ethics Opinions, Practice Guides & Standards

ABA Model Rules of Professional Conduct
    Information About Legal Services
        Rule 7.3 Solicitation of Clients

### Rule 7.3 Solicitation of Clients

**Rule Text —**

(a) "Solicitation" or "solicit" denotes a communication initiated by or on behalf of a lawyer or law firm that is directed to a specific person the lawyer knows or reasonably should know needs legal services in a particular matter and that offers to provide, or reasonably can be understood as offering to provide, legal services for that matter.

(b) A lawyer shall not solicit professional employment by live person-to-person contact when a significant motive for the lawyer's doing so is the lawyer's or law firm's pecuniary gain, unless the contact is with a:

(1) lawyer;

(2) person who has a family, close personal, or prior business or professional relationship with the lawyer or law firm; or

(3) person who routinely uses for business purposes the type of legal services offered by the lawyer.

(c) A lawyer shall not solicit professional employment even when not otherwise prohibited by paragraph (b), if:

(1) the target of the solicitation has made known to the lawyer a desire not to be solicited by the lawyer; or

(2) the solicitation involves coercion, duress or harassment.

(d) This Rule does not prohibit communications authorized by law or ordered by a court or other tribunal.

(e) Notwithstanding the prohibitions in this Rule, a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer that uses live person-to-person contact to enroll members or sell subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.

**Comment —**

[1]   Paragraph (b) prohibits a lawyer from soliciting professional employment by live



EXHIBIT 8

person-to-person contact when a significant motive for the lawyer's doing so is the lawyer's or the law firm's pecuniary gain. A lawyer's communication is not a solicitation if it is directed to the general public, such as through a billboard, an Internet banner advertisement, a website or a television commercial, or if it is in response to a request for information or is automatically generated in response to electronic searches.

[2]   "Live person-to-person contact" means in-person, face-to-face, live telephone and other real-time visual or auditory person-to-person communications where the person is subject to a direct personal encounter without time for reflection. Such person-to-person contact does not include chat rooms, text messages or other written communications that recipients may easily disregard. A potential for overreaching exists when a lawyer, seeking pecuniary gain, solicits a person known to be in need of legal services. This form of contact subjects a person to the private importuning of the trained advocate in a direct interpersonal encounter. The person, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult to fully evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon an immediate response. The situation is fraught with the possibility of undue influence, intimidation, and overreaching.

[3]   The potential for overreaching inherent in live person-to-person contact justifies its prohibition, since lawyers have alternative means of conveying necessary information. In particular, communications can be mailed or transmitted by email or other electronic means that do not violate other laws. These forms of communications make it possible for the public to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the public to live person-to-person persuasion that may overwhelm a person's judgment.

[4]   The contents of live person-to-person contact can be disputed and may not be subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.

[5]   There is far less likelihood that a lawyer would engage in overreaching against a former client, or a person with whom the lawyer has a close personal, family, business or professional relationship, or in situations in which the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Nor is there a serious potential for overreaching when the person contacted is a lawyer or is known to routinely use the type of legal services involved for business purposes. Examples include persons who routinely hire outside counsel to represent the entity; entrepreneurs who regularly engage business, employment law or intellectual property lawyers; small business proprietors who routinely hire lawyers for lease or contract issues; and other people who routinely retain lawyers for business transactions or formations. Paragraph (b) is not intended to prohibit a lawyer from participating in constitutionally protected activities of public or charitable legal-service organizations or bona fide political, social, civic, fraternal, employee or trade organizations whose purposes include providing or recommending legal services to their members or beneficiaries.

[6]   A solicitation that contains false or misleading information within the meaning of *Rule 7.1*, that involves coercion, duress or harassment within the meaning of *Rule 7.3* (c)(2), or that involves contact with someone who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of *Rule 7.3*(c)(1) is prohibited. Live, person-to-person contact of individuals who may be especially vulnerable to coercion or duress is ordinarily not appropriate, for example, the elderly, those whose first language is not English, or the disabled.

[7]   This Rule does not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to people who are seeking legal services for themselves. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who

may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under *Rule 7.2*.

[8]  Communications authorized by law or ordered by a court or tribunal include a notice to potential members of a class in class action litigation.

[9]  Paragraph (e) of this Rule permits a lawyer to participate with an organization which uses personal contact to enroll members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (e) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the person-to-person solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations must not be directed to a person known to need legal services in a particular matter, but must be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with *Rules 7.1*, 7.2 and 7.3 (c).

Copyright © 2019, by the American Bar Association and The Bureau of National Affairs, Inc.

**Rule 7.3 Solicitation of Clients**