# EXHIBIT 10

Select Language

COVID-
19

Events
Calendar

About

Lead

'HOD

News

Membership
Benefits

Sections &
Committees

Attorney
Resources

Public
Resource

ETHICS OPINIONS
7.21.2014

# Ethics Opinion 1010

**By Committee on Professional Ethics**

*News Center*    *Ethics Opinion 1010*



**New York State Bar Association**

*Committee on Professional Ethics*
Opinion 1010 (7/21/2014)
**Topic**:   Advertising; second opinions
**Digest**:  A firm may advertise that it provides second opinions to represented parties.
**Rules**:  4.2(a), 7.1, 7.3



Cookie Settings

## FACTS

1. The inquirer is a member of a law firm that advertises via public media including radio. The firm proposes to inform the public that it is available to provide second opinions on pending legal cases on which individuals are already represented. Specifically, the firm proposes to include in its advertisements language such as: "If you are unhappy with your current attorney, you can call [ABC Law Firm] to discuss your matter.

## QUESTION

2. May a law firm advertise its availability to provide second opinions as to pending legal cases on which individuals are already represented?

## OPINION

3. We first consider the "no-contact rule" set forth in Rule 4.2(a) of the New York Rules of Professional Conduct (the "Rules"), which states:

**In representing a client, a lawyer shall not communicate or cause another to**

**communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.**

4.  This rule applies only to communications made by a lawyer in the course of "representing a client."  It does not apply, therefore, to the communications proposed by the inquirer, by which the inquirer's firm would seek to obtain new clients in matters in which the firm is not already involved.  *Cf.* Rule 4.2, Cmt. [4] (noting that the Rule does not preclude "communication with a represented party or person who is seeking advice from a lawyer who is not otherwise representing a client in the matter").  Accordingly, the

Cookie Settings

proposed communications are not subject to Rule 4.2(a). *Accord* Florida Opinion 02-5 (2003) (citing opinions from several jurisdictions).

5.  The proposed communications are, however, subject to restrictions on legal advertisements. *See* Rule 1.0(a) (defining "advertisement" generally to include "any public or private communication made by or on behalf of a lawyer or law firm about that lawyer or law firm's services, the primary purpose of which is for the retention of the lawyer or law firm"). These restrictions include, among other things, prohibition of statements or claims that are false, deceptive or misleading, Rule 7.1(a)(1); limitations on paid endorsements and fictionalized portrayals, Rule 7.1(c); in some media, a requirement to label as attorney advertising, Rule 7.1(f); a requirement to include certain information identifying the advertiser, Rule 7.1(h); and pre-approval and retention requirements, Rule 7.1(k).

6.  It does not appear from the face of the inquiry, or from the illustrative sentence quoted in paragraph 1 above, that the proposed advertisement would contain any false, deceptive or misleading statements or claims.  A more definitive conclusion would require consideration of the entire actual advertisement in

Cookie Settings

relation to terms of the representation available to the advertisement's recipients.  But if the advertisement as a whole and in context is not false, deceptive or misleading, and if it complies with the other requirements such as pre-approval and retention for required periods, then Rule 7.1 would not preclude its use.

7.  Rule 7.3 contains further restrictions applying only to those advertisements that are also solicitations.  The Rules define "solicitation" to include

**any advertisement initiated by or on behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients, or their family members or legal representatives, the primary purpose of which**

Cookie Settings

**is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain.**

Rule 7.3(b) (but excluding writings delivered in response to a specific request); *see* N.Y. State 1009 ¶13 (2014) (discussing elements of this definition).

8. "[A]n advertisement in public media such as newspapers, television, billboards, web sites or the like is a solicitation if it makes reference to a specific person or group of people whose legal needs arise out of a specific incident to which the advertisement explicitly refers." Rule 7.3, Cmt. [3]. But an advertisement in public media that does not make such reference "is presumed not to be directed to or targeted at a specific recipient or recipients" even if "it is intended to attract potential clients with needs in a specified area of law." Rule 7.3, Cmt. [4].

9. Thus, if the proposed advertisements were to refer explicitly to a specific incident and to a specific group of people with legal needs arising out of that

incident, then the advertisements would be subject to restrictions on solicitations that are set forth in Rule 7.3.  But it does not appear from the inquiry that the advertisements would include such references.  In that case, they would not be solicitations and Rule 7.3 would not apply.

10.  The inquiry seeks guidance only as to the propriety of the proposed advertisements.  Accordingly, we do not address the application of ethical rules to what the lawyer may say in a meeting resulting from a prospective client's response to the advertisement.

## CONCLUSION

A firm may advertise that it is available to provide second opinions on pending legal cases on which individuals are already represented.

(4-14)
[1] For example, the advertisement may not mislead as to the costs of seeking a second opinion or the additional costs, if any, that may be incurred by changing attorneys.  Considerations bearing on the possibility of such additional costs may include but are not limited to the import of contingent fee arrangements and work that may need to be reconsidered or redone if a new strategy is adopted. Moreover, if a represented person

Cookie Settings

contacts the inquirer about taking over an existing representation, whether as a result of the advertisement or otherwise, then the inquirer may need to address such considerations. *See* Rule 1.5(b) (requiring lawyer to communicate "the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible").

[2] *See, e.g.*, Rule 7.3(a)(2)(v) (prohibiting solicitation when lawyer intends but does not disclose that legal services will be performed primarily by a different and unaffiliated lawyer); Rule 7.3(c) (setting forth filing requirements); Rule 7.3(h) (requiring inclusion of certain information about the soliciting lawyer). Additional restrictions apply to solicitations relating to a specific incident involving potential claims for personal injury or wrongful death. *See* Rule 7.3(e) & Cmt. [5].



## Join NYSBA

Join Now

Cookie Settings

# My NYSBA Account

Sign In



## NEW YORK STATE BAR ASSOCIATION

## Subscribe for Updates from NYSBA

Contact Us

Careers

NYSBA Staff

Advertise With Us

New York Bar Foundation

Privacy Policy

Terms of Use

Subscribe

   

SUPPORTED LANGUAGES

© 2021 New York State Bar Association

Phone: 518-463-3200

1 Elk Street, Albany, NY 12207

Cookie Settings