**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Weisman |

**BOEING'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT CRAIG MALLAK**

Boeing moves under Federal Rule of Evidence 702 to exclude Plaintiffs' expert Dr. Craig Mallak from testifying at trial.

## INTRODUCTION

Plaintiffs' expert Dr. Craig Mallak is a forensic medical examiner who did not perform any forensic medical examination and who does not offer opinions based on his specialty. He never examined the remains of any passenger or any other forensic evidence. Instead, Dr. Mallak claimed that he "read" and "agree[d]" with a list of physiological effects and injuries prepared by one of Plaintiffs' other experts, Troy Faaborg, an aerospace physiologist. But he also admitted that he was not qualified to assess Mr. Faaborg's opinions and that *he did no independent analysis, testing, or other work* when reaching his conclusions.

Dr. Mallak's testimony is transparent vouching—nothing more than an attempt to add a forensic examiner's endorsement to Mr. Faaborg's work and to repeatedly invoke the magic words "medical certainty" where there is no basis for such certainty. Because no part of his expected testimony is admissible, Boeing respectfully moves this Court to enter an order excluding Dr. Mallak from testifying at trial.

## BACKGROUND

Dr. Craig Mallak, a former lawyer, is a board-certified anatomical, clinical, and forensic pathologist. Ex. A (Mallak Dep. Tr.), 18:16–19:5.[1] As a pathologist and forensic examiner, his expertise lies in evaluating human tissue or bodies to determine the cause of death or source of injuries. *See, e.g., id.* at 43:23–44:9. He submitted a three-page Rule 26 report, two pages of which are spent describing his background and materials reviewed. Ex. B (Mallak Report). According to his report, the materials he reviewed were (1) data from the Flight Data Recorder (one of the

---

[1] Exhibits in this motion are to the Declaration of Christopher Ledford in support of Boeing's Motion to Exclude Plaintiffs' Expert Craig Mallak.

1

airplane's "black boxes"); (2) the Ethiopian AIB Preliminary Report; and (3) Plaintiffs' expert Troy Faaborg's Rule 26 report. *Id.* at 2.[2] At his deposition, Dr. Mallak agreed that he "glanced" at the Ethiopian AIB Preliminary and Final Reports. Ex. A at 152:6–19; 230:3–9. Dr. Mallak also testified that he didn't understand all of the Flight Data Recorder data provided by Mr. Pereira and "didn't put a lot of time and effort into his [*sic*]. I was just provided it." *Id.* at 149:16–150:22. Dr. Mallak also confirmed that he has never reviewed the remains of any of the Flight ET 302 passengers. *Id.* at 39:13–16.

The "Evaluation" section of Dr. Mallak's report is about one page long. Ex. B at 2–3. In it he states:

> I have reviewed the Physiological Evaluation of the passengers and crew by Troy P. Faaborg, M.S., M.S.A. CAsp, and agree, to a medical degree of certainty, based on more than 25 years of experience as a Medical Examiner and having conducted thousands of forensic medical exams and/or autopsies, with the physiological insults, effects, impacts, and/or injuries identified and described on pages 18–19 of his report.

Ex. B at 3. Dr. Mallak concludes his "Evaluation" by opining that "[i]n sum, the forces experienced by the passengers combined with the likelihood of impact with other persons, the cabin interior or moving objections [*sic*], during each of the upset events described by Troy Faaborg to a reasonable degree of medical certainty, caused some degree of injury to all of the passengers." *Id*. Dr. Mallak's three-page report does not contain or refer to any underlying data. Nor does it include or make reference to any type of analysis (forensic or otherwise) for any Flight ET 302 passenger. Dr. Mallak did not disclose any bases for his opinions other than his professional experience, the investigation reports that he "glanced" at, the flight data that he didn't fully understand and "didn't put a lot of time and effort into," and the Faaborg report.

---

[2] Page numbers in this motion refer to the page numbers of the referenced reports, not pdf page numbers.

Mr. Faaborg is an aerospace physiologist. As discussed in Boeing's concurrently filed motion to exclude him, Mr. Faaborg did not perform any medical examination or evaluation and—as discussed in Boeing's motion—the Court should exclude his opinions as a result of this and for a host of other reasons. *See* Boeing's Motion to Exclude Opinions of Plaintiffs' Expert Troy Faaborg. According to Mr. Faaborg's report, he has expertise in analyzing flight performance data to understand the movement of an aircraft and the flight forces to determine the possible physiological effects on aircraft occupants. Ex. C (Faaborg Report), 2. In the pages of Mr. Faaborg's report that Dr. Mallak endorses (pages 18–19), Mr. Faaborg opines that the accident flight triggered a fight-or-flight response in the passengers; that negative g-force exposure would cause physiological responses (*e.g.*, fluid shifts, restriction of mobility, reduction of visual acuity); and that all passengers experienced varying degrees of different physiological effects (*e.g.*, fear and panic, nausea, cardiac dysrhythmias, loss of bladder control). *Id.* at 18–19. Without having performed any medical examination or evaluation, Mr. Faaborg concludes "that the passengers of Ethiopian Airlines flight 302 suffered extraordinary physical, physiological, and psychological injuries, resulting in extreme pain and terror associated with the anticipation of horrific loss of loved ones and personal annihilation as a result of the sequence of events involved in the loss of aircraft control and subsequent crash into the ground at extremely high speed." *Id*.

Dr. Mallak relied wholly on Mr. Faaborg's report, testifying that he did not have an opinion independent of Mr. Faaborg regarding when during the accident flight passengers would have been aware there was a problem. Ex. A at 233:11–15. He confirmed that he relied on Mr. Faaborg to determine when an injury would have occurred from a fight-or-flight response, and that physiology is not in his "lane of expertise." *Id.* at 168:24–169:25. Nor, according to Dr. Mallak, are g-forces in his area of expertise. *Id.* at 163:20–164:2. When asked, "Do you know what a negative G force

3

is?" he testified, "Not going to go there. I'm here as a forensic pathologist." *Id.* at 164:3–8. He testified repeatedly that he "read" Mr. Faaborg's conclusions and that he "agreed" with them. *See, e.g.*, *id.* at 137:3–10; 154:8–13; 155:15–16; 160:18–20; 227:16–17. He confirmed that he "didn't do anything to Mr. Faaborg [*sic*]. I read his report." *Id.* at 144:23–24.

## LEGAL STANDARD

An expert's testimony should be excluded unless "it is reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). "An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert." *Mooring Capital Fund LLC v. Knight*, 388 Fed. App'x 814, 820 (10th Cir. 2010). Plaintiffs have the burden of establishing that their experts meet the requirements of Federal Rule of Evidence 702. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017) (quoting *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017)). This Court will only admit testimony from experts who are qualified, and only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of this case." Fed. R. Evid. 702; *see also United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

Courts apply a three-factor test of qualifications and methods: (1) an analysis of the proposed expert's qualifications; (2) an analysis of the proposed expert's methodology; and (3) a determination that the expected testimony will help the trier of fact. *Gopalratnam*, 877 F.3d at 779. When looking at the second prong (methodology), this Court evaluates whether the expert's technique or theory can be or has been tested; whether the technique or theory has been subject to

4

peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and whether the technique or theory has been generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593–94; *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873 (7th Cir. 2021).

Because liability is not at issue and this is a trial solely on compensatory damages, testimony that does not bear on recoverable damages is irrelevant, potentially prejudicial, and should be excluded. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 16 (2d Cir. 1996) (citation omitted); *Martinez v. Dart Trans, Inc.*, 548 F. Supp. 3d 1107, 1116 (D.N.M. 2021).

## ARGUMENT

### I. Dr. Mallak's testimony fails to satisfy the standards of Rule 702.

Plaintiffs cannot meet their burden of establishing that Dr. Mallak's testimony satisfies the standards of Rule 702 or any part of the Court's three-factor analysis.

First, Dr. Mallak confirmed in his deposition that he lacks the qualifications to assess Mr. Faaborg's conclusions regarding aerospace physiology and the bases for those conclusions. Dr. Mallak is therefore not qualified to simply "agree" with Mr. Faaborg and offer Mr. Faaborg's conclusions as his own.

Second, Dr. Mallak testified repeatedly that he "agreed" with Mr. Faaborg's report without adding any analysis or testing of his own. Dr. Mallak is a forensic medical examiner. But he did not perform any forensic medical examination or undertake any independent analysis in reaching agreement with Mr. Faaborg. This methodology isn't just unsound; it is no methodology at all.

Third, Dr. Mallak's testimony would not help the trier of fact. His testimony is entirely duplicative of Mr. Faaborg's testimony, would certainly waste time, and could only confuse and mislead the jury.

5

### A. Dr. Mallak is not qualified to "agree" with Mr. Faaborg's conclusions.

Rule 702 first requires that an expert must be qualified for his expected testimony to be admissible at trial; Dr. Mallak—by his own admission—is not. The question here isn't whether Dr. Mallak is qualified to opine on forensic examination; he did not perform one and does not opine on one. Rather, the Court's qualification analysis is tailored to the nature of the expert's opinions. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("The question we must ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question") (internal quotation marks and citations omitted). Dr. Mallak's opinion in this case is that he "read" and "agreed" with the conclusions of another expert's report regarding aerospace physiology. *See* Ex. B at 3 ("I have reviewed the Physiological Evaluation of the passengers and crew by Troy P. Faaborg, M.S., M.S.A. CAsp, and agree…"). By Dr. Mallak's own deposition testimony, he is not qualified to agree with Mr. Faaborg's conclusions and offer them as his own.

Dr. Mallak repeatedly testified that Mr. Faaborg's areas of expertise as an aerospace physiologist are not his areas of expertise. He testified that *Mr. Faaborg* has the expertise regarding the effects of G forces; when injury occurred; and the physiological responses listed on pages 18–19 of Mr. Faaborg's report. *See, e.g.*, Ex. A at 163:14–164:2; 220:4–18; 169:12–25. Without having this expertise himself, he is not qualified to "agree" with Mr. Faaborg or the "physiological insults, effects, impacts, and/or injuries identified and described on pages 18–19 of his report." *See Jones v. Lincoln Elec. Co*, 188 F.3d 709, 723–24 (7th Cir. 1999) ("[T]he opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.") (internal citations and quotations omitted); *see also Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (noting that "a theoretical economist, however able, would not be allowed to testify to the findings of an

6

econometric study conducted by another economist if he lacked expertise in econometrics[.]"). An expert with no expertise in physiology does not have the qualifications to critique—and certainly not to endorse—another expert's conclusion about physiology. Yet this is exactly what Dr. Mallak purports to do. His testimony thus fails at the threshold qualification inquiry. The Court should exclude it. *See Dura*, 285 F.3d at 616 (affirming exclusion of expert who had no expertise in the modeling on which he based his opinions).

> **B. Dr. Mallak's methodology is unreliable because he performed no independent analysis and simply parrots Mr. Faaborg's opinions.**

"A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Id.* at 614. "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang*, 217 F.3d at 914. Dr. Mallak's testimony should be excluded because he is nothing more than a mouthpiece for Mr. Faaborg's opinions and has done no independent analysis of his own, which his own testimony confirms:

> Q. So your report references pages 18 and 19. Just to make sure I understand — and maybe close this out — it is true for all of the items listed on pages 18 and 19 [of Faaborg's report] that you are relying on Mr. Faaborg's assessment of whether they occurred, and when they would have occurred during the accident flight?
>
> [Objections omitted]
>
> A. I agreed with his findings. I don't. He has the expertise to tell when it happened.
>
> Q. And you are not offering a separate opinion on that subject. Is that correct?
>
> A. This is something he does. This isn't something in my world we do, other than trying to determine the time of death. And we know that.

Ex. A at 227:6–24. He testified similarly that the basis for his opinions about physiology and what constitutes an injury is derived from Mr. Faaborg, and not his own independent analysis:

7

> Q. Other than Mr. Faaborg's report, do you have a basis for believing these physiological responses on pages 18 and 19 constitute an injury?
>
> [Objections omitted]
>
> A. As I said, let's talk about the injuries. You need to go back and talk to Mr. Faaborg —
>
> Q.: Okay —
>
> A: — just keep rolling back to physiology. Let's stay in my lane of expertise.

*Id.* at 169:12–25. And he again confirmed that he performed no separate analysis, or did anything independent of Mr. Faaborg:

> Q. And so let me ask it this way: Did you separately determine that all of these physiological responses would occur? Or did you rely on Mr. Faaborg for that?
>
> [Objections omitted]
>
> A. I looked at them and said, "yes, this is what happens based on what he described happened during the course of this flight."
>
> Q. What did you do with that information?
>
> A. I agreed with it.

*Id.* at 142:13–23.; *see also id.* at 144:3–15

Dr. Mallak's expertise is as a forensic medical examiner, but he never performed any forensic medical examination of any passenger. *Id.* at 39:13–16. Dr. Mallak described some typical things a medical examiner would do: "We'd X-ray, external examination, internal examination, microscopic examination, toxicology, sometimes special studies with other sub-specialists in the field of pathology, say a brain—a brain or a heart. And we would gather all the information. And at—we would often gather at conference in the afternoon and discuss the findings and come to a conclusion as to the cause and manner of death." *Id.* at 43:21–44:9. He said that as a forensic pathologist he "evaluate[s] injuries and then works towards what led to the death due to that

8

injury." *Id.* at 140:4–6. But Dr. Mallak confirmed that he did not perform any examination in this case:

> Q. As part of your work in this case, you did not examine the remains of any of the occupants of the accident flight, correct?
>
> A. That is correct.

*Id.* at 39:13–16.

Nor did Dr. Mallak claim, either in his report or his deposition, to have undertaken in this case any of the other typical forensic pathology tasks he described or to have evaluated the results of any such work. By his own admission, Dr. Mallak merely accepted Mr. Faaborg's conclusion that the injuries occurred, as a starting point; he did not separately make any determination regarding those injuries himself. *See id.* at 139:12–140:6.

Dr. Mallak thus openly acknowledged that his conclusions were merely that he agreed with those offered by Mr. Faaborg and that he had done nothing to verify those conclusions or the analysis upon which they are based. In other words, he relied solely upon the Faaborg report to agree with Mr. Faaborg's conclusions. Federal courts have consistently excluded such experts who do not perform an independent analysis, but rather just endorse the opinions of others. For example:

- *Mooring Capital Fund, LLC v. Knight*, 388 Fed. App'x 814 (10th Cir. 2010): An expert economist, who opined that a shopping center would have generated revenue equal to a 2004 appraisal created for a different lender, was excluded because he did not make "any systematic effort to evaluate the methods employed in the appraisal or to evaluate its applicability to the present circumstances." *Id.* at 819 (quotations omitted). The expert was also excluded from testifying that financial estimates, provided to him by his client, were reasonable, because the expert had

9

"neither undertaken any systematic investigation or independent analysis of their reasonableness," *Id.* at 820 (quotations omitted).

- *Est. of Cape v. U.S.*, 2013 WL 4522933 (E.D. Wis. 2013): The court excluded plaintiff's accounting expert who relied upon an independent CPA's report because he "did not review" or ask for the CPA's work papers, only looked at the CPA's report and exhibits, and "did not attempt to repeat or verify" the CPA's methodology. *Id.* at *4. The expert "set forth no procedure or method" that he used to review the CPA's report. *Id.* at *5. Rather, the expert's report stated that "nothing came to my attention that would cause me to conclude to the contrary regarding these amounts." *Id.* at *3. The court determined that reading the CPA's report, a few other exhibits, and testifying that there was "nothing wrong" with the report was not enough to meet the requirements of Rule 703. *Id*. at *5.

- *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002): The Seventh Circuit affirmed exclusion of the proffered hydrogeologist expert who parroted the conclusions of a hydrological model on which he had no expertise. *Id.* at 616. Permitting the testimony, the court explained, would be like allowing a surgeon to opine on x-ray technique in a medical malpractice case: "[I]n offering the … judgment that the radiologist should have discovered the cancer sooner [the surgeon] would be, at best, just parroting the opinion of an expert in radiology competent to testify that the defendant had x-rayed the decedent carelessly." *Id.* at 613.

- *In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000): A Ph.D. in nuclear science and health physics was offered as an expert in

10

exposure assessment and a "chairperson" for the plaintiffs' "team of experts." *Id.* at 713–14. The court found that the expert's methodology was flawed under *Daubert* because of his "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions." *Id.* at 716.

In sum, the Federal Rules of Evidence do not permit an expert to "simply adopt wholesale the ideas of another expert without any independent analysis." *Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*, 2017 WL 1545721, at *18 (N.D. Ill. 2017) (excluding expert economist who adopted another expert's work without any analysis of his own) (quoting *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *24 (N.D. Ill. 2017)).

Nor can Plaintiffs argue that Dr. Mallak did in fact perform his own analysis, even if that analysis is nowhere to be found in his three-page report. An expert "may be the world's leading student" of a particular subject, but if that expert "could or would not explain how his conclusions met the Rule's requirements, he [i]s not entitled to give expert testimony." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see also Paramount Media Group, Inc. v. Village of Bellwood*, 308 F.R.D. 162, 165 (N.D. Ill. 2105) (excluding testimony from an expert who was "just a spokesman for someone else" and who could not explain how the other expert "got from point A to point B. All he can do is recite [the other expert's] bottom line. That doesn't pass muster under the Fed. R. Evid. 702 or 703.").

There is simply no methodological basis for Dr. Mallak's agreement with Mr. Faaborg's conclusions. Dr. Mallak's testimony should be excluded.

## C. Dr. Mallak's testimony is entirely duplicative of Mr. Faaborg's, and his opinion will not assist the jury but instead may prove misleading.

Finally, this Court should exclude Dr. Mallak from testifying because his testimony would not assist the jury. The final prong of the Court's analysis looks whether the expected testimony will help the trier of fact. *Gopalratnam*, 877 F.3d at 779. And Rule 403 directs a court to exclude evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, Dr. Mallak's testimony is entirely duplicative of Mr. Faaborg's, and for that reason alone it should be excluded. *Sunstar, Inc. v. Alberto-Culver Co.*, 2004 WL 1899927, at *25 (N.D. Ill. 2004) ("Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative."); *Andersen v. City of Chicago*, 454 F. Supp. 3d 740, 746 (N.D. Ill. 2020) ("That [expert's] testimony would be cumulative is an additional basis for excluding it."). Dr. Mallak concluded that "[t]o a degree of medical certainty based on my training, extensive experience with injury analysis, and the forces applied, all of *the passengers would*, more likely than not, *have experienced physical, emotional, physiological effects or impacts*…." Ex. B at 3 (emphasis added). This is strikingly similar to Mr. Faaborg's conclusion: "[I]t is my professional opinion – given with a reasonable degree of certainty as a board certified Aerospace Physiologist – that *the passengers* of Ethiopian Airlines flight 302 *suffered extraordinary physical, physiological, and psychological injuries*…." Ex. C at 19 (emphasis added).

The jury would struggle to find much of a difference between these opinions, aside from the invocation of different legalistic phrases ("a degree of medical certainty" vs. "a reasonable degree of certainty"). Dr. Mallak would testify that the passengers suffered "physical, physiological, and psychological injuries," while Mr. Faaborg would testify that passengers

12

suffered "extraordinary physical, physiological, and psychological injuries." Dr. Mallak's testimony offers nothing helpful to the jury and therefore fails the test of Rule 403. *Sunstar*, 2004 WL 1899927, at *25; *Andersen*, 454 F. Supp. 3d at 746.

The admission of multiple experts' testimony on the same subject "also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar*, 2004 WL 1899927, at *25. Dr. Mallak tried to distinguish himself from Mr. Faaborg, testifying that "[h]e [Faaborg] starts at the physiologic end. I start at the injury end, and we meet in the middle." Ex. A at 139:18–20. But Dr. Mallak admitted that he did not "start" any work at all. *See, e.g.*, *id.* at 144:3–24. Rather, because he simply read and agreed with Mr. Faaborg, the only conclusions he offered were Mr. Faaborg's. As previously discussed, Mr. Mallak made no separate assessment of "injury" using his expertise as a medical examiner, and in any event, it does not matter "whether or not the two experts have different perspectives." *Kaepplinger v. Michelotti*, 2022 WL 267886, at *7 (N.D. Ill. 2022) (quoting *Hall v. Hall*, 2018 WL 1695365, at *5 (N.D. Ill. 2018)). It may be true "that, as a matter of trial strategy, it is more advantageous to have two experts from different fields interpret and assess a body of evidence." *Hall*, 2018 WL 1695365, at *5. "But that does not make their testimony any less needlessly cumulative or unfairly prejudicial." *Id*.

This Court should exclude Dr. Mallak's testimony from trial as needlessly cumulative and unfairly prejudicial.

## II. If Mr. Faaborg's opinions are excluded, Dr. Mallak's must be as well.

Concurrently with this motion, Boeing is also moving this Court to exclude the opinions of Troy Faaborg because his methodology does not meet the standards of Rule 702. Because Dr. Mallak's testimony relies entirely on Mr. Faaborg's opinion, to the extent that this Court excludes Mr. Faaborg it should also exclude Dr. Mallak. *See Gopalratnam*, 877 F.3d at 780;

13

*Fuesting v. Zimmer, Inc.*, 362 F. App'x 560, 564 (7th Cir. 2010) ("[B]ecause [Expert #2's] testimony on causation primarily relies on an excluded expert opinion … , the district court did not err in excluding it.").

## CONCLUSION

For the reasons stated above, Boeing respectfully asks this Court to enter an order excluding Plaintiffs' expert Dr. Craig Mallak from testifying at trial.

| | |
|---|---|
| DATED: February 8, 2023 | **THE BOEING COMPANY**<br><br>By: /s/ *Dan K. Webb*<br>*One of Its Attorneys*<br><br>Dan K. Webb<br>dwebb@winston.com<br>Christopher B. Essig<br>cessig@winston.com<br>Julia M. Johnson<br>jmjohnson@winston.com<br>Samuel M. Zuidema<br>szuidema@winston.com<br>**Winston & Strawn LLP**<br>35 West Wacker Drive<br>Chicago, Illinois 60601-9703<br>Phone: (312) 558-5600<br><br>Andrew E. Tauber<br>atauber@winston.com<br>**Winston & Strawn LLP**<br>1901 L St. NW<br>Washington, D.C. 20036<br>Phone: (202) 282-5000<br><br>Michael Scoville<br>MScoville@perkinscoie.com<br>Mack Shultz<br>MShultz@perkinscoie.com<br>Christopher M. Ledford<br>CLedford@perkinscoie.com<br>**PERKINS COIE LLP**<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101-3099<br>Phone: (206) 359-8000<br>Fax: (206) 359-9000<br><br>Jon R. Buck<br>JBuck@perkinscoie.com<br>**PERKINS COIE LLP**<br>110 N. Wacker Dr., Suite 3400<br>Chicago, Illinois 60606-1511<br>Phone: (312) 324-8400<br>Fax: (312) 324-9400 |

-1-

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

      s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600