# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Weisman |

**BOEING'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT PASSENGERS' ALLEGED PAIN AND SUFFERING BEFORE IMPACT**

Boeing moves under Federal Rules of Evidence 402 and 403 to exclude any evidence of or reference to pain and suffering that passengers may have experienced before Flight ET 302 crashed.[1]

**INTRODUCTION**

Plaintiffs assert claims under the Survival Act, 755 ILCS 5/27-6, and the Wrongful Death Act, 740 ILCS 180/2. These statutes provide that evidence of passengers' pre-impact pain and suffering may not be admitted to support a damages award in this case. If such evidence were admitted, it would be unfairly prejudicial and likely to confuse or mislead the jury. It should be excluded.

Boeing recognizes the tremendous tragedy suffered by the families of those lost on ET 302. Nevertheless, Illinois law is clear that for pain and suffering to be compensable under the Illinois Survival Act, it "must be caused by bodily injury." *Estate of Love v. Rassmussen*, 2018 WL 10613262, at *7 (C.D. Ill. 2018) (quoting *In re Aircrash Disaster Near Roselawn on Oct. 31, 1994*, 926 F. Supp. 736, 742 (N.D. Ill. 1996)). A plaintiff may thus "recover damages for conscious pain and suffering of the decedent from the time of his injuries to the time of death." *Murphy v. Martin Oil Co.*, 56 Ill. 2d 423, 426 (1974). But as Boeing has argued in its Rule 702 motions to exclude Plaintiffs' experts, Plaintiffs offer no admissible evidence that any passenger on ET 302 experienced any injury before impact. And even if the Court concluded that Plaintiffs' experts' evidence of injury is admissible, Plaintiffs have produced no evidence that any mental anguish allegedly suffered was caused by those injuries. Any reference to the passengers' alleged pre-impact pain and suffering is therefore speculative and cannot support Plaintiffs' survival claims.

Such evidence also cannot support Plaintiffs' claims under the Wrongful Death Act

---

[1] Boeing separately moves to exclude speculation about the passengers' pain and suffering upon impact.

1

because that law does not permit recovery for a decedent's pain and suffering; a plaintiff can recover only for her own "injuries *resulting from* [the decedent's] death." 740 ILCS 180/2(a) (emphasis added). "Death" as used here refers to the "fact that a person is dead" and "the manner of [the person's] death." *Hammond v. Sys. Transp., Inc.*, 942 F. Supp. 2d 867, 874–75 (C.D. Ill. 2013). Thus, while evidence of the "grief, sorrow, and mental suffering" Plaintiffs have understandably experienced as a result of their decedents' deaths and the manner of those deaths is relevant to damages under the Wrongful Death Act, Plaintiffs may not recover either for their decedents' pain and suffering or for their own grief resulting from what they believe their decedents might have suffered before their deaths. Plaintiffs thus may introduce, for example, evidence of the aircraft's speed and the angle at which it hit the ground; photographs of the crash scene; and testimony about the ordeal of collecting, identifying, repatriating, and burying remains; the experience of learning of a loved one's death; and the many ways in which it has affected their lives. They may not introduce testimony from fact or expert witnesses speculating about, for example, the passengers' fear of impending death, their concern for loved ones, or whether they might have felt pain; under the Wrongful Death Act, such evidence must be excluded.

Even if evidence of passengers' alleged pre-impact pain and suffering were legally permitted, the evidence still should be excluded because the risk of unfair prejudice far outweighs its probative value. Jurors would inevitably sympathize with testimony about the passengers' alleged fear of impending death and imagine themselves in the passengers' shoes. And as a result, the jury might be moved to award damages out of (understandable) feelings of pity and sorrow, even if the legal requirements for such damages have not been met. They might also award "compensatory" damages so large that they are effectively punitive damages, even though such damages are unavailable under the parties' stipulation and as a matter of law. Evidence of

passengers' pain and suffering is also likely to confuse the jury about what harm is compensable under each statute.

For each of these reasons, evidence of passengers' alleged pain and suffering before ET 302 made impact should be excluded.

## BACKGROUND

Boeing expects that Plaintiffs will attempt—through their experts and otherwise—to introduce evidence of the passengers' alleged pain and suffering before the plane's impact with the ground. But much of this evidence is speculative, and all is legally irrelevant to damages here.

Plaintiffs' expert Troy Faaborg, for example, speculates throughout his report that the "passengers and crew surely knew of their impending and inevitable death in the final seconds of the flight" and experienced "a strong emotional response of fear." Ex. A (Faaborg Rep.) at 13. Although Faaborg admits that he cannot identify at what point the passengers would have experienced this fear (Ex. B (Faaborg Dep.) at 264:10–13), he claims that as a result of it, the passengers would have felt "an intense and painful sense of anticipated loss of loved ones" and "sadness and frustration of an incomplete life and early demise." Ex. A at 12. And he surmises that what the passengers experienced was "extraordinarily terrifying." Ex. B at 401:4.

In the same vein, several of Plaintiffs' grief experts testified that surviving family members have suffered from imagining what the passengers must have experienced in the seconds before impact. Ex. C (Hidalgo Rep. of Debbie Pegram) at 14, 17, 24; Ex. D (Hidalgo Rep. of Mark Pegram) at 15; Ex. E (Doka Rep.) at 9; Ex. F (Doka Dep.) at 138:5–24; Ex. G (Lien Rep.) at 2. Jose Hidalgo, for example, states that Debbie Pegram "is tortured by the thought of how much he suffered and how frightened he must have been before the final impact"; that she thinks about "what Sam must have felt" and "about what he knew what was happening"; and that she "visualizes the horror of what Sam must have gone through in the last moments of his life." Ex. C at 14, 17,

3

24. Hidalgo also states that Mark Pegram "is haunted by the last moments of Sam's life." Ex. D at 8. Kenneth Doka testified that the Noormohameds, as is "common among all the families interviewed, wondered what their father's final moments would have been like as the plane crashed." Ex. E at 9; Ex. F at 138:5–24. Similarly, Christine Lien reported that a "recurring thought" for the Aadlands "is how Karoline's last minutes were," asking themselves whether "she underst[oo]d that the plane was going to crash and everybody on board would die" and whether "she experience[d] terror and pain" in the flight's final "minutes." Ex. G at 2.

The decedents' family members have also given testimony about the emotional pain and suffering they believe their decedents suffered. For example, one testified that she had "play[ed]" in her mind "the moment of what it would have been like to be on the flight and then plummeting to the ground." Ex. H (Aleema Noormohamed Dep.) at 101:8–10. It is likely that many other fact witnesses will say similar things on direct examination, if the examiner's questions go unchecked.

Plaintiffs' other experts suggest that the passengers also suffered physical pain during the flight. Jenkyn has testified that "force from the seatbelt acting on the hips and pelvis" was "more than sufficient to cause pain in each and every passenger." Ex. I (Jenkyn Rep.) at 28. Mallak said that he has had training to diagnose "pain and suffering" and agreed with Faaborg that the passengers experienced "fear and panic." Ex. J (Mallak Dep.) at 80:23–81:3; 222:16–224:6. No experts linked any mental anguish allegedly suffered by the passengers to a physical injury.

**LEGAL STANDARD**

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *cf.* Fed. R. Evid. 702(a). "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Moreover, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *cf.* Fed. R. Evid. 703. Federal law governs the admissibility of evidence, but "state law affects relevancy determinations." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005).

## ARGUMENT

**I. Evidence of passengers' alleged pain and suffering before impact cannot be introduced to support damages for Plaintiffs' Survival Act claims.**

The Illinois Survival Act allows a plaintiff to "recover damages for conscious pain and suffering of the decedent" but only "*from the time of his injuries to the time of death*." *Murphy v. Martin Oil Co.*, 56 Ill. 2d 423, 426 (1974) (emphasis added); *accord Readel v. Vital Signs, Inc.*, 2002 WL 1359417, at *3 (N.D. Ill. 2002); *Eisenmann v. Cantor Bros., Inc.*, 567 F. Supp. 1347, 1351 (N.D. Ill. 1983). Reflecting this rule, the Illinois Pattern Jury Instruction on Survival Act damages directs the jury to determine damages for "the period between the time of the decedent's injuries and the time of decedent's death." IPI Civil No. 31.10 (2021).

Damages under the Survival Act are not only temporally limited to recovery for "conscious pain and suffering" experienced "during the interval between a decedent's injury and his death" (*Eisenmann*, 567 F. Supp. at 1351), but also limited to pain and suffering "*caused* by bodily injury." *Rassmussen*, 2018 WL 10613262, at *7 (emphasis added). As a result, "pre-impact fright and terror has been held to be non-actionable" under the Illinois Survival Act. *Id.* (quoting *In re Aircrash Disaster Near Roselawn, Ind. On Oct. 31, 1994*, 926 F. Supp. 736, 742 (N.D. Ill. 1996)); *see also In re Air Crash Disaster Near Chicago, Ill. On May 25, 1979*, 507 F. Supp. 21, 23 (N.D. Ill. 1980) ("plaintiff cannot recover for the fright and terror her [decedent] may have experienced in anticipation of physical injury")[2]; *Tom v. S.B. Inc.*, 2013 WL 12097662, at *2 (D.N.M. 2013)

---

[2] For a discussion of *In re Air Crash Disaster Near Chicago*, see Boeing's Motion *in Limine* to Exclude Plaintiffs' Definitions of "Injury" Which Do Not Conform to the Legal Standard Provided by Illinois Law at 7 n.3.

5

(pre-injury emotional distress is not recoverable in Illinois).[3]

Thus, before a plaintiff can recover damages for a decedent's conscious pain and suffering under the Survival Act, they must prove (1) that the decedent suffered an injury *before death*, and (2) that the decedent's pain and suffering was *caused by that injury*. Plaintiffs cannot prove either.

### A. Reference to alleged pre-impact pain and suffering cannot support damages in Plaintiffs' survival actions because Plaintiffs have no admissible evidence that the passengers suffered a pre-impact injury.

The only evidence regarding passengers sustaining injuries before the plane crashed comes from Plaintiffs' experts Thomas Jenkyn, Troy Faaborg, and Craig Mallak. As discussed in Boeing's separate motions, their testimony regarding pre-impact injuries is speculative and unreliable and their testimony about what constitutes an "injury" is unfairly prejudicial.[4] Jenkyn claims that all passengers suffered contusion injuries from their seatbelts before the crash and that they might also have been injured by flying objects, flailing limbs, or muscle strain. Ex. I at 12, 27, 35; Ex. K (Jenkyn Dep.) at 181:10–12, 260:24–262:6. Faaborg speculates that the passengers suffered a laundry list of "injuries" before impact, including fear and panic, headaches, dizziness and vertigo, nausea, vomiting, hyperventilation, capillary rupture, petechiae, circulatory effects, cardiomyopathy, cardiac dysrhythmia, cardiac arrest, visual degradation, subconjunctival hemorrhages, facial swelling, loss of bladder or bowel control, and the sensation that their eyes

---

[3] Jurisdictions with similar survival statutes follow the same rule. *See, e.g.*, *In re Crash of Aircraft N93PC*, 2020 WL 2759927, at *3–4 (D. Alaska 2020) ("emotional distress experienced prior to an injury is [not] compensable" because "Alaska's survival statute measures damages 'for the period between the time of injury and the time of death'"); *Stecyk v. Bell Helicopter Textron, Inc.*, 1998 WL 744087, at *8 (E.D. Pa. 1998) ("Because Pennsylvania and Delaware courts measure damages for the pain and suffering of a decedent under their respective survival statutes from the time of injury to the time of death, plaintiffs are barred under the statutes from presenting evidence of or recovering damages for decedents' pre-impact fright.").

[4] *See* ECF Nos. 1532, 1534, 1542; Boeing's Motion *in Limine* to Exclude Plaintiffs' Definitions of "Injury" Which Do Not Conform to the Legal Standard Provided by Illinois Law.

were "popping out." Ex. A at 18–19; Ex. B at 377:11–399:22. Mallak merely repeats the alleged injuries described by Jenkyn and Faaborg. Ex. L (Mallak Rep.) at 3; Ex. J at 222:16–224:6.

If the Court grants Boeing's motions to exclude these expert opinions as unreliable, Plaintiffs have no evidence that the passengers sustained any injuries before the plane made impact, let alone evidence of injuries that caused the passengers to experience conscious pain and suffering before death. Without such evidence, Plaintiffs cannot recover damages under the Survival Act. *See Rassmussen*, 2018 WL 10613262, at *7.

Plaintiffs will try to avoid the Survival Act's injury requirement by invoking the "impact rule," which holds that a plaintiff asserting a claim for negligent infliction of emotional distress need only prove "physical injury or impact" before damages for mental anguish are available. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 31 (2016) (emphasis added); *see* ECF 1541 (Mot. to Exclude Wood) at 2 (Plaintiffs "intend to present expert testimony that will establish that the ET 302 passengers very likely experienced physical impact/injury as the airplane nose-dived"). Plaintiffs argue that under this rule, they do not need to show an injury, but only that passengers had contact with, or "impacted," some part of the plane, objects, or other passengers. *See* ECF 1565 at 8–9 (Plaintiffs citing several inapplicable cases involving claims for negligent infliction of emotional distress to argue that *either* impact *or* injury is required but not both). But the "impact rule" applies only to claims for the negligent infliction of emotional distress. *See Garton v. Pfeifer*, 2019 IL App (1st) 180872, ¶ 43 (citing *Cochran v. Securitas Sec. Servs. USA, Inc.*, 2017 IL 121200, ¶ 24). The "impact rule" offers no exception to the Survival Act, which allows recovery only for pain and suffering "caused by bodily injury." *Rassmussen*, 2018 WL 10613262, at *7. Plaintiffs asserted no freestanding claims of negligent infliction of emotional distress, so the "impact rule" does not apply in this case. *Schweihs*, 2016 IL 120041, ¶¶ 67–69 (Garman, J.

7

concurring) (drawing a "clear distinction between a claim of [negligent infliction of emotional distress] and a claim of liability for negligence or other personal tort in which the act or omission of the defendant caused emotional distress for which damages may be recovered").[5] Plaintiffs thus must prove that the passengers' alleged pain and suffering was caused by a pre-death bodily injury.

Because Plaintiffs have no admissible evidence that passengers were injured before ET 302 made impact, the passengers' alleged pain and suffering before the crash cannot support Plaintiffs' Survival Act claims and all evidence of or reference to it should be barred as irrelevant under Rule 402.

**B.  Even if passengers were injured before the plane made impact, there is no evidence that those injuries caused the passengers' alleged emotional distress.**

Even if this Court allowed Plaintiffs' experts to opine on bodily injuries passengers allegedly sustained before ET 302 crashed, evidence of any alleged mental anguish would still be irrelevant to the Survival Act claims because Plaintiffs have no evidence that the alleged injuries *caused* any such distress. Once again, to be actionable under Illinois law, "'mental anguish must be caused by bodily injury.'" *Rassmussen*, 2018 WL 10613262, at *7; *see also City of Chicago v. McLean*, 133 Ill. 148, 153 (1890) ("Any mental anguish which may not have been connected with the bodily injury, but caused by some conception arising from a different source, could not properly have been taken into consideration by the jury."); IPI Civil No. 30.05 (permitting recovery for only "[t]he pain and suffering experienced … as a result of the injuries").[6] Here, there is no

---

[5]  The "zone of danger" rule, which allows a bystander to recover for emotional distress absent injury or impact, also applies only to claims for negligent infliction of emotional distress and thus does not apply here. *Clark v. Children's Mem'l Hosp.*, 2011 IL 108656, ¶ 105–13.

[6]  Contrary to Plaintiffs' argument (*see* ECF 1565 at 9–11), the "impact rule" also incorporates a causal element; a plaintiff must still prove that "the distress is directly and causally related to a physical injury." *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002); *accord, e.g.*, *Novak v. Levenfeld Pearlstein*, 2014 WL 4555581, at *9 (N.D. Ill. 2014); *Carlinville Nat'l Bank v. Rhoads*, 63 Ill. App. 3d 502, 503 (4th Dist. 1978).

evidence that any passenger suffered mental anguish *caused* by an injury sustained before ET 302 made impact. Without such causal evidence, evidence of the passengers' alleged distress cannot support Survival Act damages.

Neither Faaborg (Plaintiffs' physiology expert), nor Jenkyn (Plaintiffs' biomechanics expert), nor Mallak (Plaintiffs' pathology expert) link the passengers' alleged mental distress to their alleged pre-crash injuries. Faaborg claims that in the moments before the crash, the passengers, recognizing their impending death, would have felt a series of emotional responses, such as "an intense and painful sense of anticipated loss of loved ones" and "sadness and frustration of an incomplete life." Ex. A at 14; *see also id.* at 11–13; Ex. B at 401:4. But neither he nor any other expert explains how such alleged mental distress was caused by any alleged pre-crash injuries. Although Jenkyn and Mallak opine (unreliably) that the passengers sustained "injuries" before the plane crashed, neither explains—and there is no evidence showing—how the alleged contusions and muscle strain, or any other alleged pre-crash injury, caused the passengers to experience an "intense and painful sense of anticipated loss of loved ones" or "sadness and frustration of an incomplete life." Ex. A at 14. Indeed, Faaborg admitted that he could not identify "at what point within the [final] 21 seconds that people would have known of their impending and inevitable death." Ex. B at 264:10–13. Because neither he nor anybody else knows when the passengers' alleged anguish would have begun, *i.e.*, whether the alleged anguish came before or after any alleged bodily injury, Faaborg's testimony must be excluded; he cannot testify that a bodily injury preceded, much less caused, the passengers' alleged mental distress. And any anxiety the passengers might have felt in the moments before the crash that was attributable to their fear of impending death or concern for loved ones would not be admissible, either, as Illinois law is clear that pre-injury fright and terror are not recoverable. *In re Aircrash Disaster Near Roselawn*,

9

926 F. Supp. at 742.

Thus, even if Plaintiffs' experts were allowed to opine about pre-impact injuries, Plaintiffs have no evidence of a causal connection between such injuries and any alleged psychological distress. Evidence of the passengers' alleged distress is thus irrelevant under the Survival Act.

**II.     Evidence of passengers' alleged pain and suffering before impact cannot support damages for Plaintiffs' Wrongful Death Act claims.**

A survivor of a decedent may not recover for the decedent's conscious pain and suffering under the Wrongful Death Act. As enacted by the Illinois legislature, the Act allows plaintiffs to recover only for their own "injuries *resulting from [the decedent's] death*." 740 ILCS 180/2 (emphasis added). The statute's import is clear: to recover, a plaintiff's "grief, sorrow, and mental suffering" must "arise as a consequence"[7] of "[t]he ending of [the decedent's] life."[8] "Death" may include not only the "fact of dying" but also "the act" or "process" of dying.[9] Therefore, based on the ordinary meaning of the Wrongful Death Act's unambiguous language, the intent of the Illinois legislature was to permit a plaintiff to recover only for the grief and sorrow caused by the fact of the decedent's death and the manner in which he or she died.

Illinois courts agree. The *Hammond* court, for example, found that "the intent of the legislature … was to compensate for the [plaintiffs'] emotional consequences from the end of decedent's life, including the process or manner of death." *Hammond*, 942 F. Supp. 2d at 871). In *Hammond*, the defendant (like Boeing here) stipulated to liability for a vehicle accident. The question was whether evidence of the defendant's negligent conduct was relevant to grief and sorrow damages under the Wrongful Death Act. *See id.* at 870–71. The court held that evidence of

---

[7]     MERRIAM-WEBSTER DICTIONARY, (defining "result"); https:// www. merriam-webster. com/dictionary/result.

[8]     BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "death").

[9]     WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 581 (1986) (defining "death").

"the circumstances and manner of the decedents' deaths" is relevant, but that "evidence of [a defendant's] negligent acts or omissions leading up to the accident are irrelevant." *Id.* at 871, 876. That is because grief and sorrow resulting from a defendant's conduct is *not* grief and sorrow "resulting from [the decedent's] death." 740 ILCS 180/2 (emphasis added).

Under *Hammond*, Plaintiffs may offer evidence of how the fact and manner of their loved ones' deaths caused them grief (so long as it is not excluded by another rule of evidence). Plaintiffs can testify, for example, that the decedents "died suddenly in a serious … accident." *Hammond*, 942 F. Supp. 2d at 876. Indeed, Boeing agreed that the jury would be provided background information about the 737 MAX 8, details about the timing and location of the accident, and an explanation that "[a]ll 157 passengers and crew … were killed and the aircraft was destroyed." ECF 1217-1 at 2, 5. Plaintiffs can also introduce photographs of the crash scene, which vividly depict the circumstances of death. They can have experts testify to the speed and angle at which the aircraft hit the ground. And Boeing will not object to Plaintiffs testifying about the ordeal of waiting to receive their loved ones' remains so that they could hold a funeral. All of this helps explain the understandable grief and sorrow arising from the fact and manner of a decedent's death.

Under the Wrongful Death Act, however, evidence of what the *passengers* might have experienced in the minutes before their deaths is not relevant because such evidence is not probative of the grief and sorrow that Plaintiffs suffered as a *result* of the decedents' *deaths*. Plaintiffs of course may feel immense sorrow at even the thought of a family member fearing impending death, but an emotional response stemming from thoughts about what the decedents might have experienced before death does not "arise from the death" itself or the manner in which the death occurred "and [is] thus not compensable." *Hammond*, 942 F. Supp. 2d at 876. As another court put it when analyzing a similar wrongful death statute, "[i]nsofar as the manner of the

11

decedent's death increased [*Plaintiffs'*] mental anguish, it is relevant to [their] damages [for the] wrongful death claim[s]"—but evidence concerning the decedent's "premortem pain and suffering … is irrelevant." *Girouard v. Skyline Steel, Inc.*, 158 P.3d 255, 262 (Ariz. 2007) (emphasis added). In short, "the suffering of the decedent" before death does not "reflect[] [Plaintiffs'] mental anguish from the manner of death" and is not a proper basis upon which to base Wrongful Death Act damages. *Id.* These are statutory claims, and the statutory language—allowing recovery of only those damages that "result[] from [the decedent's] death" (740 ILCS 180/2)—leaves no doubt that, under Illinois law, Plaintiffs may not recover for distress they feel at the thought of their decedents experiencing mental anguish before death.

Importantly, Plaintiffs have presented no admissible evidence that the passengers in fact experienced emotional distress in the final moments of the flight. Some likely did, while others perhaps did not. It is impossible to know because there simply is no admissible evidence one way or the other. The only purported evidence of such distress comes from Plaintiffs' physiology expert, Faaborg, who opines that passengers would have experienced anguish upon apprehending their impending death. But Faaborg's opinion is unreliable for the reasons explained in Boeing's motion to exclude his opinion under Rule 702. In addition, Faaborg's opinion does not support Plaintiffs' claim for damages under the Wrongful Death Act because he admits that he cannot identify "at what point" the passengers "would have known of their impending and inevitable death." Ex. B at 264:10–13. And there is no evidence identifying which passengers in particular might have experienced such distress. That someone could have experienced such distress is an insufficient basis for damages. *See Ellig v. Delnor Comty. Hosp.*, 237 Ill. App. 3d 396, 402–03 (2nd Dist. 1992) (plaintiffs could not recover for conscious pain and suffering where they "offered no testimony beyond mere speculation that … *this* infant actually experienced such pain," even

12

though no one disputed that "an infant is capable of experiencing pain prior to birth").

Thus, any testimony that family members experienced "grief, sorrow, and mental suffering" because their decedents might have felt emotional distress in the flight's final moments cannot support wrongful death damages. *Hammond* specifically addressed whether similar speculative testimony was relevant in a wrongful death case and explained that because "[c]ompensable grief … does not include" grief arising from a decedent's "imagined pain and suffering unsupported by the evidence," a plaintiff cannot recover damages under the Wrongful Death Act for "grief over the uncertainty of whether the decedents survived even momentarily" or "briefly suffered pain." *Hammond v. Sys. Transp., Inc.*, 2013 WL 5095609, at *2 (C.D. Ill. 2013).

For these reasons, evidence of the passengers' alleged emotional distress is legally irrelevant to the wrongful death claims in this case.

***

Plaintiffs have "offered no [evidence] beyond mere speculation that … the passengers actually experienced … pain" during the flight (*Ellig*, 237 Ill. App. 3d at 402–03), and no evidence beyond speculation that any pain and suffering the passengers might have experienced was caused by an injury—both of which must be proved to recover under the Survival Act. And because the Wrongful Death Act bars recovery for a plaintiff's grief and sorrow unless it "result[s] from [the decedent's] death" (740 ILCS 180/2), evidence of what the passengers might have experienced before death is, as a matter of law, irrelevant to Plaintiffs' wrongful death claims. Thus, evidence of the passengers' alleged pain and suffering before impact is inadmissible under Rule 402 and cannot support damages for either the Survival Act or the Wrongful Death Act claims in this case.

### III. Even if relevant, evidence of pain and suffering allegedly experienced before the crash is unduly prejudicial and would confuse and mislead the jury.

Even if evidence of passengers' emotional distress were relevant, the Court should exclude

it under Rule 403 as unfairly prejudicial and likely to confuse or mislead the jury.

Such evidence and argument should be excluded because it would carry "an undue tendency to suggest decision on an improper basis," in particular, "an emotional one." *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013). The thought of a loved one experiencing psychological distress in the moments before their death would likely trigger an emotional reaction in the jurors. That reaction would unfairly prejudice Boeing by inducing the jury to (knowingly or not) award more damages than the evidence and law allow. Jurors may sympathize with the passengers' alleged fear of impending death, imagine themselves on the plane, and then, animated by emotion, quite possibly award damages greater than those for which Plaintiffs have proven the legal prerequisites. For example, if the Court determines that this evidence is relevant to Survival Act damages but not Wrongful Death Act damages, the evidence may still infiltrate the jury's wrongful death damages award, whether or not a limiting instruction is given. Or if the Court holds that the evidence is relevant to the Survival Act because Plaintiffs might be able to prove an injury, but then Plaintiffs fail to do so, the evidence's emotional impact may still improperly influence the jury's wrongful death verdict. And, while punitive damages are not available under Illinois law (and are expressly foreclosed by the parties' stipulation), there is a significant risk that the jury might be so moved by the possibility that passengers experienced emotional distress in their final moments that it could award damages so large as to be punitive damages. ECF 1217-1 at 3, 4–5; *see also* ECF 1325 at 1, 4 (Court declaring that "punitive damages are unavailable" in this case).

Courts routinely exclude such evidence, even where it is relevant, due to its high potential for unfair prejudice. In *Sutton v. Washington Metropolitan Area Transit Authority*, 2008 WL 8822521 (D.D.C. 2008), for example, the plaintiff "wishe[d] to introduce a 911 emergency communication recording of a lay witness's observations of the decedent immediately following

14

the accident." *Id.* at *1. Despite the tape's relevance to the decedent's pain and suffering, the court excluded it from evidence because it was "largely the very emotional reactions of the eyewitness to the accident" and "could unfairly prejudice defendant." *Id.* In this case, the probative value, if any, of the speculative testimony Plaintiffs intend to introduce is far less than the eyewitness account in *Sutton*, yet the prejudicial effect is at least as great. *See also Van Patten v. Washington Cnty.*, 2017 WL 2616888, at *3 (D. Or. 2017) (excluding "prejudicial testimony regarding [the decedent's] last moments, though potentially relevant" because, "based on the record before the court," plaintiff failed to provide evidence of the decedent's conscious pain and suffering).

Evidence of the passengers' alleged emotional distress in the final moments of the flight would also tend to confuse the jury. Plaintiffs assert claims under both the Survival Act and the Wrongful Death Act. To recover damages under the Survival Act, Plaintiffs must prove that the passengers sustained bodily injuries before the plane made impact and, in the interval between their injuries and death, experienced conscious pain and suffering caused by those injuries. *See supra* at 4–9. As explained above, they cannot carry that burden. *Id*. But if allowed to present evidence of the passengers' alleged emotional distress, the jury could become confused into improperly "'backdoor[ing]' a conscious pain and suffering claim" through the Wrongful Death Act. *Hammond*, 2013 WL 5095609, at *2.

For these reasons, even if relevant, evidence of the passengers' alleged emotional distress before the crash should be excluded under Rule 403.

## CONCLUSION

The Court should exclude any evidence of or reference to the pain and suffering allegedly experienced by the passengers before Flight ET 302 crashed.

DATED: February 27, 2023 **THE BOEING COMPANY**

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Andrew E. Tauber
atauber@winston.com
**Winston & Strawn LLP**
1901 L St. NW
Washington, D.C. 20036
Phone: (202) 282-5000

Michael Scoville
MScoville@perkinscoie.com
Christopher M. Ledford
CLedford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-900

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

<u>/s/ *Dan K. Webb*</u>
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600