IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH<br><br>This Document Relates to:<br><br>WEI XIONG, Individually and as on behalf of the Estate of ZHENZHEN HUANG, Deceased, as Father of ZIRUI XIONG, and with Power of Attorney for JIAJUN HUANG and JINGJING Huang<br><br>Case No. 1:20-cv-04304 | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S REPLY TO EXCLUDE OPINIONS OF
PLAINTIFFS' EXPERT JON K. REID**

**REPLY**

Boeing's motion focused narrowly on exclusion of Dr. Reid's purported diagnosis of Wei Xiong and Zirui Xiong as having Prolonged Grief Disorder and Major Depressive Disorder—official diagnoses that were not in his expert report and for which he did not follow his normal diagnostic methodology. Plaintiffs' brief is almost entirely non-responsive to that narrow issue. It barely mentions or defends the diagnosis of a Diagnostic and Statistical Manual of Mental Disorders ("DSM") disorder and instead argues as if Boeing were challenging Dr. Reid's credentials, how the report was written, or other counseling issues. But on the issue Boeing raised, there is no dispute about the Rule 702 problem: Dr. Reid, by his own admission, did not use the same methodology he and other practitioners would normally use to make a *diagnosis*. The Court should exclude Dr. Reid from testifying that he has diagnosed Wei and Zirui Xiong with any condition, including Prolonged Grief Disorder.

**ARGUMENT**

**I. Plaintiffs respond to arguments that Boeing either did not make or are inapplicable under the facts of this case.**

Most of Plaintiffs' response is beside the point. For example, they argue that "Boeing complains that [Reid] did not follow his customary counseling practice in preparing his report." ECF 1713 (Pltfs' Reid Resp.) at 5. But Boeing is not challenging Dr. Reid's *report* (which is inadmissible in any event)—only his purported *diagnoses* of Wei and Zirui Xiong—diagnoses which were not in his Rule 26 report and that were disclosed for the first time during his deposition. *See* ECF 1703 (Boeing's Reid Mot.) at 2. They also argue that "it is 'common practice' for the new counselor to either agree with those diagnoses or make an assessment that a 'diagnosis is no longer evident, however, they meet the criteria for this other diagnosis' at the first visit." ECF 1713 at 5 (emphasis in original). But no such thing occurred here. Neither Wei nor Zirui Xiong was ever

diagnosed by a previous counselor with any condition under the DSM, and so Dr. Reid never "agreed" with a prior diagnosis of their conditions. In the portion of his deposition Plaintiffs cite for his agreeing with a prior diagnosis, Dr. Reid was not discussing the Plaintiffs; he was discussing an occasion several years ago when he agreed with a diagnosis that a woman had paranoid schizophrenia. *See* ECF 1703-2 (Reid Dep. Tr.) at 32:25–34:9.

Similarly, Plaintiffs argue that "Boeing distorts Dr. Reid's honest acknowledgement of working within a litigation setting to suggest to the Court that Dr. Reid formed an incomplete opinion, with a subjective interest in the outcome." ECF 1713 at 6. But Boeing has never argued that Dr. Reid has some sort of subjective interest in the outcome of this case. Rather, Dr. Reid's frank acknowledgement that he was influenced by what Plaintiffs' counsel wanted him to say shows that the desire to comply may have caused him to deviate from his normal clinical methodology in his purported diagnoses of Wei and Zirui Xiong. He was drafting a litigation report, not a diagnosis and treatment plan, so he was not "being as careful as he would be" with his non-litigation clients. *See, e.g.*, *Sheehan v. Daily Racing Form Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

Finally, Plaintiffs argue that "Boeing complains that Dr. Reid conducted one interview of Wei and Zirui, not two, when he came to an opinion about their grief status." ECF 1713 at 5. Again, Boeing is not challenging Dr. Reid's "opinions about their grief status," but rather his late-disclosed *medical diagnoses* of Wei and Zirui Xiong. These are diagnoses that normally would be grounded in specific criteria from the DSM. *See* ECF 1703-2 at 36:7–11 (Q. "Right. And so to make that kind of diagnosis, you have to establish that they meet certain criteria—I think is what you said?" A. "Yeah, hm-hmm, hm-hmm."). It would also include, according to Dr. Reid and in his "typical practice," an initial assessment and *tentative* diagnosis followed by a second session

to confirm that diagnosis. *See* ECF 1703-2 at 39:22–40:5. Thus, contrary to Plaintiffs' assertion in their response, ECF 1713 at 5, Dr. Reid—by his own admission—*did* depart from his standard methodology in diagnosing Wei and Zirui Xiong with conditions under the DSM. And Plaintiffs have failed to explain why this deviation from Dr. Reid's normal practice does not demonstrate that his diagnoses lack the reliability that the methodology prong of the Rule 702 analysis requires.

II.  **Plaintiffs fail to meaningfully address cases excluding experts who deviate from their non-litigation methodology.**

Plaintiffs' criticism of the case law Boeing cites is misplaced. Plaintiffs argue, for example, that the court in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 2010 WL 2607241 (N.D. Ill. 2010), merely "observed the plaintiff had not identified any evidence that the methodology of looking only to publicly-available information to determine the reasonableness of a company's public guidance is generally accepted and employed by experts in the fields of sales forecasting." ECF 1713 at 6. That is not the critical section of *Makor*. The section on which Boeing relies involves an expert's failure to follow his own methodology.[1] The court described multiple ways in which the expert (Brody) employed a methodology in that case that differed from the one he used normally, outside the litigation context. *Makor*, 2010 WL 2607241 at *7. For example, Brody taught his class that they should rely on a "cross-functional team approach," which he did not use in the case, and that they should not just look at publicly available market data when putting together a sale forecast, as he did in the case. *Id*. In fact, "Dr. Brody did not identify a single instance where he followed the methodology he applied in this case, even though he claims that the methodology he employed here is based on his experience." *Id*. For these and other reasons, the court concluded that "he certainly has not 'employed in the courtroom the same level of

---

[1] It is entitled "Dr. Brody Did Not Follow His Own Methodology."

intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Dr. Reid likewise has failed to show "the same level of intellectual rigor" in his purported diagnoses of Wei and Zirui Xiong as he would have exhibited in a clinical, non-litigation setting. Like the expert in *Makor,* Dr. Reid failed to identify "a single instance where he followed the methodology he applied in this case," namely diagnosing two individuals with disorders under the DSM after a single, two-hour Zoom meeting, and without even a second interview to confirm what was, at best, a tentative diagnosis. *Id*. A medical diagnosis that fails to follow the expert's own standard methodology is not reliable under Federal Rule of Evidence 702.

## CONCLUSION

For the reasons stated above and in its motion (ECF 1703), Boeing respectfully asks this Court to enter an order excluding Plaintiffs' expert Jon K. Reid from testifying that he has diagnosed Wei Xiong or Zirui Xiong with any condition, including but not limited to Prolonged Grief Disorder and Major Depressive Order.

Dated: May 26, 2023							**THE BOEING COMPANY**

By:*/s/ Christopher M. Ledford*
*One of Its Attorneys*

Christopher M. Ledford
CLedford@perkinscoie.com
Michael Scoville
MScoville@perkinscoie.com
Mack Shultz
MShultz@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**PERKINS COIE LLP**
110 N. Wacker Dr., Suite 3400
Chicago, Illinois 60606-1511
Phone: (312) 324-8400
Fax: (312) 324-9400

Dan K. Webb
dwebb@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Andrew E. Tauber
atauber@winston.com
**WINSTON & STRAWN LLP**
1091 L St. NW
Washington, D.C. 20036
Phone: (202) 282-5000

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Christopher M. Ledford*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000

92556330.4