**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES<br>FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE PERTAINING TO LIABILITY AND PUNITIVE DAMAGES**

Boeing files this supplemental brief in support of its previously filed motion *in limine* to exclude, under Federal Rules of Evidence 402, 403, 702, and 703, any evidence and discussion of Boeing's conduct before or after the crash of Flight ET 302. *See* ECF 1596.

## INTRODUCTION

In Boeing's previously filed motion *in limine* to exclude evidence pertaining to liability and punitive damages, Boeing argued that evidence of Boeing's alleged conduct, whether before or after the crash of ET 302, is inadmissible because it relates to Boeing's liability for the crash. Given that Boeing has stipulated to liability in this case, any such evidence is not relevant to the sole question at issue, which is the proper amount of compensatory damages to be awarded. ECF 1596. Even if it were relevant, such evidence should be excluded because it would be unfairly prejudicial, confusing for the jury, and wasteful of the Court's time and resources. *Id.*

In support of its motion, which was filed before the anticipated March trials, Boeing identified examples of liability-related testimony from several case-specific witnesses and experts that Boeing argued should be excluded. ECF at 4–6.

The trials scheduled for June involve different witnesses but similar testimony regarding Boeing's alleged conduct that relates to liability and/or punitive damages. To assist the Court in deciding Boeing's motion in the context of the upcoming trials, Boeing supplements the background section of its previously filed motion to identify testimony in the June cases exemplifying the type of evidence that should be excluded for the reasons stated in Boeing's motion.

## SUPPLEMENTAL BACKGROUND

The decedents' family members and other witnesses have testified about Boeing's alleged conduct in their depositions.

Wei Xiong, whose wife died in the crash, stated that his grief was increased by his belief

that after the first MAX crash, in Indonesia, Boeing should have taken steps related to better safety protocols or more pilot training that he thinks might have prevented the crash of ET 302. *See* Ex. A (Xiong Dep.) at 79:9–15. Xiong also pointed to his belief that Boeing tried to "unground the plane" without "thinking about [how] that might … threaten[] … people's lives" because Boeing was "just trying to make a profit." *Id.* at 81:3–12. And he noted that at congressional hearings, "the president of … Boeing didn't even look at all the victim families when he passed by them." *Id.* at 13–16.

Enrica Porcari (Zhenzhen Huang's supervisor) also testified that the crash was unacceptably contrary to one's expectations of a leading airplane manufacturer. Ex. B (Porcari Rough Dep.) at 27:20–28:15.

Steven Felch (Brittney Riffel's father) stated that in his view the ET 302 crash was not an accident because he believed it could have been prevented. Ex. C (Felch Dep.) at 17:14–16. And Martin Riffel (Bennett and Melvin's father) referenced a group focused on the deferred prosecution agreement, which sought additional criminal charges because they'd "like to see justice in this case." Ex. D (M. Riffel Dep.) at 67:8–15.

Similarly, several of Plaintiffs' grief experts for the June trial cases testified about Boeing's alleged conduct. Ex. E (Velasquez Rep. on Michaela Sonnleitner) at 7, 12–13; Ex. F (Velasquez Dep.) at 163:18–164:8; 166:17–170:23; Ex. G (Schuurman Rep. of Brittney Riffel) at 9–10; Ex. H (Schuurman Rep. of Martin & Susan Riffel) at 8, 10–11; Ex. I (Schuurman Rep. of Aurora Cheung) at 8–9; Ex. J (Reid Rep. of Wei Xiong) at 7; Ex. K (Reid Dep.) at 160:6–162:17. For example, Mag. Sandra Velasquez Montiel referred to the "dominant narrative surrounding the Boeing 737 Max crash" as one of "greed, gross negligence and a total disregard for the safety and lives of the passengers and the tragic consequences to follow." Ex. E at 7. Velasquez also reports that Michaela

2

Sonnleitner believes her partner's death "was the result of wrongdoing" and expressed her own belief that the MAX crashes could have been prevented if laws and regulations were followed. *Id.* at 12. Velasquez further noted that a federal judge in Texas declared in 2022 that the families of the passengers who died in the MAX crashes "are legally regarded 'crime victims.'" *Id*.

Donna Schuurman reported that Brittney Riffel expressed feelings about Boeing's alleged conduct, including her belief that her husband was "murdered"; that "[Boeing] valued profit over human safety"; and that no one at Boeing has been held responsible. Ex. G at 9–10. Schuurman also alleges that "[n]umerous articles, documentaries, and media coverage have documented the many ways in which the Boeing company employees withheld information and failed to act to prevent the crash[es] … resulting in the preventable deaths of 346 people." Ex. H at 10. And she states that the "lack of accountability for Boeing, the FAA, and the deferred prosecution agreement between the Justice Department made without family knowledge or input has heightened the pain and suffering of Ike and Susan Riffel." *Id.* at 11. Schuurman reports that Ms. Cheung harbors similar feelings and "finds it difficult to talk about Boeing's role in her husband's death as doing so only exacerbates her mental suffering." Ex. I at 8–9.

Jon Reid, for his part, testified that "Boeing urged friends to still fly the plane after the first crash," that Boeing's CEO "had said the planes are safe to fly, and then clearly weren't," and that "if something had been done, then the second crash wouldn't have happened." Ex. K at 161:18–162:2. He also explains that grief is exacerbated "when negligence resulted in the death" because "then the death was not timely or simply just an accident, but preventable." Ex. J at 7.

Because Boeing has admitted to liability in this case, none of this (or similar) testimony that relates to Boeing's conduct before or after the crash of Flight ET302 should be admitted.

## CONCLUSION

For the reasons discussed in Boeing's previously filed motion (ECF 1596), the Court

3

should exclude evidence pertaining to liability and punitive damages, along with any other evidence of or reference to Boeing's alleged conduct before or after the crash of Flight ET 302.

DATED: May 26, 2023

THE BOEING COMPANY

By: /s/  Dan K. Webb
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Andrew E. Tauber
atauber@winston.com
**Winston & Strawn LLP**
1901 L St. NW
Washington, D.C. 20036
Phone: (202) 282-5000

Michael Scoville
MScoville@perkinscoie.com
Christopher M. Ledford
CLedford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-900

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## CERTIFICATE OF SERVICE

      I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

      /s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600