IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S MOTION *IN LIMINE* TO EXCLUDE
DUPLICATIVE AND PREJUDICIAL EXPERT TESTIMONY
ABOUT PLAINTIFFS' MENTAL SUFFERING**

## INTRODUCTION

Boeing moves *in limine* under Federal Rules of Evidence 702 and 403 to exclude expert testimony about Plaintiffs' grief, sorrow, and mental suffering. There is no dispute that the emotions experienced by Plaintiffs as a result of their decedents' deaths is relevant to Plaintiffs' claims under the Illinois Wrongful Death Act. 740 ILCS 180/2(a). Plaintiffs—as well as Plaintiffs' friends and family members—will testify at trial to Plaintiffs' grief, sorrow, and mental suffering. Plaintiffs, however, also want to bolster their accounts by having experts testify to what Plaintiffs experienced. Such expert testimony should be excluded under Rules 702 and 403.

*First*, expert testimony about Plaintiffs' grief would not assist the jury because grief and sorrow caused by the death of a loved one are commonly experienced emotions within the jury's understanding. Testimony on a matter within the jury's common knowledge is not expert testimony admissible under Rule 702, and accordingly has been routinely excluded by courts.

*Second*, such expert testimony would be inadmissible under Rule 403 as unnecessarily cumulative and unfairly prejudicial. Plaintiffs themselves can and will testify at trial as to their own grief, sorrow, and mental suffering, as to which they have direct, personal knowledge. Plaintiffs are therefore best positioned to present this evidence to the jury. Allowing Plaintiffs' grief experts to bolster that testimony through repetition would unnecessarily expend court time and resources, and it would also be unfairly prejudicial.

For all these reasons, this Court should exclude such duplicative expert testimony.

## BACKGROUND

Boeing expects that Plaintiffs will introduce expert testimony about the grief and sorrow Plaintiffs have suffered because of the deaths of the ET 302 passengers. Plaintiffs have disclosed three experts who will so testify: Donna Schuurman, Jon Reid, and Sandra Velasquez Montiel. None of the proffered experts has treated any of the Plaintiffs, and in many instances, they

1

interviewed Plaintiffs only once or twice, often remotely.

A. Dr. Donna Schuurman

Dr. Donna Schuurman is a thanatologist—that is, an expert in thanatology, which Schuurman describes as "the scientific study of dying, death, and bereavement." Ex. A (Schuurman Rep. on Riffel Family) at 7; *see also Thanatology*, ENCYCLOPEDIA BRITANNICA (2009) (thanatology is "the description or study of death and dying and the psychological mechanisms of dealing with them"). She is a doctor of education, not a medical doctor. Ex. A at 1. Schuurman was retained to offer expert opinions on the effect of the deaths of Bennett and Melvin Riffel on their parents, Martin and Susan Riffel (Ex. A at 1), as well as the effect of Melvin's death on his wife (Brittney Riffel) and their child (Emma Melody Riffel) (Ex. B at 1). Schuurman also offered opinions on the effect of the death of Victor Shing Ngai Tsang on his wife (Aurora Cheung) and their children (Oliver Tsang and Selina Tsang). Ex. C (Schuurman Rep. on Tsang Family). In forming her opinions, Schuurman conducted interviews with Martin and Susan Riffel (Ex. A at 3), Brittney Riffel (Ex. B at 3), and Aurora Cheung (Ex. C at 3).

*Martin and Susan Riffel.* Schuurman's Rule 26 report states that the Riffels "have suffered profound grief, sorrow, and mental suffering as the result of the deaths of their only children," and describes how they are coping with it, reporting, for example, that Martin Riffel is in "a constant state of … pain" and "falls into depression" and recounting that Susan Riffel told Schuurman that she "still [has] mini meltdowns." Ex. A at 6–12.

*Brittney Riffel.* Stating that "not a day … goes by" that Brittany does not "think of Melvin," Schuurman, who has not treated Brittany, reports that her "therapy notes reveal the mental suffering and trauma she has experienced." Ex. B at 5, 7. Schuurman also believes that Brittney's daughter, Emma (about three years old at the time of Brittney's interview), "will express profound grief and mental suffering throughout her life." *Id.* at 13.

2

*Aurora Cheung.* Schuurman reports that Cheung "has suffered significant grief, sorrow, and mental suffering, and more likely than not … will continue to suffer," and that she "has difficulty sleeping, experiences headaches, and often feels like she is in a near-constant state of distress." *Id.* at Ex. C at 5, 12. As for Oliver and Selina, Cheung's young children (Oliver was six and Selina three when Aurora was interviewed), Schuurman states that they "will express profound grief and mental suffering throughout their lifetimes … and continually re-experience the absence of their father in their lives." *Id.* at 10.

### B. Dr. Jon Reid

Plaintiffs' second grief expert, Dr. Jon Reid, is also a thanatologist. Ex. D (Reid Rep.). He has a doctorate in family studies and is not a medical doctor. *Id.* at 20. He was retained "to offer expert opinions on the impact of the death of Zhenzhen Huang on her husband, Wei Xiong, and their son, Zirui 'Ray' Xiong." *Id.* He interviewed Wei and Zirui one time, remotely. *Id.* at 2; Ex. E (Reid Dep.) at 40:7–41:3. Reid purports to have diagnosed Wei with "prolonged grief disorder" and "major depressive disorder," though he never mentioned these diagnoses in his report. Ex. E (Reid Dep.) at 38:4–39:3, 42:23–43:11.[1] Reid reports that Wei Xiong "struggles daily with sadness and concerns about his son's welfare." Ex. D at 10.

### C. Mag. Sandra Velasquez Montiel

Plaintiffs' third grief expert, Mag. Sandra Velasquez Montiel, is a psychologist. Ex. F (Velasquez Rep.).[2] She was retained "to examine the impact caused by Dr. Christoph Sautner's untimely death on his partner Michaela Sonnleitner." *Id.* at 1. Velasquez interviewed Michaela once alone and a second time with her son, Sebastian. *Id.* at 5. The two remote interviews totaled

---

[1] As explained in Boeing's motion to exclude Reid's diagnostic opinions under Rule 702, his opinions are not reliable. *See* ECF 1703 at 1.
[2] "Mag." is the abbreviation for "Magister," German for a person with a master's degree.

3

about two and a half hours. Ex. G (Velasquez Dep.) at 57:9–58:18. Velasquez testified that "it has not been possible for Ms. Sonnleitner to arrive emotionally and cognitively to the point of truly being able to move on," but also stated that she was "articulate in expressing the emotions that she's been experiencing" and "absolutely open." *Id.* at 68:2–18. Velasquez also states that Christoph Sautner's death "has unpredictable negative emotional repercussions for Sebastian and his relationship with his mother" (Ex. F at 13), but notes that her "assignment concentrate[d] on Michaela" (Ex. G at 70:3).

### D. Plaintiffs' testimony

Each of the adult survivors gave deposition testimony, speaking at length from their personal experience about their grief and mental suffering as well as that of their children. Brittney Riffel testified about the severity and constancy of her grief at losing her sons, which caused her to withdraw from social activities and to seek therapy. Ex. H (B. Riffel Dep.) at 71:13–87:5. Martin Riffel testified that he needs to keep busy all the time to ward off depression and that he thinks about his sons all the time, no matter what time of day or what he is doing. Ex. I (M. Riffel Dep.) at 73:21–81:18. In addition to describing her own grief and the help she has sought to deal with it, Victor Tsang's widow Aurora Cheung testified in detail as to how her children dealt with the loss of their father, reporting, for example, that her son cried for his father at night because it was his father who customarily put him to bed. Ex. J (A. Cheung Dep.) at 72:9–14. Wei Xiong told of his deep sadness at the loss of his wife and how he has visited the crash site several times so that he can feel close to her. Ex. K (Wei Dep. Tr.) at 54:4–71:14, 73:25–82:19. Michaela Sonnleitner, who gave birth a few months after her husband died in the crash, testified about how alone she felt after her son's birth and that in the first two years after the crash she would cry after she put him to bed. Ex. L (Sonnleitner Dep.) at 83:1–97:20, 98:12–100:12.

### E. Testimony from Plaintiffs' friends and family members

In addition to providing their own testimony, Plaintiffs intend to call friends and family members to testify about Plaintiffs' grief. Plaintiff Aurora Cheung has, for example, designated the deposition testimony of her friend Stefanie Kroppach, who testified that, in her view, Cheung's grief has not lessened and that Cheung remains fragile. Ex. M (Kroppach Dep.) at 35:21–36:18. Similarly, Plaintiffs intend to present the testimony of Kerstin Bashir-Wannerer, a friend of Christoph Sautner, who testified how devastated Sautner's surviving partner, Plaintiff Michaela Sautner, was but that she could not mourn properly because she has to be there for her child. Ex. N (Bashir-Wannerer Dep.) at 32:5–35:3; *see also, e.g.*, Ex. O (Marlina Riffel Dep.) at 15:4–15:17 (aunt of Bennett and Melvin Riffel testifying to loss suffered by Plaintiff Ike Riffel); Ex. P (Biruta Dep.) at 18:12–19:14 (childhood friend of Musoni testifying about the effect of his death on his children).

## LEGAL STANDARD

To be admissible, expert testimony must "assist the trier of fact in determining some fact that is at issue." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014); *accord Lawson v. Trowbridge*, 153 F.3d 368, 375 (7th Cir. 1998). When expert testimony "will not assist the trier of fact," then "it is 'properly excludable … under Rule 702.'" *United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999) (quoting *United States v. Hudson*, 884 F.2d 1024 (7th Cir. 1989)). And under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

**I.     Expert testimony about Plaintiffs' grief and sorrow would not assist the jury because such emotions are within the jury's common understanding.**

The Illinois Wrongful Death Act allows recovery of damages for "grief, sorrow, and mental suffering" that "result[] from [a decedent's] death." 740 ILCS 180/2(a); *see Hammond v. Sys. Transp.*, 942 F. Supp. 2d 867, 875 (C.D. Ill. 2013). Plaintiffs and their family members will of course be able to testify as to the emotions that Plaintiffs experienced resulting from their decedents' deaths. In support of such damages here, however, Plaintiffs also intend to call grief experts Schuurman, Reid, and Velasquez to testify about Plaintiffs' grief suffered as a result of their decedents' deaths.[3] This testimony should not be permitted. Under the Federal Rules of Evidence, courts have routinely excluded expert testimony about a plaintiff's grief, sorrow, and mental distress in wrongful death cases because those are common emotions within the jury's understanding, and expert testimony would therefore be unhelpful. *See El-Meswari v. Wash. Gas Light Co.*, 785 F.2d 483, 487 (4th Cir. 1986); *Sardis v. Overhead Door Corp.*, 2019 WL 560273, at *3 (E.D. Va. 2019), *rev'd and remanded on other grounds*, 10 F.4th 268 (4th Cir. 2021); *Carter v. United States*, 2014 WL 3895751, at *4 (E.D. Va. 2014); *Robles v. Chicago Transit Auth.*, 527 N.E.2d 361, 367–68 (Ill. Ct. App. 1988).

In *El-Meswari*, for instance, the plaintiffs sued under Virginia's wrongful death act for the death of their son and, like Plaintiffs here, sought to introduce expert testimony about the mother's "inner grief" and "response to her loss." 785 F.2d at 484, 487.[4] The district court excluded the

---

[3]     These Plaintiffs and experts also opine on survivors' reactions to Boeing's alleged conduct—testimony that is inadmissible for reasons explained in Boeing's Motion to Exclude Evidence Pertaining to Liability and Punitive Damages (ECF 1596). Boeing is simultaneously filing a supplemental brief in support of that motion to identify the testimony specific to the June trial cases that should be excluded pursuant to Boeing's Motion.

[4]     Because the courts have excluded testimony from grief experts on generally applicable principles under Federal Rule of Evidence 702, any variation in state wrongful death statutes is

6

testimony because "the jury could assess the mother's inner grief without expert guidance." *Id.* at 487. The Fourth Circuit affirmed because it was well within "the trial judge's broad discretion under Federal Rule of Evidence 702 to determine that [the] proposed expert will not significantly assist the arbiter of fact." *Id.* Similarly, in *Sardis* (another wrongful death case), the court excluded the opinion of a medical doctor offered as a "grief expert" because "the grief that [the plaintiff] and her son suffer, how long they will need to recover, and the amount of counseling they will need" are "matters [that] 'can be left to turn mainly upon the good sense and deliberate judgment of the trier [of fact].'" 2019 WL 560273, at *3 (quoting *Carter*, 2014 WL 3895751, at *4). Calling an expert to testify to these topics, the court held, "is simply an attempt to put a patina of science over something that everyone understands." *Id.* In *Carter*, the court held that a grief expert's "opinion does not assist the trier of fact" because "[p]laintiff and her daughter can adequately testify to how the accident affected them." 2014 WL 3895751, at *4. And in *Robles*—an Illinois wrongful death and survival action—the appellate court affirmed the trial court's decision to prohibit the plaintiff's expert "from testifying about the grief and mental anguish of [the decedent's] family" because "family members," not experts, "were the most appropriate witnesses to testify as to their grief." 527 N.E.2d at 367.[5]

Cases like these emphasize the rule that "[e]xpert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people, because it would not help the trier of fact to understand the evidence or determine a fact in issue."

---

immaterial here. Like the Illinois Wrongful Death Act, however, the Virginia Wrongful Death Act allows a decedent's lawful survivor to recover damages for the "mental anguish" caused by the decedent's death. Va. Code Ann. § 8.01-52(1).

5      Similarly, in *Nedeau v. Armstrong*, 2011 WL 849744, at *7 (E.D. Wash. 2011), the court— citing Rule 702—precluded an expert from testifying about the survivor's close relationship with the decedent "because this concept does not involve scientific, technical, or specialized knowledge to assist the jury."

7

4 Weinstein's Federal Evidence § 702.03 (2021). Indeed, authorities have stressed that "expertise seems unlikely to contribute much on common questions relating to mental states in tort cases, *such as the sense of loss felt by plaintiff in a wrongful death suit*." 3 Federal Evidence § 7:9 (4th ed., July 2022 Update) (emphasis added) (citing *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *El-Meswari*, 785 F.2d at 487; *United States v. Masat*, 896 F.2d 88, 93 (5th Cir. 1990); *United States v. Lewis*, 837 F.2d 415, 418 (9th Cir. 1988)).

This Court does not appear to have addressed the admissibility of "grief expert" testimony. But just last year, another court in the Seventh Circuit held in a wrongful death case that "the concept of loss of love and companionship of a loved one is within a juror's ability to understand" without expert testimony. *Duke v. Danfreight Sys., Inc.*, 2022 WL 219043, at *6 (S.D. Ind. 2022). And in other contexts, too, courts have repeatedly recognized that emotional "distress is a commonly experienced emotion that is within the jurors' common-sense understanding." *Patterson v. City of Charlotte*, 2022 WL 17171080, at *1 (W.D.N.C. 2022) (excluding expert testimony about the "emotional distress" a plaintiff endured due to race discrimination); *see also Finn v. Syneos Health US, Inc.*, 2020 WL 12968437, at *3 (S.D. Iowa 2020) (emotional distress is a "generalized feeling[] that a lay juror can understand and evaluate without need for expert testimony"); *Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1176 (S.D. Cal. 2015), *aff'd*, 742 F. App'x 268 (9th Cir. 2018) ("[E]motional distress damages … are ordinary, commonplace, and [can be] thoughtfully and reasonably determined by the jury.").

As in all these cases, the expert testimony proffered here would not help the jury and should be excluded under Rule 702. The jury does not need expert testimony to understand that the tragic death of a spouse, child, or any other close family member will result in tremendous and lasting feelings of grief, sorrow, and mental suffering. All of the adult survivors here have shown an ability

8

to articulate the profound effect of their loved ones' deaths on their emotional wellbeing and, where applicable, on that of their minor children. Ex. D at 2, 20; Ex. E at 79:22–25; Ex. G at 51:3–16; 67:11–14. The jury is well equipped to weigh Plaintiffs' direct testimony without it being repeated by experts, just as it is able to assess an individual's mental state without expert testimony in other cases. *See Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2018 WL 4214524, at *9 (N.D. Ind. 2018) ("[An expert] may not testify as to what he believes another individual 'thought,' 'believed,' *or 'felt.'* An expert simply is not in any better position than the jury to assess another's subjective [state of mind]." (emphasis added) (quoting *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 423 (W.D. Pa. 2006))).

Simply put, the jury does not need expert testimony to understand the relationship that the survivors had with their decedents or the sorrow their deaths must have caused. Understanding the grief, sorrow, and mental suffering that results after the loss of a cherished family member is well within the jurors' experience. Under these circumstances, Plaintiffs' expert testimony will not assist the jury, and this Court should exclude it under Rule 702.

## II. Expert testimony about Plaintiffs' grief and sorrow is unnecessarily cumulative and unfairly prejudicial.

In addition to being unhelpful, expert testimony about Plaintiffs' grief and sorrow is also unnecessarily cumulative and unfairly prejudicial. It therefore should also be excluded under Rule 403. *See, e.g., Fields v. Withoff*, 2015 WL 5174000, at *2 (S.D. Ill. 2015) (courts should exclude "expert testimony [that] would simply be cumulative of [a] [p]laintiff's own testimony").

The experts' testimony about Plaintiffs' emotional suffering would be repetitive of Plaintiffs' own testimony and would "not provide any insight" that Plaintiffs themselves would not "be able to provide." *Nedeau*, 2011 WL 849744, at *7. In *Carter*, for instance, the plaintiff sued the United States for negligently causing the death of her husband and sought to introduce

9

the testimony of an expert—a clinical social worker "in the field of grief and loss counseling"—who had diagnosed the plaintiff with "Major Depressive Disorder" (as Reid did Xiong here). 2014 WL 3895751, at *1–4. The court excluded the expert's opinions, finding that the "testimony is cumulative and would not assist the trier of fact" because it "adds little in the way of new information that could not be provided through testimony from the Plaintiff and her daughter," who could "adequately testify to how the accident affected them." *Id.* at *4.

As in *Carter*, Plaintiffs here will testify at trial as to their own grief and sorrow. Everything they conveyed to the experts during their short interviews and everything they conveyed during their depositions can be expressed directly to the jury. As Michaela Sonnleitner's own expert (Velasquez) testified, Plaintiff is "absolutely open" and "articulate in expressing the emotions that she's been experiencing." Ex. G at 68:2–18. There is no need for Velasquez also to explain to the jury that Sonnleitner's relationship with her partner was "close and caring" and "filled with love," that her partner was a "highly loved and capable" person, and that they had a "stable and caring relationship." Ex. F at 5–8. Similarly, there is no need for Velasquez also to testify that "Ms. Sonnleitner reports that she has found a way to maintain her stability," or "says 'I must always do something' [and] is compelled to keep her mind occupied." *Id.* at 8. Nor is there any need for Velasquez also to describe Sonnleitner's "relationship with her child" or repeat what "Ms. Sonnleitner told [Velasquez] in the interview." *Id.* at 8, 9. Velasquez's testimony is duplicative of all these things that Sonnleitner can and will testify about herself.

And that is common across these experts' reports and depositions; they repeat, under the rubric of assertedly expert testimony, what Plaintiffs themselves will testify to about their personal experiences. Each Plaintiff testified in considerable detail at deposition about their grief. *See* Ex. H (B. Riffel Dep.) at 71:13–87:5; Ex. I (M. Riffel Dep.) at 73:21–81:18; Ex. J (A. Cheung Dep.)

10

at 72:9–14; Ex. K (Wei Dep. Tr.) at 54:4–71:14, 73:25–82:19; Ex. L (Sonnleitner Dep.) at 83:1–97:20, 98:12–100:12. Even Wei Xiong, whom Reid generally describes as suppressing his grief and not being open to sharing it with others, himself explained how he shut himself off from friends and avoids talking to others about his wife. Ex. K at 63:11–64:8, 65:11–66:4. Allowing Plaintiffs' grief experts to cover the same ground as Plaintiffs themselves will be a repetitive expenditure of the court's time and resources.

It would also unduly prejudice Boeing by "put[ting] a patina of science over something that everyone understands." *Sardis*, 2019 WL 560273, at *3; *see also Navarro de Cosme v. Hosp. Pavia*, 922 F.2d 926, 932 (1st Cir. 1991) (affirming exclusion of "grief counselor" because of "the danger of unfair prejudice" where the testimony was "too broad, too general, too technical, too, perhaps, scientific"). In this Circuit, "[i]f the proffered testimony duplicates the jury's knowledge, Rule 403 might counsel exclusion of the expert testimony to avoid the risk of unduly influencing the jury." *United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996). That is because "[t]rouble is encountered … when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Patterson*, 2022 WL 17171080, at *2 (quoting *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)). Here, the "scientific appearance" of the proffered expert testimony "could unduly influence the jury, and there is a risk that it could even substitute for [Plaintiffs'] testimony." *Id.* At the same time, "the [expert] testimony has no probative value because," as explained above, "it concerns a universally felt emotion." *Patterson*, 2022 WL 17171080, at *2. For example, Reid's opinions that "[a]vailable research confirms that the closeness of a relationship is a significant predictor of grief reactions" and that "[a]ccording to the research literature, the intensity of grief is significantly more intense with a sudden death" is expert jargon for what everybody understands: it hurts deeply to lose a

close loved one tragically and unexpectedly. Ex. D at 6. Reid's ultimate conclusions that "Xiong has suffered significant grief, sorrow, and mental suffering" and "struggles daily with sadness" (*id.* at 10) only "put[s] a patina of science over something that everyone understands." *Sardis*, 2019 WL 560273.

Schuurman's, Reid's, and Velasquez's testimony risks unduly influencing the jury by lending unnecessary expert validation to Plaintiffs' own stated feelings of grief and sorrow and thereby "supplant[ing] the jury's independent exercise of common sense." *Id.* As a result, "[a]ny probative value of [the experts'] testimony is substantially outweighed by the danger that it 'may induce the jurors to defer to [their] conclusions rather than draw their own.'" *Duke*, 2022 WL 219043, at *6 (original alterations omitted) (quoting *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017)). It should be excluded.

## CONCLUSION

For these reasons, the Court should exclude under Rules 702 and 403 any expert testimony about Plaintiffs' grief and sorrow.

DATED: May 26, 2023

**THE BOEING COMPANY**

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

12

Andrew E. Tauber
atauber@winston.com
**Winston & Strawn LLP**
1901 L St. NW
Washington, D.C. 20036
Phone: (202) 282-5000

Michael Scoville
MScoville@perkinscoie.com
Christopher M. Ledford
CLedford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-900

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600