**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO EXCLUDE PLAINTIFFS' PREVIOUSLY UNDISCLOSED ANIMATIONS**

**INTRODUCTION**

Discovery is not a never-ending venture. It closes, and it closes for a reason: a settled evidentiary record is necessary for parties to prepare for trial and settle complex cases. But Plaintiffs are resisting that fundamental proposition, attempting to reopen expert discovery on common damages issues—the heart of this litigation—long after the deadline. On June 7, 2023—nearly ten months past the deadline, three months after the March trial cases settled, and less than two weeks before the June trial was scheduled to begin—Plaintiffs disclosed two new computer animations that they intended to offer as "demonstrative" exhibits illustrating what their experts say could have happened to passengers on ET 302 before the plane made impact. They have since refused to withdraw these animations or to confirm they will not use them in the next set of trials. The Court should exclude these new animations before the November trials on multiple grounds.

To start, the untimely disclosure of these animations is enough by itself for the Court to bar Plaintiffs from using them. Plaintiffs cannot possibly lay a foundation for these animations without expert testimony. But Rule 26(a) requires the disclosure of expert demonstrative exhibits with the expert's report, so that they can be explored in expert discovery and depositions. Expert reports were served last fall, in September 2022. Plaintiffs' disclosure of these animations comes far too late, and causes far too much prejudice, for the Court to excuse Plaintiffs' violation of Rule 26. The parties invested considerable time and resources completing expert discovery on common damages issues. That discovery produced a stable evidentiary record on which the parties have relied to successfully resolve many of these cases. Excusing Plaintiffs' untimely disclosure would require the Court to reopen expert discovery—undoing much of the work that the parties (and the Court) have undertaken and upsetting the record on which so much progress has been made.

Nor is there any substantial justification for the late submittal. Indeed, the new cabin animation is markedly similar to a previous cabin animation that Plaintiffs disclosed with their

1

original Rule 26 reports on common damages. After conducting expert discovery, Boeing provided Plaintiffs with a motion *in limine* on that prior animation making many of the same arguments it does now. Plaintiffs agreed to withdraw and replace their original cabin animation with their expert's biomechanical simulations, and in exchange, Boeing withdrew its motion *in limine*. Plaintiffs' new cabin animation is thus an end run around the parties' agreement and an effort to game the discovery process. Likewise, there is no justification for Plaintiffs' late submittal of the anatomical animation, which purports to depict the movement of a person's organs with changing G-forces; it too should have been disclosed with the expert reports.

Both animations are also inadmissible under Rule 403 because they are unfairly prejudicial, misleading, and confusing. The animations give the false impression that what is depicted is either an accurate recreation of the flight or a reliable representation of what actually occurred to the passengers on the flight. Both animations also violate this Court's orders because, in purporting to lay a foundation for the animations, Plaintiffs' experts would necessarily be suggesting that the passengers experienced particular injuries during the flight, which the Court ruled they cannot do.

The Court should exclude both animations on any or all of these grounds.

**BACKGROUND**

In February 2023, Boeing served Plaintiffs with a motion to exclude their previous computer animation purportedly reflecting what happened inside the cabin of Flight ET 302. Plaintiffs responded by agreeing not to play that animation at trial and instead replacing it with biomechanical simulations prepared by their expert, Thomas Jenkyn. *See* Ex. A. His simulations were radically different from the withdrawn cabin animation: the simulations were prepared using flight data and accident reconstruction software, while the animation was a theatrical production made by a third-party vendor that was untethered to any disclosed scientific data.

2

Months later, at a hearing on June 5, 2023, the Court granted Boeing's motions to limit the opinions of Plaintiffs' experts Jenkyn (ECF 1532) and aerospace physiologist Troy Faaborg (ECF 1542), among others, precluding them from testifying that the passengers experienced certain injuries during the flight. *See* Ex. B at 6:4–10, 59:8–60:7, 9:10–11. As for Jenkyn, the Court excluded his opinion that the G forces would have caused, in every passenger, "contusion and rupture of the superficial blood vessel under the belt," which "passes over the anterior superior ilia of the pelvis" (Ex. C at 27). *See* Ex. B at 6:11–20. The Court also barred Jenkyn from testifying about other alleged "injuries," including "muscle strain" as a result of bracing; "contusion" or "laceration" as a result of an "object striking a passenger"; and "arms and hands" striking "an adjacent passenger" or the aircraft. *See* ECF 1532 at 3. As for Faaborg, the Court excluded his opinions that the passengers experienced "particular injuries or concrete physiological effects" (Ex. B at 9:15–16), such as (among other things) an "[i]ncreased heart rate," "[i]ncreased blood pressure," and "[s]hifting and compression/elongation of internal organs" (Ex. D at 18).

Two days later, on June 7, 2023, Plaintiffs exchanged their demonstrative exhibits per the parties' agreed schedule. To Boeing's surprise, Plaintiffs disclosed a brand-new interior cabin animation. This animation portrays three passengers on an airplane: one is "belted" and "not bracing," one is "belted" and "bracing," and one is "not belted." A cell phone rests in a passenger's lap, and a water bottle sits on the floor. As the animation progresses, the passengers are pushed into their seats as a result of positive G forces. Then, as a result of negative G forces, they are pulled upwards. The belted, not-bracing passenger's arms lift up over his head, nearly hitting the bracing passenger's face. The personal effects fly up to the ceiling, as does the unbelted passenger, who contacts the overhead luggage compartment. (In all these respects, the new animation is virtually identical to the previous animation that Plaintiffs promised they would not play.) The

3

animation then pauses and zooms in on the belted, not-bracing passenger's waist; his skeleton is revealed, and the seatbelt is shown to be resting on what is identified as his "anterior superior illiac [*sic*] spine." There is no indication of what level of G forces are being demonstrated or if they are consistent with those reflected in the data for Flight ET 302.

Along with this cabin animation, Plaintiffs disclosed what they labeled an "Anatomical Animation," which portrays a man with a window into his torso. This animation purports to show shifting and compression of internal organs, as well as an increased heart rate and changes to blood pressure with changing G forces.

The same day, Boeing's counsel asked for information about these never-before-seen animations, including who made them, how they were made, what data they were based on, and whether they are related to Jenkyn's simulations. The only information Plaintiffs' counsel would provide was that these animations are intended to be "demonstrative of the effects of G forces" and are not based on "any expert's data from flight 302." Ex. E.[1]

Boeing filed objections to these animations ahead of the June trial. ECF 1772. After the Court ordered Plaintiffs to respond, but before they did so, the June cases settled and the trial date was removed from the calendar. Plaintiffs now claim that the animations are not a "live issue" and that Boeing's arguments are "moot," but they refuse to confirm that they will not use the animations at any future trials. *See* Ex. F. Boeing therefore brings this motion to renew the issue in anticipation of the cases set for trial in November. Though some of Boeing's arguments have been adjusted to account for recent developments, the proper outcome remains the same: the Court should exclude these animations from any trial.

---

[1] Boeing has not attached Plaintiffs' animations but can submit them upon request.

4

**ARGUMENT**

**I.    The untimely animations violate Rule 26(a) and the parties' agreement.**

Plaintiffs say their new animations are "demonstrative of the effects of G forces," but they refuse to explain who would testify to the animations and insist that they are not based on "any expert's data from flight 302." Ex. E. This could suggest that Plaintiffs do not intend to introduce the animations through expert testimony. In that case, the animations would utterly lack foundation and would have to be excluded on that basis.

"The use of computer animations is allowed [only] when it satisfies the usual foundational requirements for demonstrative evidence." *Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1271 (D. Az. 2020) (citation omitted). At a minimum, this requires "the testimony of a knowledgeable witness that the animation fairly and accurately depicts what its proponent claims." *Bullock v. Daimler Trucks N. Am., LLC*, 819 F. Supp. 2d 1172, 1176 (D. Co. 2011) (quoting 5 Federal Evidence § 9:26 (3d ed. 2010)); *see Johnson v. Bonner County*, 2023 WL 5045270, at *12 (D. Idaho 2023) ("[T]he computer expert who prepared [the animation] or some other qualified witness must testify that it fairly and accurately depicts what it represents, and the opposing party must be allowed to cross-examine." (quotation marks omitted)). There is no lay witness who could possibly provide this necessary foundation. Thus, without an expert to do so, Plaintiffs' new animations are inadmissible under Federal Rule of Evidence 602. *See, e.g.*, *Abrego v. City of Los Angeles*, 2017 WL 11648665, at 2 (C.D. Ca. 2017) (excluding an animation where the plaintiffs "ha[d] not offered a qualified witness to opine on the creation and design of the animation").

To the extent Plaintiffs intend to introduce the animations through expert testimony, the Court should exclude them because they are untimely under Rule 26(a).[2] An expert's "report must

---

[2] Plaintiffs' attempt to introduce new animations after the discovery deadline is just their latest attempt to circumvent Rule 26's disclosure requirements; they also tried to improperly supplement

5

contain . . . any exhibits that will be used to summarize or support" the expert's opinions. Fed. R. Civ. P. 26(a)(2). This requirement "contain[s] no exception for demonstrative evidence which summarizes or supports an expert's opinion"; that evidence too "must be contained in the expert's report." *Lekkas v. Mitsubishi Motors Corp.*, 2005 WL 2989899, at *1 (N.D. Ill. 2005) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1988)); *see also Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 314 (N.D. Iowa 2013) (Plaintiffs were "required to make a timely disclosure, in the experts' reports, of even 'demonstrative evidence.'"). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It is Plaintiffs' burden to show that their late disclosure was substantially justified or harmless. *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 959 (N.D. Ill. 2021). "Four factors guide the trial court's determination of whether exclusion is appropriate: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Lekkas*, 2005 WL 2989899, at *2 (citing *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003)).

      Here, there was a clear violation of Rule 26. Plaintiffs did not disclose their new animations by the common expert disclosure deadline of September 22, 2022. Before that deadline expired, Plaintiffs disclosed (among other things) their experts' reports, Jenkyn's biomechanical simulations, and a series of animations, including the cabin animation they agreed to withdraw long ago. But the new animations at issue here were disclosed for the first time on June 7, 2023—

---

their expert reports after the experts testified to previously undisclosed opinions in their depositions. *See* ECF 1587, 1755. The court granted Boeing's motions and struck those supplements. ECF 1762.

6

nearly nine months past the deadline, after common experts were deposed, after deadlines for and decisions on motions *in limine*, after the March trial cases settled, and less than two weeks before the June trial was set to begin. Plaintiffs' "blatant disregard for Rule 26's requirements . . . weighs heavily in favor of excluding" the animations. *Kraese v. Jialiang Qi*, 2021 WL 640826, at *6 (S.D. Ga. 2021).

Nor is late disclosure of these two animations "substantially justified." Fed. R. Civ. P. 37(c)(1). Plaintiffs knew that demonstrative animations had to be disclosed with the report of the sponsoring expert. That is why they disclosed their previous cabin animation at that time, and that is why their experts testified that they produced all their exhibits. *See* Ex. G (Jenkyn Dep. Tr.) at 29:3–24; Ex. H (Faaborg Dep. Tr.) at 27:25–28:4. Indeed, Plaintiffs' counsel made and won this very argument in *Lekkas*. 2005 WL 2989899, at *1 ("Plaintiffs [represented by Clifford Law Offices] assert that Defendants' production of the videotapes was untimely."). Plaintiffs have failed to explain their late disclosure of the new animations except to say they disclosed them "pursuant to the demonstrative exhibits deadline." Ex. I. But the parties' agreed deadline did not purport to override Rule 26(a), which unambiguously requires that an expert's "report must contain . . . any exhibits that will be used to summarize or support" the "opinions the witness will express." Fed. R. Civ. P. 26(a)(2); *see Lekkas*, 2005 WL 2989899, at *2 (rejecting the defendants' "mistaken belief that the videotapes 'were not technically due' until the filing of the pretrial order"). Rule 26(a) compels "mandatory disclosure," and "[d]emonstrative evidence which summarizes or supports an expert's opinions must be contained in the expert's report." *Id.* at *1. There is no substantial justification for Plaintiffs' flouting of this requirement.

Further, Plaintiffs' late disclosure was anything but "harmless." Fed. R. Civ. P. 37(c)(1). The point of Rule 26(a) is that "all parties and the court should possess full information well in

7

advance of trial on any proposed expert testimony or demonstrative evidence." *Robinson v. Mo. Pac. R. Co.*, 16 F.3d 1083, 1089 n.6 (10th Cir. 1994); *see Salgado*, 150 F.3d at 741 n.6. Rule 26's disclosure requirements exist not only to facilitate trial preparation but also to help the parties "make . . . informed decision[s] about settlement." Fed. R. Civ. P. 26, advisory committee's notes to 1993 amendment; *see Meneweather v. Powell*, 2011 WL 13209593, at *2 (N.D. Cal. 2011) (highlighting that Rule 26's disclosure requirements "promote counsel's evaluation of the case and enhance settlement opportunities").

It would undermine the basic purposes of Rule 26(a) to allow Plaintiffs to modify or add to the opinions and supporting exhibits of Plaintiffs' experts at this late date. In circumstances like this, courts have held that "Plaintiffs['] expert designations must be final, so that Defendants know what their experts will be required to rebut." *Schwartz v. Hawkins & Powers Aviation, Inc.*, 2006 WL 8432387, at *2 (D. Wyo. 2006) (citing *Smith v. Ford Motor Co.*, 626 F.2d 784, 793–94 (10th Cir. 1980)). That is especially true here, where the Court carefully crafted a pretrial order that required the early completion of common expert discovery in order to facilitate a series of benchmark trials (which would, in turn, inform settlements). *See* Ex. J (Aug. 5, 2022 Status Hr'g) at 9:11–13 ("The purpose of these bellwether exemplar trials, of course, is to give the parties more data from which to evaluate settlement on the remaining cases."). Now, Plaintiffs wish for their "expert[s'] opinions [to] become a 'moving target,'" with the result that the Court's pretrial order "loses all finality, and the discovery phase could conceivably run on indefinitely." *Schwartz*, 2006 WL 8432387, at *2 (quoting *Miller v. Pfizer Inc.*, 356 F.3d 1326, 1330 (10th Cir. 2004)); *see Escamilla v. C.R. Bard Inc.*, 2021 WL 3761224, at *4 (W.D. Tex. Aug. 25, 2021) (declining "to permit Plaintiff to belatedly designate" a common expert after close of common expert discovery).

8

That is precisely the prejudice that Boeing faces here. Boeing does not know (because Plaintiffs would not say) who made the animations, how they were made, what inputs might have gone into making them, or what testimony will accompany them. As in *Lekkas*, if these so-called "demonstrations had been timely disclosed, [Boeing] would have examined [the experts] about the contents of the videos, developed relevant cross-examination strategy, and likely prepared rebuttal expert testimony." 2005 WL 2989899, at *2. "Put simply, deadlines matter — and they matter especially strongly in litigation of this size and complexity." *In re General Motors LLC*, 2016 WL 2766654, at *2 (S.D.N.Y. 2016) (citing *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013)).

The settlement of the June trials does not avoid this problem. "Just because the parties may now have additional time to conduct additional discovery . . . does not mean that the court should lift the discovery deadline." *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 2017 WL 5617463, at *11 (D. Haw. 2017) (finding the plaintiff's late disclosure prejudicial even though "the [new] trial date [was] months away"). Forcing Boeing to spend additional time and resources preparing for and conducting new depositions—simply to ask questions it should have been able to ask when it deposed the same experts the first time around—is prejudicial in itself. *See, e.g.*, *Allstate Ins. Co. v. Jackson*, 2007 WL 3287369, at *4 (S.D. Ala. 2007) (recognizing that "merely having to depose a party on information that should have been disclosed in a Rule 26 report is a form of prejudice" (citation omitted)). With or without more depositions, Boeing would have to "rethink [its] trial strategy and possibly seek out an additional expert" to rebut the animations, which "would clearly be prejudicial" to Boeing. *Bridge Aina Le'a*, 2017 WL 5617463, at *11. New depositions and experts may lead to new motions and even *more* depositions, in the event Boeing is compelled to engage a new rebuttal expert. All this additional work will interfere with

9

and distract from case-specific discovery for the November trials and the parties' ongoing settlement discussions. "This case is too far along for such repercussions, which would all but implode the Court's scheduling order in this vast . . . litigation." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 763778, at *3 (N.D. Fla. Jan. 15, 2021).

Plaintiffs will no doubt point out that the court in *Lekkas* indicated that new depositions and rebuttal experts might suffice to mitigate the harm from the late disclosure. 2005 WL 2989899, at *2. But *Lekkas* was a straightforward wrongful-death case involving a single decedent, and the court found that any prejudice caused by "Defendants' failure to timely produce the videotapes . . . could be cured in this situation." *Id.* Here, however, the Court is managing a complex series of related cases that implicate common damages issues. Because of this complexity, the Court carefully crafted a schedule calling for early completion of common expert discovery to inform trials and settlements, and the Court has since emphasized its "paramount concern[]" in "ensuring that all of the dozens of plaintiffs receive compensation for their losses in the most expeditious way possible." Ex. J at 43:10–13. Reopening common discovery would have litigation-wide ramifications and would undermine the thoughtful schedule this Court established to achieve its goal. Not only that, but allowing Plaintiffs to admit their new animations "would also disrupt the parties' commitment to good faith settlement discussions." *Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, 2020 WL 1502004, at *12 (E.D. Mich. 2020) (quotation marks omitted). Common expert discovery must end so that the parties can engage in trial preparation *and* settlement discussions on a record that does not continue to shift.

These considerations are more than sufficient to distinguish this case from *Lekkas*. But that case is also distinguishable, and the only appropriate remedy here is exclusion of the animations, for the additional reason that Plaintiffs' delay appears to have been willful. As discussed above,

10

Plaintiffs knew that demonstrative animations had to be disclosed with the report of the sponsoring expert, which is why they disclosed their previous cabin animation at that time and why their experts testified that they produced all their exhibits. *Supra* at 7. Plaintiffs then agreed in February 2023 to withdraw their previous cabin animation. That led Boeing to believe that only Jenkyn's biomechanical simulations would be played (*see* Ex. A), only for Plaintiffs to disclose two new animations for the first time less than two weeks before the June trial was scheduled to begin, while refusing to provide Boeing any information about who intends to testify about them. This sequence of events strongly suggests that Plaintiffs' late disclosure was not the result of mere inadvertence or mistake.

Plaintiffs' failures have prejudiced both Boeing and the Court. Because Plaintiffs agreed to withdraw their prior cabin animation, Boeing never filed a motion to exclude it. That never-filed motion would have brought the unreliable and speculative nature of the prior cabin animation to the Court's attention months ago. Now the Court has to resolve many of the same issues long after common expert disclosures were served, common discovery closed, *Daubert* rulings on common issues were made, and many cases have already settled. All this is further reason for the Court to exclude the new cabin animation.

## II. The animations are prejudicial and will mislead the jury.

Aside from Rule 26, the Court also should exclude both animations under Rule 403 because whatever probative value they might have is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

The cabin animation is likely to mislead the jury into thinking that it is a reliable and accurate reconstruction of Flight ET 302 when it is not. Plaintiffs' counsel made this very point on behalf of a different client in *Lekkas*, persuading the court there to exclude the defendants' demonstrative videos under Rule 403 because they were "closer to simulating the events at issue

11

than demonstrating abstract scientific principles." *Lekkas*, 2005 WL 2989899, at *4. The court explained that "[w]here [a] recreation could easily seem to resemble the actual occurrence, courts have feared that the jurors may be misled because they do not fully appreciate [the differences] between the original occurrence and the stage[d] event." 2005 WL 2989899, at *3 (quoting *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 263–64 (1st Cir. 1993)). The court emphasized several times that "[e]ven though the videos [did] not strictly reenact the accident, the videos resemble[d] a recreation." *Id.* at 5. And the court rejected the defendants' argument that "the videos are obviously not exact representations of the accident"; what mattered was that they "look very much like a recreation of the events in this case" and "create the impression of reenacting the events giving rise to the accident." *Id.* The fundamental problem was that the videos were "just similar enough to the events at issue to confuse the jury and leave the jurors with the prejudicial impression of a recreation of the actual occurrence according to Defendants' theory." *Id.*; *see also Wilbon v. Plovanich*, 2016 WL 3922906, at *3 (N.D. Ill. 2016).

This case is no different. The cabin animation here features passengers on a commercial airplane reacting to changing G forces, which "is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury." *Fusco*, 11 F.3d at 264. There is nothing "general" or "abstract" about the animation. *Id.* Jurors might reasonably assume that they are witnessing a reliable computer simulation of what actually happened to passengers on Flight ET 302, but Plaintiffs admit that the animation is not "from any expert's data from flight 302." Ex. E. As far as Boeing can tell, it is not based on any evidence at all. And the prejudice is no less simply because the exhibits are computer animations and not live-action videos. *See Burgs v. Pearson*, 2013 WL 12309672, at *3–4 (N.D. Ill. 2013) (excluding animation because "the dramatic power of a video threatens to overwhelm a juror's ability to give proper weight to the actual . . . evidence,

12

as opposed to an artist's representation of what that evidence suggests to that particular artist"); *Van Houten-Maynard v. ANR Pipeline Co.*, 1995 WL 317056, at *12 (N.D. Ill. 1995) (recognizing that a computer-generated animation "can be highly influential upon a jury, well beyond its reliability and materiality, due to its documentary-type format presented in a 'television' like medium"). If Plaintiffs' goal is to provide an abstract demonstration of scientific principles, there are ways to do so that would not pose any serious risk of misleading the jurors into thinking they are witnessing a reliable representation of the passengers' experience on Flight ET 302.

Plaintiffs' other animation depicting shifting organs, increasing blood pressure, and elevated heart rates presents a similar risk of prejudice and misleading the jury. The animation depicts an aircraft ascending and descending with changing G-forces, thus suggesting that what the jurors are seeing is a reliable and scientific representation of physiological effects that actually occurred in every passenger on Flight ET 302. In fact, the animation is based on no evidence or data. As in *Burgs*, Plaintiffs cannot argue that this animation "simply provides a visual representation of the testimony" of its expert witnesses because "the dramatic power of a video threatens to overwhelm a juror's ability to give proper weight to the actual . . . evidence." 2013 WL 12309672, at *4.

The animations run afoul of Rule 403 for other reasons as well. Both are completely unnecessary. Plaintiffs' experts are capable of explaining the general effects of G forces without showing these animations. In addition, the cabin animation (which will presumably be offered by Jenkyn) contradicts Jenkyn's own opinions and thus does not illustrate them. The animation shows an "unbelted" passenger even though Jenkyn assumed in his analysis that all passengers were belted. Ex. C at 30. It shows personal effects reacting to G forces in the cabin, but Jenkyn did not simulate the movement of objects. *See* ECF 1532 at 14 (citing Jenkyn deposition). A passenger's

13

arm nearly contacts another passenger's face, but Jenkyn's simulation "couldn't predict exactly where [passengers'] arms would go." *Id.* (quoting Jenkyn deposition). Rather than illustrate Jenkyn's expert opinion, the animation is a speculative depiction untethered from the evidence. *Abrego v. City of Los Angeles*, 2017 WL 11648665, at *1 (C.D. Cal. 2017) (excluding "argumentative" animation); *Tate v. Statco Eng'g & Fabricators, Inc.*, 2014 WL 509521, at *6 (E.D. Okla. 2014) (excluding "demonstrative" animation that contradicted evidence).

The admission of these animations would mislead the jury and prejudice Boeing in violation of Rule 403, and "[n]o limiting instruction could provide adequate assurance that a juror would not simply recall the video as a true depiction of the events." *Burgs*, 2013 WL 12309672, at *4 (citing *Robinson*, 16 F.3d at 1088). The Court should exclude them.

**III.    The animations violate this Court's orders.**

The final reason the Court should exclude both new animations is that they appear to violate this Court's orders precluding Plaintiffs' experts, including Jenkyn and Faaborg, from testifying about injuries. The Court has held that it would "allow Jenkyn to testify generally about forces the passengers experienced" (Ex. B at 7:18–20) and "Faaborg to testify generally about the changing g-forces that passengers experienced and how that might have felt to them, for example, how hanging upside down would feel" (*id.* at 9:19–22). In so ruling, the Court specifically ***excluded*** Jenkyn's opinion that the passengers received contusions by their seatbelts placed "over the anterior superior ilia of the pelvis" (Ex. C at 27). *See* Ex. B at 6:4–10 (excluding Jenkyn's "contusion opinion"). Yet the cabin animation zeroes in on a seatbelt placed over what it identifies in a red circle as the "anterior superior illiac [*sic*] spine." It is hard to imagine what Jenkyn will say at that point in his testimony that does not violate this Court's order barring him from testifying that the passengers received injuries from their seatbelts, because that is exactly what the animation appears to convey. And the Court barred Faaborg from testifying to "concrete physiological

14

effects," such as those identified in the anatomical animation (shifting organs, rising heart rates, and increased blood pressure). *Id.* at 9:10–17.

Of course, Boeing never had the opportunity to depose Jenkyn or Faaborg (or anybody else) about these animations, so it cannot know for sure what they will say about them. But that is a reason to exclude these animations, not to allow them.

## CONCLUSION

For each of these reasons, the Court should exclude Plaintiffs' untimely and prejudicial cabin and anatomical animations.

DATED: August 21, 2023                              **THE BOEING COMPANY**

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Michael Scoville
MScoville@perkinscoie.com
Christopher M. Ledford
CLedford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600