IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case No.: 19-cv-02170 |
| | *This Filing Relates to:* Case No. 19-cv-5562 |

**MOVANTS' REPLY TO RESPONSE TO MOTION TO APPOINT GUARDIAN *AD LITEM* TO PROTECT MINOR CHILD**

Movants, Clifford Law Offices and Cotchett, Pitre, & McCarthy, reply to the Response of Plaintiffs JOSHUA MWAZO BABU and EMILY CHELANGAT BABU, Individually and as Co-Personal Representatives of the Estate of JARED BABU MWAZO, deceased, to Movants' Motion to Appoint Guardian *Ad Litem* to Protect Minor Child, Dkt. 2174, as well as the Corrected Response In Opposition to Motion to Appoint Guardian *Ad Litem* to Protect Minor Child, Dkt. 2233. Movants respectfully reply as follows:

**I.    BACKGROUND**

1. On July 3, 2024, Movants filed a motion seeking the appointment of a guardian *ad litem* ("GAL") to protect the minor, E.C.B., from decisions compromising her financial interests made by her guardians and grandparents, Joshua and Emily Babu, ("the Babus") as Co-Personal Representatives of the Estate of Jared Babu Mwazo ("Jared"). Dkt. 2176.

2. That same day, Eric Onyango of Prime Legal L.L.C., filed both a Motion for Leave to File Appearance on behalf of the Babus and his Appearance. Dkt. 2180, 2179. In the Motion, Mr. Onyango represented that the Babus entered into a written agreement with him to represent them on July 3, 2024, and as a result, Movants were required to withdraw. Dkt. 2180.

3. On July 11, 2024, Movants sought leave to withdraw, but asserted that this Court should still consider and grant their motion to appoint a GAL. Dkt. 2180. Notably, Movants cited "Local Rule 83.51.16(a)(4)" in support of their motion, asserting that the *Comments* to the Local Rule were nearly identical to the *Comments* for Rule 1.16, and **quoted the relevant language of both rules**. Dkt. 2180, fn. 1. (Ex. A, L.R. 83.51.16 and *Comments*).[1]

4. The parties appeared before this Court on July 16, 2024, to address the Movants' motion to appoint a GAL, and motion to withdraw, and Mr. Onyango's motion for leave to appear on behalf of the Babus. Mr. Onyango provided this Court with Plaintiffs' *pro se* response to Movants' motion to withdraw which included choice of law arguments and addressed the GAL motion, adopted that response without the benefit of Movants' file or any discussion about the case, and sought both leave and additional time to file a separate response to Movants' motion to appoint a GAL.[2] Ex. D, Trans. 7-16-24, at 4, 10-11. This Court set a briefing schedule on the

---

[1] In their Supplemental Brief in response to Movants' Motion for Leave to Withdraw, the Babus asked this Court to strike portions of Movants' motion as violative of Federal Rule of Civil Procedure 12(f) "because no such rule [Local Rue 83.51.16] or comments exist." Dkt. 2236. The Babus added that "CLO cannot make arguments that are supported by non-existent authority." Dkt. 2236, at 2-3. This allegation is patently false as demonstrated by Ex. A. It is also demonstrative of the total lack of regard for fact and law that permeates the pleadings filed by Mr. Onyango on behalf of the Babus which is sanctionable and violative of the rules of ethical conduct to which all attorneys and, by extension, litigants, are bound. See Ill. R. Prof. Conduct 8.4. Movants do not intend to reply to Plaintiffs' Supplemental Brief unless or until a briefing scheduled is entered by this Court. Furthermore, due to Plaintiffs' egregious and unfounded accusations, Movants reserve the right to file a motion for sanctions as permitted by Federal Rule of Civil Procedure 11(c)(1)(A). Movants also attach a copy of F.R.C.P. 11 as Ex. B so that there can be no confusion about the Rule being referred to, as well as Illinois Rule of Professional Conduct 8.4 as Ex. C, which states "[i]t is professional misconduct for a lawyer to: "engage in conduct that is prejudicial to the administration of justice."

[2] Dkt. 2236-9 at 4. ("The Court: Mr. Onyango, is this a pro se response from them [the Babus], or is this your response? Mr. Onyango: It's a pro se response, but I helped them put it together, and there's a disclosure on the last page about my contribution to it. The Court: Okay. So are you adopting this response? Mr. Onyango: Yes, Your Honor").

GAL motion and took Movant's motion to withdraw under advisement. Dkt. 2241; Ex. D, at 19, 16-18. This Court also took Mr. Onyango's motion for leave to appear under advisement. *Id*.

5. Incredulously, the Babus and their counsel doubled-down on their initial misguided response to the motion to withdraw with a supplemental response that seeks to strike portions of Movants' brief on the basis of patently false allegations of attorney misconduct and unfounded criticisms of Clifford Law Offices (CLO) for failing to withdraw after the Babus indicated that they no longer desired their services, which are improper and sanctionable under F.R.C.P. 11.[3] ("CLO has used E.C.B. as a pawn to gain improper leverage over grieving parents"). (Dkt. 2236 at 5).[4]

6. This Court emphasized that "[t]he Seventh Circuit has expressed a preference for choosing representatives from among family members or others who are personally close to the

---

[3] There is ample support for Movants' position. *Wilford v. Cnty. of Rush*, No. IP02-0985-C-T/K, at *8 (S.D. Ind. Jan. 7, 2003), citing *Fries v. Helsper,* 146 F.3d 452, 459 (7th Cir.1998) (abuse of process is grounds for Rule 11 sanctions); *Brunt v. Service Employees Intern. Union,* 284 F.3d 715, 721 (7th Cir.2002) ("Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation."); *Divane v. Majestic Properties, Inc.,* 2002 WL 126106, *2 (N.D.Ill.2002) ("Improper purpose means something other than the mere assertion of frivolous or unfounded legal arguments or contentions.") (internal quotations omitted); *Vollmer v. Publishers Clearing House,* 248 F.3d 698, 709 (7th Cir.2001) ("Rule 11 provides that if an attorney presents a motion to a court for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, monetary sanctions may be imposed.").

[4] The Babus willfully ignore the fact that CLO fully cooperated with their attempts to secure new counsel, and after the Babus insisted on proceeding *pro se*, brought that decision to the Court's attention to protect E.C.B. and to ensure that well-settled law prohibiting *pro se* representation of a minor in a wrongful death case was followed. Dkt. 1949; 2051, at 4 ("plaintiffs who are not lawyers cannot proceed pro se to represent their decedent's family members or their decedent's estate"). The Babus subsequently sought permission from the Court to discharge Movants and the Court declined to provide it. Dkt. 2051, at 2, 4. The Court concluded: "Plaintiffs have every right to hire new counsel, if they wish (although, as stated earlier, the Court is not convinced that plaintiffs have received bad advice [from Movants])***. But the Court cannot and does not permit them to proceed with litigating this case without legal representation while they are searching for new counsel." *Id*., at 4.

3

\*\*\*minor litigant," citing *T.W. by Enk v. Brophy*, 124 F. 3d 893, 897 (7th Cir. 1997), but acknowledged the recommendation of three former judges within Judge O'Connell's declaration. Ex. D, at 11, 6-9. This Court then ruled:

> "I will not allow Clifford to withdraw at this point until this issue is resolved. If, in fact, the motion is granted, I think I need to have the GAL appointed, possibly have the GAL obtain counsel if, in fact, it is not one of the individuals that were listed by Judge O'Connell. So the motion to withdraw is taken under advisement. Likewise, Mr. Onyango's motion to appear is going to be taken under advisement. I will consider the motion when it is fully briefed.\*\*\*And I ask both parties to address that related issue; if, in fact, a GAL is appointed, should it be a relative, an actual friend, as opposed to a profession. Clifford has alluded to the obvious advantages here based on the concerns, but I'd like the parties to address that issue as well." Ex. D, at 19, 11-24.

7. Mr. Onyango claimed that the Court "adopted the position that there's a cap \*\*\*on compensatory damages under Kenyan Law, which is completely untrue. There's no cap at all\*\*\*it's more generous that Illinois wrongful death." Ex. D, at 17, 19-20; at 18, 1-2.[5] He requested and was granted leave to file a motion to reconsider this Court's "guidance on the docket" set forth in the April 23, 2024, court order. Ex. D, at 20, 7-12. However, on that date, this Court made no ruling on choice of law issues that warranted reconsideration. Dkt. 2051("[t]he law governing compensatory damages is an open question for any parties who reject the Negotiated Stipulation" but without full briefing, the court was "not in a position to render a definitive ruling on the issue").

---

[5] This Court asked Mr. Onyango if he filed an expert opinion on the choice of law issue, and Mr. Onyango responded: "I don't have an appearance." Ex. D, at 15, 24-15. That fact rightly caused Mr. Onyango to proceed with caution at that time, but he has since abandoned that approach, filing pleadings that are not under seal and disclose information on litigation strategy, work product, and other information regarding legal interpretations on choice of law that could be seriously detrimental to E.C.B.

4

8. On August 9, 2024, the Babus responded to Movants' Motion to appoint a GAL, and then corrected that motion a day later. Dkt. 2234. The Babus also filed a Motion to Reconsider and Modify Order [Doc. 2051] and a Motion for a Choice of Law Ruling Applying Kenyan Law to the Issue of Compensatory Damages Against Boeing Company (despite counsel not yet having an appearance on file). Dkts. 2231, 2232. On August 10, 2024, the Babus filed a Motion for Leave to File a Corrected Brief and a Corrected Response In Opposition to Motion to Appoint Guardian *Ad Litem* To Protect Minor Child. Dkt. 2234, 2233. On August 11, 2024, the Babus filed a Motion to File Supplemental Response to Motion for Leave to Withdraw [2188]; and a Supplemental Brief In Response to Their Prior Counsel's Motion for Leave to Withdraw. Dkt. 2237, 2236. Each motion improperly asserts various incendiary and unfounded allegations of misconduct on the part of CLO.

## II. LEGAL ANALYSIS

9. At the outset, Movants address the Babus' unfounded assertion that Clifford Law Offices "misrepresent[ed]" and "falsely" stated the holding in *Hernandez ex rel. Gonzalez v. Tapia*, No. 10-CV-4124, 2010 WL 5232942, at *3-6 (N.D. Ill. Dec. 15, 2010) (Dkt. 2230, at 6) and engaged in "improper and prejudicial" conduct by "misquote[ing] Judge Lefkow to make it appear to the Court as if the relief CLO requested in the motion [to appoint a GAL] is something this court should grant." Dkt. 2236, at 3. Movants cited *Hernandez ex rel. Gonzalez v. Tapia*, No. 10-CV-4124, 2010 WL 5232942, at *3-6 (N.D. Ill. Dec. 15, 2010), and referred to the "district court" in a string cite parenthetical instead of correctly referencing the state trial court. *Hernandez* directly supports the proposition for which it was cited: that both state and federal courts have appointed GALs in other cases on behalf of minors. This semantics error was hardly a misquotation, and it certainly was not a deliberate attempt to mislead the court, as the case

5

appropriately provided an example of a scenario where an independent guardian was appointed when a family member and a minor had conflicting interests in a case. The Babus' allegations amount to unnecessary and improper vitriol without any substantive value and should not be condoned.

10. Federal courts in Illinois have long acknowledged that "a lack of civility plagues the legal profession" and "can escalate clients' litigation costs while failing to advance their interests or bring them closer to their ultimate goal of ending disputes. ***Furthermore, with today's overcrowded dockets, judicial time is wasted resolving needless (often petty) disputes, which, in turn, deprives those litigants who are ready for trial of the opportunity for a more expeditious hearing. Everyone is harmed." *Chapsky v. Baxter*, No. 93 C 6524, at *1 (N.D. Ill. July 6, 1994), quoting Final Report of the Committee On Civility of the Seventh Federal Judicial Circuit, June 1992, at 6. *See, e.g., Wilford v. Cnty. of Rush*, No. IP02-0985-C-T/K, at *7 (S.D. Ind. Jan. 7, 2003), citing *Miller v. Bittner,* 985 F.2d 935, 941 (8th Cir.1993) ("The adversary process in the judicial arena does not require attorneys to be clothed in a suit of armor and fight to the bitter end. The parties, the profession, and the public all lose when the attorneys fail to treat each other with common courtesy.") (internal citations and quotations omitted).

11. Unfortunately, the lack of civility decried in these precedents permeates every pleading filed by the Babus since Movants sought the appointment of a GAL to protect E.C.B.'s interests. The Introduction to the Babus' response to the GAL motion is replete with sanctionable material that has no valid basis in fact or law, demonstrating a reckless disregard for E.C.B.'s interests and a staggering lack of good judgment. Indeed, the Babus' insistence on improper, untrue, and misleading rhetoric which amounts to a glaring abdication of their responsibilities as E.C.B.'s representatives in this litigation has wholly failed to advance E.C.B.'s interests or bring

6

her closer to the ultimate goal of ending the dispute and indeed, **"Everyone is harmed"** and **"The parties, the profession, and the public all lose**.**"** (Emphasis added); *Chapsky, supra*, at *1 (string citation omitted); *Miller, supra,* at 941. See also F.R.C.P. 11; Ill. R. Prof. Conduct 8.4(c),(d).[6]

### A.   Conflict of Interest

12.   Similarly, the Babus' assertion that the GAL motion should be denied because Movants have a professional conflict in their representation of both the Babus and the Ndivos (E.C.B.'s maternal grandparents who are Co-Personal Representatives of the estate of E.C.B.'s mother, Mercy Ngami Ndivo, Case No. 19-cv-5563) deserves no credence. The Babus cite ABA Model Rule of Professional Conduct 1.7(a) which provides that informed consent from each client is necessary where "the representation of one client will be **directly adverse** to another client; or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." (Emphasis added); ABA Model Rule 1.7(a)(1),(2). The Babus and the

---

[6] The Babus have not advanced any good faith argument or citation to caselaw to support their allegation that Movants improperly represented the Babus post-discharge; operated under a conflict of interest in violation of ethics rules; provided erroneous legal advice about Kenyan law (or no advice depending on the pleading); delayed the case; incurred additional fees (no fees or expenses have been charged to date); or otherwise caused the Babus emotional distress. The Babus have waged these claims against CLO specifically even though Movants have collectively engaged in *hundreds* of emails, WhatsApp, or Zoom communications with the Babus and **thousands** of hours of legal work related to their representation with multiple trips to Kenya for in-person meetings. Movants communicated with numerous outside experts regarding myriad legal issues including the choice of law issues raised in the pleadings filed by Mr. Onyango. These outside experts included: Nora Freeman Engstrom, Ernest W. MacFarland Professor of Law, Stanford Law School; Catherine Sharkey, Segal Family Professor of Regulatory Law and Policy; Stephan Landsman, Emeritus Professor of Law, DePaul University School of Law; Mary Robinson, Former Administrator of the ARDC; and John Joseph Tito Olugwaru, Principal of Tito & Associates, Advocates. In turn, Mr. Tito particularly enlisted the expertise of various legal practitioners and scholars in Kenya. Movants gave their full cooperation to the Babus and assisted them with their attempt to obtain new counsel. This is not an exhaustive list of the work done by the Movants in this case but is intended to underscore the egregiously false nature of the Babus' current claims.

Ndivos do not have competing interests simply because they have chosen to make different strategic decisions in representing their respective estates, insofar as the Ndivos have signed the Stipulation and the Babus have not.

13. Without any citation to authority, the Babus conclude that "CLO cannot purport to act for E.C.B. while intentionally violating or is in violation of the professional rules of conduct." Dkt. 2230, at 8. The assertion that Movants are willfully acting in violation of the ethical rules is inflammatory and subject to sanction under Federal Rule of Civil Procedure 11(b). As Movants asserted in their GAL motion, they are ethically bound by Illinois Rule of Professional Conduct 1.14(a) to seek protection for E.C.B. because she is at risk of substantial financial harm, an opinion that is supported by the federal and state court jurisprudence as well as the declarations of Judge Donald P. O'Connell and Mary Robinson. Dkt. 2176.

### B. JURISDICTION/CHOICE OF LAW

14. The Babus next assert that the Kenyan court that appointed the Babus as administrators of Jared's estate is the only entity with jurisdiction to determine whether a GAL should be appointed. In support, the Babus generally reference *T.W.*, (Dkt. 2230, at 8), but *T.W.* does not provide support for the Babus' jurisdictional argument. *T.W.* espouses the "general rule" that "a federal court cannot appoint a guardian *ad litem* in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state" and states that the rule is "a sensible general rule because the management of the affairs of infants, like other matters relating to domestic relations, is the primary responsibility of the states rather than the federal government." *T.W.*, 124 F. 3d at 896. However, the court recognized that there is **"no absolute prohibition against"** appointing a GAL that is a stranger. *T.W.* simply instructs courts "to go easy" on issues like domestic relations and child custody to

prevent making "an end run around the state's domestic relations jurisdiction." (Emphasis added); *Id*., at 897. The court opined that "the best way" to honor this policy would be to require the party seeking appointment as a GAL in a federal suit to seek appointment in state court. Nevertheless, the court stated unequivocally that it did not know whether a state court would be willing to do that "when the *lis* was in another judicial system" and **"[i]f not, the federal district court would be free to do so."** (Emphasis added); *Id*.

15. The appointment of a guardian *ad litem* does not require the termination of other guardianships and does not usurp the court's power to decide the issues before it. *In re Mark W*., 228 Ill.2d 365, 376-77 (2008) ("Appointing a guardian *ad litem* without first revoking the plenary guardian's letters of office was appropriate in these circumstances. Simply because the circuit court may find it desirable, in a particular case, to appoint a guardian *ad litem* to obtain a recommendation regarding a ward's best interests, it does not follow that the plenary guardian of the ward is unfit or must be discharged.") No one is challenging the fact that the Babus are loving grandparents who take excellent care of E.C.B. to raise her in a safe, nurturing, and happy environment. The only question here is whether a GAL should be appointed to make decisions for E.C.B. related to the instant litigation. *T.W.* should not be construed to require that the Kenyan court that appointed the Babus as administrators of their son's estate must decide the Babus' fitness to continue making decisions for E.C.B. in this lawsuit, particularly when the Babus have long-submitted to this Court's jurisdiction. The suggestion that this Court does not have jurisdiction over the Babus and this matter is preposterous and contrary to elementary rules of jurisprudence.

16. The Babus further assert that a GAL should not be appointed because only a Kenyan court can provide an appointed GAL authority to accept the Stipulation on E.C.B.'s behalf and obtain counsel to negotiate settlement or trial. Dkt. 2230, at 8. The Babus claim that this

9

conclusion is mandated by Federal Rule of Civil Procedure 17(b) and *Neilson v. Colgate-Palmolive Co.*, 199 F. 3d 642 (2nd Cir. 1999) but neither authority supports their position.

17. In *Neilson*, a GAL was appointed for the plaintiff, an adult proceeding *pro se*, after defense counsel disclosed that the plaintiff had been involuntarily committed to psychiatric hospitals in the past and requested she undergo a court-ordered psychiatric examination. After the psychiatric examination, the court appointed a GAL who negotiated a settlement that was approved by the court. *Id.*, at 648-49. The plaintiff's son subsequently obtained general guardianship of the plaintiff in state court and challenged the GAL's settlement authority. On appeal, the Second Circuit affirmed the district court's judgment. The court stated:

> "The federal rule requires that a court determine capacity to sue by reference to the law of an individual's domicile. *See* Fed.R.Civ.P. 17(b). The state rule provides that approval of a settlement must be sought by a general guardian rather than by a guardian *ad litem*. [Citations]. Neilson argues that the district court was required under Rule 17(b) to adhere to the state rule and await appointment of the general guardian. ***[W]e conclude that the district court was not obligated to apply it, because "insofar as state law might be read to preclude the federal court from exercising its appointive power under Rule 17(c), it must give way, Rule 17(b) notwithstanding." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1571, at 511 (2d ed.1990). *Id.*, at 656.

18. *Neilson* supports the conclusion that this Court is free to appoint a GAL with authority to settle E.C.B.'s claim pursuant to Rule 17(c). There is no meaningful distinction between an incompetent adult having no appointed general guardian and a minor whose general guardians labor under a serious conflict for purposes of Rule 17(c).

### C. DUE PROCESS/UNDUE DELAY

19. *Neilson* likewise refutes the Babus' assertion that a discovery schedule and hearing are required for this Court to appoint a GAL in compliance with due process. In *Neilson*, *supra*, at 652, the court made clear that the Due Process Clause does not require a hearing or pre-appointment discovery where the GAL is being appointed for a person who is already declared

10

incompetent (or in this case, a minor) given that there is continual post-appointment review and no prohibition against a party challenging the GAL's decisions or seeking the GAL's removal post-appointment, if warranted. Furthermore, the Fourteenth Amendment prohibits a state from depriving a person of life, liberty, or property without due process of law. Courts analyzing procedural due process claims must answer two questions: (1) whether the petitioner has been deprived of a protected interest; and (2) if so, what degree of process is due to the individual before he can be deprived of that interest. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996); *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982). The appointment of a GAL in this case creates no such deprivation.

20. Although Movants maintain that a GAL should ultimately seek to accept the stipulation and resolve this matter with the assistance of counsel, the GAL will first be tasked with reviewing all of the materials in this case to assess E.C.B.'s interests. The Babus' assertion that this Court should decline to appoint a GAL altogether based on due process principles or the possibility that the GAL will request authority this Court may not provide places the cart miles ahead of the horse and should not inform this Court's ruling. A GAL will afford the Court the opportunity to have independent, non-adversarial input to make a fair and proper decision that serves the best interests of E.C.B. and satisfies the court's recognized "duty to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm." *Id*. And, the appointment of a GAL will not create any delay or cause the Babus to "incur additional, substantial legal fees" (Dkt. 2233 at 2) given that the litigation has already been stayed and the Babus have paid **nothing** in legal fees to date.

21. The Babus further assert that this Court should decline to appoint a GAL because they are making appropriate choice of law arguments and are now represented by counsel that also

11

owes a fiduciary duty to E.C.B. Movants do not agree with the Babus' assessment on either point, but refrain from countering the choice of law analysis offered by the Babus in multiple pleadings for fear that the litigation of this issue in a proceeding for which Boeing is not a party but to which is otherwise privy will put E.C.B. at even greater risk and improperly negates work product and trial strategy protections that should not be disclosed outside the attorney/client relationship. (Dkt. 2231, 2232, 2236).[7] Movants emphatically assert that the Babus' recent filing should be viewed by this Court as evidence of the urgent need for appointment of a GAL.

### E. Propriety of Appointing GAL vs. Next Friend

22. The Babus ask this court to refrain from appointing a GAL altogether, but alternatively assert that if a GAL must be appointed, E.C.B.'s paternal aunt (the Babus' daughter) and her husband should be appointed due to their close relationship with E.C.B. Notably, the Babus do not make this argument in light of the Seventh Circuit's holding in *T.W.* and do not undertake to analyze *T.W.* despite this Court's clear directive. Rather, the Babus assert that their daughter and son-in-law should be appointed under Kenyan law in another attempt to inject choice of law issues where they have no place. Dkt. 2233, at 12.

23. Movants assert that the appointment of the Babus' daughter is not required by federal law and is not in E.C.B.'s best interests. The seminal case on instructing courts **who**[8]

---

[7] Should this Court desire a response from Movants regarding the choice of law issues raised by the Babus, Movants most certainly will respond and are prepared to provide this Court with an accurate assessment of the relevant law, with the assistance of Movants' co-counsel in Kenya who has advised Movants on questions of Kenyan law throughout the duration of this case, and do not concur with the Babus' current positions. But in that event, Movants ask this Court to order a briefing schedule and mandate that all further pleadings be filed under seal for E.C.B.'s protection.

[8] Movants are criticized by the Babus for not citing *T.W.* in their GAL motion when *T.W.* renders the motion "frivolous" suggesting that Movants deliberately failed to cite relevant authority and recommended potential GALs that should not be trusted. (Dkt. 2233, at 1) Movants note that they cited stated and federal rules of civil procedure, professional responsibility, and provided caselaw

should be appointed a guardian *ad litem* in the Seventh Circuit is *T.W.* In that case, the court directed: "[I]f a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation." *T.W.*, at 897. The court emphasized "that persons having only an ideological stake in the child's case are never eligible." *Id*. The court reiterated that "[w]ithout such a rule, and specifically its exclusion of purely ideological 'friends,' we may find [next friends] popping up in children's suits all over the circuit, perhaps all over the country." *Id*.

24. However, *T.W.* should not be construed to prohibit the appointment of a GAL in all circumstances where a family member is willing or available to serve as next friend. In *J.A.W. v. Evansville Vanderburgh School Corp.*, 18-cv-37, at *2, fn. 1 (S.D. Ind., June 5, 2018), the Indiana district court, which is also bound by Seventh Circuit precedent, explained:

> "According to the Defendant, *Brophy* [*T.W.*] stands for the proposition that only J.A.W.'s "parents/siblings/relatives" may act as J.A.W.'s next friend absent a showing that these 'presumed legal representatives ha[ve] interests which may conflict with those of J.A.W.' [Citation]. There are several reasons why *Brophy* [*T.W.*] does not compel this result. First and foremost, the entire discussion in *Brophy* [*T.W.*] regarding the circumstances under which a 'special representative' may litigate on behalf of a minor in the place of a 'general representative,' such as a parent, is *dicta*, inasmuch as the child plaintiffs in *Brophy* [*T.W.*] did not have a general representative." (Citations omitted); *Id.*

25. Also, in *Brown v. Overhead Door Corp.*, 06 C 50107 (N.D. Ill. Aug. 7. 2007), a lawsuit was brought on behalf of a minor by his parents after the minor was permanently injured after getting trapped beneath a garage door manufactured by the defendant. The defendant filed

---

intending to demonstrate to the court that it had authority to appoint a GAL and that a GAL was needed. Movants refrained from making any suggestion on who should be appointed GAL. Those suggestions were made in the declaration provided by Judge O'Connell **(not CLO as alleged)** who is very familiar with the issues as the agreed upon mediator between Plaintiffs and Boeing.

13

an affirmative defense and a counterclaim against the parents and then sought the appointment of a GAL for the minor asserting that the minor's parents were operating under a conflict of interest. The court acknowledged that in general, the appointment of a GAL "is unnecessary so long as the existing representation is adequate and the interests of the parents and child do not conflict." *Id*., at 1. However, even though the parents retained counsel that was "actively and skillfully" litigating the case, the court nevertheless concluded that the appointment of a GAL was necessary because "there is a potential conflict of interest between the parents and child. Though the family's interests are aligned at the moment, their interests will diverge once settlement negotiations begin." *Id*., at 2. The court noted that "in the absence of an impartial guardian, the parents/counter defendants are in control of the child's lawsuit and have the power to negotiate settlement terms most favorable to them, possibly at the expense of their child's best interests." *Id*. The court then concluded that the appointment of a GAL was necessary "to ensure that the minor's interests will at all times be protected" and ordered the plaintiffs' counsel to submit the names of three attorneys \*\*\*for consideration for appointment." *Id*. There is no indication that the Court considered whether other family members could be appointed.

26. Here, the Babus hired counsel that has prematurely advanced choice of law positions that no other attorney has sought to advance in the entirety of the litigation of the ET302 disaster after **no other attorney** was willing to take their case and advance those positions. The Babus have since filed pleadings that demonstrate a complete lack of regard for the protection of E.C.B.'s interests and there is a great risk that conduct will continue. The issues in this case are very complex and it would be most beneficial for E.C.B. to be protected by a GAL who is also a lawyer and has the capacity to, at a minimum, appropriately compare state, federal, and foreign law on issues of damages to make sound decisions that serve E.C.B.'s best interests. The affidavits

of the proposed next friends demonstrate that they love and care about E.C.B. However, those affidavits also demonstrate a very close familial bond between all members of the Babu family that could greatly influence the decisions made on E.C.B.'s behalf, particularly in this case where the Babus' counsel has already taken a strong position on choice of law issues without the benefit of full investigation. Ultimately, the Seventh Circuit's goal is to ensure that the best interests of the minor are protected and that strangers who have nothing but philosophical interest in a legal matter are not permitted to make serious decisions for a minor they do not otherwise know or care about. That is not the case here.

27. This Court should appoint a neutral GAL who cannot be influenced by family dynamics or other such concerns to make a recommendation as to what is in E.C.B.'s best interests in this case. *T.W.* actually mandates the appointment of a GAL in this case because 1) a close relative is unavailable; 2) E.C.B. has no conflict-free general representative the court may appoint such as a personal friend of the plaintiff or his family or a professional who has worked with the child; and 3) these are "desperate circumstances" where the court may appoint a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation." *T.W.*, at 897.

### III. CONCLUSION

WHEREFORE, Movants request that this Court grant enter an order appointing a guardian *ad litem* for E.C.B., a minor, and for all further relief deemed necessary and in E.C.B.'s best interests, including directing the guardian *ad litem* to investigate, review, and evaluate the status and related legal issues of this case in their entirety, reporting back to the Court as necessary, and further granting the appointed guardian *ad litem* authority to accept the Stipulation on behalf of the minor and obtain counsel to negotiate settlement or otherwise prepare for trial.

Dated: August 16, 2024　　　　　　　　　/s/ Robert A. Clifford
Robert A. Clifford (ARDC No. 0461849)
Kevin P. Durkin (ARDC No. 3127906)
Tracy A. Brammeier (ARDC No. 6317792)
John V. Kalantzis (ARDC No. 6283187)
Yvette C. Loizon (ARDC No. 6274036)
**CLIFFORD LAW OFFICES**
120 North LaSalle Street, 36th Floor
Chicago, IL 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
rac@cliffordlaw.com
kpd@cliffordlaw.com
tab@cliffordlaw.com
jvk@cliffordlaw.com
ycl@cliffordlaw.com


Joseph W. Cotchett
Frank M. Pitre
John P. Thyken
Nabilah O. Hossain
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
fpitre@cpmlegal.com
jthyken@cpmlegal.com
nhossain@cpmlegal.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 16, 2024, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                        /s/ Robert A. Clifford
                                        Robert A. Clifford
                                        RAC@CliffordLaw.com
                                        CLIFFORD LAW OFFICES, P.C.
                                        120 North LaSalle Street, 36th Floor
                                        Chicago, IL 60602
                                        312-899-9090