# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S MOTION TO EXCLUDE INADMISSIBLE GRIEF TESTIMONY OF TREATING MENTAL HEALTHCARE PROVIDERS AND NON-RETAINED EXPERTS**

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................... 1
    A.    *Dieci* providers ............................................................................................... 2
    B.    *Lewis* providers .............................................................................................. 4
    C.    *Belanger* provider ......................................................................................... 5
ARGUMENT ......................................................................................................................... 6
I.    Provider testimony about adult beneficiaries' grief falls squarely within the Court's order barring such testimony and should be excluded. ................................... 7
II.    The providers' diagnosis and causation opinions are unreliable and should be excluded on that basis ......................................................................................... 9
    A.    The diagnosis opinions are unreliable and cannot open a backdoor for inadmissible grief testimony in any event .......................................................... 9
    B.    Dr. Neri's and Dr. Tambone's causation opinions were not properly disclosed and are unreliable. .......................................................................... 13
CONCLUSION ..................................................................................................................... 15

Boeing moves under this Court's prior order (ECF 1762) and Federal Rules of Evidence 403, 702, and 703 to exclude the testimony of five mental healthcare providers offered by Plaintiffs to testify at the April 2025 trials: Drs. Nadia Neri and Gabriella Tambone in *Dieci*; Dr. Tonya Phillips and Jennie Linn Williams in *Lewis*; and Tania Jacobs in *Belanger*. Four of these providers were disclosed as non-retained experts under Rule 26(a)(2)(C), and one (Ms. Jacobs) was not disclosed as an expert at all. Yet they all apparently intend to testify about the grief and sorrow of adult beneficiaries in violation of this Court's prior order. This Court has already ruled that such testimony would be unfairly prejudicial, cumulative, and inadmissible. Plaintiffs cannot evade the Court's ruling by reframing this grief testimony through the lens of various diagnoses that are clearly cumulative of the testimony that the beneficiaries can provide about their own grief. And those diagnoses are unreliable under Rule 702 in any event. This testimony should be excluded.[1]

## BACKGROUND

Before the June 2023 trial date, Boeing moved to exclude expert testimony about the beneficiaries' grief, sorrow, and mental suffering because such testimony would be cumulative, unfairly prejudicial, and unhelpful to the jury. *See* ECF 1736. This Court granted the motion in relevant part, as it was "not convinced that these experts will really add anything beyond the understanding of a lay jury" when it comes to the grief of adult beneficiaries. Ex. 1 (June 5, 2023 Hr'g. Tr.) at 44:16–17. The Court also explained that such expert testimony would be "more prejudicial than probative" because it is "the sort of thing that adds a scientific sheen or a gloss of expertise to something that is . . . within the understanding of normal people." *Id.* at 51:10–15.

---

[1] The *Lewis* Plaintiffs also disclosed Dr. Richard Cockerill as a *retained* expert under Rule 26(a)(2)(B). While Dr. Cockerill's testimony suffers the same basic flaws as these non-retained experts' testimony, Boeing is filing a separate motion to exclude his testimony.

1

The testimony would also "be cumulative based on the testimony of the beneficiaries who will communicate their feelings and their grief directly to the jury." *Id.* at 51:15–18. For all these reasons, the Court excluded grief-related expert testimony relating to adult beneficiaries.

Boeing filed another motion before the November 2023 trial to exclude similar grief testimony from two treating mental health providers. ECF 1862. Presumably recognizing that the Court's previous order barred this testimony, Plaintiffs agreed not to call those witnesses, so that motion was withdrawn, and the Court denied it as moot. ECF 1890.

Despite the Court's clear order and Plaintiffs' prior decision to withdraw inadmissible grief testimony from treating mental health providers, Plaintiffs in the *Dieci*, *Lewis*, and *Belanger* cases disclosed five such providers—none of whom are medical doctors—to offer opinions and testimony about the grief and sorrow of adult beneficiaries.

### A. *Dieci* providers

**Dr. Nadia Neri** is a psychologist and psychotherapist who counseled ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Ex. 2 (Neri Dep.) at 8:2, 14:22, 37:7–9 (stating at her May 2024 deposition that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬). She is not a medical doctor. *Id.* at 45:2–3. She was disclosed as a non-retained expert under Rule 26(a)(2)(C) and did not provide a written report, giving only a "[b]rief description of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." Ex. 3 (Neri Disclosure) at -1190. She confirmed that she has no written notes ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 2 at 43:10–14.

Dr. Neri's testimony about ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ From these conversations, Dr. Neri concluded

2

that ▮▮ Ex. 3. Dr. Neri concludes ▮▮

▮▮ *Id.* at 16:8–12.

Based on ▮▮ Dr. Neri claimed in her deposition (for the first time) that she ▮▮ (*id.* at 47:5–8). Dr. Neri admitted that she never "conducted any written assessments ▮▮" (*id.* at 49:16–18), never "used or administered any questionnaires ▮▮" (*id.* at 49:23–50:1), and never used the Diagnostic and Statistical Manual of Mental Disorders (DSM) (*id.* at 48:4–8). In addition, Dr. Neri opined that ▮▮ *Id.* at 23:13–25. These diagnosis and causation opinions appeared nowhere in her written disclosure.

**Dr. Gabriella Tambone** is a psychotherapist who counseled ▮▮. *See* Ex. 4 (Tambone Disclosure) at 1; Ex. 5 (Tambone Dep.) at 8:16, 15:6–8. She is not a medical doctor. Ex. 5 at 36:22–25. Like Dr. Neri, Dr. Tambone was disclosed as a non-retained expert and did not provide a report or any notes of her sessions, giving only a short disclosure summarizing her counseling ▮▮. *Id.* at 33:13–16. Dr. Tambone admitted in her deposition that her testimony is "based on [her] recollection of things that ▮▮ told [her]." *Id.* at 33:17–21; *see also id.* at 33:10–12 ("This is not my opinion. This is what ▮▮ told me about during our sessions."). Dr. Tambone drew from these conversations that ▮▮ ▮▮ Ex. 4 at -1110.

3

Like Dr. Neri, Dr. Tambone also claimed to have diagnosed ▌, even though this diagnosis appears nowhere in her disclosure and she performed no "written diagnostic tests." Ex. 5 at 19:14–16, 20:6–11. She also testified that ▌ *Id.* at 20:12–21:5. Dr. Tambone confirmed that ▌ was based on her meetings with ▌, and she admitted that since then, she has not evaluated ▌ and does not know whether she has continued to exhibit symptoms. *Id.* at 44:24–45:10.

### B. *Lewis* providers

***Dr. Tonya Phillips*** is a clinical social worker—not a psychologist, psychiatrist, or medical doctor. Ex. 6 (Phillips Dep.) at 23:14–25:8. She met with ▌ *Id.* at 48:23–49:5. She has had no contact with ▌ since then. *Id.* at 102:4–13. Dr. Phillips was disclosed as a non-retained expert and provided notes from her sessions ▌ but no report. *See* Ex. 7 (Phillips Therapy Notes).

During her deposition, Dr. Phillips confirmed that ▌ Ex. 6 at 59:15–18. Dr. Phillips testified about ▌ *Id.* at 72:9–12, 84:7–10. Dr. Phillips says she diagnosed ▌ *Id.* at 53:17–22, 100:18–22. Dr. Phillips also testified, however, that ▌ *Id.* at 106:17–20.

***Jennie Linn Williams***, according to Plaintiffs' disclosure, is "a mental health provider" (not a medical doctor) who also treated ▌ and who was also disclosed as a non-

4

retained expert. Ex. 8 at 4. Ms. Williams has not been deposed.[2] Plaintiffs' disclosures state that Ms. Williams intends to testify about ▌ *Id.* Ms. Williams did not provide a report but did produce notes from ▌ *Id.* at -104. The notes show that ▌ *Id.* at -99. And they suggest that she may have diagnosed ▌ but the notes provide no analysis or details regarding these possible diagnoses. *Id.* at -110, -126, -153.

    C.    *Belanger* **provider**

**Tania Jacobs** is a psychologist. She is not a medical doctor or a psychiatrist. Ex. 10 (Jacobs Dep.) at 22:19–24. Plaintiffs identified her as a witness, but she is the only provider *not* disclosed as an expert under Rule 26. She did not produce a report. Ms. Jacobs had ▌ *Id.* at 27:13–17, 30:10–13. Ms. Jacobs did not render any diagnoses. *Id.* at 28:21–29:5.

At her deposition, Ms. Jacobs confirmed that ▌ *Id.* at 28:9–15. Ms. Jacobs testified that ▌ *Id.* at 34:1–3, 44:15–16. And they "frequently" discussed ▌

---

[2] Ms. Williams is an employee of the Defense Health Agency and her attendance at trial or deposition must be obtained consistent with the Department of Defense regulations and procedures. Plaintiffs' counsel in the *Lewis* case has not yet confirmed whether they intend to comply with those procedures and bring her to trial. If they do so, Boeing has reserved its right to seek her deposition.

5

███ *Id.* at 37:13–16. Ms. Jacobs also used ███ *Id.* at 17:15–16, 34:4–22. According to Ms. Jacobs, ███

## ARGUMENT

Under Rule 702(a), an expert witness may offer an opinion when the "expert's scientific, technical, or other specialized knowledge will help the trier of fact." The expert's testimony must also be "the product of reliable principles and methods." Fed. R. Evid. 702(c). "The proponent of the expert bears the burden of demonstrating, by a preponderance of the evidence, that 'the expert's testimony would satisfy the *Daubert* standard.'" *Vanzant v. Hill's Pet Nutrition Inc.*, 2023 WL 6976988, at *1 (N.D. Ill.) (quoting *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)). Under Rule 403, the Court may exclude "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice" or "needlessly presenting cumulative evidence" (among other things). Similarly, under Rule 703, inadmissible facts or data underlying an expert's opinion may be disclosed "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

Despite this Court's ruling that expert testimony about the grief and sorrow of adult beneficiaries would be "cumulative" and "more prejudicial than probative" (Ex. 1 at 51:12–18), Plaintiffs have put forward five mental health providers who will opine about the grief of adult beneficiaries. This testimony should be excluded for the reasons already stated by the Court—and for additional reasons too.

6

I. **Provider testimony about adult beneficiaries' grief falls squarely within the Court's order barring such testimony and should be excluded.**

The issue here is straightforward. All five of these providers plan to testify about the grief and sorrow of adult beneficiaries. But as this Court already held, grief and sorrow are within "the understanding of a lay jury." Ex. 1 at 44:16–17. Thus, these providers do not offer "specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rather, the testimony would be "more prejudicial than probative" because it is "the sort of thing that adds a scientific sheen or a gloss of expertise to something that is . . . within the understanding of normal people." Ex. 1 at 51:12–15.

Moreover—as the Court also already held—this testimony would be "cumulative based on the testimony of the beneficiaries who will communicate their feelings and their grief directly to the jury." *Id.* at 51:12–18; *see, e.g.*, Ex. 2 at 51:3–5 (███████████████████████████████████████████); Ex. 5 at 33:17–21 (███████████████████████████████████████████). In fact, several of the providers confirmed that the beneficiaries were fully able to articulate their grief. ███████████████████████████████████████████ All this testimony therefore falls squarely within this Court's prior ruling and should be excluded.

It makes no difference that these witnesses are treating providers rather than retained experts. Plaintiffs appeared to recognize this when they previously withdrew providers after Boeing moved to preclude them from testifying about the beneficiaries' grief. *See* ECF 1862.

7

Nor does it matter that Ms. Jacobs was not disclosed as an expert at all. Plaintiffs cannot circumvent this Court's ruling by designating treating providers as fact witnesses instead of expert witnesses.[3] The fundamental problems remain: grief testimony offered by these witnesses "is simply an attempt to put a patina of science over something that everyone understands" (*Sardis v. Overhead Door Corp.*, 2019 WL 560273, at *3 (E.D. Va.), *rev'd and remanded on other grounds*, 10 F.4th 268 (4th Cir. 2021)) and "would simply be cumulative of" the beneficiaries' "own testimony" (*Fields v. Withoff*, 2015 WL 5174000, at *2 (S.D. Ill.)). *See also* ECF 1736 at 6–12 (Boeing's original briefing). The jury will hear these individuals' credentials and perceive them as experts, no matter what they are called, and they will all paint the same "scientific sheen or gloss" on the beneficiaries' grief that this Court sought to prevent.

Nor does it matter that, to our knowledge, there is one beneficiary (Cecilia Dieci) who was seen by these providers and who is apparently not testifying at trial. It was Plaintiffs' choice to withdraw Ms. Dieci as a damages witness so that she was not deposed, and it is Plaintiffs' choice whether to present her testimony to the jury. While Boeing is sensitive to the difficulties that a beneficiary might experience testifying at trial, a beneficiary's decision not to testify cannot open the door to grief-expert testimony that the Court has already found to be prejudicial, and Plaintiffs should not be permitted to circumvent the Court's ruling by replacing the testimony of the beneficiaries with the testimony of experts and providers. Indeed, that would impair Boeing's ability to verify or challenge the testimony of the expert, given that the

---

[3] Of course, if Ms. Jacobs plans to give expert testimony, then Plaintiffs' failure to disclose her as an expert would also compel her exclusion. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("[E]ven treating physicians . . . must be designated as experts if they are to provide expert testimony.").

testimony is based on what a beneficiary said but the beneficiary is not available for Boeing to question directly.

And when it comes to Ms. Dieci in particular, non-experts are available to testify to her grief. Ms. Dieci lives with Ms. Mattioli (her mother), who was able to speak at length about her daughter in her deposition and is certainly able to testify about Ms. Dieci's grief at trial. *See* Ex. Ex. 11 (Mattioli Dep. Tr.) at 11:7–8 ("I live with Cecilia"), 19:8–21:2 (testifying about Ms. Dieci's activities), 94:25–96:10 (testifying about Ms. Dieci's grief), 102:6–106:19 (same). So again, the core problems remains: expert testimony about Ms. Dieci's grief would be "cumulative" and "is more prejudicial than probative" because it "adds a scientific sheen or a gloss of expertise to something that is . . . within the understanding of normal people." Ex. 1 at 51:12–18. For this reason, too, there is no reason for the Court to depart from its prior order and allow prejudicial and cumulative expert testimony about Ms. Dieci's—or anyone else's—grief.

**II.   The providers' diagnosis and causation opinions are unreliable and should be excluded on that basis.**

Independently, the Court should exclude under Rule 702 the diagnosis and causation opinions of Dr. Neri ███████████████████████████, Dr. Tambone ███████, Dr. Phillips ██████████████████████████████, and Ms. Williams ████████████████████ ████████████████████████.

**A.   The diagnosis opinions are unreliable and cannot open a backdoor for inadmissible grief testimony in any event.**

To start, three of these providers' diagnoses lack any background at all and are thus unreliable. The record is silent on the basis and method for Dr. Neri's diagnosis ████████ ████████████. Indeed, Dr. Neri had no record of this diagnosis at all. Dr. Phillips's therapy notes ████████████████████████████████████████████ ████████████████ ████████████████████████████████████████████████████████████████

9

███████████████████████████████ *E.g.*, Ex. 7 at -6. Ms. Williams's notes similarly state that ███████

████████████████████████████████████████████

████████ Ex. 9 at -110, -126, -153. No explanation at all for their diagnoses was contained in their disclosures, including the short treatment summaries that Dr. Neri and Dr. Tambone provided. And at their depositions, Plaintiffs' counsel never explored the bases for these diagnoses or established their reliability in any way. Indeed, Plaintiffs' counsel never even deposed Ms. Williams at all.

It is not Boeing's job "to make a record of the factual basis of the expert's testimony by way of a deposition." *Krischel v. Hennessy*, 533 F. Supp. 2d 790, 797 (N.D. Ill. 2008) (citing *Gregory v. Oliver*, 2002 WL 31972165, at *1–2 (N.D. Ill.)). Regardless of who noticed these depositions, the "burden is on the party seeking to present testimony under Rule 702 to demonstrate that the testimony meets the requirements of the Rule and of *Daubert*." *Id.* (citing advisory committee notes to Rule 702, which state that "all expert testimony" is subject to the rule that "the proponent has the burden of establishing admissibility by a preponderance of the evidence"). Plaintiffs failed to do that, so these diagnoses must be excluded as unreliable.

Dr. Neri's and Dr. Tambone's ██████████ are also unreliable. When diagnosing ██

████ ████████████████████████████████████████████

████████████████████████████████████ Ex. 2 at 48:4– 8, 48:14–16. In fact, she claimed that she did not need to use "such a schematic approach" at all. *Id.* at 47:20–25. And she admitted that she did not conduct "any written assessments" ██████ ██ or administer any questionnaires. *Id.* at 49:16–50:5. There is no stated methodology or approach to support Dr. Neri's ██████████ at all. *See Rowe v. Gibson*, 798 F.3d 622, 627

10

(7th Cir. 2015) ("A court should not admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." (quotation marks omitted)). And while Dr. Tambone suggested that some part of ▓▓▓▓ (Ex. 5 at 19:17–20:5), she admitted that she performed no "written diagnostic tests" ▓▓▓▓ (*id.* at 19:14–16). And neither she nor Dr. Neri used ▓▓▓▓

▓▓▓▓ This Court should do the same.

What's more, with the possible exception of Dr. Neri, none of these providers have met with the beneficiaries in months or years. For example, ▓▓▓▓ Ex. 5 at 41:3–7. Dr. Phillips has not spoken with ▓▓▓▓ Ex. 6 at 102:4–13. And Ms. Jacobs's last session with ▓▓▓▓. Ex. 10 at 25:15–18. Thus, to the extent these providers could possibly provide any unique insight into the beneficiaries' mental states through testimony about diagnoses, it would be based on outdated information and inherently unreliable. *See United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 238–39 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019) (excluding expert whose opinion was based on "outdated" data); *Ask Chems., LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (same). The testimony should be excluded on that basis, too.

11

But even if any of these experts are allowed to testify about the mere fact of their diagnoses, they should not be permitted to testify about the beneficiaries' grief underlying those diagnoses. Under Rule 703, experts can generally testify about the facts or data underlying their opinions. But Rule 703 cannot "be used as a backdoor" around the Court's order to allow Plaintiffs' experts to testify about beneficiaries' grief in front of the jury. *Utherverse Gaming, LLC v. Epic Games, Inc.*, 2023 WL 9231334, at *3 (W.D. Wash.) (quoting *Emigh v. Consol. Rail Corp.*, 710 F. Supp. 608, 612 (W.D. Pa. 1989)). The rule provides that if the facts or data underlying an opinion "would otherwise be inadmissible"—as expert testimony about adult beneficiary grief is here—"the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. And for all the reasons the Court has already given, expert testimony about the beneficiaries' grief is "more prejudicial than probative." Ex. 1 at 51:12.

Indeed, the providers made clear that the "facts or data" underlying their diagnoses are the beneficiaries' own descriptions of their grief. Dr. Neri stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 46:16–21. Dr. Phillips testified that Ms. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 at 53:17–22. And Dr. Tambone testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5 at 19:17–20:5. All of this is obviously testimony about the beneficiaries' grief and sorrow. All of it stems from the beneficiaries' own descriptions of their grief, which they can share with the jury directly. And none of it is beyond the common understanding of the jury. Thus, whether or not any of these experts are allowed to inform the jury of their diagnoses, they should not be permitted to offer

inadmissible expert testimony about beneficiaries' grief simply by adding a diagnosis opinion on top of it.

### B. Dr. Neri's and Dr. Tambone's causation opinions were not properly disclosed and are unreliable.

Finally, Dr. Neri and Dr. Tambone claimed that ███████████████████ ███████████████████ Ex. 2 at 23:13–25; Ex. 5 at 20:12–21:5. But these causation opinions were not properly disclosed in a written report or in their disclosures and, in any event, are unsupported and unreliable.

First, these causation opinions appear nowhere in Dr. Neri's and Dr. Tambone's disclosures and must be excluded for that reason alone. Even though treating providers are not generally required to provide a formal written report under Rule 26(a)(2)(B), courts have routinely held that such providers still must do so if they are opining on causation: "[W]hen the testimony of a treating physician goes beyond the scope of treatment, observation, and diagnosis, and includes opinions on causation, prognosis or the future impact of the injury, the treating physician must provide a report satisfying the requirements of Rule 26(a)(2)(B)." *Krischel*, 533 F. Supp. 2d at 795. And while Plaintiffs sometimes tried to preempt this limitation—asking Dr. Tambone, for example, whether "considering the cause" of a patient's symptoms is "something that you do in the normal course and treatment" (Ex. 5 at 21:7–11)—no provider actually testified that *determining* the cause ███████ is subsumed in "the scope of treatment, observation, and diagnosis" ███████ (*Krischel*, 533 F. Supp. 2d at 795). And neither Dr. Tambone nor anyone else provided notes or other evidence to suggest that determining the cause ███████ is a standard part of treatment. *See, e.g.*, *Klein v. Carasas*, 2022 WL 4358102, at *2 (S.D. Ga.) ("It is impossible for the Court to determine whether the treating physicians' unspecified causation

13

opinions were formed based on observations made during [plaintiff's] treatment because the record only indicates that they *may* testify about" causation.).

Second, Dr. Neri and Dr. Tambone also provide no reliable basis for these causation opinions other than their say-so. Dr. Neri provided *zero* basis for her opinion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 2 at 23:13–25), and Dr. Tambone stated that her causation opinion was based solely on the fact that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 5 at 20:24–5). But again, the "burden is on the party seeking to present testimony under Rule 702 to demonstrate that the testimony meets the requirements of the Rule and of *Daubert*." *Krischel*, 533 F. Supp. at 797. Plaintiffs have not done so. Neither Dr. Neri nor Dr. Tambone provided a written report on causation, as they should have, and their testimony "leaves a host of questions unanswered" regarding causation. *Id.* at 796. For example, and most critically, the record is devoid of any indication that Drs. Neri and Tambone "systematically 'rule[d] in' and 'rule[d] out'" other "potential causes" in arriving at their causation opinions—as they must. *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 705 (7th Cir. 2015) (affirming district court's exclusion of an expert's causation opinion); *see also Wells v. Red Banner Transp., LLC*, 2023 WL 438802, at *3 (W.D. Tex.) ("To offer reliable causation testimony, 'medical causation experts must have *considered and excluded* other possible causes of injury.'" (quoting *McNabney v. Lab Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005))).

What we do know is that neither used ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, so their opinions lack the necessary scientific rigor to be admissible under Rule 702. *See, e.g.*, *Vaughn*, 2021 WL 2008469, at *8. Thus, even if Dr. Neri and Dr. Tambone are permitted to testify about their ▇▇▇ diagnoses, they should be precluded from offering any opinion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14

## CONCLUSION

For these reasons, the Court should preclude Dr. Nadia Neri, Dr. Gabriella Tambone, Dr. Tonya Phillips, Jennie Linn Williams, and Tania Jacobs from testifying at trial (live or by deposition designation) about adult beneficiaries' grief. Independently, the Court should exclude all these witnesses' diagnosis and causation opinions.

| | |
|---|---|
| DATED March 3, 2025 | **THE BOEING COMPANY** |

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## CERTIFICATE OF SERVICE

  I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                    /s/ *Dan K. Webb*
                    **WINSTON & STRAWN LLP**
                    35 West Wacker Drive
                    Chicago, Illinois 60601-9703
                    Phone: (312) 558-5600