# EXHIBIT 1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3                                         ) Lead Case No. 19 CV 2170
                                           )
 4   IN RE:   ETHIOPIAN AIRLINES            ) FINAL PRETRIAL
     FLIGHT ET 302 CRASH                   ) CONFERENCE
 5                                         )
                                           ) Chicago, Illinois
 6                                         ) Date: June 5, 2023
                                           ) Time: 11:00 a.m.
 7   _____

 8              TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
                            HELD BEFORE
 9              THE HONORABLE JUDGE JORGE L. ALONSO
                     UNITED STATES DISTRICT JUDGE
10   _____

11                       A P P E A R A N C E S

12
     For the Plaintiffs:      Robert A. Clifford, Esq.
13                            Kevin P. Durkin, Esq.
                              Tracy A. Brammeier, Esq.
14                            Yvette C. Loizon, Esq.
                              John V. Kalantzis, Esq.
15                            Clifford Law Offices PC
                              120 North LaSalle Street, Suite 3600
16                            Chicago, Illinois  60602
                              312-899-9090
17
     For Certain              Steven C. Marks, Esq.
18   Plaintiffs:              Ricardo Martinez-Cid
                              Kristina Infante, Esq.
19                            Podhurst Orseck, PA
                              One SE Third Avenue, Suite 2300
20                            Miami, Florida  33131
                              305-358-2800
21
     (Appearances continued on the next page.)
22

23   COURT REPORTER:          Annette M. Montalvo, CSR, RDR, CRR
                              Official Court Reporter
24                            United States Courthouse, Room 1902
                              219 South Dearborn Street
25                            Chicago, Illinois  60604
                              312-818-6683
```

```
 1   APPEARANCES:   (Cont'd)

 2

 3   For Certain              Justin T. Green, Esq.
     Plaintiffs:              Kreindler & Kreindler LLP
 4                            485 Lexington Avenue, 28th Floor
                              New York, New York   10017
 5                            212-973-3414

 6

 7   For Certain              Frank M. Pitre, Esq.
     Plaintiffs:              John P. Thyken, Esq.
 8                            Nabilah A. Hossain, Esq.
                              Cotchett, Pitre & McCarthy, LLP
 9                            840 Malcolm Road, Suite 200
                              Burlingame, California   94010
10                            650-697-6000

11

12   For Certain              Zhidong Wang, Esq.
     Plaintiffs:              Z Wang & Associates, PC
13                            20 South Clark Street, Suite 750
                              Chicago, Illinois   60603
14                            312-782-1668

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES:   (Cont'd)

 2


 3   For Defendant          Dan Webb, Esq.
     The Boeing Company:    Christopher Essig, Esq.
 4                          Julia Johnson, Esq.
                            Samuel M. Zuidema, Esq.
 5                          Linda Coberly, Esq.
                            Winston & Strawn LLP
 6                          35 West Wacker Drive
                            Chicago, Illinois   60601
 7                          312-588-5600
                                   -and-
 8                          Christopher Ledford, Esq.
                            Perkins Coie LLP
 9                          1201 Third Avenue
                            Seattle, Washington  98101
10                          206-359-6642

11

12   For Defendants         (No appearance)
     Rosemount
13   Aerospace, Inc.
     and Rockwell
14   Collins:

15

16

17

18   _____
19   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.
20

21

22   Court Reporter:   Annette M. Montalvo, CSR, RDR, CRR

23

24

25
```

1  moved to exclude that testimony.

2  THE COURT: All right. Next is 1729. That's Boeing
3  motion to exclude nonbenificiaries' mental suffering. This
4  was updated in the June 2, 2023 status report. And in that
5  report the parties acknowledged that the plaintiffs did not
6  file a written response. And the parties agree that their
7  dispute over what nonbeneficiary testimony is admissible is
8  best addressed in the context of rulings on deposition
9  designations rather than in this motion.

10  So not really a suggestion of what to do with the
11  motion. I will deny the motion without prejudice to any of
12  these arguments being raised in their disputes over deposition
13  designation. So it is denied without prejudice. That's 1729.

14  Next is Boeing's motion to exclude testimony of
15  plaintiffs' grief experts, 1736. This motion is going to be
16  granted. I am not convinced that these experts will really
17  add anything beyond the understanding of a lay jury or juror.
18  Plaintiff does raise one potentially persuasive argument, that
19  the experts will be able to articulate the probable effects of
20  grief for surviving children who are not yet mature enough to
21  articulate their feelings themselves.

22  How about some argument from the plaintiffs on that
23  point?

24  MR. CLIFFORD: Well, certainly --
25  THE COURT: Any elaboration, what sort of testimony?

1          MR. CLIFFORD:  Mr. John Thyken, with your permission,
2   will speak to this.
3          MR. THYKEN:  Thank you, Your Honor.  John Thyken with
4   Cotchett, Pitre & McCarthy.  I have not introduced myself so
5   far.
6          Speaking specifically to the children, as you know,
7   this June case involves at least three children, three mothers
8   who are pregnant with children at the time of the crash.  So
9   those kids are approximately four years old today.  And they
10  simply lack the language and the maturity to articulate their
11  grief.  And they also have no idea what's in store for them in
12  the future and their grief process.  And these grief experts
13  and thanatologists have specialized knowledge about the risk
14  factors facing these children.  For example, Donna Schuurman's
15  one of the preeminent experts in children who lose a parent.
16  And she articulates in her report a number of factors.  So
17  there's ten factors that are present for anyone who loses a
18  loved one, and she articulates those.  And I would argue that
19  that's relevant to the adults as well, but I will get to that
20  in a moment.
21         But specifically for the children, there is ample
22  scientific studies and literature discussing what risks,
23  including things like higher risk of depression, poorer
24  performance in schooling, things like that naturally come out
25  of losing a parent at a young age.  And so because the

1  children can't testify themselves because there's -- grief
2  experts need to testify to articulate what they are going
3  through.
4  　　　　　With respect to the adults, I understand your
5  opinion, Your Honor, that grief is something that the jury can
6  understand themselves and they don't need an expert to explain
7  that to them.  And while the average juror may have lost
8  someone tragically in their life, and they may understand
9  grief generally, as the experts point out, again, that's very
10 different from losing someone in this horrific, sudden nature,
11 where you have hundreds of people trapped in an airline, dying
12 simultaneously, where their remains are destroyed beyond
13 recognition, where you're constantly reminded about this loss
14 in the media.  I don't think the average juror is going to
15 understand that.  And, again, as, for example, Donna Schuurman
16 points out, those ten risk factors which she should speak to
17 so that the jury can fully comprehend and put this grief in
18 its proper context, I think her testimony would definitely
19 assist the jury in assessing that.
20 　　　　　MR. CLIFFORD:  And if I may supplement my young
21 colleague, we do maintain, just so the record is clear, the
22 plaintiffs do maintain that these grief experts add an
23 enormous contribution to the jurors' understanding of grief.
24 Widows and widowers are not the best people to explain their
25 grief to a jury in this courtroom.  That's one of the reasons

1  why in medical science grief counseling and experts are known
2  practitioners, health care providers, who can fully explain
3  complicated grief, can fully explain triggers. So for an
4  example, there is evidence out there in the record where some
5  of these family members would tell you, whether you permit it
6  at trial or not is a different subject, they will tell you
7  there have been in the last four years various triggering
8  events that they've become aware of relative to what has been
9  disclosed about how their loved ones died.
10     And these grief experts will tell you that it's a
11  cycle that they go through. I don't know if you remember, but
12  one of the features that's unique to the emotional distress
13  and grief that some of these families experience, if not
14  indeed all of them, is how the funerals were conducted, or, in
15  fact, for one individual, multiple funerals. Because, you
16  know, this morning I dealt with an Israeli client. And I
17  recall in that one, the family couldn't sit shiva. They had
18  to get a special rabbinical court three weeks later, and had
19  to fight for it to permit them to have, basically, their
20  service, their mourning beginning. Then they received on one
21  occasion some body part, and then they received months later
22  another body part, and went through the ordeal of that funeral
23  service once again.
24     And the point being that these grief experts can help
25  explain that intelligently, calmly, and with a medical basis

1 for doing so to a jury as distinguished from us trying to get
2 a grieving widow through the tears that would follow to even
3 try to get her to articulate that story.
4 　　　　So that's -- I mean, your ruling is what it's going
5 to be on these grief experts, but I'm sitting here thinking,
6 okay, how are we going to get this evidence in front of the
7 jury.  Is it just to argue that everybody understands it?
8 And, Judge, that's just not medically accurate.  And not
9 everybody does understand it.
10 　　　　And so having the testimony, whether it's for the
11 minors or for the adults on a case by case basis, is to be
12 presented, is something that we think is essential to the
13 case.  And as a matter of fact, one of the things I'm going to
14 ask you for at some point, tell me when the best time is, is
15 in advance of the trial, relative to any expert that you have
16 excluded, especially these grief guys, I'd like to bring them
17 in, have an offer, a proffer for you.  Put them on the stand.
18 Or do a Zoom with them.  Because these things matter.  They
19 matter a lot.
20 　　　　So thank you for listening, sir.
21 　　　　THE COURT:  Ms. Coberly.
22 　　　　MS. COBERLY:  Your Honor, the plaintiffs themselves
23 can testify as to their own grief, sorrow, and mental
24 suffering, and we understand that, and that will be a very
25 important part of the trial.  And they may be able to offer

1  family testimony as well, if it's based on personal knowledge.
2  But what they can't do is bolster that testimony through
3  experts, which will simply invite the jury to credit the
4  conclusions of a purported expert, as opposed to having the
5  jury draw its own conclusions.
6      Mr. Clifford mentioned a couple of times a medical
7  basis. None of these experts are medical doctors. And they
8  do fall within the kind of testimony and expert that courts
9  routinely exclude.
10     Another, just to caveat, there's one other important
11 problem, which is that these grief experts were also going to
12 be among the witnesses presenting testimony that encroaches
13 too far on the liability and punitive basis for recovery and
14 so that's a concern with these experts as well.
15     On the issue about children, the three experts we're
16 talking about, Velasquez, Reid, and Schuurman, the examination
17 of these children was not the focus of their work. Velasquez,
18 who is the expert for Sautner, that expert interviewed
19 Sautner's partner twice. The son was present in only one of
20 them. He was sometimes on screen, he was sometimes not. The
21 expert said she had a playful exchange with him, but the
22 interview was more about his mother.
23     Reid, who is the expert in *Huang*, he interviewed
24 Huang's son only once over Zoom for about 30 minutes. And he
25 concedes that some of the information he got was from the

1 father and not from the son.

2 And Schuurman did not interview Tsang's children and
3 did not interview Riffel's daughter.  She just spoke with the
4 parents about them.  So there's nothing that these experts can
5 tell us and can tell the jury about the current state of these
6 children that the parents cannot tell us.

7 Now as for the risk of what might happen in the
8 future, the kinds of experiences that a child might have in
9 the future, having lost a parent, that is a risk of a future
10 injury, and that is not compensable under Illinois law.  And I
11 would refer the Court to the *Berry* case, 2020 IL 124999,
12 paragraph 33, which relies on the Restatement.

13 That was a medical monitoring case, but the principle
14 of law articulated in that case is that in a negligence
15 action, an increased risk of harm or injury in the future is
16 not compensable as an injury under Illinois law.

17 And so we would submit that the -- that harm that the
18 children are suffering today is compensable, but these experts
19 are not well positioned to offer helpful testimony on that
20 subject because they did not examine the children in the way
21 they would need to.

22 And as for future discussions about what a child
23 might experience in the future, those kinds of future
24 potential risks are speculative and not recoverable as a
25 matter of Illinois law.

1        MR. CLIFFORD:  And if I may respond, Your Honor.

2        THE COURT:  No.  Thank you.  The motion's fully
3  briefed, I have heard argument.  Thank you.

4        The motion is going to be granted.  In large measure
5  it is going to be granted with the exception of this one issue
6  that we've been discussing here, the issue of the children,
7  the possible effects of grief for the surviving children,
8  based on the fact that the children are not old enough, not
9  mature enough to articulate these effects themselves.  That
10 argument is persuasive.  Otherwise, the motion is going to be
11 granted.  Otherwise, the testimony of these three experts, the
12 grief experts, I find is more prejudicial than probative.
13 Again, it's the sort of thing that adds a scientific sheen or
14 a gloss of expertise to something that is not only within the
15 understanding of normal people, but is also something that is
16 likely going to be cumulative based on the testimony of the
17 beneficiaries who will communicate their feelings and their
18 grief directly to the jury.

19       So with that exception, the motion's going to be
20 granted.  That's number 1736.

21       That gets us to Boeing's motion in limine to exclude
22 evidence of distress induced by this litigation.  That's 1741.
23 And per the June 2 status report, plaintiffs acknowledge that
24 they did not respond.

25       MR. CLIFFORD:  Your Honor?