**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Weisman |

**BOEING'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT
DR. RICHARD COCKERILL IN *LEWIS***

**TABLE OF CONTENTS**

Page

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................5

I.   Dr. Cockerill's opinion that Ms. Lopez-Lewis has ███████████████ is unreliable and should be excluded. ...........................................................5

   A.   Dr. Cockerill's causation opinion is unreliable because he did not employ a valid causation methodology ............................................................5

   B.   Dr. Cockerill's methodology is also unreliable because he did nothing to verify Ms. Lopez-Lewis's symptoms. ...................................................10

II.  Dr. Cockerill's ███████████████ is unreliable. ......................................11

III. Dr. Cockerill's opinions about ███████████ are speculative and unreliable. .......12

IV.  Dr. Cockerill's improperly disclosed opinions and certain other anticipated testimony should be excluded under this Court's prior order ..........................14

CONCLUSION ..................................................................................................................15

Boeing moves under Federal Rules of Evidence 403, 702, and 703 and this Court's prior orders to exclude the opinions of Plaintiff's expert in the *Lewis* case, Dr. Richard Cockerill. Dr. Cockerill was hired for this litigation to perform a psychiatric assessment of the decedent's wife, Yalena Lopez-Lewis. He never treated or counseled her. He offers several opinions, including that Ms. Lopez-Lewis has ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Boeing in no way means to minimize the effect of the accident on Ms. Lopez-Lewis and fully acknowledges that the tragic loss of a husband can result in lasting feelings of grief, sorrow, and mental suffering. And she will testify to those matters personally. But Dr. Cockerill's opinions are not the product of a reliable scientific methodology, based on facts, or supported by literature. These opinions do not meet the requirements of Rule 702, so they should be excluded.

***First***, in forming his opinion that Ms. Lopez-Lewis has ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, Dr. Cockerill did not use a proper differential etiology. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thus, as Dr. Cockerill admitted, his assessment would ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ He then failed to verify Ms. Lopez-Lewis's self-reported symptoms by using symptom validity testing, reviewing her medical records, or speaking with family and friends. His assessment did not use a reliable, scientifically accepted methodology for

1

determining the cause of Ms. Lopez-Lewis's ▇ and should be excluded. Nor should he be allowed to opine that ▇▇▇▇▇ — an opinion first disclosed in his deposition and squarely at odds with those set forth in his report.

***Second***, Dr. Cockerill's ▇▇▇ is unreliable because he did nothing to confirm it. Dr. Cockerill admitted, for example, that ▇▇▇  ▇▇▇ This opinion is therefore speculative and unreliable.

***Third***, Dr. Cockerill opines that ▇▇▇ But he admitted that he does not know whether Ms. Lopez-Lewis has actually experienced these effects. And his opinion that ▇▇▇ rests precariously on a single article with express limitations. This opinion, too, is speculative and unreliable.

***Finally***, Dr. Cockerill opined for the first time in his deposition that Ms. Lopez-Lewis's  *None* of these opinions were disclosed in his expert report. This Court has stricken new expert opinions offered at deposition, and it should do so again here. Similarly, as the Court has done in the past, it should exclude any testimony offered by Dr. Cockerill regarding Ms. Lopez-Lewis's grief and litigation-induced stress.

For these reasons, Dr. Cockerill's opinions either lack a reliable basis, were never properly disclosed, or are inadmissible under the Court's prior orders. They should be excluded.

## BACKGROUND

Ms. Lopez-Lewis is the wife of decedent Antoine Lewis. She has served in the U.S. Army since 2009 and has been deployed to Iraq and Afghanistan. Dr. Cockerill is a psychiatrist

2

who was retained in this case to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1 (Cockerill Rep.) at 1.

Dr. Cockerill is not one of Ms. Lopez-Lewis's mental health providers and has never met her in person. Ex. 2 (Cockerill Dep.) at 46:16–18, 46:25–47:24. He knows her only from one remote interview he had with her in July 2024, which lasted two-and-a-half hours. *Id.* at 38:4–15. During the interview, Dr. Cockerill told her that he was hired "by her attorneys" to "answer certain questions that might be relevant" to the "legal proceeding." *Id.* at 47:4–11.

As Dr. Cockerill explained in his deposition, his assessment focused on a "singular trauma in Ms. Lopez-Lewis's life": it was "entirely focused on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.* at 141:3–19. He has not spoken with Ms. Lopez-Lewis since July 2024 and does not know whether the mental health care she has received since then has helped with the symptoms she reported during her interview with him. *Id.* at 38:4–15, 87:14–19.

Dr. Cockerill diagnosed Ms. Lopez-Lewis with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is based on the symptoms the participant reports, also known as a "self-reporting" assessment. Dr. Cockerill claims that Ms. Lopez-Lewis ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1 at 6; Ex. 3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Dr. Cockerill also purported to determine via his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In doing so, Dr. Cockerill ostensibly relied on the "chronology" and "content" of her symptoms. Ex. 2 at 97:7–98:2, 209:23–210:20. His report claims that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

███ Ex. 1 at 7. ███

███

███ Ex. 3 at 1; Ex. 2 at 93:11–94:2. ███

███

Ex. 2 at 120:6–24. ███

███. Instead, Dr. Cockerill performed a "semi-structured clinical interview" (*id*. at 104:21–105:12) with some "less formally structured" elements (*id*. at 118:8–24). He also admitted that he ███ *Id*. at 144:15–20.

Dr. Cockerill also opines that Ms. Lopez-Lewis ███ Ex. 1 at 8. He says that Ms. Lopez-Lewis has ███ *Id*. He also claimed for the first time at his deposition that she will have ███ Ex. 2 at 213:7. But he also admitted that his report did not discuss a ███ *Id*. at 218:25–219:6.

Finally, Dr. Cockerill's report mentions, in two sentences, that ███ Ex. 1 at 8. He cites a single article in support. *Id*. During his deposition, he clarified that he was only opining that Ms. Lopez-Lewis had a ███

4

██ Ex. 2 at 181:10–13. He conceded that ██████████████████

████████████ (*id*. at 182:11–14), that ████████████████████

████████████████ (*id*. at 219:7–11), and that ████████████████

████████████████ (*id*. at 185:25–186:6, 186:24–187:4). And the one article he cites to

support his statement makes clear that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 4

████████████ at 264, 272.

## ARGUMENT

I. **Dr. Cockerill's opinion that ████████████████████████████
is unreliable and should be excluded.**

Under Rule 702(c), courts must ensure that an expert's opinion is "the product of reliable

principles and methods." While the loss of a spouse in an accident like ET302 is undoubtedly

traumatic, Dr. Cockerill's methodology for assessing whether ████████████████ is

unreliable. Despite admitting that ████████████████████████████████

████████████████████████████████████████████████████████████

████████████ and did not perform a proper differential etiology. He then failed to even verify Ms.

Lopez-Lewis's reported symptoms by, for instance, reviewing medical records or talking to

family. Thus, Dr. Cockerill's opinion that ████████████████████████████ is

unreliable and must be excluded.

    A. **Dr. Cockerill's causation opinion is unreliable because he did not employ a valid causation methodology.**

████████████████████████████████, Dr. Cockerill claims to have performed a

differential diagnosis. Ex. 2 at 98:3–99:4. But he did not perform a differential diagnosis in

attempting to determine ████████████████, despite admitting that ████████████

5

███████████████████████████████████████████████████████ *Id*. at 120:6–18.

Instead, Dr. Cockerill's conclusion on causation drove his analysis, not the other way around. That is "not good science." *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1039–40 (S.D. Cal. 2021) (excluding expert whose analysis "was unduly results-driven"). Dr. Cockerill's "results-driven analysis . . . raises significant reliability concerns," and his opinion should be excluded. *In re Paraquat Prods. Liab. Litig.*, 730 F. Supp. 3d 793, 840 (S.D. Ill. 2024).

A differential etiology, also commonly referred to as a "differential diagnosis," is an accepted method for identifying the cause of a medical condition. *See Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 705 (7th Cir. 2015); *see also* Ex. 5 (June 5, 2023 Hr'g) at 41:24–42:22 ("[A] differential diagnosis" means "assessing all the potential causes and ruling them out one by one."). "[I]n a differential etiology, the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "Though differential diagnosis is widely accepted as a general matter, an expert's decision to 'rule in' or 'rule out' potential causes must itself be 'scientifically valid.'" *Robinson v. Davol Inc.*, 913 F.3d 690, 696 (7th Cir. 2019) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). Thus, courts must "act as a vigorous gatekeeper to ensure the reliability of" the differential etiology. *Robinson v. Davol Inc.*, 913 F.3d 690, 696 (7th Cir. 2019). That's what this Court has done, previously excluding the causation opinion of one of Plaintiffs' experts because he did not properly "rule out all . . . potential causes" in a differential diagnosis. Ex. 5 at 41:24–42:22.

6

Dr. Cockerill has not established the reliability of his causation analysis. *Robinson*, 913 F.3d at 696. Nor could he. To start, he admitted that the result of his analysis was a product of its design: his assessment ██████████████████████ which would then ██████████ ████████████████████████████████████████████ Ex. 2 at 144:15–20; *see id.* at 141:3–8 (admitting that ████████████████████████████████ "). ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████. 3 at 1; *see* Ex. 2 at 102:6–12, 104:11–18; Ex. 6 ████████.

████████████████████████████████████████████████████████████████

████████████████████████████████████████

Dr. Cockerill then failed to use the other prompts included ████████████████ ████████████████████████ For instance, he was supposed to ask Ms. Lopez-Lewis ████ ████████████████████████████ Ex. 3 at 4. ████████████████████ ████████████████ Ex. 2 at 140:3–5. Next, he was supposed to ask her to ████████ ████████████████████████ Ex. 3 at 4. He did not ask this question either. *Id.* at 140:11–14. In short, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ As a consequence, Dr. Cockerill's causation opinion is mere *ipse dixit*, resting on his own assumption rather than on a reliable differential etiology or any objective assessment of alternative causes. And "nothing in *Daubert* or the Federal Rules of Evidence require a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Ex. 7 (Oct. 16, 2023 Hr'g) at 47:12–15.

Just as Dr. Cockerill did not reliably "rule in" potential causes, nor did he systematically "rule out" potential causes. *See Brush v. Old Navy LLC*, 687 F. Supp. 3d 452, 467 (D. Vt. 2023) (expert admitted that he "instructed Plaintiff to focus on [one] incident during his interviews," which "in turn, appears to have resulted in a failure to rule out other causes"). For example, ██████████ Ex. 2 at 129:3–9. ██████████ *Id.* at 113:15–17. ██████████ *Id.* at 129:3–9. ██████████ *Id.* at 132:2–133:13. ██████████ *Id.* at 115:6–14. ██████████ *Id.* at 131:13–19. ██████████ (*id.* at 131:23–25), ██████████ *Id.* at 131:13–25. ██████████ *Id.* at 109:6–112:9. ██████████ (*id.* at 123:10–14) ██████████ (*id.* at 115:15–22). A differential etiology demands that Dr. Cockerill rule out all these events "*one by one*." Ex. 5 at

8

42:6–7 (emphasis added); *see also Tardif v. City of New York*, 344 F. Supp. 3d 579, 601 (S.D.N.Y. 2018) (to "systematically rule out" a cause, an expert must "address obvious alternative causes and provide a reasonable explanation for dismissing" them). He did not do so.

Dr. Cockerill cannot rescue his causation opinion by changing it, as he tried to do in his deposition. There, he said for the first time that ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒ Ex. 2 at 203:17–206:7. But that opinion contradicts the disclosed opinions in his expert report—that ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ Ex. 1 at 7–8. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒:

Q. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒
A. ▒
Q. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒
A. ▒

Ex. 2 at 116:14–24. Dr. Cockerill also testified that ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. *Id.* at 133:11–134:21. But again, that is not in his report. Instead, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ Ex. 1 at 8 ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Dr. Cockerill never explained how to reconcile these two conflicting opinions. Thus, his

9

new and improperly disclosed opinion about █████████████████████████ ███████████████ should be excluded for the reasons set forth in Section IV.

Nor can Dr. Cockerill rest his causation opinion on the "timing" of Ms. Lopez-Lewis's symptoms—"a fairly significant factor" in his analysis. Ex. 2 at 134:22–135:10. The Seventh Circuit has made clear that "[t]he mere existence of a temporal relationship between [a purportedly precipitating event] and the onset of symptoms does not show a sufficient causal relationship." *Ervin*, 492 F.3d at 904–05; *see also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010).

Certainly, Ms. Lopez-Lewis suffered a tragic loss when the accident occurred. But Dr. Cockerill's opinion on ████████████████████████████ is deeply flawed. He decided at the outset that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████ He did not explore other potential causes, let alone rule them out. That is not a sound or reliable methodology.

### B. Dr. Cockerill's methodology is also unreliable because he did nothing to verify Ms. Lopez-Lewis's symptoms.

"[A] physician who evaluates a patient in preparation for litigation should seek more than a patient's self-report of symptoms." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994); *see also Brush*, 687 F. Supp. 3d at 468 (causation opinions made "solely for purposes of . . . litigation . . . weighs against [their] reliability"). But Dr. Cockerill did not perform any symptom or performance validity testing to confirm Ms. Lopez-Lewis's reported symptoms on which he based his diagnosis and causation opinions. "Symptom validity testing" is conducted to confirm that a patient is actually experiencing the symptoms claimed. Ex. 2 at 159:19–160:7. Although Dr. Cockerill has used such testing in his practice, he did not do so here. *Id.* at 160:9–

10

161:18. Nor did he use performance validity testing to test for "memory problems" or "other cognitive issues," even though he uses such tests in his clinical practice. *Id.* at 161:20–162:23.

Dr. Cockerill also took no steps at all to verify whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See, e.g., Tardif*, 344 F. Supp. 3d at 601 (excluding causation opinion where expert "did not review any of [plaintiff]s pre-[accident] mental health records, despite his awareness that plaintiff [had] other traumas before"). The only medical records he reviewed were from her mental health providers *after* the crash, and he did not speak with those providers or review their test results. Ex. 2 at 40:25–42:3, 56:11–20, 110:12–15, 138:20–23. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 117:5–9. He did not speak to any members of Ms. Lopez-Lewis's family. *Id.* at 41:6–11. He did not speak to her primary care doctor. *Id.* at 41:12–19. He simply did not do the work required to verify Ms. Lopez-Lewis's symptoms or to know whether she experienced any symptoms ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Because Dr. Cockerill did not do more to investigate ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, or verify her symptoms, his opinion is unreliable and should be excluded.

## II. Dr. Cockerill's ▇▇▇▇▇▇▇▇▇▇▇▇▇ opinion is unreliable.

The Court should exclude Dr. Cockerill's opinions ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Under Federal Rule of Evidence 702(b), an expert's testimony must be "based on sufficient facts or data." Expert opinions are unreliable when "their 'underlying bases' [are] improperly based upon 'speculation' and 'unfounded inferences.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 783 (7th Cir. 2017). While Dr. Cockerill claims that Ms. Lopez-Lewis's symptoms are ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 1 at 8), that opinion is based not on facts and data.

11

Starting with Ms. Lopez-Lewis's ███████████████, Dr. Cockerill admitted that ████████████████████████████████████████████ ████████████████████████████████████████ Ex. 2 at 41:9–11, 174:8–15. In fact, she received a promotion to Chief Warrant Officer 3 in July 2023 (*id*. at 171:14–20) ████████████████████████████ ███████████ (*id*. at 169:15–19). Similarly, as for her ███████████████████, Dr. Cockerill admitted that he never spoke with any of her family members, friends, or mental health providers. *Id*. at 41:6–8, 41:20–42:3. In short, he opines that ████████████████████ but has done nothing to confirm that opinion. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions").

In addition, Dr. Cockerill offered a new, improperly disclosed opinion at his deposition that ████████████████████████████████████████ ████████████████████████ Ex. 2 at 210:21–213:7. But he admitted that his expert report did not discuss ████████████████████████████ ████████████████████████████████████ *Id*. at 218:25–219:6. Thus, for reasons discussed in Section IV, this improperly disclosed opinion must be excluded too.

**III.    Dr. Cockerill's opinions about ████████████ are speculative and unreliable.**

Dr. Cockerill's report briefly remarks that ████████████████████████ ██████  Ex. 1 at 8. This opinion is similarly speculative and unreliable.

There is no evidence that ████████████████████████████ Indeed, Dr. Cockerill agreed he would need ████████████████████████████ ████████████████████████ (Ex. 2 at 219:7–11), and ████████ ██████ Further, while contending that ████████████████████████

12

██████████████████████████████████████████████

██████████████████████████████████████ *Id.* at 185:25–186:6, 186:24–187:4. He therefore admitted that ████████████████████████████████████████ *Id.* at 182:11–14.

In his deposition, Dr. Cockerill clarified that he is really opining that ███████████ ████████████████████████████████████████████████████████████ ███████████████ *Id.* at 182:7–14. But he provided no support for that opinion either. He cites a single article to support his view that █████████████████████████ Ex. 1 at 8 (citing Ex. 4 at 263–278). But he overinterprets the findings summarized in that article, which makes clear that researchers are still trying to determine █████████████ ████████████████████████████████████████████████████████ For example, the study notes that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ (*id.* at 264) and that █████████████ ████████████████████████████████████████████████████████████ ████████████████████████ (*id.* at 271) (emphases added). It also stresses that ████████████████████████████████████████████████████████████ █████████████ *Id.* at 272.

In other words, Dr. Cockerill is "extrapolat[ing] conclusions beyond the scope of [his] source[]," rendering his opinion unreliable and inadmissible. *Rodman v. Otsuka Am. Pharm., Inc.*, 564 F. Supp. 3d 879, 891 (N.D. Cal. 2020); *see also In re Accutane Prod. Liab.*, 2009 WL 2496444, at *2 (M.D. Fla.) ("[W]hen an expert relies on the studies of others, he must not exceed the limitations the authors themselves place on the study."), *aff'd*, 378 F. App'x 929 (11th Cir.

13

2010). His opinion regarding an increased, hypothetical risk of loss of brain volume are speculative and based on "nothing more than [his] say-so." *Echo, Inc. v. Timberland Machs. & Irr., Inc.*, 661 F.3d 959, 965 (7th Cir. 2011) (quotation marks omitted). Thus, the Court should exclude any opinions regarding ▮▮▮▮▮▮▮▮▮▮▮.

### IV.   Dr. Cockerill's improperly disclosed opinions and certain other anticipated testimony should be excluded under this Court's prior order.

This Court has previously excluded new expert opinions offered in depositions (Ex. 5 at 10:4–19), expert testimony on the grief and sorrow of adult beneficiaries (*id*. at 44:14–21, 51:4–20), and testimony about a beneficiary's grief being exacerbated or induced by this litigation (*id*. at 53:11–22). The Court should reiterate and reinforce all these prior decisions as they relate to Dr. Cockerill.

First, as this Court has ruled, an expert cannot disclose new opinions in a deposition because doing so "turns the process upside down." *Id.* at 10:14–19; *see, e.g.*, *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify."). Here, Dr. Cockerill did not disclose several of his opinions until his deposition. These include the two already mentioned: that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2 at 99:5–100:2, 203:17–206:7) and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (*id*. at 210:23–213:7). He also gave two other opinions at his deposition that were never disclosed in his report: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. at 189:20–190:7) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. at 209:5–22).

His opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a new opinion elicited by Plaintiff's counsel on redirect. It appears nowhere in his report. Dr. Cockerill claims it was in his

14

report because ▮▮▮ ▮▮▮ *Id.* at 220:6–14. But his report said only that ▮▮▮ ▮▮▮ ▮▮▮ Ex. 1 at 9 (emphasis added). And the DSM-5 itself (an authoritative guide published by the American Psychiatric Association on diagnosing mental disorders) says that ▮▮▮ Ex. 8 (DSM-5 Manual). What's more, Dr. Cockerill agrees that ▮▮▮ ▮▮▮ (Ex. 2 at 217:3–7) but does not know whether Ms. Lopez-Lewis's symptoms have improved since he interviewed her seven months ago (*id.* at 87:14–19). So even if Dr. Cockerill can testify that ▮▮▮, he cannot testify that ▮▮▮ ▮▮▮."

As for his new opinion that ▮▮▮ ▮▮▮, he admitted that this opinion was not disclosed anywhere in his report. *Id.* at 217:9–23. Nor does he cite or point to any scientific literature in support. All Dr. Cockerill's improperly disclosed opinions should be excluded under this Court's prior order.

Second, Boeing anticipates that Plaintiff's counsel will attempt to elicit testimony from Dr. Cockerill regarding Ms. Lopez-Lewis's grief and litigation-induced distress. Such testimony is foreclosed by this Court's prior orders excluding such testimony. Ex. 5 at 44:14–53:18.

## CONCLUSION

For all these reasons, the Court should exclude Plaintiff's expert Dr. Richard Cockerill.

15

DATED March 3, 2025					THE BOEING COMPANY

							By: /s/ *Dan K. Webb*					
							*One of Its Attorneys*

							Dan K. Webb
							dwebb@winston.com
							Linda T. Coberly
							lcoberly@winston.com
							Christopher B. Essig
							cessig@winston.com
							Julia M. Johnson
							jmjohnson@winston.com
							Samuel M. Zuidema
							szuidema@winston.com
							**Winston & Strawn LLP**
							35 West Wacker Drive
							Chicago, Illinois 60601-9703
							Phone: (312) 558-5600

							Sandra A. Edwards
							sedwards@winston.com
							**Winston & Strawn LLP**
							101 California Street
							35th Floor
							San Francisco, CA 94111-5840
							Phone: (415) 591-1000

							Christopher M. Ledford
							CLedford@perkinscoie.com
							Mack H. Shultz
							MShultz@perkinscoie.com
							**Perkins Coie LLP**
							1201 Third Avenue, Suite 4900
							Seattle, Washington 98101-3099
							Phone: (206) 359-8000
							Fax: (206) 359-9000

							Jon R. Buck
							JBuck@perkinscoie.com
							**Perkins Coie LLP**
							131 S. Dearborn, Suite 1700
							Chicago, Illinois 60603-5559
							Phone: (312) 324-8400
							Fax: (312) 324-9400

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

                                                    /s/ *Dan K. Webb*
                                                    **WINSTON & STRAWN LLP**
                                                    35 West Wacker Drive
                                                    Chicago, Illinois 60601-9703
                                                    Phone: (312) 558-5600