# EXHIBIT 5

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3                                      ) Lead Case No. 19 CV 2170
                                        )
 4   IN RE:  ETHIOPIAN AIRLINES          ) FINAL PRETRIAL
     FLIGHT ET 302 CRASH                 ) CONFERENCE
 5                                      )
                                        ) Chicago, Illinois
 6                                      ) Date: June 5, 2023
                                        ) Time: 11:00 a.m.
 7   _____

 8           TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
                          HELD BEFORE
 9            THE HONORABLE JUDGE JORGE L. ALONSO
                  UNITED STATES DISTRICT JUDGE
10   _____

11                     A P P E A R A N C E S

12
     For the Plaintiffs:    Robert A. Clifford, Esq.
13                          Kevin P. Durkin, Esq.
                            Tracy A. Brammeier, Esq.
14                          Yvette C. Loizon, Esq.
                            John V. Kalantzis, Esq.
15                          Clifford Law Offices PC
                            120 North LaSalle Street, Suite 3600
16                          Chicago, Illinois  60602
                            312-899-9090
17
     For Certain            Steven C. Marks, Esq.
18   Plaintiffs:            Ricardo Martinez-Cid
                            Kristina Infante, Esq.
19                          Podhurst Orseck, PA
                            One SE Third Avenue, Suite 2300
20                          Miami, Florida  33131
                            305-358-2800
21
     (Appearances continued on the next page.)
22

23   COURT REPORTER:        Annette M. Montalvo, CSR, RDR, CRR
                            Official Court Reporter
24                          United States Courthouse, Room 1902
                            219 South Dearborn Street
25                          Chicago, Illinois  60604
                            312-818-6683
```

```
 1   APPEARANCES:   (Cont'd)

 2

 3   For Certain              Justin T. Green, Esq.
     Plaintiffs:              Kreindler & Kreindler LLP
 4                            485 Lexington Avenue, 28th Floor
                              New York, New York   10017
 5                            212-973-3414

 6

 7   For Certain              Frank M. Pitre, Esq.
     Plaintiffs:              John P. Thyken, Esq.
 8                            Nabilah A. Hossain, Esq.
                              Cotchett, Pitre & McCarthy, LLP
 9                            840 Malcolm Road, Suite 200
                              Burlingame, California   94010
10                            650-697-6000

11

12   For Certain              Zhidong Wang, Esq.
     Plaintiffs:              Z Wang & Associates, PC
13                            20 South Clark Street, Suite 750
                              Chicago, Illinois   60603
14                            312-782-1668

15

16

17

18

19

20

21

22

23

24

25
```

```
 1  APPEARANCES:  (Cont'd)

 2

 3  For Defendant        Dan Webb, Esq.
    The Boeing Company:  Christopher Essig, Esq.
 4                       Julia Johnson, Esq.
                         Samuel M. Zuidema, Esq.
 5                       Linda Coberly, Esq.
                         Winston & Strawn LLP
 6                       35 West Wacker Drive
                         Chicago, Illinois  60601
 7                       312-588-5600
                                -and-
 8                       Christopher Ledford, Esq.
                         Perkins Coie LLP
 9                       1201 Third Avenue
                         Seattle, Washington  98101
10                       206-359-6642

11

12  For Defendants       (No appearance)
    Rosemount
13  Aerospace, Inc.
    and Rockwell
14  Collins:

15

16

17

18  _____
19  Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.
20

21

22  Court Reporter:  Annette M. Montalvo, CSR, RDR, CRR

23

24

25
```

1  explain how he is connecting those g-forces to particular
2  injuries or harms.  So, again, that motion 1542 is granted in
3  large part.
4           5 is Boeing's motion to strike supplemental expert
5  reports.  That's 1586, 1587 redacted.  This motion is going to
6  be granted, as is, skipping ahead, 15 -- I'm sorry, 1755.
7  These are, again, Boeing's motion to strike supplemental
8  expert reports.  Boeing argues that plaintiffs have served
9  supplemental expert reports for the case specific experts in
10 1755.  And in both motions they are both going to be granted.
11 Boeing argues that plaintiffs have served supplemental expert
12 reports for the -- purporting to incorporate opinions the
13 experts disclosed at their depositions, but I agree with
14 Boeing that this is improper.  The purpose of the expert
15 report, the expert report is to disclose an expert's opinion
16 without the need for the deposition of the witness, and I
17 agree with Boeing that the notion that the expert can disclose
18 new opinions during the deposition turns the process upside
19 down.  So 1586 and 15 -- and 1755 are going to be granted.
20          Next are plaintiffs' motions to exclude Boeing's
21 experts.  And number 1537 is plaintiffs' motion to exclude the
22 testimony of Dr. Durand Begault, B-e-g-a-u-l-t.  And I believe
23 that this motion is moot at this point in that I granted
24 Boeing's motion to exclude the testimony of expert Norton as
25 to what the passengers could hear.

1   Seventh Circuit holds that arguments about how the selection
2   of data inputs affect the merits of the conclusions produced
3   by an accepted methodology should normally be left to the
4   jury.  While Rule 702 requires expert opinions to be based on,
5   quote, sufficient facts or data, Boeing does not establish
6   that the expert's opinions -- I'm sorry, that the expert's
7   departure from his normal process was significant enough to
8   affect the reliability of his methodology.
9          So we will let the jury consider what weight should
10  be given to his testimony.  Boeing also argues that Mr. Reid
11  admitted that he was influenced by plaintiffs and their
12  counsel, but I believe that another reading is that he simply
13  acknowledges that he understands the incentives of the people
14  that are involved in this litigation, not -- it need not be
15  read as an admission that his analysis is unreliable.
16         So, on balance, I find that his testimony will help
17  the trier of fact and is the product of a sufficiently
18  reliable professional methodology to be admissible under 702.
19  Again, the weight to be given his testimony and questions
20  about his credibility are matters for Boeing to explore on
21  cross-examination and in argument, not a basis for exclusion.
22         So the motion is denied.  That is the motion as to
23  expert Reid, number 1703.
24         Next is *Daubert* motion regarding the expert Donald
25  Null.  This is 1705 and 1706.   1706 is the redacted version.

1  This motion is going to be granted.  I find that Dr. Null does
2  not reliably establish the basis for his opinion, that the
3  grief of Ms. Cheung, C-h-e-u-n-g, decedent's wife and the
4  mother of the prematurely born child caused her preterm labor.
5  Dr. Null purports to perform a differential diagnosis, meaning
6  assessing all the potential causes and ruling them out one by
7  one.  But, in fact, as Boeing persuasively demonstrates, he
8  does not have sufficient evidence to rule out all the
9  potential causes, and he is therefore unable to do so.  He
10 does not have reliable evidence that a pregnant women's
11 emotional distress is known to cause preterm labor.  There is
12 one study, the Peruvian study that specifically cautions that
13 while it demonstrates an association, quote, it's nature
14 prevents any inference on any causal relationship between
15 experiencing serious life events and preterm labor.
16         Plaintiffs' response focuses on the cases that are
17 cited by Boeing in its *Daubert* motion but not on the facts.
18 Dr. Null simply doesn't have the facts that are necessary.
19 And because I find that causation opinion should be excluded,
20 it follows that opinions about the effects of the premature
21 birth on the child Selina are not relevant.  So they will also
22 be excluded.
23         I'll also exclude the opinion about the psychological
24 effects on Ms. Cheung of her child's stay in the neonatal
25 intensive care unit, as I find that it is beyond Dr. Null's

1  area of professional expertise.  And while it may grow out of
2  Dr. Null's experience, it is not something that the jury needs
3  expert testimony on.  I believe that everyone can understand
4  that it would be stressful to have a child in the NICU.  So,
5  ultimately, it's not helpful to the trier of fact, and there
6  is a danger of misleading a jury by giving this testimony the
7  gloss of expertise, *Victory Records, Inc. v. Virgin Records*,
8  2011 WL 382743, Northern District case from 2011, when, in
9  fact, the testimony does not really grow out of any true
10 expertise.
11             So the *Daubert* motion is granted as to Dr. Null.
12             Next is the *Daubert* motion to exclude
13 nonbeneficiary --
14             MR. CLIFFORD:  Your Honor, not to interrupt you, but
15 may I ask as a point of information on the Dr. Null rulings.
16             THE COURT:  Sure.  Yes.
17             MR. CLIFFORD:  So I'm visualizing Ms. Cheung on the
18 witness stand.  I take it she's not prohibited from describing
19 what occurred to her on the day of the crash and that she was
20 taken to -- from church, to the hospital, where she was
21 immediately admitted and went into preterm labor, and her
22 child was, in fact, admitted for a couple months' duration.
23             THE COURT:  She is not.  She is not.
24             What say the defense on that?
25             MS. COBERLY:  We agree, Your Honor.  We have not

1   moved to exclude that testimony.

2          THE COURT:  All right.  Next is 1729.  That's Boeing
3   motion to exclude nonbenificiaries' mental suffering.  This
4   was updated in the June 2, 2023 status report.  And in that
5   report the parties acknowledged that the plaintiffs did not
6   file a written response.  And the parties agree that their
7   dispute over what nonbeneficiary testimony is admissible is
8   best addressed in the context of rulings on deposition
9   designations rather than in this motion.

10         So not really a suggestion of what to do with the
11  motion.  I will deny the motion without prejudice to any of
12  these arguments being raised in their disputes over deposition
13  designation.  So it is denied without prejudice.  That's 1729.

14         Next is Boeing's motion to exclude testimony of
15  plaintiffs' grief experts, 1736.  This motion is going to be
16  granted.  I am not convinced that these experts will really
17  add anything beyond the understanding of a lay jury or juror.
18  Plaintiff does raise one potentially persuasive argument, that
19  the experts will be able to articulate the probable effects of
20  grief for surviving children who are not yet mature enough to
21  articulate their feelings themselves.

22         How about some argument from the plaintiffs on that
23  point?

24         MR. CLIFFORD:  Well, certainly --

25         THE COURT:  Any elaboration, what sort of testimony?

1        MR. CLIFFORD:  Mr. John Thyken, with your permission,
2   will speak to this.
3        MR. THYKEN:  Thank you, Your Honor.  John Thyken with
4   Cotchett, Pitre & McCarthy.  I have not introduced myself so
5   far.
6        Speaking specifically to the children, as you know,
7   this June case involves at least three children, three mothers
8   who are pregnant with children at the time of the crash.  So
9   those kids are approximately four years old today.  And they
10  simply lack the language and the maturity to articulate their
11  grief.  And they also have no idea what's in store for them in
12  the future and their grief process.  And these grief experts
13  and thanatologists have specialized knowledge about the risk
14  factors facing these children.  For example, Donna Schuurman's
15  one of the preeminent experts in children who lose a parent.
16  And she articulates in her report a number of factors.  So
17  there's ten factors that are present for anyone who loses a
18  loved one, and she articulates those.  And I would argue that
19  that's relevant to the adults as well, but I will get to that
20  in a moment.
21       But specifically for the children, there is ample
22  scientific studies and literature discussing what risks,
23  including things like higher risk of depression, poorer
24  performance in schooling, things like that naturally come out
25  of losing a parent at a young age.  And so because the

1  children can't testify themselves because there's -- grief
2  experts need to testify to articulate what they are going
3  through.
4        With respect to the adults, I understand your
5  opinion, Your Honor, that grief is something that the jury can
6  understand themselves and they don't need an expert to explain
7  that to them.  And while the average juror may have lost
8  someone tragically in their life, and they may understand
9  grief generally, as the experts point out, again, that's very
10 different from losing someone in this horrific, sudden nature,
11 where you have hundreds of people trapped in an airline, dying
12 simultaneously, where their remains are destroyed beyond
13 recognition, where you're constantly reminded about this loss
14 in the media.  I don't think the average juror is going to
15 understand that.  And, again, as, for example, Donna Schuurman
16 points out, those ten risk factors which she should speak to
17 so that the jury can fully comprehend and put this grief in
18 its proper context, I think her testimony would definitely
19 assist the jury in assessing that.
20        MR. CLIFFORD:  And if I may supplement my young
21 colleague, we do maintain, just so the record is clear, the
22 plaintiffs do maintain that these grief experts add an
23 enormous contribution to the jurors' understanding of grief.
24 Widows and widowers are not the best people to explain their
25 grief to a jury in this courtroom.  That's one of the reasons

1  why in medical science grief counseling and experts are known
2  practitioners, health care providers, who can fully explain
3  complicated grief, can fully explain triggers.  So for an
4  example, there is evidence out there in the record where some
5  of these family members would tell you, whether you permit it
6  at trial or not is a different subject, they will tell you
7  there have been in the last four years various triggering
8  events that they've become aware of relative to what has been
9  disclosed about how their loved ones died.
10             And these grief experts will tell you that it's a
11 cycle that they go through.  I don't know if you remember, but
12 one of the features that's unique to the emotional distress
13 and grief that some of these families experience, if not
14 indeed all of them, is how the funerals were conducted, or, in
15 fact, for one individual, multiple funerals.  Because, you
16 know, this morning I dealt with an Israeli client.  And I
17 recall in that one, the family couldn't sit shiva.  They had
18 to get a special rabbinical court three weeks later, and had
19 to fight for it to permit them to have, basically, their
20 service, their mourning beginning.  Then they received on one
21 occasion some body part, and then they received months later
22 another body part, and went through the ordeal of that funeral
23 service once again.
24             And the point being that these grief experts can help
25 explain that intelligently, calmly, and with a medical basis

1 for doing so to a jury as distinguished from us trying to get
2 a grieving widow through the tears that would follow to even
3 try to get her to articulate that story.
4 　　　　So that's -- I mean, your ruling is what it's going
5 to be on these grief experts, but I'm sitting here thinking,
6 okay, how are we going to get this evidence in front of the
7 jury.  Is it just to argue that everybody understands it?
8 And, Judge, that's just not medically accurate.  And not
9 everybody does understand it.
10 　　　　And so having the testimony, whether it's for the
11 minors or for the adults on a case by case basis, is to be
12 presented, is something that we think is essential to the
13 case.  And as a matter of fact, one of the things I'm going to
14 ask you for at some point, tell me when the best time is, is
15 in advance of the trial, relative to any expert that you have
16 excluded, especially these grief guys, I'd like to bring them
17 in, have an offer, a proffer for you.  Put them on the stand.
18 Or do a Zoom with them.  Because these things matter.  They
19 matter a lot.
20 　　　　So thank you for listening, sir.
21 　　　　THE COURT:  Ms. Coberly.
22 　　　　MS. COBERLY:  Your Honor, the plaintiffs themselves
23 can testify as to their own grief, sorrow, and mental
24 suffering, and we understand that, and that will be a very
25 important part of the trial.  And they may be able to offer

1 family testimony as well, if it's based on personal knowledge.
2 But what they can't do is bolster that testimony through
3 experts, which will simply invite the jury to credit the
4 conclusions of a purported expert, as opposed to having the
5 jury draw its own conclusions.
6 Mr. Clifford mentioned a couple of times a medical
7 basis. None of these experts are medical doctors. And they
8 do fall within the kind of testimony and expert that courts
9 routinely exclude.
10 Another, just to caveat, there's one other important
11 problem, which is that these grief experts were also going to
12 be among the witnesses presenting testimony that encroaches
13 too far on the liability and punitive basis for recovery and
14 so that's a concern with these experts as well.
15 On the issue about children, the three experts we're
16 talking about, Velasquez, Reid, and Schuurman, the examination
17 of these children was not the focus of their work. Velasquez,
18 who is the expert for Sautner, that expert interviewed
19 Sautner's partner twice. The son was present in only one of
20 them. He was sometimes on screen, he was sometimes not. The
21 expert said she had a playful exchange with him, but the
22 interview was more about his mother.
23 Reid, who is the expert in *Huang*, he interviewed
24 Huang's son only once over Zoom for about 30 minutes. And he
25 concedes that some of the information he got was from the

1  father and not from the son.

2  And Schuurman did not interview Tsang's children and
3  did not interview Riffel's daughter. She just spoke with the
4  parents about them. So there's nothing that these experts can
5  tell us and can tell the jury about the current state of these
6  children that the parents cannot tell us.

7  Now as for the risk of what might happen in the
8  future, the kinds of experiences that a child might have in
9  the future, having lost a parent, that is a risk of a future
10 injury, and that is not compensable under Illinois law. And I
11 would refer the Court to the *Berry* case, 2020 IL 124999,
12 paragraph 33, which relies on the Restatement.

13 That was a medical monitoring case, but the principle
14 of law articulated in that case is that in a negligence
15 action, an increased risk of harm or injury in the future is
16 not compensable as an injury under Illinois law.

17 And so we would submit that the -- that harm that the
18 children are suffering today is compensable, but these experts
19 are not well positioned to offer helpful testimony on that
20 subject because they did not examine the children in the way
21 they would need to.

22 And as for future discussions about what a child
23 might experience in the future, those kinds of future
24 potential risks are speculative and not recoverable as a
25 matter of Illinois law.

1          MR. CLIFFORD:  And if I may respond, Your Honor.
2          THE COURT:  No.  Thank you.  The motion's fully
3   briefed, I have heard argument.  Thank you.
4          The motion is going to be granted.  In large measure
5   it is going to be granted with the exception of this one issue
6   that we've been discussing here, the issue of the children,
7   the possible effects of grief for the surviving children,
8   based on the fact that the children are not old enough, not
9   mature enough to articulate these effects themselves.  That
10  argument is persuasive.  Otherwise, the motion is going to be
11  granted.  Otherwise, the testimony of these three experts, the
12  grief experts, I find is more prejudicial than probative.
13  Again, it's the sort of thing that adds a scientific sheen or
14  a gloss of expertise to something that is not only within the
15  understanding of normal people, but is also something that is
16  likely going to be cumulative based on the testimony of the
17  beneficiaries who will communicate their feelings and their
18  grief directly to the jury.
19         So with that exception, the motion's going to be
20  granted.  That's number 1736.
21         That gets us to Boeing's motion in limine to exclude
22  evidence of distress induced by this litigation.  That's 1741.
23  And per the June 2 status report, plaintiffs acknowledge that
24  they did not respond.
25         MR. CLIFFORD:  Your Honor?

1    THE COURT: Boeing notes that plaintiffs did not file
2 an opposition to Boeing's motion to exclude evidence of
3 litigation-induced distress. Boeing requests that this motion
4 be granted. Plaintiffs opposed the request to grant the
5 motion before it is heard.
6    MR. CLIFFORD: Yes, Your Honor.
7    THE COURT: Go ahead.
8    MR. CLIFFORD: We believe that the response to this
9 motion simply feathers back in to the grief experts, that
10 there -- as I described for you just a short time ago, all of
11 these -- and, by the way, to say that mental health
12 counselors, which is what these people are, is not part of
13 a -- they are not health care providers, is just inaccurate.
14    THE COURT: So they're not doctors?
15    MR. CLIFFORD: They are not doctors.
16    THE COURT: Are they doctors?
17    MR. CLIFFORD: Some of them are Ph.D.s.
18    MS. COBERLY: They're not medical doctors,
19 Your Honor.
20    MR. CLIFFORD: Okay. Thank you.
21    THE COURT: Okay. Go ahead.
22    MR. CLIFFORD: But that said, what they speak to
23 regarding triggers is the various things I just described a
24 moment ago, whether it's the triggering effect of having to go
25 through multiple funerals, the triggering effect of having to

1  appear in front of a special rabbinical council to get
2  permission to have a funeral.  And those -- the triggering
3  effect of reading in the newspaper that -- this is one for
4  you, that Boeing pled guilt -- Boeing pled guilty and Boeing
5  opposed the fact that I'm a victim of a crime, and then having
6  to go through the ordeal of an adjudication about that.  These
7  are all things, whether they like them or not, are triggering
8  effects that impact the grief, sorrow, and emotional distress
9  of these families.  And that's the record that we would
10 eventually need to make and would like to make.
11              THE COURT:  All right.  And for that reason, you
12 argue that that sort of evidence, you just gave us a couple of
13 examples, would be relevant, and that is correct, but, of
14 course, we keep out relevant evidence every day in these
15 courtrooms for a variety of reasons, and that will not be
16 permitted as a mechanism to backdoor some of the evidence that
17 is not relevant, that only goes to liability, and the awarding
18 of damages for punitive reasons.
19              This motion, again, it is 1741.  The motion is well
20 supported.  It is also logical.  The motion's going to be
21 granted.  It's, again, 1741.  Boeing's motion to exclude
22 evidence of distress induced by the litigation.
23              All right.  There are other motions to seal,
24 et cetera, that I will include in the order.  The order that I
25 enter today regarding today's rulings won't be very detailed.