**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Civil No.  1:19-cv-02170 |
| This Document Relates To: | District Judge:  Hon. Jorge L. Alonso |
| NADEGE DUBOIS-SEEX, individually, Co-Personal Representative of the heirs of JONATHAN SEEX, deceased, and as Next Friend of A.S. (a minor), A.S., (a minor), and A.S. (a minor), NISHANT LAKHANI, Co-Personal Representative of the heirs of JONATHAN SEEX, deceased, and BRITT-MARIE SEEX, individually | |
| Case No.: 1:9-cv-3392 | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE AND IN OPPOSITION TO BOEING'S MOTION TO STRIKE THE REPORTS OF PLAINTIFFS' EXPERT DR. ODED SHENKAR IN *SEEX* AND TO PRECLUDE HIM FROM TESTIFYING AT TRIAL**

Defendant Boeing accuses plaintiffs and plaintiffs' counsel[1] of acting "willfully and in bad faith" (defendant's motion, p. 11) in "consistently flout[ing] the requirements of Rule 26" (defendant's motion, p. 1). Defendant moves for sanctions under Rule 37, striking the reports of plaintiffs' expert, Dr. Oded Shenkar, and precluding him from testifying.

Regrettably, defendant's motion far exceeds the bounds of zealous advocacy. It is replete with false statements as to the facts, mischaracterizes Dr. Shenkar's opinions, and is so devoid of any support for Rule 37 sanctions that perhaps it is plaintiffs who should be moving for sanctions.

---

[1] Plaintiffs' counsel is approaching 50 years as a member of the bar and has never before had opposing counsel make such accusations against him.

1

(1) Defendant moves for sanctions for plaintiffs' alleged delay of **5 days** in providing defendant with a list of the materials considered by Dr. Shenkar when one of defendant's experts admitted at his deposition—**28 days after the date for disclosure**—that he had not provided plaintiffs with a complete list of the materials he had considered (Exhibit A, deposition of Aaron Dolgoff, p 8:18-9:11) and now, **2 months after the date for disclosure,** defendant still has not made a complete disclosure. Defendant's other expert, **Dr. Guryan,** also testified that he **still has not provided** all the studies he relied upon. (Exhibit B, deposition of Dr. Guryan, p. 10:12-15)

(2) Defendant states Dr. Shenkar offers "more opinions" than stated in his three Reports (defendant's motion, p. 1), but defendant does not identify those alleged new opinions and **Dr. Shenkar repeatedly states that he has no additional opinions.** (Exhibit C, deposition of Dr. Shenkar, p. 40:25-41:8, 42:22-43:10)

(3) Defendant moves to strike an alleged "fourth report" by Dr. Shenkar as a sanction when **plaintiffs are not seeking to introduce any such fourth report.**

(4) Defendant attaches to its motion a **chart** purporting to list material allegedly disclosed after the date for expert reports, but this chart list **19 such documents, 15 of which do not concern the subject of expert opinion or were not considered by plaintiffs' expert,** while of the remaining four, two were disclosed long before the date for expert reports, while the other two documents were newly-discovered evidence disclosed prior to the close of discovery and prior to the deposition of plaintiffs' expert.

(5) Defendant bases its motion for sanctions, in part, on **Dr. Shenkar's deposition testimony concerning conversations he or plaintiffs' counsel had with non-party witnesses.** Dr. Shenkar testified that certain of the information obtained from these individuals merely confirmed information previously provided to him and disclosed to defendant months prior to his deposition, while other information was newly-discovered evidence, but also was disclosed to defendant prior to Dr. Shenkar's deposition and prior to the close of discovery.

(5) Defendant also complains about plaintiffs' alleged late disclosure of publications. **All publications are either listed in Dr. Shenkar's three reports or are admissible rebuttal evidence.** Again, in another display of hypocrisy, defendant lists 16 publications and studies in its exhibit list which are not referenced in its experts' reports.

**ARGUMENT**

**Plaintiffs' 5 Day Delay In Providing List of Materials Is Harmless**

Plaintiffs' expert, Dr. Oded Shenker, prepared three expert reports, one on the impact on a company of the death of its CEO (Exhibit D), a second report on the impact on Tamarind Management, Ltd. (TML)) caused by the death of plaintiffs' decedent Jonathan Seex (Exhibit E) and a third on the loss of earnings of Mr. Seex (Exhibit F). Dr. Shenkar explained that the CEO Report (Ex D) is not a valuation; it is background "without which you cannot understand" the other two Reports. (Ex C, p. 346:24-347:6). In the two valuation reports, Dr. Shenkar is offering opinions as to the economic loss to Mr. Seex's family resulting from his death, comprised of the loss of Mr. Seex's earnings, including benefits, wealth and business interest (Ex F), and the loss to Mr. Seex's equity interest as a 26.87% owner in TML. (Ex E) (Ex C, p. 18:18-20:7)

Defendant acknowledges plaintiffs timely served these three reports on defendant, together with Dr. Shenkar's CV, and information as to his prior testimony and compensation, on the due date of December 2, 2024 (Defendant's motion, p. 1), but defendant argues plaintiffs willfully violated Rule 26, requiring sanctions under Rule 37, by failing to timely provide the other information required by Federal Rule 26(a)(2)(B). (Defendant's motion, p. 1) However, the only information which defendant contends plaintiffs did not provide under Rule 26(a)(2)(B)(i)(ii)(iii)and (iv) on the due date is a list of materials considered by Dr. Shenkar under Rule 26(a)(2)(B)(ii). Defendant states plaintiffs did not provide this list of materials considered until 5 days later on December 7, 2024. (Defendant's motion, p. 2-3).

Federal Rule 26(a)(2)(B)(ii) does not refer to "a list of materials considered;" rather, it requires disclosure of the "facts or data" upon which the expert relies. Plaintiffs believed Dr. Shenkar's reports contained these "facts or data" within the reports themselves. Nevertheless,

plaintiffs promptly responded on December 7 to an e-mail from defendant's counsel of December 6, requesting Dr. Shanker's "documents or data files" and "programs or spreadsheets." At the same time, plaintiffs sent defendant, without being asked, a list of the materials considered by Dr. Shenkar. (Exhibit G, e-mail exchange; Exhibit H, list of materials considered) Defendant does not now complain that plaintiffs were late in providing the "documents or data files" and "programs or spreadsheets" of Dr. Shenkar. Defendant only complains about plaintiffs' service of the list of material considered.

Any error by plaintiffs in providing "facts or data" or a "list of materials considered" 5 days after the due date is harmless error. Defendant does not claim any prejudice; the information was provided to defendant over 7 weeks before the date for defendant's expert reports and almost 9 weeks before the depositions of defendant's first expert and plaintiffs' expert Dr. Shenkar. Defendant therefore had an opportunity to cure any error; there was no disruption to the trial 4 months away, and there is no evidence of plaintiffs' or counsel's bad faith. *David v Caterpillar, Inc.,* 324 F.3d 851 (7th Cir. 2003); *See also Kimble v Gleckler,* 2025 WL 406591 (S.D. Ohio 2025)

There is another important fact here. When plaintiffs' counsel took the deposition of defendant's expert Aaron Dolgoff on February 12, 2025—**28 days after the date for defendant's experts' reports--** Mr. Dolgoff stated that he had not submitted a complete list of the material he had considered in preparing his report, due to a mistake by his staff. (Ex A, p. 8:18-9:11) Defendant still has not submitted a complete list—now **61 days late.** Defendant's other expert, Dr. Guryan, also testified that he has not provided all the studies he relied upon. (Exhibit B, deposition of Dr. Guryan, p. 10:12-15)

It is, to say the least, hypocritical for defendant to move for sanctions against plaintiffs

given these facts.

**Plaintiffs' Expert Is Not Offering Any New Opinions**

Defendant states plaintiffs' expert, Dr. Shenkar, offers "more opinions" than stated in his three Reports (defendant's motion, p. 1), but as is defendant's practice in this motion, it makes broad accusations without identifying any facts in support. Nowhere in its motion does defendant identify any "new opinions" of plaintiffs' expert.

In his report on the impact of Jonathan Seex's death on the value of TML, Dr. Shenkar gives his opinion that the Seex family suffered a loss of $4,900,000 ("a conservative estimate" (Ex C, p. 26:3-4) from the decrease in value of their shares as the result of Mr. Seex's death. (Ex E, p. 7) (Ex C, p. 25:1-26:2)

Dr. Shenkar testified:

> Q: And does that remain your opinion today?
>
> *A: That remains my opinion.*

(Ex C, p. 25:24-26:2) (emphasis added)

In its motion, defendant does not point to any part of Dr. Shenkar's report (Ex E) or any deposition testimony by Dr. Shenkar (Ex C) in which he offers another opinion on the loss of value of TML.

As to Mr. Seex's loss of earnings, Dr. Shenkar set forth two scenarios in his Report, based upon a Kenya or a U.S. discount rate, with different retirement ages. (Ex F, p.3) In his deposition, Dr. Shenkar testified his opinion was that stated in Scenario 2 (Ex C, p. 30:24-32:2), using the same U.S. discount rate used by defendant's expert Dr. Guryan in his report. (Exhibit I, Dr. Guryan report, p. 9) Defendant chose not to ask Dr. Shenkar which retirement age he used for his opinion. Mr. Seex's widow testified that Mr. Seex intended to work to age 75. (Exhibit J,

deposition of Nadege Seex, p.102:12-17 "in our business, we don't retire, particularly when we own the company.") Dr. Shenkar's opinion, therefore, is that Mr. Seex's loss of earnings are $11,424,358.43, using Scenario 2 with the U.S. discount rate used by defendant's expert, Dr. Guryan, and using a retirement age of 73.5, based upon the unrebutted[2] testimony of Mr. Seex's widow (Ex F, p. 3, Ex. C, p. 30:24-32:2)

As with his report on the loss in value of TML, Dr. Shenkar repeatedly and unequivocally stated in his deposition that he has no additional opinions as to the loss of earnings of Jonathan Seex. Dr. Shenkar testified that "the numbers at p. 3 [of his Report] have not changed since[he] prepared this Report." (Ex C, p. 42:22-43:13) Dr. Shenkar was asked and answered as follows:

Q: So this is still the opinion you are offering—what's set forth here?

A: That is correct.

(Ex C, p. 43:11-43:13) He further testified, in no uncertain terms, "I stand by what I wrote in the original report." (Ex C, p. 313:3-13).

In its efforts to find a new opinion of Dr. Shenkar, defendant mischaracterizes his opinion on loss of earnings. Dr. Shenkar stated that Mr. Seex's loss of earnings consists of three parts: wages, including benefits, wealth and business interest. (Ex C, p. 282:9-284:4)—all determined from the date of his death to the date of his expected retirement. (Ex C, p. 30:16-22, 32:4-23.) Dr. Shenkar explained that at the time he prepared his Report, information as to Mr. Seex's total compensation, including benefits, wealth and business plans, was not available. (Ex C, p. 35:2-17) Therefore, he used a scientifically-recognized principle of employing a proxy of past earnings to estimate lost earnings until information as to benefits, wealth and business interest became available. (Ex C, p. 32:23-33:3, 284:2-4, 288:8-289:17)

_____

[2] Dr. Guryan testified he has no reason to doubt Mrs. Seex's testimony. (Ex B, p. 139:9-20)

6

This was always the purpose of Dr. Shenkar's use of a proxy. (Ex C, p. 292:18-2934). He never opined that plaintiffs could recover any earnings of Jonathan Seex for the period before his death. (Ex C, p. 32:12-23) He only considered Mr. Seex's loss of earnings from the date of his death. (Ex C, p. 32:21-23)

Dr. Shenkar stated that the use of a proxy is "precisely the scientific process that one follows when you…estimate a trend." (Ex C, p.41:21-23) He was surprised to learn that defendant's expert, Dr. Guryan, appeared not to be aware of this scientific principle (Ex C, p. 293:6-24) as this principle is "well understood" (Ex C, p. 294:14-15) and "it's really a fairly common practice." (Ex C, p. 293:21-24) *See* Exhibit K, Huang, R., Liang, Y., Carriere KC, *The Role of Proxy In Missing Data Analysis,* Statistical Methods In Medical Research, Oct. 14, 2005, 457-471; (Exhibit L) Armstrong, J.S., *A Handbook For Researchers*, *Extrapolation For Time-Series Data And Cross-Sectional Data,* Principles for Practitioners, Kluwer, 2001.

After preparing his Report, but before his deposition and *before the close of discovery,* Dr. Shenkar received previously-unavailable information from Mr. Seex's employer, TML, regarding Jonathan Seex's benefits, including pension and social security and health insurance (Ex C, p.35 2-7, 300:20- 301:7, 321:22-322:8), and TML's business plans for the opening of a new facility, management of hotels and expansion of TML's restaurant business. (Ex C, p. 197:2-23). Dr. Shenkar also received information from Mr. Seex's notebook and text messages found in the aircraft wreckage and provided by his widow. These documents discussed Mr. Seex's plans to open TML fast food restaurants at 500 Shell stations in 15 countries across Africa. (Ex C, p. 35:10-17, 116:23-118:15, 119:7-15, 197:24-198:4).

Dr. Shenkar was able to supplement his proxy of past earnings with this newly-discovered information in his Report on Loss of Earnings. (Ex C, p. 41:19-21) This newly-

7

discovered information confirmed that his proxy was reasonably accurate, although "very conservative" because Mr. Seex's pre-death earnings, at the beginning of his career, were very low. (Ex C, p. 33:4-20, 40:25-41:8, 296:15-19) Very importantly, this newly-discovered evidence did not change Dr. Shenkar's opinions in his Report; it only reinforced to him how conservative is his opinion as to Mr. Seex's loss of earnings. (Ex C, p. 40:25-41:8, 41:13-18, 43:15-18)

Dr. Shenkar also did not change the basis for his opinions. As discussed, Dr. Shenkar has always and consistently stated that his opinion as to Jonathan Seex's loss of earnings is based upon Mr. Seex's compensation, including benefits, wealth and business interest. (Ex C, p. 282:9-284:4) He initially used a proxy of pre-death earnings to calculate that loss until he obtained information as to complete benefits, wealth and business interest and then supplemented his use of the proxy with that newly-discovered information. (Ex C, p. 32:23-33:3, p. 284:2-4, 288:8-289:17) His opinion, as stated, remained the same. (Ex C, p. 42:22-43:14, 313:3-13).

Therefore, there is no basis for defendant's claim that Dr. Shenkar is offering new opinions as to loss of earnings, requiring a Rule 37 sanction barring him as a witness.

**Plaintiffs Are Not Offering Any "Fourth Report"**

Defendant also moves for Rule 37 sanctions, striking all of Dr. Shenkar's opinions, based upon plaintiff's alleged untimely submission of a "fourth report" from Dr. Shenkar on Jonathan Seex's loss of earnings. However, plaintiffs are not seeking the introduction into evidence of any "fourth report" from Dr. Shenkar. This is a non-issue and certainly does not provide a basis for Rule 37 sanctions.

An explanation is required. After plaintiffs submitted Dr. Shenkar's expert reports, including his report on the loss of earnings of Jonathan Seex (Ex F), defendant submitted the

report of its expert "labor economist" Dr. Guryan. The report of defendant's expert, Dr. Guryan, so misconstrued Dr. Shenkar's report that plaintiffs naively believed, in the interest of fairness, it would be helpful to defendant to have all the facts concerning Dr. Shenkar's opinion before defendant took his deposition. As the Seventh Circuit stated in a decision cited by defendant, *Ciomber v Cooperative Plus, Inc.,*527 F.3d 635, 642 (7th Cir. 2008), the purpose of Rule 26 "is to provide notice to opposing counsel—before the deposition—as to what the expert will testify."

Plaintiffs therefore provided defendant with a response from Dr. Shenkar to the numerous misstatements in Dr. Guryan's report. In particular, plaintiffs and their expert wanted to correct what they believed was Dr. Guryan's misunderstanding that plaintiffs were calculating Mr. Seex's loss of earnings to include pre-death earnings. Obviously, loss of earnings is always calculated from the date of the decedent's death. Dr. Shenkar attempted to explain that he was only using pre-death earnings as a proxy, as discussed above.

However, defendant objected to this response from Dr. Shenkar as a reply report not allowed under the Court's order. Defendant threatened to file a motion seeking to strike this response, but never did so. Instead, defendant proceeded to question Dr. Shenkar extensively[3] at his deposition about this response. (Ex C, p. 308:3-313:3). Contrary to defendant's statements in its motion, Dr. Shenkar never refused to answer any question about this response. He only stated he would not be offering any new opinions, as discussed above. (Ex C, p. 313:23-25)[4] Plaintiffs'

---

[3] Defendant questioned Dr. Shenkar for the full 8 hours allowed, not including breaks. In his 47 years of practice, plaintiffs' counsel has never taken an 8 hour deposition. Plaintiffs' deposition of defendant's expert Dr. Guryan was 3 ½ hours, while the deposition of defendant's other expert Aaron Dolgoff was 2 ½ hours.

[4] Dr. Shenkar also expressed some justified confusion that defendant wanted to exclude his response, while still questioning him about it (Ex C, p. 299:4-300:4), but he never refused to answer any question.

counsel never instructed Dr. Shenkar not to answer any question, but only stated plaintiffs' position that defendant was not prejudiced, but should have been assisted, by this response. (Ex C, p. 306:17-307:14)

It now is apparent to plaintiffs that defendant is not interested in knowing all the facts concerning the opinions of plaintiffs' expert. Rather, defendant seeks to use the Court's scheduling order as a weapon. It receives the report of plaintiffs' expert first, responds with its experts' reports, making completely unfounded arguments, then hides behind the Court's order to avoid any attempt at correction of its misstatements.

However, plaintiffs submit that it was not the intent of the Court's order regarding the submission of expert reports to preclude all supplemental[5] or rebuttal evidence. Plaintiffs submit that, even if an expert reply report is not allowed under the Court's scheduling order, plaintiff may offer rebuttal evidence, including expert testimony, at trial. In *Lubanski v Colco Ind's, Inc.,* 929 F.2d 42, 47 (1st Cir. 1991), the Court of Appeals held "rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in [the] opponent's case in chief." "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Crowley v Chait*, 322 F.Supp.2d 530, 551 (D.N.J. 2004). Plaintiffs' evidence here meets this definition of rebuttal evidence. Therefore, plaintiffs do not seek to introduce any "fourth report," but plaintiffs reserve their right to seek to introduce rebuttal evidence. *Crowley, supra.*

**Plaintiffs Have Not Failed To Timely Produce Expert Documents**

Defendant includes in its motion (p. 8) a chart purporting to list documents it alleges

---

[5] In fact, another expert for defendant, Aaron Dolgoff, supplemented his expert report and plaintiffs have not objected.

plaintiffs failed to timely produce with its expert reports on the date for plaintiffs to serve its expert's reports[6]. Defendant makes the incredible statement in its motion (p. 8) that "the below chart catalogues Plaintiffs' late-disclosed and never-disclosed material, *most of which Dr. Shenkar confirmed he relied upon."* (emphasis added)

In fact, just the opposite is true. **Of the 19 documents defendant alleges plaintiffs failed to produce with their expert's reports, 15 concern issues which are not the subject of expert testimony or plaintiffs' expert did *not* consider.** Of the four remaining documents, plaintiffs produced two of the documents months before the due date, while two others are newly-disclosed evidence which plaintiffs produced before the close of discovery and before the deposition of plaintiffs' expert.

### Documents concerning plaintiffs' claims for non-economic damages

*Photos, videos and handwritten letters*—These documents obviously concern plaintiffs' non-economic damages as to which plaintiffs' expert is not offering any opinion. (Ex C, p. 20:23-21:3) Plaintiffs are at a loss to understand why defendant is alleging these non-economic damages documents had to be produced with the expert's reports and why defendant is making this a basis for its motion for sanctions.

### Documents which were produced before the due date

*Tamarind Group Letter of Appointment*—This document was produced on August 31, 2020

*Decedent's Diplomas*—These documents were produced on August 30, 2020

### Documents which are not the subject of Dr. Shenkar's opinions

---

[6] It is important to note that defendant claims all these documents, including those bearing no relation to economic damages or expert opinions were due on the date for the service of expert reports.

*Letter from Martin Dunford to Mrs. Seex And Shareholding Document*—These two documents concern a separate issue, Mrs. Seex was financially unable to meet a call for a loan to TML *after* the crash because of the death of her husband and suffered a loss in the number of her shares. Dr. Shenkar was not asked to provide an opinion on this subject.

*Tamarind Limited Articles of Association and Mawibi Articles of Association* Defendant made a letter request for these documents. Plaintiffs' counsel responded that plaintiffs did not have these documents and, in hindsight, should have maintained this appropriate response. Instead, as a professional courtesy, plaintiffs' counsel went to non-parties, obtained these documents and provided them to defendant, only to be rewarded for this professional courtesy with this motion for sanctions.

*Email from Martin Dunford w/ Workers Comp Plan*—Plaintiffs do not know what e-mail defendant is referring to. Dr. Shenkar does not rely upon any Workers Comp Plan, in any event.

*Tamarind Letter of Intent July 2020*--This document is not offered as an exhibit by either party

**Documents which were not considered by Dr. Shenkar**

*Atlantis Employment Contract*-- Dr. Shenkar did not consider this document and, in any event, the fact of this contract was disclosed in plaintiffs' June 10, 2024 Supplemental Answers to Interrogatories

*Property Market Appraisal*-- Dr. Shenkar did not consider this document

*TML Plan of Action*--Dr. Shenkar did not consider this document

*TAMU 5 Year Financial Model Spreadsheet*-This document is the subject of a Supplemental Report by defendant's expert Dolgoff to which plaintiffs do not object.

**Newly-discovered evidence**

*Email from Lucas Krank of Ascent Capital to Mrs. Seex re LOI*--This brief e-mail is newly-discovered evidence and confirmed that Mr. Krank met with Mrs. Seex after the crash to see whether the investment by Ascent in TML could be revived. (It could not because the parties were unable to find a replacement for Jonathan Seex. Ex J, p. 121:12-19. 122:10-19). The information about the conditional LOI is set forth in plaintiffs' Supplemental Answers to Interrogatories of June 10, 2024 and was produced to defendant prior to the close of discovery.

*Decedent's Notebook and Texts from Decedent to Mrs. Seex*-- This newly-discovered evidence was found in the wreckage of the aircraft and provided by Mrs. Seex to her attorneys and produced to defendant prior to the close of discovery. As discussed, this notebook and texts discussed Mr. Seex's plans to put TML fast food restaurants in 500 Shell stations in 15 countries across Africa. (Ex C, p. 35:10-17, 116:23-118:15, 119:7-15, 197:24-198:4).

**Plaintiffs Did Not Fail to Timely Disclose Information At Dr. Shenkar's Deposition**

*Conversations with TML*--Defendant alleges, as a basis for its motion for sanctions, that plaintiffs' expert Dr. Shenkar disclosed at his deposition that he relied on undisclosed conversations with two executives of TML. However, these conversations only confirmed information set forth in plaintiffs' Supplemental Answers to Interrogatories of June 10, 2024 regarding the conditional Letters of Intent from Ascent Capital and TML's planned hotel management services contracts and business expansion plans which did not go forward because of the death of Jonathan Seex. (Ex C, p. 38:24-39:25, 132:20-139:18) Dr. Shenkar does not have any notes of these conversations. Defendant questioned Dr. Shenkar at length about these conversations.

*Conversation with Lucas Krank*—Plaintiffs' counsel reported to Dr. Shenkar as to

a conversation he had with Lucas Krank of Ascent.[7] This conversation confirmed the information

set forth in plaintiffs' Supplemental Answers to Interrogatories of June 10, 2024 regarding the

condition to the Letters of Intent. (Ex C, p. 145:16-162:7) Mr. Krank also disclosed Ascent's

expected return from investment in TML of 20% (Ex C, p. 150:9-12) Defendant questioned Dr.

Shenkar about this at his deposition. (Ex C, p. 145:16-162:7)

**Plaintiffs Have Disclosed All Publications**

Plaintiffs' exhibit list includes all the publications upon which plaintiffs' expert Dr.

Shenkar relies. At defendant's insistence, plaintiffs have made separate copies of each

publication and provided those to defendant.  All these publications are either disclosed in Dr.

Shenkar's reports or constitute rebuttal evidence. (There is no undisclosed "fifth report," no new

opinions, no undisclosed sources, and no notes.)

Interestingly, defendant does not like to play by the same rules it accuses plaintiffs and

their counsel of willfully violating. Defendant list 16 publications in its exhibit list without

indicating whether either of its experts considered any of these publications. It could not have

been defendant's expert Dolgoff since he said he had not done any review of the professional

literature (Ex A, p. 15:7-17, 17:16-18:2), while none of these publications appear in Dr. Guryan's

report (Ex I)

**CONCLUSION**

Defendant's motion is a carefully-constructed smokescreen designed to create the illusion

---

[7] Defendant complains of "three emails attaching previously produced documents that Plaintiffs' counsel forwarded to Boeing's counsel during Dr. Shenkar's deposition." Defendant is confused. These e-mails do not concern Dr. Shenkar's opinions. Plaintiffs' counsel provided them to defendant's counsel during the deposition of Dr. Shenkar to show that plaintiff's counsel had written to Dr, Shenkar (and not just told him) about the newly-discovered evidence of Jonathan Seex's ledger and texts found in the aircraft wreckage

of Rule 26 violations, requiring Rule 37 sanctions. It is surprising and not worthy of defendant's

two capable law firms.  A careful reading of defendant's motion for Rule 37 sanctions boils down

to a 5 day delay in providing a list of materials considered—when defendant's experts are 61

days late and counting—and two items of newly-discovered evidence found in the wreckage of

the aircraft and produced before the discovery cut-off, before the deposition of plaintiffs' expert

and more than two months before trial. The opinions of plaintiffs' expert and their bases have not

changed; plaintiffs are not seeking to introduce any "fourth report;" plaintiffs have not failed to

timely produce expert documents with their expert's reports; the discussions of plaintiffs' expert

and counsel with non-party witnesses only confirmed existing information; and all the

publications upon which plaintiffs' expert relies are either disclosed in his reports or are rebuttal

evidence.

This motion is an ill-conceived attack lacking in any real basis and plaintiffs respectfully

request the Court to deny this motion.


Dated:  March 17, 2025

_____/s/Floyd A. Wisner_____

Wisner Law Firm, P.C.
161 N Clark St
Suite 1600
Chicago, Illinois  60601
(630) 262-9434
(630) 262-1066 (fax)
awisner@wisner-law.com
Ill. ID No. 3048713

/s/Nomaan K. Husain

Husain Law + Associates, P.C.
5916 Winsome, Suite 400
Houston, Texas 77057
(713) 800-1200
(713) 800-0786 (fax)
nh@hlalawfirm.com
TX Bar #24000743

***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

    Floyd Wisner, an attorney, certifies that he electronically filed Plaintiff Nadege Dubois-Seex' Memorandum in Response and in Opposition to Boeing's Motion to Strike the Reports of Plaintiff's Expert Dr. Oded Shenkar in Seex and to Preclude him from Testifying at Trial with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on all attorneys of record on this 17th day of March 2025.

                                     /s/Floyd A. Wisner