IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES<br>FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S RESPONSE TO PLAINTIFFS' MOTION
TO BAR TESTIMONY OF DEFENDANT'S EXPERT AARON DOLGOFF**

**TABLE OF CONTENTS**

**Page**

Background .................................................................................................................................... 2

Argument ....................................................................................................................................... 4

I.     Mr. Dolgoff is entitled to rebut Dr. Shenkar's conclusions and the reliability of his methods in valuing TML. .................................................................................................. 4

        A.     Mr. Dolgoff's opinion on Dr. Shenkar's review and analysis of the economic literature is proper rebuttal testimony. ................................................................. 6

        B.     Mr. Dolgoff's opinion on Dr. Shenkar's flawed application of his methodology is also proper rebuttal testimony. ............................................................................ 7

II.    Mr. Dolgoff's affirmative opinion on the value of TML is supported by the facts and Plaintiffs' arguments do not warrant exclusion. ................................................................ 9

Conclusion ................................................................................................................................... 13

Plaintiffs in the *Seex* case have moved to exclude the opinions of Boeing's valuation expert, Mr. Aaron Dolgoff. *See* ECF 2397 ("Mot."). Mr. Dolgoff responds to the opinion of Plaintiffs' expert, Dr. Oded Shenkar, regarding the effect of Mr. Seex's death on the value of Tamarind Management, Ltd. ("TML"), the company of which Mr. Seex was CEO. Plaintiffs seek to bar Mr. Dolgoff's rebuttal opinions that Dr. Shenkar relied on a "highly-flawed application of the economic literature" and made "errors in applying" his methodology. *Id.* at 7, 12. They also seek to bar Mr. Dolgoff's affirmative opinion that "reliable contemporaneous evidence [shows] that there was no diminution of value" of TML "as the result of Mr. Seex's death." *Id.* at 9. But Plaintiffs misunderstand Mr. Dolgoff's role as a rebuttal expert and mischaracterize both his opinions and Dr. Shenkar's. With that in mind, Plaintiffs' arguments have no merit. The motion should be denied for two reasons.

First, Mr. Dolgoff is entitled to rebut Dr. Shenkar's opinion about the value of TML. Plaintiffs argue throughout the motion that Mr. Dolgoff's opinions are somehow irrelevant and lack foundation, but the point of rebuttal expert testimony is to challenge the methodology and conclusions of the other side's expert. And that is what Mr. Dolgoff does: he responds to the collection of papers that Dr. Shenkar chose to rely on in measuring the effect of a CEO's death on the value of a company, and he opines that Dr. Shenkar's application of his own stated methodology is riddled with errors. In no way is this testimony "irrelevant" or "lacking foundation." Nor is Mr. Dolgoff's opinion inadmissible because he did not offer an affirmative counter-analysis, as Plaintiffs argue. Mr. Dolgoff *did* offer an affirmative counter-analysis, but even if he did not, the law does not require that of rebuttal witnesses.

Second, Mr. Dolgoff's affirmative opinion—that the evidence does not show any diminution in TML's value as a result of Mr. Seex's death—is supported by contemporaneous,

1

reliable documents from a third-party investor. The reliability of these documents is bolstered by statements made by the chairman of TML, and even by Dr. Shenkar's own testimony. Plaintiffs ignore this in arguing that Mr. Dolgoff's opinion should be excluded because it contradicts "the facts." Mr. Dolgoff explained at length in his report and during his deposition why this is not the case, and Plaintiffs' disagreement with his conclusion is no basis for exclusion. Further, much of the information that Plaintiffs emphatically (but misleadingly) assert Mr. Dolgoff "knew" was in fact unavailable to Mr. Dolgoff when he formed his opinions because Plaintiffs never disclosed or produced it. Plaintiffs' failure to fulfill their Rule 26 disclosure obligations is also no reason to exclude Mr. Dolgoff's opinions.

The motion should be denied in full.

## BACKGROUND[1]

Plaintiffs retained Dr. Oded Shenkar to opine on the economic damages allegedly incurred by Mr. Seex's estate as a result of his death. In relevant part, Dr. Shenkar opines that Mr. Seex's death significantly affected the value of TML, of which he was CEO (and in which his family still owns shares). This opinion was split across two reports. First, in a report titled "CEO/Founder's Death and Company Value," Dr. Shenkar purported to summarize literature discussing the effect that the death of a company's CEO or founder could have on firm performance and value. *See* ECF 2401-4 (CEO report) at 2, 8. In the other report, titled

---

[1] The "Relevant Facts" section of Plaintiffs' motion is filled with unsupported allegations regarding Mr. Seex and TML. Mot. at 3–5. Plaintiffs primarily cite their own interrogatory responses without providing any of the underlying documents that supposedly support these allegations. That is improper because "a party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents[.]" *Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011); *see also Moore v. CN Transportation Ltd.*, 2021 WL 111489, at *8 (N.D. Ill.) (finding that there was "no evidence before the court" to support a party's assertion because the party cited only "its own interrogatory response in support of that assertion").

"Evaluating Tamarind Management Limited (TML) & the Impact of Mr. Seex's Death," Dr. Shenkar "assess[ed] the value of the [company] and monetize[d] the hit to that value that [Mr. Seex's] death has likely triggered." ECF 2401-5 (TML value report) at 1. Dr. Shenkar opines that due to Mr. Seex's death, TML lost about $18.2 million in value, and the shares now owned by the Seex family (allegedly 26.87% of TML) lost $4.9 million in value. *Id.* at 7; *see* ECF 2401 (Boeing's motion to exclude Dr. Shenkar, discussing his opinions in more depth).

Boeing retained a rebuttal valuation expert, Mr. Aaron Dolgoff, to "respond to Dr. Shenkar's calculation of damages related to the value of Jonathan Seex's ownership interest in [TML]." Ex. 1 (Dolgoff report) ¶ 1. Generally, Mr. Dolgoff concluded that Dr. Shenkar's analysis was unreliable and "upwardly biased" due to "significant flaws" in his methods, assumptions, and application of the economic literature. *Id.* ¶¶ 84–85. He also concluded that there was "reliable contemporaneous evidence that there was no diminution of value as a result of Mr. Seex's death." *Id.* ¶ 86. Plaintiffs now target three of Mr. Dolgoff's opinions.

First, Mr. Dolgoff opines that Dr. Shenkar's "review and application of the economic literature on the value impact of CEO deaths" is flawed because (i) Dr. Shenkar "ignores that the literature largely finds very small or no value impact from the death of a typical CEO," (ii) he "relies on unsupported assertions and assumptions to fit the case of Mr. Seex to certain literature finding larger effects," and (iii) "the literature finding very large effects does not apply to the case at hand." Ex. 1 ¶ 75. Because Dr. Shenkar "uses these purported findings to inform an adjustment" to his valuation, Mr. Dolgoff opines that these flaws "undermine the reliability of [Dr. Shenkar's] entire analysis of the impact of Mr. Seex's death on TML's projected cash flows." *Id.* ¶ 69.

3

Second, Mr. Dolgoff opines that Dr. Shenkar erred in applying his methodology to discern the value of TML. Dr. Shenkar used a Discount Cash Flow ("DCF") method. Mr. Dolgoff explains that "Dr. Shenkar's application of the DCF method is unreliable because (i) it is applied incorrectly, and (ii) relies on unsupported assumptions." *Id.* ¶ 38. He further opines that these methodological errors and unsupported assumptions "result in significant upwardly biased valuations of TML that are contradicted by available evidence." *Id.* ¶ 39.

Third, Mr. Dolgoff offers the affirmative opinion that "letters of intent submitted to TML by an investor in 2019 provide reliable contemporaneous evidence that there was no diminution of value as a result of Mr. Seex's death." *Id.* ¶ 11. In these documents, dated March 6 and March 30, 2019—just before and just after Mr. Seex's death—private equity investor Ascent Capital valued TML at about $5 million. *Id.* ¶¶ 62–63, 80; *see also* Exs. 2, 3 (letters of intent). Mr. Dolgoff concludes that "based on the March 30, 2019, LOI, there are no damages attributable to diminution in value of Plaintiffs' shares in TML." Ex. 1 ¶ 80.

## ARGUMENT

**I.    Mr. Dolgoff is entitled to rebut Dr. Shenkar's conclusions and the reliability of his methods in valuing TML.**

Throughout the motion, Plaintiffs criticize Mr. Dolgoff for opining on Dr. Shenkar's methodology, calculations, and conclusions. Plaintiffs fundamentally misunderstand the role of rebuttal expert testimony.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Gravitt v. Mentor Worldwide LLC*, 342 F.R.D. 130, 134–35 (N.D. Ill. 2022) (quoting *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001)). "That is, '[a]n expert may criticize the methods, calculations, and conclusions offered by the opposing side's expert.'" *Brown v. WellPet LLC*, 2023 WL 3483935, at *14 (N.D. Ind.) (quoting

4

*Bamcor LLC v. Jupiter Aluminum Corp.*, 767 F. Supp. 2d. 959, 976 (N.D. Ind. 2011)). Such rebuttal testimony is admissible because it satisfies the requirements of Rule 702: "the underlying facts and data on which [the rebuttal expert's] opinions rest are those in the other experts' reports, and his methodology is to read those reports through the lens of his own accumulated expertise, identifying areas where uncertainty might creep in." *Allen v. Am. Cyanamid*, 2021 WL 1086245, at *9 (E.D. Wis.). And such testimony is relevant because it "aid[s] the trier of fact in determining how much weight to assign the [opposing] expert's opinion in deliberations." *Brown*, 2023 WL 3483935, at *14 (quoting *Bamcor LLC*, 767 F. Supp. 2d. at 976); *see Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). ("An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case."). Plaintiffs cite no authority that holds otherwise.

Further, a rebuttal expert "may criticize a plaintiff's expert's theories 'without offering alternatives.'" *Brown*, 2023 WL 3483935, at *16 (quoting *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996), and citing *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011) (collecting cases)); *see also Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1315 (M.D. Fla. 2009) (rebuttal expert "may properly challenge [opposing expert's] methodology and assumptions, notwithstanding the fact that he does not offer a competing opinion"); *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 865–66 (N.D. Ill. 2009) (discussing rebuttal expert who testified about flaws in opposing expert's financial analysis without setting forth his own financial analysis). Again, Plaintiffs cite no authority to the contrary.

Against this backdrop, Plaintiffs' arguments about Mr. Dolgoff's rebuttal opinions provide no basis for exclusion.

### A. Mr. Dolgoff's opinion on Dr. Shenkar's review and analysis of the economic literature is proper rebuttal testimony.

Mr. Dolgoff opines that Dr. Shenkar conducted a flawed "review and application of the economic literature on the value impact of CEO deaths." Ex. 1 ¶ 75. In this section of his report, apart from one article that Dr. Shenkar did not consider, Mr. Dolgoff addresses only the literature that Dr. Shenkar cited in his reports. *Id.*; Ex. 4 (Dolgoff Dep.) at 32:4–33:19.

Plaintiffs argue that in order to provide such an opinion, "Mr. Dolgoff must have conducted an exhaustive, systematic search of the economic literature" and an "independent review" of that literature. Mot. at 7–8. Not so. As a rebuttal expert, Mr. Dolgoff's job is to "criticize the methods, calculations, and conclusions offered by" Dr. Shenkar. *Brown*, 2023 WL 3483935, at *14. That is exactly what he does: he reviews the literature that Dr. Shenkar chose to rely on and criticizes Dr. Shenkar's application of that literature in forming his opinion on the value of TML. Mr. Dolgoff does not purport to perform—and does not need to perform—an independent review of the literature for his rebuttal opinion to be admissible. *See id.* at *16.

Similarly, there is no merit to Plaintiffs' argument that Mr. Dolgoff's opinion on "the economic literature cited by Dr. Shenkar" is "not relevant" because it "refers only to a 'typical' CEO and not to the decedent Jonathan Seex, the CEO of [TML]." Mot. at 8. Plaintiffs have this exactly backwards. Again, the literature that Mr. Dolgoff addresses is the literature that Dr. Shenkar chose to rely on. It is Dr. Shenkar's CEO report, which purports to summarize the "scholarly literature" regarding the "performance impact of CEO death" (ECF 2401-4 at 2), that is not specific to Mr. Seex or to this case. Dr. Shenkar confirmed as much at his deposition. *See* Ex. 5 (Shenkar Dep.) at 23:2–24:8 (describing his CEO report as "more of a summary of what we know in the field about that relationship" between the death of a CEO or founder and company value and not "specific to the case"). So in arguing that the literature Mr. Dolgoff

6

discussed does not fit the facts of the case (*see* Mot. at 8), Plaintiffs simply validate his criticisms of Dr. Shenkar.

Mr. Dolgoff's opinion is relevant because he is directly rebutting Dr. Shenkar's review and application of the economic literature. *Brown*, 2023 WL 3483935, at *14. The fact that Plaintiffs apparently now concede that this economic literature is "not relevant" to the case only proves that their own expert's opinions are unhelpful to the jury and should be excluded. *See* ECF 2401 at 11–13 (arguing that Dr. Shenkar's opinions should be excluded because he "relied on irrelevant literature"); *see also* Ex. 5 at 357:5–362:23 (Dr. Shenkar testifying that his own sources are "completely irrelevant" and "all wrong").

### B. Mr. Dolgoff's opinion on Dr. Shenkar's flawed application of his methodology is also proper rebuttal testimony.

For similar reasons, there is no basis to exclude Mr. Dolgoff's "opinions criticizing Dr. Shenkar for his alleged errors in applying the Discount Cash Flow (DCF) analysis." Mot. at 12. Plaintiffs say that opinion is "not relevant and lack[s] foundation." *Id.* But that cannot be true.

Dr. Shenkar applied the DCF method when valuing TML. *See* ECF 2401-5 at 4, 7. In response, Mr. Dolgoff opines that "Dr. Shenkar's application of the DCF method is unreliable because (i) it is applied incorrectly, and (ii) relies on unsupported assumptions," and he explains his criticisms at length. Ex. 1 ¶ 38; *see also id.* ¶¶ 40–79. In other words, Mr. Dolgoff opines on what he considers to be "intrinsic weaknesses in [Dr. Shenkar's] report[]"—which, again, is proper rebuttal testimony. *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 776 (N.D. Ill. 2009).[2]

---

[2] In the same section of his report, Mr. Dolgoff criticizes Dr. Shenkar's cost of equity and cost of debt. Ex. 1 ¶¶ 45–51. In a footnote, Plaintiffs argue that "[t]hese statements should be stricken as lacking any foundation." Mot. at 12 n.4. But this "skeletal argument, unsupported by relevant authority or reasoning, is merely an assertion which does not sufficiently raise the issue to merit the court's consideration." *Reible v. Illinois I.O.O.F. Old Folks Home*, 2005 WL 3358869, at *7

7

Plaintiffs' argument that this these opinions are somehow irrelevant or lacking foundation because Mr. Dolgoff "has no opinion . . . as to the amount of that loss [to TML]" (Mot. at 12) ignores that Mr. Dolgoff *did* offer an affirmative opinion based on contemporaneous, reliable evidence, as explained in Section II below. Ex. 1 ¶ 80. But even if he did not, or even if this affirmative opinion were somehow inadmissible (it is not), Mr. Dolgoff is not required to offer alternative calculations. *Brown*, 2023 WL 3483935, at *16. So that argument fails too.

Plaintiffs also argue—with no citation—that Mr. Dolgoff's opinion should be "stricken" because "Dr. Shenkar does not exclusively use the DCF in his analysis." Mot. at 12. Plaintiffs either misunderstand or misrepresent their own expert's methodology. It is true that Dr. Shenkar did write that "it is advisable to use more than one valuation approach" and that "a number of different cashflow models will be used: Discounted Cash Flow (DCF), EV/EBITDA, and M/B Ratio." ECF 2401-5 at 2, 4. But his report does not actually contain *any* valuations based on those other models. That provided yet another reason for Mr. Dolgoff to criticize Dr. Shenkar's opinions: "Notwithstanding this statement, Dr. Shenkar uses only the DCF method and, therefore, has no secondary methods to corroborate the validity of his methods and assumptions (i.e., his report does not contain any valuations based on EV/EBITDA or M/B ratios)." Ex. 1 ¶ 66. Mr. Dolgoff cannot be excluded on the basis that he failed to rebut calculations that Dr. Shenkar never did.

Finally, to the extent that Plaintiffs argue Mr. Dolgoff did not consider Dr. Shenkar's analysis of "many other factors unique to this case, including the culture of Kenya, its hospitality sector, the specific business of TML and Mr. Seex, individually" (Mot. at 12), that is simply

---

(C.D. Ill.) (citing *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990)); *see also R-Boc Representatives v. Minemyer*, 2017 WL 11682407, at *1 (N.D. Ill.) ("Under unanimous and long-standing Seventh Circuit authority, conclusory arguments will not be considered.").

8

incorrect. Mr. Dolgoff explained at length in his report why Dr. Shenkar's assumptions on these factors were flawed. Ex. 1 ¶¶ 40–79. While Plaintiffs might disagree with his conclusion, that "is not an appropriate basis for a *Daubert* challenge." *Chaudhry v. Provident Life & Accident Ins. Co.*, 2015 WL 1756832, at *3 (N.D. Ill.) (St. Eve, J.); *see also Allen*, 2021 WL 1086245, at *10 ("Plaintiffs may take issue with this conclusion, but that is properly addressed in cross-examination.").

II. **Mr. Dolgoff's affirmative opinion on the value of TML is supported by the facts and Plaintiffs' arguments do not warrant exclusion.**

Separately, there is no basis to exclude Mr. Dolgoff's affirmative opinion that the evidence in the case "does not show diminution in value of TML as a result of Mr. Seex's death." Ex. 1 at 33. Under Rule 702, reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). Plaintiffs do not argue that Mr. Dolgoff's methodology was flawed but instead take issue with the conclusions he drew from his review of the evidence. This does not warrant exclusion.

Mr. Dolgoff's opinion here is based on the letters of intent from Ascent, a potential investor in TML, which included contemporaneous valuations of TML both shortly before and after the crash. *See* Exs. 2, 3. As Mr. Dolgoff explained, these documents provide "contemporaneous evidence from a third-party investor that there was not expected to be any loss of business value as a result of Mr. Seex's death." Ex. 1 ¶ 80. The reliability of the Ascent valuations is not seriously disputed. For example, Martin Dunford, TML's chairman, relied on Ascent's valuations as a reliable indication of TML's value in 2021. Ex. 6 (Dunford letter) at -572 (using "the Ascent Capital formula" to value TML because "[t]he best valuation we can

9

make of the company is to take how much someone is willing to pay"). And Dr. Shenkar himself testified in his deposition that Ascent was "an objective third party" whose valuations were "a direct indication" of TML's value when they were made. Ex. 5 at 224:14–225:9.

Despite this, Plaintiffs argue that the March 30, 2019 letter of intent somehow contradicts Mr. Dolgoff's opinion because it was "conditioned upon finding a replacement for Mr. Seex[,] and when the parties were unable to do so, the investment of Ascent in TML did not go forward." Mot. at 9–10. There are several problems with this. First, Plaintiffs are wrong as a factual matter. Mr. Dolgoff explained in his report that he had "not seen any evidence" that the deal fell through as a result of Mr. Seex's death, and the March 30 letter of intent did *not* include "finding a suitable CEO" as a "condition precedent" for the transaction, as Plaintiffs claim. Ex. 1 ¶ 81 n.118. Indeed, the only conditions precedent were "satisfactory due diligence and the signing of necessary agreements by all parties." Exs. 2, 3.

Second, Plaintiffs are conflating the issues. The reasons why the Ascent transaction did not go forward are distinct from, and irrelevant to, the reliability of Ascent's valuations of TML. *See* Ex. 4 at 67:21–68:22, 71:16–20; Ex. 1 ¶ 81. For instance, whatever the conditions precedent were for the proposed *transaction*, there were no conditions precedent for the *valuations*. *See* Exs. 2, 3. So, as Mr. Dolgoff explained in his report, his opinion stands even if Plaintiffs are *correct* that TML's failure to obtain a replacement CEO caused the Ascent transaction to fall through:

> Regardless of whether the transaction did not close due to failure to find a suitable CEO replacement, the 2019 LOIs do not provide any evidence of any expected loss in value due to Mr. Seex's death. The fact that the valuation based on 6.0x 2018 EBITDA was not modified provides evidence that, as of Dr. Shenkar's valuation date on March 10, 2019, the parties involved believed that a suitable replacement CEO could be obtained without affecting firm value. Even if the transaction were not completed due to failure to

10

> obtain a replacement CEO, that does not provide information
> sufficient to calculate any lost value due to Mr. Seex's death, as the
> reasons for such a failure to find a replacement would be relevant
> to assessing whether there was any loss in value related to Mr.
> Seex's death from other factors that may have intervened in
> preventing hiring a replacement CEO.

Ex. 1 ¶ 81; *see also* Ex. 4 at 65:2–71:20. And there is simply no merit to Plaintiffs' claim that TML "essentially had no value at all" after the Ascent deal fell through. Mot. at 11 n.3; *see* Ex. 4 at 70:1–13 ("[I]f what you say is true, that it was a condition precedent . . . that does not mean the value is zero.").

There is nothing "troubling" about the fact that Mr. Dolgoff's opinion remained unchanged even after he was "confronted" with "all this information"—that is, hearsay from Mr. Dunford and Mr. Krank, purportedly conveyed to Mrs. Seex and Dr. Shenkar, about why the Ascent deal did not go forward. Mot. at 10–11. Mr. Dolgoff expressly addressed Plaintiffs' allegations, the substance of which were included in the interrogatory responses he considered, and fully explained why they did not change his conclusions. Ex. 1 ¶ 81.

For that reason, this case is like *Chaudhry*, where the court rejected the same argument that Plaintiffs make here. 2015 WL 1756832, at *3–7. There, the plaintiff argued that the defendant's expert "ignored" evidence that was "contrary to" the expert's opinion—in particular, medical records that reflected conclusions from a doctor who had treated the plaintiff. *Id.* at *3. The court disagreed, noting that the expert had specifically addressed those records in her report and provided a "basis for her disagreement" with the doctor's conclusions. *Id.* The court made clear that "[t]hese types of arguments are inappropriate for a *Daubert* motion as they go to the weight of [the expert's] testimony rather than its admissibility" and should instead be addressed "through rigorous cross-examination at trial." *Id.*

Similarly, in *Holmes v. City of Chicago*, the plaintiff claimed that the defendant's expert "did not take into account" or "ignored" certain facts. 2016 WL 6442117, at *4 (N.D. Ill.). The court "d[id] not find these arguments . . . convincing" because the expert was "aware of" and expressly discussed those facts in his report. *Id.* at *5. The court concluded that the plaintiff's "criticisms . . . are appropriate for cross-examination but do not justify exclusion under *Daubert*." *Id.* Here, just as in *Chaudhry* and *Holmes*, Mr. Dolgoff expressly discussed Plaintiffs' allegations regarding why the Ascent deal did not occur in his report and explained why they do not change his opinion. Ex. 1 ¶ 81. And while Plaintiffs "may take issue with [his] conclusion," that is "properly addressed in cross-examination" and is not proper grounds for a *Daubert* motion. *Allen*, 2021 WL 1086245, at *10.

Further, Plaintiffs cannot seriously point to those various bits of hearsay from Mrs. Seex's and Dr. Shenkar's depositions to argue that "Mr. Dolgoff knew his opinion based on the LOI's was unsupported and, in fact, contradicted by the facts, yet he continued to assert this baseless opinion." Mot. at 11. The *only* information on this issue that was available to Mr. Dolgoff before his report deadline was Plaintiffs' interrogatory responses (which he considered). *See id.* That is because Plaintiffs failed to disclose or produce *any* discussions with or information learned from Mr. Dunford or Mr. Krank in Dr. Shenkar's materials or before Mr. Dolgoff's deadline to respond. *See* Ex. 4 at 76:4–12 ("None of that information was referenced in Dr. Shenkar's report, so I had not even any inclination that such information existed."). These were flagrant violations of Rule 26, as Boeing explained in its motion to strike Dr. Shenkar's reports. *See* ECF 2400. So to the extent Mr. Dolgoff should have considered this additional information at all, his inability to do so is, simply put, Plaintiffs' fault. Plaintiffs cannot now

12

benefit from their discovery failures by casting aspersions on Mr. Dolgoff for not considering information that Plaintiffs did not produce.

Nor was it Mr. Dolgoff's burden to hunt down this information from Plaintiffs, as the motion suggests. *See* Mot. at 11 (arguing that "Dolgoff could have inquired further of TML and Ascent, but chose not to do so"). Even so, Defendants tried many times to get this information from Plaintiffs, to no avail. *See generally* ECF-2400; *see also* ECF 2400-6 at 3–4; ECF 2400-9 at 2; ECF 2400-13 at 3; ECF 2400-12 at 119:10–120:12; Ex. 5 at 16:5–12, 17:16–19, 122:20–124:15, 161:21–25. None of this justifies the exclusion of Mr. Dolgoff's opinions. Quite the opposite: it shows exactly how Plaintiffs' failures to comply with Rule 26 are continuing to prejudice Boeing to this day. *See* ECF 2400.

To be sure, an expert cannot base his opinion on false or speculative assumptions and cannot simply ignore relevant data. *See, e.g.*, *Terrell v. Childers*, 1996 WL 385310, at *10 (N.D. Ill.) (citation omitted); *Reeves v. Commonwealth Edison Co.*, 2008 WL 239030, at *8–9 (N.D. Ill.); *Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *15 (N.D. Ill.) (St. Eve, J.). Those are key reasons why the Court should exclude *Dr. Shenkar's* opinions. *See* ECF 2401 at 6–10, 14–15. But that is not what Mr. Dolgoff did. He did not ignore any relevant facts or base his opinions on false or speculative assumptions. He considered all the information he had and discussed how it did or did not affect his opinions. That is exactly what an expert is supposed to do.

## CONCLUSION

Plaintiffs do not identify a single reason to exclude Mr. Dolgoff's opinions. The Court should deny Plaintiffs' motion.

| | |
|---|---|
| DATED March 17, 2025 | **THE BOEING COMPANY** |
| | By: /s/ *Dan K. Webb* |
| | *One of Its Attorneys* |

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600