# EXHIBIT 3

Mr. Phil N Gutsche
Sasema Management Company
1959 – 00502, Nairobi, Kenya

March 30, 2019

**Letter of Intent**

Dear Mr. Gutsche,

We would like to thank you for considering Ascent Capital MGT Africa Ltd ("Ascent" or "Investor") as partners for Tamarind Management Ltd ("Company").

We refer to the information memorandum shared and hereby would like to propose the following.

**1. Valuation**

The parties have agreed to apply a multiple of 6.0x to the financial year 2018 normalized sustainable earnings before interest, tax, depreciation and amortization ("EBITDA") of the Company to arrive at the enterprise value. To achieve the equity value, the net debt of the Company shall be deducted from the enterprise value. The equity value shall be the basis for calculating the Investor's stake in the Company.

As currently contemplated the 2018 EBITDA is as follows:

| | |
|---|---|
| Reported EBITDA | KES 70,224,925 |
| Add back royalties | KES 32,897,217 |
| Add back Directors withdrawals | KES 25,975,000 |
| Transaction EBITDA | KES 129,097,142 |

The parties have further agreed on a profit share upon exit. This means that the Investor will share a part of its profits from the transaction with the other shareholders (pro rata). This would work as follows: Upon exit, the Investor will retain all the sale proceeds relating to the sale of the Investor's stake until they have realized an implied IRR of 25% per annum (the aggregate proceeds paid to the Investor, including but not limited to any declared and paid dividends, to reach this threshold return less transaction costs incurred by the Investor), "Investor Threshold Return". Any sale proceeds due to the Investor in excess of the Investor Threshold Return will be split 70% to the Investor and 30% to the current TML Shareholders (the "Sponsors") pro rata.

**2. Investment**

The Investor shall invest six million USD into the Company. The investment shall be in the form of equity / new ordinary shares in the Company pari passu with the shares held by the current shareholders.

The parties have agreed that a part of the investment would be used to buy back any brands used in the business which are currently not held by the Company. The Investor's investment shall be applied by the Company as follows:

|       |                                 |                 |
|-------|---------------------------------|-----------------|
| i.    | Buy out of brands held by Tamarind Ltd | USD 2.0 million |
| ii.   | Debt repayment & creditors relief | USD 1.0 million |
| iii.  | Growth Capital                  | USD 3.0 million |

It is also noted that Tamarind Limited (TML) is willing to consider receiving the aforementioned consideration in terms of part cash payment and part in the form of shares in the Company (subject to agreement) at the same Pre-Money equity valuation as the Investor.

Based on the above said the parties shall agree on the investment structure and the post investment shareholding of the Company in the transaction documents. As currently contemplated the post-transaction shareholding would be as follows:

| | |
|---|---|
| Ascent | 54.3% |
| Tamarind Ltd | 24.3% |
| Jonathan Seex Estate | 12.4% |
| Others | 6.9% |
| ESOP | 2% |
| Total | 100% |

It is further agreed that an Employee Share Ownership Program ("ESOP") is established and that 2% of the shares in the Company is allocated to the ESOP. The purpose of the ESOP is to encourage senior management participation in the financial success of Company. The shares would vest on the exit of the Investor. The ESOP would dilute all the shareholders (including the Investor) pro rata. The above mentioned 2% shall be allocated to the new CEO. Any additional allocation shall be agreed on post-transaction.

The parties agree to work closely together during the Due Diligence phase to identify and agree on a suitable CEO to be appointed latest on signing of the transaction documents. Additionally the parties shall work together to try to resolve the issue of the expired lease for the Tamambo/Tamarind restaurant on Karen Road. Furthermore the parties shall agree on the need for an appointment of a manager for the hospitality (hotel management) part of the business.

The board composition will be dependent on the resultant equity position between the Investor and the Sponsors on a fair representation basis consistent with customary minority protection rights.

The parties shall agree on reserved matter and a dividend policy statement (the pay-out ratio to be agreed during due diligence stage) which shall be included in the final legal documentation.

**3. Exit**

Should, after the fourth anniversary of the closing date of the investment, an offer that is acceptable to the Investor to acquire a majority equity stake in the Company be received from another party, the Investor may drag along the other shareholders for the sale of all (or some) of the shares in the Company up to a maximum of 75% of the shares in the Company (including the Investor's shares). In this case all shareholders shall allow the buyer to purchase their shares on terms similar to those received by the Investor. All parties shall also have the right to tag-along onto the sale by other shareholders in case of any sale of part or all of their shares to a third party on terms similar to those received by the other shareholders.

**4. Conditions Precedent**

The conclusion of the transaction will be subject to the completion of a satisfactory due diligence and the signing of necessary agreements by all parties. The conclusion is also subject to verification that the Company owns all the brands under management and that there are no royalty payments due or going forward.

**5. Timing and next steps**

The time schedule going forward shall be as follows, subject to timely availability of Company data and management:

- Commercial due diligence ("CDD") by the end of April 2019
- Investment Committee ("IC") approval latest on the 15th of May 2019
- Completion of financial, legal and tax DD ("External DD") by the 15th of June 2019
- Drafting and negotiation of transaction documents concurrently with the External DD
- IC and Fund Board approval by the 21st of June 2019
- Signing of contracts latest the 27th of June 2019
- Transaction closing latest on the 30th of July 2019

**6. Confidentiality**

All parties agree to maintain confidentiality and not to disclose any details or information on the Company including this transaction to other parties except to advisors and affiliates involved in the transaction.

**7. Exclusivity**

The company and its owners shall not engage in discussions with other investors for purchase of shares in the Company or injection of capital into the Company for a period of 18 weeks from the date of signature of this Letter of Intent.

**8. Costs**

Each party shall bear its own transaction costs.

Yours sincerely,

Ascent Capital MGT Africa Ltd


_____

Director


I hereby confirm my acceptance of the above terms


_____