IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Civil No.  1:19-cv-02170<br><br>District Judge: Hon. Jorge L. Alonso<br><br>Magistrate Judge: Hon. M. David Weisman |

**PLAINTIFFS' OBJECTION TO AND REQUEST TO BE HEARD REGARDING BOEING'S REQUEST FOR JUDICIAL NOTICE**

Plaintiffs object to Boeing's Request for Judicial Notice and request the opportunity to be heard on the propriety of taking judicial notice and the nature of the facts to be noticed pursuant to Federal Rule of Evidence 201(e) [ECF 2463], and in support thereof state:

**INTRODUCTION**

"Judicial notice is a powerful tool that must be used with caution" (*Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016)) because "in a civil case, the court must instruct the jury to accept the noticed fact as conclusive" (Fed. R. Evid. 201(f)).

Boeing's request for "judicial notice" of 180 pages of generic U.S. income, salary, and net worth information unrelated to any of the victims in this case should be rejected. In two of the four cases set for trial on April 7—*Dieci* and *Belanger*—the amount of the decedents' income isn't even in dispute at trial. Tellingly, Boeing nevertheless seeks "judicial notice" in all four cases and a corresponding jury instruction, asking this Court to declare to the jury "you must now treat this fact as having been proved" [Dkt 2463, fn. 6], because what Boeing's motion is really about is using the Court to impose its viewpoint on the measure of noneconomic damages under the guise of statistical data, in direct contravention to this Court's prior ruling.

1

As explained below, Boeing's request for judicial notice of generic statistical data is inappropriate under Rule 201 because Boeing's proffered documents do not relate to any specific adjudicative facts in any of the four cases slated for trial on April 7, 2025. Boeing's request should also be rejected because it flunks Rule 401's relevancy test.

Moreover, Boeing's request should be denied because it asks the Court to instruct the jury that the Court is binding the jury to everything in the documents appended to the motion. It would be extraordinarily prejudicial to turn these documents over to a jury without expert testimony explaining to the jury what the documents are, how they were generated, what the limitations are in the documents, and precisely how they relate to facts that the jury is called upon to decide. The jury would be required to spend days, maybe weeks, trying to figure out these documents on their own and almost certainly lack the expertise to do so. No expert has been identified, no report has been filed relying on these documents, and they are beyond the ken of lay jurors. Thus, the exhibits should be excluded under Rule 403 as substantially more likely to confuse the jury than to add probative value.

## ARGUMENT

Rule 201, which governs a district court's use of judicial notice, applies only to adjudicative facts, which are "simply the facts of the particular case." *United States v. Arroyo*, 310 F. App'x 928, 929 (7th Cir. 2009); quoting Fed. R. Evid. 201 advisory committee's note (adjudicative facts are those "which relate to the parties," or more fully, "who did what, where, when, how, and with what motive or intent"). "[T]he content of an entire report is not an adjudicative fact within the meaning of Rule 201 in the context of a jury trial." *Outley v. City of Chicago*, 2022 WL 4448739, at *6 (N.D. Ill. Sept. 23, 2022) (denying request for judicial notice

2

of Chicago Office of Inspector General's reports, even though limited to the second and third quarters of 2017). These documents have nothing to do with the adjudicative facts of these cases.

I. **Despite this Court's explicit ruling, Boeing indicates it intends to use these documents that have nothing to do with cost of living and to argue the measure of damages.**

In deciding that cost of living might be a relevant consideration for the jury in determining compensation, the Court clarified its "ruling does not go beyond […] cost of living as opposed to broader issues with the elements or the measures related to damages." Exhibit 1, 10/16/23 Hr'g Tr. at 24:22-25. Boeing's documents are unrelated to cost of living; rather, they are about "average and median wages, income, and wealth." ECF 2463 at 5. These national datapoints have nothing to do with cost of living, which is a temporal or geographic comparison of the cost of goods and services.[1] And, Boeing intends to use that information to "give the jury objective benchmarks against which to weigh [Boeing's suggested] sums and determine appropriate awards to compensate the families for their losses." ECF 2463 at 5. Information that goes, not to the cost of living for any particular plaintiff, but instead to broader issues with the measures related to damages, is *exactly* what Boeing intends here. This is in direct conflict with the Court's order—and worse, Boeing wants the Court to deliver this information to the jury by the Court as absolutely truthful and relevant! The Court should summarily deny Boeing's request for judicial notice, and it should admonish Boeing it may not improperly use this type of data at trial.

II. **Boeing's request is vague and inappropriate, and it must be denied.**

---

[1] Both the Court and Boeing seemed to contemplate cost of living discussion in these cases in the context of geographic comparison. Ex. 1 at 20:20-23 ("Boeing may argue that the cost of living in the place where the plaintiffs and decedents live or lived is relevant to the calculation of damages"); Exhibit 2, 6/5/23 Hr'g Tr. at 30:5-10 ("Boeing can makes arguments about the costs of living and whether an amount is, quote-unquote, generational wealth in a particular country"), 36:5-21; ECF 1610 at 4-5 (arguing that "[c]omparing the purchasing power of two currencies in two geographic regions is a common and commonsense way to convey what a foreign currency is 'really worth'").

Even if this Court is inclined to allow argument regarding wages, income, and wealth on a national scale (to be clear, it shouldn't), this request must be denied. Rather than requesting judicial notice of any particular facts contained in these reports, Boeing seemingly requests this Court take judicial notice of all the reports (totaling 180 pages). This is impractical, as it would seem to require the Court either to read into evidence entire statistical reports and graphical data or to provide the documents directly to the jury, tell them the Court has taken notice of them, and instruct them they are bound by that notice. But this would be entirely improper, since it would be an incredible waste of time for the Court to read the documents to the jury or to ask each juror to read them. Moreover, the jury would have no idea what to do with the documents since the Court would be unable to identify for the jury any specific adjudicative facts (i.e., facts actually in dispute) it believes these documents establish. *See Outley*, 2022 WL 4448739, at *6-7 (denying request for judicial notice where, *inter alia*, the party did not identify any specific adjudicative facts in the documents and reports which would warrant and qualify for judicial notice) and citing *Jones v. Graphic Arts Finishing Co.*, 2012 WL 10131038, at *2 (N.D. Ill. Jan. 13, 2012) (holding that "taking notice of the entire report is likely to mislead the jury").

**III.     The documents bear no relevance to the April 7, 2025 trial cases, are inadmissible hearsay, and therefore judicial notice is improper under Seventh Circuit precedent.**

Even assuming Boeing clarified which facts within any of these documents should get judicial notice, the contents of the documents are inadmissible under the remainder of the Federal Rules of Evidence. "Rule 201 does not operate in a vacuum, meaning that it does not operate as a magic wand that cures inadmissibility under other Evidence Rules." *Outley*, 2022 WL 4448739, at *2. "[A]ll evidence—including that governed by Rule 201, Federal Rules of Evidence—must bear a relationship to some consequential fact in the case." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 244 F. Supp. 3d 716, 718 (N.D. Ill. 2017); *see also Sunstar, Inc. v.*

4

*Alberto-Culver Co.*, 2006 WL 6505615, at *3 (N.D. Ill. Nov. 16, 2006) ("facts subject to judicial notice are not exempt from analysis under the other rules of evidence").

### A. The documents flunk Rule 401's relevancy test.

Rule 401 defines relevancy as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Relevance under Rule 401 is a necessary requirement of *all* evidence, no matter its source or when in the litigation it is sought to be used." *Physicians Healthsource, Inc.*, 244 F. Supp. 3d at 718 (emphasis in original) (citing Seventh Circuit cases). "The principle, of course, is equally applicable to requests for judicial notice." *Id.* at 719. "Since Rule 201 is a constituent part of the Federal Rules of Evidence, it would be odd if the concept of relevance under Rule 401, which permeates all of the Rules, was not equally applicable to Rule 201. Neither Rule 201 nor any other Rule of Evidence is an exception to the requirement that all evidence be relevant or it is excluded." *Id.*; *see also Opoka v. Immigration and Naturalization Service*, 94 F.3d 392, 394 (7th Cir.1996) (holding that the court may take judicial notice of the decisions of courts and administrative agencies to the extent they are relevant).

Although Boeing insinuates otherwise, "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401 advisory committee's notes; *United States v. Westbrook,* 125 F.3d 996, 1007–08 (7th Cir. 1997). The Seventh Circuit's decision in *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354–55 (7th Cir. 1995), is illustrative here. In *Hennessy,* an employment discrimination case, the district court was attempting to determine the size of the defendant corporation so as to assess the applicability of a punitive damages cap under the 1991 Civil Rights Act. *Id.* at 1354. The appellate court affirmed the district court's decision not to take

5

judicial notice of SEC filings because the parties disputed the relevance of the documents, which covered more units of the defendant corporation than the one unit specifically involved in the suit. *Id.* at 1355. *See also Outley*, 2022 WL 4448739, at *6 (where the plaintiff pointed to a specific statement in a government report, but that statement did not explicitly relate to the defendant, the court could not "adequately assess that fact's admissibility, including under Evidence Rules 401, 403, and 404(b)" so as to take judicial notice of the statement).

While this Court previously ruled, in a general sense, that "Boeing may argue that the cost of living in the place where the plaintiffs and decedents live or lived is relevant to the calculation of damages" (Ex. 1 at 20:20-23), it also cautioned that Boeing needs to have "some basis to make whatever argument" it is going to make (Ex. 1 at 24:10-18). The documents put forth by Boeing provide no such basis and are utterly irrelevant. For the Court to tell the jury these facts must be considered evidence in these cases would be improper. *See Guzman v. Laredo Systems, Inc.*, 2022 WL 971564 (N.D.Ill. 2022) (declining to take judicial notice of Illinois Department of Labor statistics because they would be useless in determining damages without a basis to apply them to the adjudicative facts of the case).[2]

In addition, Boeing is asking the Court to take judicial notice of the kind of complex documents that typically require foundation testimony from an expert. It would be extraordinarily prejudicial to turn these documents over to a jury without expert testimony explaining to the jury what the documents are, how they were generated, what the limitations are in the documents, and precisely how they relate to facts that the jury is called upon to decide. The jury would be required to spend days, maybe weeks, trying to figure out these documents on their own and almost certainly

---

[2] Boeing incorrectly states the *Guzman* court did take judicial notice of these statistics (ECF 2463 at 3); actually, the court only recognized the information was of the sort for which it "could" take notice—if there were facts in the case to which the information could appropriately be applied. 2022 WL 971564 at *11-12.

6

lack the expertise to do so. No expert has been identified, no report has been filed relying on these documents, and they are beyond the ken of lay jurors. Moreover, the jury would have no idea what to do with the documents since the Court would be unable to identify for the jury any specific adjudicative facts (i.e., facts actually in dispute) it believes these documents establish

1. *Dieci*, *Belanger*, and *Seex*: **None of the beneficiaries reside in the U.S., so the documents are irrelevant**

Although Boeing's motion glides past this point, the *Dieci* case beneficiaries are not even seeking economic damages, and they reside in Italy. Similarly, the *Belanger* case beneficiary stipulated to an economic damages award with Boeing, and she resides in Canada. And in *Seex*, the beneficiaries reside in France. Boeing fails to explain how the exhibits it offers have anything to do with cost of living in the place where the plaintiffs live. U.S. Census data or Labor Bureau statistics regarding U.S. "wages, income, and wealth" have no tendency to make any fact in these cases more or less probable than it would be without that evidence. These documents are clearly irrelevant.

2. *Lewis*: **Boeing cannot show these non-evidence facts apply to the adjudicative facts of the case, making them inappropriate for judicial notice**

Unlike the other three cases, the Lewis family does live in the U.S. But, the contents of these documents still are useless information for the jury. Both the *Lewis* plaintiff and Boeing have expert economists to opine on the economic damages of the Lewis family by evaluating the family's actual information (its adjudicative facts), not generalized survey information that has no relationship to the decedent.

Furthermore, even without those experts, the data and statistics offered have no bearing on the Lewis family's damages. As Plaintiffs' previously counsel pointed out, cost of living may vary wildly "neighborhood by neighborhood, street by street" across the U.S. (Ex, 2 at 30:21-31:25;

7

32:13-20; 34:5-14). For these national statistics to be relevant to the *Lewis* case, Boeing would need to connect the dots, showing how the data is applicable to the adjudicative facts of the case. *See Guzman*, 2022 WL 971564 at *11-12; *see also Martin v. F.E. Moran, Inc.*, 2017 WL 11893225 at *1 (N.D. Ill. 2017) (the relevance of the specific facts referenced in documents for judicial admission must be established). It has not disclosed any witness to lay the foundation to do that— as it must. *See Martin*, 2017 WL 11893225 at *1 (noting judicially noticed documents would not be admitted without a proper foundation).[3] So, for the *Lewis* case, "[i]t is apparent that this use of non-evidence facts in evaluating the adjudicative facts of the case is not an appropriate subject for a formalized judicial notice treatment." Fed. R. Evid. 201 advisory committee's note (citing *Hughes v. Vestal*, 264 N.C. 500, 142 S.E.2d 361 (1965) (the Supreme Court of North Carolina disapproved the trial judge's admission in evidence of a state-published table of automobile stopping distances on the basis of judicial notice, though the court itself had referred to the same table in an earlier case in a "rhetorical and illustrative" way in determining that the defendant could not have stopped her car in time to avoid striking a child who suddenly appeared in the highway)).

### B. Boeing is Asking the Court to Do What Fed. R. Evid. 803(18) Prohibits.

Boeing's request for judicial notice is nothing more than an effort to have the Court inform the jury of various statistical information that is typically provided by experts who can explain the statistics and establish how they are relevant and "fit" the facts disputed by the parties. Fed. R. Evid. 803(18) provides a hearsay exception for the kinds of documents Boeing asks the Court to notice:

---

[3] The *Martin* court did take judicial notice of Federal Reserve Data, but noted the information would not be admitted into evidence unless and until the plaintiffs laid the proper foundation. Unlike *Martin*, which was a bench trial, the cases at bar will be heard by a jury. *Martin v. F.E. Moran, Inc.*, 2017 WL 1105388, at *4 (N.D. Ill. Mar. 24, 2017). Because the court must instruct the jury to accept the noticed fact as conclusive, this court should not even go as far as taking judicial notice of the documents here. Fed. R. Evid. 201(f), 403.

8

> **(18)** *Statements in Learned Treatises, Periodicals, or Pamphlets.* A statement contained in a treatise, periodical, or pamphlet if:
>
> **(A)** the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> **(B)** the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
> If admitted, the statement may be read into evidence but not received as an exhibit.

The Rule is absolutely clear that such publications can only be used in a trial if there is an expert to explain them. Boeing has not identified any expert who has produced a report pursuant to Fed. R. Evid. 702 that explains these statistics and how they fit the facts of the case. The judicial notice request is an unwarranted end-run around well-established rules governing expert testimony and the use of evidence contained in materials that experts have typically relied upon if they are relevant to disputed facts.

**IV.   In the alternative, Plaintiffs request the Court take judicial notice of Boeing's probability calculations this crash would occur and its SEC filings regarding its executive compensation.**

Boeing cites *Arpin v. United States*, 521 F.3d 769 (7th Cir. 2008) in support of the idea that its U.S. national "wages, income, and wealth" datapoints are relevant to these cases. But *Arpin* was a wrongful death case brought under the Federal Tort Claims Act, i.e., a non-jury trial. *Id.* at 771. There, the court recognized the difficulty for a judge to rationalize a judicial determination of value of noneconomic damages. *Id.* at 775-77. In discussing that difficulty, the court considered the concept of the value of a statistical life, and it appreciated the deterrent value of the associated risk assessment undertaken by a defendant using that sort of metric:

> And if we know both the probability of a fatal accident and the benefit that a person would demand to bear it we can estimate a value of life and use that value to calculate damages in wrongful death cases. *See* W. Kip Viscusi and Joseph E. Aldy, "The Value of a Statistical Life: A Critical Review of Market Estimates Throughout the World," 27 J. Risk &

9

Uncertainty 5 (2003); Paul Lanoie, Carmen Pedro & Robert Latour, "The Value of a Statistical Life: A Comparison of Two Approaches," 10 J. Risk & Uncertainty 235 (1995); W. Kip Viscusi, "The Value of Risks to Life and Health," 31 J. Econ. Lit. 1912 (1992). Suppose a person would demand $7 to assume a one in one million chance of being killed. Then we would estimate the value of his life at $7 million. Not that he would sell his life for that (or for any) amount of money, but that if the risk could be eliminated at any cost under $7 he would be better off. Suppose it could be eliminated by the potential injurer at a cost of only $5. Then we would want him to do so and the prospect of a $7 million judgment if he failed to would give him the proper incentive. *Id.* at 775-76.

If *Arpin* is the road Boeing wants to walk, and the Court allows it, then Plaintiffs must be entitled to present Boeing's own calculation of the probability of a second 737 MAX crash after Lion Air JT 610 (which were produced in discovery in this litigation). Plaintiffs must also be able to present testimony from the decedents' families regarding how much money their decedents would have demanded to board flight ET 302, had they known their chances of being killed. The factfinders can then use those figures to estimate the value of these individuals' lives, and Plaintiffs can suggest to the jury that Boeing pay a judgment greater than that figure as "the proper incentive" to ensure manufacturer does not allow the flying public to board defective 737 MAX airplanes.

Additionally, information showing how Boeing values its executives on whose watch this crash occurred are relevant to the jury's assessment of damages here, where multiple decedents were executives themselves and did not allow a multinational catastrophe to occur. The Court should therefore take judicial notice of Boeing's SEC filings showing the Chief Executive Officer at the time of these crashes was paid approximately $62 million. (Exhibit 3). After all, data submitted in SEC filings are the sort of government record which may be judicially noticed, and, of course, Boeing cannot be heard to dispute the facts in its own filings.

## CONCLUSION

For the reasons stated, Plaintiffs object to Boeing's Request for Judicial Notice. Boeing's "judicial notice" is a ploy to invade the province of the jury, impose Boeing's viewpoint on case

10

value via a "judicial notice" jury instruction, and introduce generalized data that has no relevance to the adjudicative facts in dispute in these cases. This Court should therefore deny Boeing's Request for Judicial Notice outright, or else grant Plaintiffs an opportunity to be heard on this matter, as is their right.

DATED March 21, 2025

/s/ *Robert A. Clifford*
Robert A. Clifford
*rac@cliffordlaw.com*
Kevin P. Durkin
*kpd@cliffordlaw.com*
Tracy A. Brammeier
*tab@cliffordlaw.com*
John V. Kalantzis
*jvk@cliffordlaw.com*
**CLIFFORD LAW OFFICES, P C.**
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090

11

CERTIFICATE OF SERVICE

      I, Robert A. Clifford, certify under penalty of perjury that on this 21st day of March 2025, I electronically filed the foregoing **PLAINTIFFS' OBJECTION TO AND REQUEST TO BE HEARD REGARDING BOEING'S REQUEST FOR JUDICIAL NOTICE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Dated: March 21, 2025                                    /s/Robert A. Clifford
                                                                 Robert A. Clifford
                                                                 One of the Attorneys for Plaintiffs