**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT TESTIMONY ABOUT UNBELTED PASSENGERS**

Plaintiffs have agreed not "to assert any passengers were unbelted" at trial. ECF 2461 ("Opp.") at 2–3. If they had told us this during the parties' meet and confer (they did not), then the parties might have found common ground. At any rate, reasons remain for the Court to grant the motion, which raises the important *and unanswered* question of what *all* Plaintiffs' common experts can and cannot say about unbelted passengers—a question that this Court has *not* "already decided . . . at least twice," as Plaintiffs claim. *Id.* at 1. Nor is the motion untimely, as Plaintiffs briefly suggest.[1]

In short, Dr. Jenkyn should not be permitted to testify that any passengers were likely unbelted; his assumption was that all passengers were belted, and he saw no evidence to the contrary. And Captain Norton, Mr. Pereira, and Mr. Faaborg should not be able to testify about unbelted passengers at all. As Boeing explained, any such opinions "would be speculative, unreliable, and unhelpful to the jury—and thus inadmissible under Rule 702." ECF 2399 ("Mot.") at 1. They would also "risk[] unfair prejudice to Boeing" (*id.* at 4) because speculative testimony about unbelted passengers would, naturally, "invite the jury to speculate" about unbelted passengers (*Cole v. Perry*, 2019 WL 4165304, at *7 (S.D. Ind.)).

These experts are taken in turn.

**Dr. Jenkyn.** Most of Plaintiffs' brief focuses on Dr. Jenkyn, the only expert who conducted a biomechanical simulation of the flight. But as the motion made clear, "Boeing does not dispute that Dr. Jenkyn can testify about the scientific principles of G-forces and 'generally

---

[1] Plaintiffs claim, without citation, that the February 8, 2023 motion deadline applied to "the expert evidence applicable to all cases." Opp. 1. That is not what the schedule said. *See* ECF 1484 (jointly proposing "Pretrial Motion Deadlines (Expert Motions)" without specifying that February 8 was the deadline applicable to all common experts for all time); ECF 1554 (order: "Pretrial expert motions shall be filed by 2/8/23."). And besides, Plaintiffs have never before made this argument in response to Boeing's other motions filed since February 8, 2023, that raised issues affecting their common experts. *See* ECF 1817 (animations), 2289 (Exhibit 393).

1

about forces the passengers experienced,' consistent with this Court's prior rulings." Mot. at 4 (quoting Ex. 8 at 7:3–23). Boeing is *not* relitigating the Court's prior ruling that Dr. Jenkyn "can testify that the forces the passengers were subjected to would have thrown them up out of their seats and against the ceiling." Ex. 3 at 29:13–15. And Boeing is not disputing that "the forces exerted on the passengers' bodies are relevant," as Plaintiffs suggest. Opp. at 3. Boeing's argument as to Dr. Jenkyn is simply that he should not be permitted to "offer speculative testimony that is not grounded in sufficient facts or data," as this Court has already made clear. Mot. at 4; *see also* Ex. 8 at 6:11–7:23. Plaintiffs effectively concede that all passengers were belted (they make no argument otherwise), and they admit that Dr. Jenkyn "assumed all adult passengers were belted when forming [his] opinions." Opp. at 3. Dr. Jenkyn saw no "indications to the contrary." Ex. 1 at 11. Therefore, Dr. Jenkyn cannot opine that any passengers were likely unbelted because any such testimony would not be grounded in facts or data and would invite the jury to speculate.

While the Court's prior rulings on Boeing's motions to exclude Dr. Jenkyn's testimony and Exhibit 393 certainly relate to this issue—indeed, they form the groundwork for this motion as it relates to Dr. Jenkyn (*see* Mot. at 4–5)—neither ruling squarely decided this precise issue because neither motion squarely presented it.

**Captain Norton.** As the motion explained, Captain Norton stated in her report that "unbelted passengers would have likely been dislodged from their seats" during the positive G-forces experienced on the flight and "would strike the ceiling" during the negative G-forces. Ex. 4 at 9 (quoted in Mot. at 2). But she gave no support for any opinion that any passenger was unbelted, and she admitted that she did no analysis of how the forces would affect the passengers' bodies. Mot. at 2. Any testimony from Captain Norton about unbelted passengers

2

would therefore be speculative, unreliable, unhelpful, and prejudicial. *See id.* at 4–5. Plaintiffs do not address Captain Norton at all in their response, which means they "waive any opposition" to and "concede" these arguments. *Hodges v. Archer Daniels Midland Co.*, 474 F. Supp. 3d 956, 967 (C.D. Ill. 2020) (cleaned up); *see also Baker v. City of Chicago*, 2024 WL 5114168, at *10 (N.D. Ill.) (proponent's "failure to respond" to an argument "result[ed] in waiver"). Captain Norton should not be permitted to testify about unbelted passengers at all.

**Mr. Pereira.** Mr. Pereira disclosed no opinions on unbelted passengers and should not be permitted to testify about them for that reason alone. Mot. at 6. Plaintiffs do not respond to that argument, so again, they concede it. *See Hodges*, 474 F. Supp. 3d at 967; *Baker*, 2024 WL 5114168, at *10. Mr. Pereira also admitted that he was not "aware of any literature or study about the number or percentage of passengers who are belted on takeoff" (Ex. 6 at 218:16–19), "any data about the percentage of passengers [belted] on Ethiopian Airlines flights" (*id.* at 218:20–23), or "any evidence that any particular passenger was unbelted or unrestrained during the accident flight" (*id.* at 222:18–223:4). Yet he speculated in his deposition that some passengers would have been unbelted based on his "personal observations," his views on "human nature," his conversations with "friends," and his involvement in unrelated cases where there *was* evidence that "passengers were not buckled." Mot. at 2, 5. Mr. Pereira should not be able to offer this unreliable and speculative testimony about unbelted passengers at trial for the reasons stated in the motion. *See id.* at 5–6.

Plaintiffs do not address those arguments, either. Their only response is that Mr. Pereira's "testimony about the possibility of unbelted passengers was elicited in response to Boeing's questions about whether there were unbelted passengers!" Opp. at 3–4 (exclamation point original). That makes no difference. An expert's discovery deposition is the opposing party's

3

only opportunity to explore the scope and bases of the expert's opinion. Unreliable expert testimony does not become reliable just because it is offered in response to the opposing party's deposition question, and Plaintiffs' lone cited case does not say otherwise. *See White v. Richert*, 2019 WL 11729810, at *2 (N.D. Ill.) (cited in Opp. at 4) (overruling defendant's "leading questions" objection to designated deposition testimony because defendant was the examiner and was "entitled to use leading questions" on cross-examination).

**Mr. Faaborg.** Plaintiffs are incorrect that Mr. Faaborg "assumed all adult passengers were belted." Opp. at 3. He discussed unbelted passengers in his report and how the G-forces might affect them "during the less-than-zero G portions of the final 21 seconds of flight." ECF 1542-3 at 17. That is why Boeing asked him questions about unbelted passengers in his deposition, at which point he confirmed that while he assumed that "there was a rule that . . . passengers would be belted," he also "assumed that not everyone would follow that rule." Ex. 7 at 258:18–259:2. Critically, he testified that he based this second assumption on his "personal experience," not any data or scientific analysis. *Id.* at 258:25–259:2. His speculative and unreliable testimony about unbelted passengers is inadmissible for reasons explained in the motion. *See* Mot. at 5–6. Again, Plaintiffs do not address these arguments.

\* \* \*

The rest of Plaintiffs' brief continues to evade Boeing's arguments, and it certainly gives the Court no reason to admit speculative, unreliable, and unhelpful testimony about unbelted passengers from all these experts.

First, Plaintiffs do not address Boeing's argument that it "would be needlessly cumulative and unfairly prejudicial" to allow Captain Norton, Mr. Pereira, or Mr. Faaborg—in addition to Dr. Jenkyn—to testify about the effects of G-forces on an unbelted passenger. Mot. at 4 n.1. So

4

that argument, too, is conceded. *Hodges*, 474 F. Supp. 3d at 967; *Baker*, 2024 WL 5114168, at *10. While Dr. Jenkyn "can testify that the forces the passengers were subjected to would have thrown them up out of their seats and against the ceiling" (Ex. 3 at 29:13–15), no other expert should be permitted to offer similar testimony.

Second, Plaintiffs do not address *any* of the cases cited in Boeing's motion, and their reliance on *Hammond v. System Transport, Inc.* is misplaced. 2013 WL 12374878 (C.D. Ill.). There, the court admitted certain evidence about the factual circumstances surrounding the accident; it did not admit speculative, unreliable, unhelpful, or cumulative expert testimony about concededly *counterfactual* events. *Hammond* in no way suggests that the Court should allow unreliable and speculative expert testimony about unbelted passengers here; indeed, that case did not address expert testimony at all.

Finally, Plaintiffs invite a limiting instruction "in the event the Court becomes concerned about jurors' comprehension of the evidence presented to them during the trial." Opp. at 4. To be clear, Boeing is not concerned about the jurors' ability to "comprehend" the evidence; it is concerned that speculative expert testimony will cause the jury to speculate. And if the Court allows any expert to testify that passengers may have been unbelted—or allows Captain Norton, Mr. Pereira, or Mr. Faaborg to testify about unbelted passengers at all—it is unclear what limiting instruction would solve the problem. But if the Court does allow any such testimony, Boeing reserves the right to propose a limiting instruction at the appropriate time.

For all these reasons and those stated in the motion, the Court should prohibit all Plaintiffs' experts from testifying that any passengers were likely unbelted and prohibit Captain Norton, Mr. Pereira, and Mr. Faaborg from testifying about unbelted passengers or the effect of G-forces on such passengers.

| | |
|---|---|
| DATED March 24, 2025 | **THE BOEING COMPANY** |

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600