IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH**<br><br>This Document Relates To:<br>YALENA LOPEZ-LEWIS, as Administrator of the Estate of ANTOINE M. LEWIS Sr., deceased,<br><br>Case No.:  1:19-cv-4964 | Civil No. 1:19-cv-02170<br><br>District Judge: Hon. Jorge L. Alonso<br><br>Magistrate Judge: Hon. M. David Weisman |

**PLAINTIFF'S REPLY TO BOEING'S RESPONSE TO
MOTION TO BAR OPINIONS OF JONATHAN GURYAN**

Plaintiff, through undersigned counsel, replies to Boeing's response to Plaintiff's motion to bar opinions offered by Boeing's retained expert, Dr. Jonathan Guryan. This witness is not qualified to give the opinions he is offering; his opinions omit relevant facts and data; and his opinions do not reflect the application of reliable principles and methods to the facts specific to this case. In support thereof, Plaintiff states as follows:

**I.      Guryan is Unqualified to Opine on the Lost Earnings, Lost Earnings Capacity, or Career Path of Cpt. Lewis.**

Just because an expert is qualified in one subject, that does not mean he is qualified to testify on every related subject, especially those that rest on different principles and methodologies. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th. Cir. 2002) (even "[a] theoretical economist, however able, would not be allowed to testify to the findings of an econometric study . . . if he lacked expertise in econometrics"); *see also Jones v. Lincoln Elec. Co.*,188 F.3d 709, 724 (7th Cir. 1999) (trial court erred in allowing expert in material science and metallurgy to testify as to health effects of manganese on the body because the witness was not a

1

toxicologist or medical doctor). The law is clear: an expert must have relevant expertise in the specific subject matter they are opining on. *Id.*

Guryan does not possess the relevant expertise to offer testimony in this case. His background is in economics, but his expertise lies in macroeconomic studies of social policy, with a focus on race and education. *Exhibit 1* (Guryan Report) at *Appendix* A. He has no background in compensation or human resources. He is not qualified to assess the lost earning capacity of an individual, let alone opine on Cpt. Lewis' career trajectory.

Simply qualifying as an economist does not entitle a witness to testify on every aspect of economics. *Dura Auto. Sys,* 285 F.3d at 614. Boeing has failed to establish that Guryan has a background in studying labor markets on a microeconomic level. The vague assertion that he has taught classes that touch on the subject – without providing course names, descriptions, or any other specific about their content – is not sufficient. *Exhibit 1* at 5. Their attempts to bolster Guryan's credentials by suggesting that Guryan's "Quantitative Methods" course is microeconomic in nature because it covers "statistical methods and regression analysis" fails because these are simply data analysis tools with no inherent connection to micro or macroeconomics, and the record is bare and void of any indication that there is a connection between this course and microeconomics. *ECF* 2455 at 6.

In *Midwest Fence*, the District Court noted that Guryan's described himself as "a labor economist who conducts research primarily on the causes and consequences of racial inequality in labor markets and in education, on the economics of discrimination, and on the economics of education and human capital." *Midwest Fence Corp. v. United States Dep't of Transportation*, 84 F. Supp. 3d 705, 724 (N.D. Ill. 2015), aff'd, 840 F.3d 932 (7th Cir. 2016). Nothing in his self-described expertise has any bearing on this case. His CV confirms that his research focuses on

large-scale policy issues – again, primarily related to racial inequality and education – none of which are relevant to the subject matter at hand. *Exhibit* 1 at *Appendix* A.

Beyond his general lack of expertise in this area, Guryan also has no knowledge of the labor market in the field of logistics. He concedes that he lacks specific knowledge about the salary available for executive logistics officers in the private sector, the difficulty of securing those positions, or Cpt. Lewis' likelihood of obtaining such a role – yet he seeks to rebut Brent Longnecker's opinions on these very issues. *Exhibit* 2 (Guryan Deposition) at 65-71; *Exhibit* 1 at 5-7, 10-12. Guryan does not have specific or general knowledge in the area of compensation.

Moreover, Guryan has no background in human resources. *Exhibit* 1 at *Appendix* A. Even if he had some familiarity with compensation in the logistics industry, he lacks the expertise to assess the qualifications, skills, and traits necessary for success in that field – or to determine what motivates individuals to transition from one career to another. Without such knowledge, he is in no position to opine on when Cpt. Lewis would have left the military or what positions he would have transitioned into afterward, a necessary component of determining lost earning capacity. Nonetheless, without any foundation to do so, Guryan rebuts Mr. Longnecker's opinions that are based on nearly 40 years of experience in human resources. *Exhibit* 3 (Longnecker Report) at 3; *Exhibit* 4 (Longnecker CV). Accordingly, his rebuttal is nothing more than "subjective belief or unsupported speculation" and is inadmissible under Rule 702. *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996).

In sum, Guryan's expertise in macroeconomic policy does not qualify him to assess an individual's lost earning capacity and employability. His opinions on these matters lack foundation and should be excluded.

## II. Guryan's Rebuttal of Lost Earnings Capacity is Irrelevant

In a wrongful death case, the proper measure for future economic loss is lost earnings capacity, not merely lost earnings. *Singh v. Air Illinois, Inc*. 165 N.E.2d 852, 856 (Ill. 1st Dist. 1988) ("Despite defendant's assertion to the contrary, such measure of future earning capacity has generally been used in wrongful death actions.")

Plaintiff's expert, Brent Longnecker, appropriately calculates lost earning capacity by modeling five different achievable career trajectories for Cpt. Lewis – an accepted methodology under Illinois law. *See Bramlette v. Hyundai Motor Co.*, No. 91 C 3635, 1992 WL 350683, at *6 (N.D. Ill. Nov. 23, 1992) (holding that Illinois courts "allow evidence of future increases in earning capacity (and corresponding increase in financial support) when there is competent evidence that the projected advancement is not merely an 'ambition,' but a goal within the decedent's reach."); *Exhibit* 3 at 6-7.

Boeing attempts to justify Guryan's rebuttal by suggesting that lost earning capacity calculations are improper in wrongful death cases. *ECF* 2455 at 7-8. That argument is incorrect. More importantly, even if Boeing's premise were valid, its rebuttal would still fail. Guryan does not actually engage with Mr. Longnecker's lost earning capacity analysis; instead, he substitutes a lost earnings calculation – an entirely different metric. *Exhibit* 1 at 10-11. Under Rule 702, such an approach is irrelevant and misleading. Rather than providing a substantive critique of Mr. Longnecker's methodology, Guryan's opinions introduce an incommensurable rebuttal which will only confuse the jury and should be excluded. Ultimately, the jury will hear two sets of numbers: Mr. Longnecker's lost earnings capacity calculations and Guryan's lost earnings calculations. The jury will not understand the difference and believe both Longnecker and Guryan are performing the same calculation. This type of testimony creates a significant risk that the jury will be "misled

by an expert…who offers unreliable or irrelevant opinions" by rebutting one type of damages calculation with another. *Belt Railway Co. of Chicago v. Weglarz Hotel III, L.L.C.*, No. 18 C 7361, 2020 WL 6894664, at *13 (N.D. Ill. 2020); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Fed. R. Evid. 401* ("Evidence is relevant if ***it has any tendency to make a fact more or less probable than it would be without the evidence.").

Accordingly, Guryan's testimony should be barred.

**III. Guryan's Lost Earnings Calculations are Unreliable**

Boeing contends "there is no discernible difference in what Guryan is trying to estimate and what Longnecker and Johson are trying to estimate." *ECF* 2455 at 9. That is simply not true. Mr. Longnecker and Mr. Johnson calculated Cpt. Lewis' lost earning capacity, as they specify in their reports, whereas Guryan offers an entirely different analysis. *Exhibit* 3 at 10; *Exhibit* 5 (Johnson Report) at 11. When asked "*I did not see in your report that you rendered an opinion as to the loss of Mr. Lewis' earning capacity; is that correct*," Guryan admitted, "*I guess I don't know what you mean by capacity.*" *Exhibit* 2 at 11. After multiple follow-up questions, he continued to evade a direct answer and ultimately conceded, "*I don't have an opinion on what that means in a legal matter.*" *Id*. at 12. This answer, alone, should bar Guryan from offering opinions on lost earning capacity.

Despite this, Guryan critiques Mr. Longnecker's methodology while simultaneously relying on it to create his own scenarios—without articulating any independent methodology of his own. *Exhibit* 1 at 6-7, 10-11. Even more troubling, Boeing attempts to bar Mr. Longnecker's methodology in its Motion in Limine, yet Guryan's second scenario – the only scenario with a discernable methodology – explicitly adopts the same approach. *ECF* 2402 at 4-15; Exhibit 1 at 10-11. If Boeing believes Mr. Longnecker's methodology is unreliable, then Guryan's opinions

5

must also be excluded. Conversely, if Mr. Longnecker's methodology is sound, Guryan's opinions should still be barred because he fails to explain his own data choices or methods.

This is not the first time Guryan has sought to offer testimony without substantive analysis of his own to rebut another expert's testimony. As noted by the Seventh Circuit in *Midwest Fence*, "[o]ne major problem with Guryan's report is that he did not perform any substantive analysis of his own." *Midwest Fence Corp. v. United States Dep't of Transportation*, 840 F.3d 932, 951-53 (7th Cir. 2016) (ultimately deciding "Guryan's abstract criticisms do not undermine [the] core of evidence"). As in that case, here he offers no substantive analysis. Rather he engages in mere guesswork and data substitution that, like in *Midwest Fence*, is "speculative at best." *Id.*

**A. Guryan's First Scenario lacks a methodology entirely.**

The court must determine whether an expert's "reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. Here, Guryan neither lays out a methodology nor deploys reasoning explaining why his first scenario was reasonably likely. *Exhibit* 1 at 10-11. Instead, he deploys nothing more than off the cuff guesswork assuming Cpt. Lewis would remain in the military until the age of 62, despite it being standard practice to retire when one becomes eligible. *Id.*; *Exhibit* 6 (Col. Potoczny Deposition) at 34.

"Even '[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Clark v. Takata* Corp., 192 F.3d 750, 759 (7th Cir. 1999)). Indeed, an "expert['s] work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

6

To satisfy *Daubert*, Guryan needs to provide an explanation of how the evidence led to his conclusion. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019). Guryan fails to do that entirely. In an effort to save his testimony, Boeing, in its response, conveniently paraphrases and cites cherry-picked selections of testimony to imply that there is some doubt that Cpt. Lewis would follow through with his plans to retire at the 20-year mark. *ECF* 2455 at 10. However, Boeing's most favorable paraphrasing and selections of testimony only serve as a justification to propose an alternative scenario. It does not support a blanket assumption that Cpt. Lewis would remain in the military until mandatory retirement age without explanation or analysis. This is not the first time Guryan has taken "too great of an analytic leap" in drawing his conclusions. *See Simpson v. Dart*, No. 18-CV-0553, 2021 WL 1906469, at *3 (N.D. Ill. May 12, 2021) (barring an opinion of Guryan). Boeing fails to identify a single statement that affirmatively suggests that Cpt. Lewis was planning to stay in the military until the mandatory retirement age. This omission undermines Guryan's lack of analysis, as the evidence in this case clearly supports that Cpt. Lewis planned to retire from the military upon reaching eligibility at the 20-year mark. *See Exhibit* 7 (Rodney Lewis Sr. Deposition) at 44 ("I think he had plans to retire after 20."); *Exhibit* 8 (Rodeny Lewis Jr. Deposition) at 22 ("He wanted to retire."). *Exhibit* 6 at 34 ("I'm sure that we talked about the fact that we were all going to retire after we were qualified to do so, so, yes, I'm sure that we talked about reaching retirement. It's something that every soldier aspires to.").

Accordingly, because Guryan is required to "articulate a justification for his inference" that goes "beyond a simple say-so," his testimony should be excluded. *Id.*

    **B. Guryan's Second Scenario is Mere Data Substitution Without Explanation.**

For his second scenario, Guryan does not apply any independent methodology – he simply swaps Mr. Longnecker's benchmark positions and data sources for different ones without explanation. *Exhibit* 1 at 11.

According to Boeing, Guryan "determined that logistics manager was 'the closest job title in the BLS data to the assumption made by' Longnecker." *ECF* 2455 at 12 *citing Exhibit* 1 at 11. But this approach is fundamentally flawed for multiple reasons. Most importantly, he admits he does not know how Mr. Longnecker selected benchmark positions – yet he alters them anyway. *Id*. at 6, 11. He substitutes Mr. Longnecker's job titles "Logistics Vice President," "Logistics Director," or "Logistics Executive" with "Transportation, Storage, and Distribution Manager" without any explanation as to what the positions entails, what qualifications are required for the position, or a tailored analysis as to why Cpt. Lewis was likely to pursue and attain a "Transportation, Storage, and Distribution Manager" position. *Id.* at 11. Finally, Guryan swaps Mr. Longnecker's compensation data sources – the Economic Research Institute and Payfactors – with the Bureau of Labor Statistics without an explanation of why the Bureau of Labor Statistics is the appropriate data source for determining compensation. *Id*.

Instead of providing a methodology and analysis to argue that his data substitution was appropriate, he attempts to justify his results by citing general and inapplicable studies about veterans that are not tailored in any meaningful way to Cpt. Lewis. *Id*. at 6. However, experts "need analytically sound bases for their opinions." *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). The mere conclusion that the job title and data sources yield a closer result of his post-military income to his military income is not an analytically sound basis to support that his second scenario was reasonably likely to occur. Again, Guryan fails to satisfy *Daubert* by providing an explanation of how the evidence led to his conclusion. *Varlen Corp.* 924 F.3d at 460.

8

For these reasons, Guryan's second scenario should be barred.

## CONCLUSION

For the reasons stated above and, in her motion, (*ECF 2419*), Plaintiff respectfully asks this Court to enter an order excluding Defendant's expert Jonathan Guryan from testifying in this matter.

DATED: March 24, 2025 /s/ *Antonio M. Romanucci*

| | |
|---|---|
| Andrew Kryder | Antonio M. Romanucci |
| **THE KRYDER LAW GROUP** | Patrick J. Driscoll |
| 134 N. LaSalle Street, Suite 1515 | Michelle R. DiSilvestro |
| Chicago, IL 60602 | **ROMANUCCI & BLANDIN, LLC** |
| Tel: (312) 223-1700 | 321 N. Clark St., Suite 900 |
| Fax: (312) 377-1771 | Chicago, IL 60654 |
| kryderlaw@gmail.com | Tel: (312) 458-1000 |
| | Fax: (312) 438-1004 |
| Steven A. Hart | aromanucci@rblaw.net |
| John S. Marrese | pdriscoll@rblaw.net |
| **HART MCLAUGHLIN & ELDRIDGE** | mdisilvestro@rblaw.net |
| 1 S. Dearborn St., Unit 1400 | |
| Tel: (312) 955-0545 | |
| shart@hmelegal.com | |
| jmarrese@hmelegal.com | |

***Attorneys for Plaintiff***