**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated)<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Weisman |

**BOEING'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE INADMISSIBLE GRIEF TESTIMONY OF
TREATING MENTAL HEALTHCARE PROVIDERS AND NON-RETAINED EXPERTS**

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 2

    I.    Rule 703 does not allow Plaintiffs to circumvent the Court's order barring prejudicial and cumulative grief testimony. ................................................................................... 2

    II.    Plaintiffs cannot avoid the Court's ruling by labeling Tania Jacobs a "fact witness" ........ 4

    III.    The providers' diagnosis opinions are unreliable, and Plaintiffs do not show otherwise. .. 5

    IV.    Plaintiffs did not properly disclose the providers' causation opinions, and they are unreliable in any event. ...................................................................................................... 7

        A.    The providers were required to submit formal expert reports on causation under Rule 26. ................................................................................................................................... 8

        B.    Plaintiffs have not shown that the providers' causation opinions are reliable. ............... 9

CONCLUSION .......................................................................................................................... 11

This Court has already ruled that experts cannot testify about an adult beneficiary's grief and sorrow. Plaintiffs resist that ruling, arguing that these providers can do just that because they treated and allegedly diagnosed the beneficiaries. But any testimony from these providers about the beneficiaries' grief raises the *exact same* prejudice and cumulativeness concerns that the Court previously identified. Plaintiffs offer no good reason for the Court to change course now.

Plaintiffs cannot backdoor this inadmissible testimony through Rule 703 by having their experts discuss beneficiary grief when testifying about their diagnosis opinions. That rule puts the burden on Plaintiffs to show that the providers can testify to otherwise inadmissible evidence because it is more probative than prejudicial. But that is the exact opposite of this Court's ruling that expert testimony about a beneficiary's grief is more prejudicial than probative. That decision was correct then and is correct now. The providers do not need to testify directly about the beneficiaries' grief because the beneficiaries will testify to that themselves. And to be clear—*if* their diagnoses are admissible—the providers can still discuss a range of topics regarding their treatment and diagnosis opinions without repeating the details of the beneficiaries' grief. Rule 703 provides no basis to admit that prejudicial and cumulative grief testimony.

Nor can Plaintiffs escape the Court's ruling as to Tania Jacobs by calling her a "fact witness" rather than an "expert." Regardless of how she is introduced, the jury will reasonably interpret her testimony as expert testimony because, as Plaintiffs make clear, she is "a licensed psychologist" who "personally provided [Ms. Belanger] mental health treatment" and plans to testify about her observations made in a "professional setting" (that is, therapy). Indeed, she does not offer any diagnosis and instead merely plans to repeat what she was told during therapy.

And in any event, the other providers' diagnosis opinions are unreliable under Rule 702. While Plaintiffs claim that the providers used the Diagnostic and Statistical Manual of Disorders

1

("DSM"), none of the providers explained their methodology in reaching a purported diagnosis. Nor do Plaintiffs explain how the providers used the "diagnostic tool of examination accompanied by physical history as related by the patient" to reach their diagnoses or how it led them to choose one diagnosis over another. And Plaintiffs do not address Boeing's argument that the providers' diagnosis opinions are unreliable because they have not met with the beneficiaries in months or years.

Finally, the providers' causation opinions should also be excluded because they were not properly disclosed. Contrary to Plaintiffs' suggestion, there is no evidence that the providers determined the cause of the beneficiaries' various diagnoses during their treatment, so Rule 26 required Plaintiffs to submit expert reports on causation. They did not do so. And their causation opinions are also unreliable. The providers gave little to no explanation for how they arrived at those opinions, and none performed a proper differential etiology.

The Court should affirm its prior ruling and grant Boeing's motion.[1]

## ARGUMENT

**I.  Rule 703 does not allow Plaintiffs to circumvent the Court's order barring prejudicial and cumulative grief testimony.**

This Court already held that expert testimony about a beneficiary's grief and sorrow is inadmissible. *See* ECF 2416 ("Mot.") at 1–2. The Court should decline Plaintiffs' invitation to carve out an exception to that ruling for mental healthcare providers. Nothing in the Court's ruling limited it to "retained 'grief experts'" who met with the beneficiary only "once or twice," nor did it exempt "non-retained experts [who] have made diagnoses of their patients over time spent treating them." ECF 2459 ("Opp.") at 7, 9. It makes no difference whether a witness is a

---

[1] Boeing also moved to exclude the testimony of expert Jennie Linn Williams in the *Lewis* case. Plaintiff confirmed, however, that she does not intend to call Ms. Williams at trial, so that portion of Boeing's motion is moot.

retained expert or a treating provider, whether she met with the beneficiary once or many times, or whether she purportedly diagnosed the patient. The problem remains: the testimony "adds a scientific sheen or gloss of expertise to something that is within the understanding" of the jury and is "cumulative based on the testimony of the beneficiaries who will communicate their feelings and their grief directly to the jury." Ex 1 at 51:10–18. Thus, Plaintiffs' providers should not be permitted to testify about the beneficiaries' grief.

Plaintiffs cannot circumvent the Court's order by claiming that these providers are entitled to testify about the beneficiaries' grief under Rule 703 because it forms the basis of their diagnoses made during treatment. Opp. at 9. Rule 703 cannot be used "as a backdoor to sneak inadmissible evidence into a trial." *Baker v. Obaisi*, 2024 WL 1300484, at * (N.D. Ill.); *see Asetek Danmark A/S v. CoolIT Sys. Inc.*, 2022 WL 21306657, at *19 (N.D. Cal.) ("Rule 703 does not make admissible otherwise inadmissible evidence."). But that is exactly what Plaintiffs are trying to do. For example, Plaintiffs say that Dr. Phillips will testify that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 10. Such testimony falls squarely within the Court's prior order and is thus inadmissible.

In addition, under Rule 703, "the burden is on plaintiffs"—not Boeing—to show that the "probative value" of inadmissible grief expert testimony "outweighs the risk of prejudice." *Linde v. Arab Bank, PLC*, 2014 WL 12558572, at *2 (E.D.N.Y.). Plaintiffs do not meet this burden, nor can they. For all the reasons this Court has previously stated, expert testimony about the beneficiaries' grief is more prejudicial than probative. Plaintiffs are also mistaken that the providers "need to explain what they discussed and observed about the patients" "to explain why they made the diagnoses they did." Opp. at 3. Again, "the providers made clear that the 'facts or data' underlying their diagnoses are the beneficiaries' own description of their grief" and

3

symptoms. *See* Mot. at 12. And the beneficiaries "will communicate their feelings and their grief directly to the jury." Ex. 1 at 51:17–18. So there is simply no need for the providers to repeat the details of the beneficiaries' grief under the guise of offering their diagnosis opinions. The providers can simply rely on the beneficiaries to provide the bases for their diagnosis opinions. And this is entirely consistent with the Court's prior ruling. Indeed, this Court previously precluded the *Xiong* Plaintiffs' grief expert from testifying about the beneficiary's grief even though, as Plaintiffs acknowledge (Opp. at 1), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* ECF 1736 (Boeing's motion to exclude expert grief testimony) at 3.

And to be clear, the providers can testify to a range of other topics too. If the Court finds that their diagnosis opinions are reliable, the providers can testify about their diagnoses and how they reached them. They can testify about their treatment, describe how often they met with the beneficiaries, and explain that they discussed the beneficiaries' grief and the ways in which they are coping. What Plaintiffs cannot do, however, is have the providers simply repeat testimony about the beneficiaries' grief that the jury will hear from the beneficiaries themselves, because that raises the very same prejudice and cumulativeness concerns this Court has identified.

II.     **Plaintiffs cannot avoid the Court's ruling by labeling Tania Jacobs a "fact witness."**

As to Ms. Jacobs specifically, Plaintiffs say that she "is not offering *any* expert opinion" and will instead ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 10. But Plaintiffs do not explain why labeling Ms. Jacobs a "fact witness" rather than an "expert" allows her to avoid the Court's ruling. Again, the same concerns about prejudice and cumulativeness remain.

Plaintiffs cannot credibly argue that the jury will not "mistake" Ms. Jacobs's testimony about "her lay observations of ▇▇ made in a professional setting . . . as expert testimony."

4

Opp. at 7. That is exactly what will happen. This is not the typical lay witness, like a family member, testifying about a beneficiary's grief. This is a mental health professional who will testify about the grief that she discussed and observed "in a professional setting"—that is, in the therapy room. *Id.* Any reasonable juror could interpret Ms. Jacob's testimony about ▮ ▮ grief as *expert* testimony. And it would still be cumulative because ▮ "will communicate [her] feelings and [her] grief directly to the jury." Ex. 1 at 51:17–18.

No current or future trial plaintiff should be able to avoid the Court's ruling by labeling a treating provider as a "fact witness." Ms. Jacobs's testimony should be excluded.

## III. The providers' diagnosis opinions are unreliable, and Plaintiffs do not show otherwise.

The "burden is on the party seeking to present testimony under Rule 702 to demonstrate that the testimony meets the requirements of the Rule and of *Daubert*." Mot. at 10 (quoting *Krischel v. Hennessy*, 533 F. Supp. 2d 790, 797 (N.D. Ill. 2008)). Plaintiffs spend less than a page trying to meet that burden with respect to the diagnosis opinions of Dr. Neri, Dr. Tambone, and Dr. Phillips, and they fall well short of showing that those opinions are reliable. *See* Opp. at 8–9.

To start, Plaintiffs say the providers knew and used the DSM diagnostic criteria. *Id.* at 9. But it is still a mystery *how* they arrived at their diagnoses using those criteria. For example, ▮

▮

And while ▮

▮ Put simply, merely asserting that the providers used the DSM is insufficient under Rule 702. Plaintiffs must show that an expert's "*application* of that reasoning or methodology to the facts at issue" is reliable. *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, 2011 WL 4840965, at *3 (N.D. Ill.) (emphasis added). They have not done so. Nor do Plaintiffs dispute that none of the

5

experts used any written diagnostic tests, administered any questionnaires, or used other psychometric tests in reaching their diagnoses—even though courts have required experts to use such scientific methodologies to reliably diagnose patients. *See* Mot. at 10–11.

Plaintiffs' alternative methodology argument suffers the same flaws. It is no answer to say that the experts' diagnosis opinions are reliable because they "employed the accepted diagnostic tool of examination accompanied by physical history as related by the patient." Opp. at 9 (quoting *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000)). Nothing in *Cooper* suggests that interviewing a patient in therapy is an invariably reliable methodology to diagnose a mental health condition in all cases. And besides, Boeing is not challenging the providers' diagnosis opinions because they relied on the beneficiaries' self-reported history; it is challenging them because the experts have not explained *how* they reached their particular diagnoses based on their meetings with the beneficiaries. *See* Mot. at 9–11. As *Cooper* itself reiterates, "a court 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* at 1021 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). That is the case here: the providers never connect the dots between the beneficiaries' symptoms and their diagnosis opinions.

To be clear, Boeing is not disputing that the beneficiaries suffered tremendous grief from the loss of their loved ones and that they may qualify for a range of diagnoses. But Plaintiffs fail to explain how the providers applied their "examination" methodology to reach their diagnoses, as they must. *See Crawford Supply Grp.*, 2011 WL 4840965, at *3. Nor do they explain why the providers chose certain diagnoses over others—for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 685

6

(N.D. Ill. 2009) (an expert "must be able to explain why he reached that conclusion on the basis of a reasoned application of scientific, technical, or other specialized knowledge"). At bottom, Plaintiffs ask the Court to trust their experts because they are qualified providers who treated the beneficiaries. But even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are . . . reliable" (*Lewis v. CITGO Petro. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)), and an opinion "connected to existing data only by the *ipse dixit* of the expert" is inadmissible under Rule 702. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1083 (N.D. Ill. 2022) (excluding expert opinion because it was mere "ipse dixit").

Nor does *Walker v. Soo Line Railroad Co.* help Plaintiffs. *Walker* simply says that "[m]edical professionals reasonably may be expected to rely on self-reported patient histories." 208 F.3d 581, 586 (7th Cir. 2000). It does not hold that an expert can offer a diagnosis opinion without explaining how she reached that diagnosis. Indeed, in that case, the doctor also used "a test specifically designed to estimate a person's IQ before that person suffered a trauma" in reaching his opinions. *Id.* Plaintiffs' providers, in contrast, did not use any formal testing.

Finally, Plaintiffs do not respond to Boeing's argument that the providers' diagnosis opinions are unreliable because they have not met with the beneficiaries in months or years. *See* Mot. at 11. As a result, Plaintiffs "waive any opposition" to and "concede" that argument. *Hodges v. Archer Daniels Midland Co.*, 474 F. Supp. 3d 956, 967 (C.D. Ill. 2020) (cleaned up); *see also Baker v. City of Chicago*, 2024 WL 5114168, at *10 (N.D. Ill.).

IV. **Plaintiffs did not properly disclose the providers' causation opinions, and they are unreliable in any event.**

The causation opinions are independently inadmissible because they were not properly disclosed under Rule 26 and are unreliable under Rule 702.

As a preliminary matter, Boeing's motion addressed the causation opinions offered by Drs. Neri and Tambone. Plaintiffs now appear to suggest for the first time that Dr. Phillips, too, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ To be clear, Dr. Phillips never used the word "causation" at her deposition and stated only ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Ex. 6 at 115:15–116:3 (emphasis added). In any event, Dr. Phillips's causation opinion was improperly disclosed and is unreliable for the same reasons as Dr. Neri's and Dr. Tambone's, set forth below.

### A. The providers were required to submit formal expert reports on causation under Rule 26.

Plaintiffs do not dispute that their providers did not submit expert reports discussing any opinions on causation. And they are simply incorrect in arguing that the providers did not need to because their causation opinions "arose from their treatment of their patients." Opp. at 12. The inquiry is *not* whether the "proposed testimony extends beyond the facts made known to [the expert] during the course of the care and treatment of the patient," as Plaintiffs claim. *Id.* (citing *Hall v. Home Depot USA, Inc.*, 2008 WL 11380000, at *4 (S.D. Ill.)). The Seventh Circuit has made clear the actual standard:

> [A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, *but who did not make that determination in the course of providing treatment*, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).

*Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734–35 (7th Cir. 2010) (emphasis added) (citing *Krischel v. Hennessy* favorably). Other courts in this district have held the same. *See, e.g., Holmes v. City of Chicago*, 2016 WL 6442117, at *13 (N.D. Ill.); *Orlowski v. Eriksen*,

8

2009 WL 2366050, at *3 (N.D. Ill.). "[P]laintiffs must demonstrate that their [experts'] opinions on causation were made in the course of providing treatment." *Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950, 962–63 (N.D. Ind. 2011).

Here, Plaintiffs presented no evidence that any provider determined, in the course of treatment, that ███████████████████████████████████ Neither Dr. Neri nor Dr. Tambone produced any written notes to confirm whether they did so, and Dr. Phillips's notes do not show that ███████████████████████████████████████████████ in the course of her treatment. Their depositions provided no evidence either. Despite having the burden, Plaintiffs do not identify evidence that the providers had determined the cause of the beneficiaries' diagnoses during their treatment. At best, Plaintiffs suggest some of the providers ███████████████████████████████ (Opp. at 5, 7), but this "does not establish the critical fact" that the experts "formulated a specific causation opinion in the course of [their] treatment." *Aurand*, 802 F. Supp. 2d at 963. And because Plaintiffs have not met their burden to show that the providers formed their causation opinions during their treatment of the beneficiaries, they had to submit formal reports about causation under Rule 26. They did not, so their causation opinions must be excluded. *See Meyers*, 619 F.3d at 735 (affirming exclusion of doctors' causation opinions when "[plaintiff] present[ed] no evidence . . . suggesting that either doctor previously considered or determined the cause of [the patient's] injuries during the course of treatment"); *Holmes*, 2016 WL 6442117, at *13 (same).

**B.     Plaintiffs have not shown that the providers' causation opinions are reliable.**

The providers' causation opinions are unreliable and should be excluded on that basis too. To begin with, Plaintiffs incorrectly claim that Dr. Neri provided a reliable basis for her causation opinion because she testified about some of Ms. Dieci's physical and mental symptoms. Opp. at 11. But simply testifying to Ms. Dieci's symptoms, without explaining how or why they led to

9

Dr. Neri's causation opinion, is inadequate and mere "ipse dixit." *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d at 1083.

Plaintiffs also fail to show that the providers performed any sort of proper differential etiology in forming their causation opinions. As this Court explained, a differential etiology means "assessing all the potential causes and ruling them out one by one." Ex. 13 at 41:24–42:22. While Plaintiffs argue that Dr. Neri "indicat[ed]" that she considered ███████ ████████████████████████████████████ ███ (Opp. at 11), ████████████████████ ████████████████████████████████████ ████████████████████████████ Nothing suggests that Dr. Neri ever "rule[d] in *all the potential causes*" of ███████████ or "*systematically* rul[ed] out" other causes. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (emphasis added). And even if she did, there is no explanation or description of how she performed this work. *See Neergheen*, 636 F. Supp. 2d at 685 (expert "must be able to explain why he reached [a] conclusion"). The same goes for Dr. Tambone and Dr. Phillips. For example, Dr. Phillips was ████████████████████████████████ ████████████████████████████████████████████ Ex. 6 at 72:15–23; *see also* ECF 2426 at 7–8 (Mot. to Exclude Dr. Richard Cockerill). But she did not say whether she considered these other events or explain how she ruled them out.

Dr. Tambone's and Dr. Phillips's reasoning in particular boils down to the *timing* of their beneficiaries' symptoms. Opp. at 12. The Seventh Circuit has made clear, however, that "[t]he mere existence of a temporal relationship between [a purportedly precipitating event] and the onset of symptoms does not show a sufficient causal relationship." *Ervin v. Johnson & Johnson,*

*Inc.*, 492 F.3d 901, 904–05 (7th Cir. 2007); *see also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010). That is especially true here, where the providers, like Dr. Phillips, acknowledge that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅ Indeed, these providers are offering medical causation opinions regarding complex mental disorders ▅▅▅▅▅▅▅▅ In contrast, in Plaintiffs' cited case, *Cooper*, the expert was addressing the relatively straightforward issue of whether a fall had caused the plaintiff's physical pain. 211 F.3d at 1019. And in any event, the defendant there did not "suggest[]," like Boeing does here, that there was "too great an analytical gap between the data and the opinion offered." *Id.* at 1021. Without more, their causation opinions lack any reliable basis.

Finally, Plaintiffs' suggestion that Boeing could have disclosed a rebuttal expert to address causation is nonsensical. Opp. at 14. The providers' failure to offer a reliable basis for their causation opinions does not somehow require Boeing to disclose a rebuttal expert. It is also unclear why Boeing would have had to "confer with Plaintiff Dieci subsequent to those depositions." *Id.* The burden is on Plaintiffs, not Boeing, to establish the admissibility of any causation opinions. They did not carry that burden.

## CONCLUSION

For these reasons and those in Boeing's motion, the Court should preclude Dr. Nadia Neri, Dr. Gabriella Tambone, Dr. Tonya Phillips, and Tania Jacobs from testifying at trial (live or by deposition designation) about adult beneficiaries' grief. The Court should also exclude these witnesses' diagnosis and causation opinions.

11

| | |
|---|---|
| DATED March 24, 2025 | **THE BOEING COMPANY** |
| | By: /s/ *Dan K. Webb*<br>*One of Its Attorneys* |

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                /s/ *Dan K. Webb*
                **WINSTON & STRAWN LLP**
                35 West Wacker Drive
                Chicago, Illinois 60601-9703
                Phone: (312) 558-5600