IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Weisman |

**BOEING'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT DR. ODED SHENKAR IN *SEEX***

**TABLE OF CONTENTS**

**Page**

I. Dr. Shenkar's lifetime earnings opinion is unhelpful, speculative, and unreliable............. 2

    A. Dr. Shenkar's damages calculation is unhelpful and unreliable because it includes Mr. Seex's pre-death earnings. ............................................................... 2

    B. Dr. Shenkar did not use a "proxy" as matter of fact—and if he did, it was unreliable and improperly disclosed as a matter of law. ........................................ 3

    C. Dr. Shenkar's calculation of Mr. Seex's pre-death earnings is unreliable because it is based on faulty assumptions. .............................................................. 6

    D. Dr. Shenkar's lifetime earnings opinion is based on still more speculative assumptions. ................................................................................................................. 7

II. Dr. Shenkar's opinion on the value of TML is also unhelpful, speculative, and unreliable. ............................................................................................................................... 9

    A. Plaintiffs' few responsive arguments do not come close to rescuing Dr. Shenkar's TML value opinion. ................................................................................ 9

    B. Plaintiffs' failure to address many of Boeing's arguments alone warrants exclusion. ..................................................................................................................... 10

The opinions that Dr. Shenkar disclosed in his reports are methodologically unsound and unhelpful to the jury. There is no rescuing them under Rule 702.

Recognizing this, Plaintiffs hardly even *try* to defend Dr. Shenkar's disclosed opinions. Instead, they defend opinions that Dr. Shenkar did *not* disclose, relying on scraps of deposition testimony and revisionist history to reshape his opinions into something they are not. It starts with their attempt to recast Dr. Shenkar's facially defective and self-described "lifetime earnings" opinion as a genuine "lost earnings" opinion. But Dr. Shenkar disclosed what he disclosed: a damages calculation that quite literally adds Mr. Seex's (hypothetical and counterfactual) pre-2023 earnings to his projected post-2023 earnings. Plaintiffs cannot salvage Dr. Shenkar's opinion by claiming that he used Mr. Seex's pre-death earnings as a stand-in or "proxy" for future "benefits, wealth, and business interest." ECF 2445 ("Opp.") at 1. His report never mentions such a "proxy," and this argument is simply a post-hoc rationalization of a flawed methodology. But even if that *was* his methodology—and even if it *was* somehow properly disclosed—it is unquestionably unreliable. Plaintiffs have not shown that Mr. Seex's total earnings during his life would be a remotely accurate "proxy" for his future income from business and wealth. And on top of all that, his calculation rests on baseless assumptions about Mr. Seex's career timeframe, income, investments, retirement age, and personal consumption. Put it all together, and Dr. Shenkar's opinion is conjecture—based on no coherent methodology and untethered from the facts of the case. Plaintiffs' arguments to the contrary are unavailing.

As for Dr. Shenkar's opinion about the value of TML, Plaintiffs mostly ignore Boeing's arguments. That is reason enough to exclude his opinion. The scant responses Plaintiffs do offer are a mixture of incorrect assertions about Dr. Shenkar's deposition testimony and uncompelling arguments about a growth rate that Dr. Shenkar admitted was "arbitrary."

In lieu of addressing Boeing's arguments, Plaintiffs' brief spends considerable effort attacking Boeing's experts and touting Dr. Shenkar's qualifications (which Boeing did not challenge). These arguments have nothing to do with the motion, cannot save Dr. Shenkar's opinions, and should not distract the Court from deciding whether Plaintiffs have met their burden to show that Dr. Shenkar's opinions are admissible under Rule 702. They are not.

**I.      Dr. Shenkar's lifetime earnings opinion is unhelpful, speculative, and unreliable.**

**A.      Dr. Shenkar's damages calculation is unhelpful and unreliable because it includes Mr. Seex's pre-death earnings.**

Dr. Shenkar included Mr. Seex's pre-death earnings in his damages calculation. Thus, his "lifetime earnings" opinion is unreliable, unhelpful, and should be excluded. *See* ECF 2401 ("Mot.") at 5–6. Plaintiffs insist that it is "of course" "ridiculous" for Boeing to argue that Plaintiffs are "improperly seeking damages for the loss of earnings of Jonathan Seex for a period *before* he died." Opp. at 2 (emphasis original). But the math is the math, and Dr. Shenkar's damages calculation included Mr. Seex's earnings from the "period before he died":

$$\text{Total\_Lifetime\_Earnings} = \text{PV}_{1995\text{-}2023} + \text{PV}_{2024+}$$

Ex. 1 at 2. "PV" is the "present value of lifetime earnings" for each of those periods (1995–2023 and 2024 onward). *Id.* Simply put, Dr. Shenkar calculated damages based not on Mr. Seex's *lost* earnings but on his "total lifetime earnings," which includes his earnings from more than two decades of his life.

Plaintiffs ignore this basic fact and construct new ones. They say that Dr. Shenkar's report "clearly states Mr. Seex's loss of earnings is from the date of his death on March 10, 2019." Opp. at 9 (citing Ex. 1 at 1). But it does not say that. Anywhere. *See* Ex. 1. And in any event, Dr. Shenkar confirmed that his "lifetime earnings" formula "reflects [his] full methodology in how [he] arrived at the values in [his] report." Ex. 5 at 330:22–331:11. So if Dr.

2

Shenkar was asked to opine on the "loss of earnings that would have accrued to Mr. Seex had he stayed with us," as Plaintiffs claim (Opp. at 2), he ignored that instruction and instead performed his lifetime earnings calculation. As a result, his opinion is not reliable or helpful.

It is no use for Plaintiffs to cite cases for the uncontroversial idea that "in determining damages, a jury may consider what a decedent earned and might reasonably be expected to earn in the future." *Drews v. Gobel Freight Lines, Inc.*, 557 N.E.2d 303, 309 (Ill. App. Ct. 1990) (quoted in Opp. at 3). Of course that's true; Boeing said as much in its motion. Mot. at 5–6 (quoting *Drews*). But that only means past earnings can provide a clue about future earnings. In *Drews*, for instance, the decedent's past earnings "considered in tandem with testimony indicating the possibility that decedent would have been highly successful in his field [were] sufficient bases for a jury to determine that he would have earned considerable future sums as sole owner of the agency." *Drews*, 557 N.E.2d at 309. Similarly, Boeing's expert Dr. Guryan examined Mr. Seex's pre-death earnings to inform his opinions about what Mr. Seex's earnings would have been had he lived. *See* Opp. at 4. That is much different from Dr. Shenkar's lifetime earnings damages calculation, which—despite Plaintiffs' admission that they "cannot recover for the loss of pre-death earnings" (*id.* at 3)—*includes Mr. Seex's pre-death earnings*. That is not proper, it is not reliable, and it will not help the jury determine Plaintiffs' economic loss.

      **B.    Dr. Shenkar did not use a "proxy" as matter of fact—and if he did, it was unreliable and improperly disclosed as a matter of law.**

Plaintiffs' "proxy" argument should be seen for what it is: a post-hoc rationalization for a defective methodology. Dr. Shenkar never used the word "proxy" or "proxies" in his lifetime earnings report, and there was no possible way to divine from his calculations that any of his data inputs were meant to be a proxy for something else. Describing his model, Dr. Shenkar simply wrote that it "calculates a person's lifetime earnings by combining estimated earnings growth

3

with discounting rates," and he provided a formula that included both pre-accident and post-accident income. Ex. 1 at 2. Nothing more.

It was not until after Boeing served its expert reports that Dr. Shenkar—in an unauthorized "Response to Mr. Guryan"—introduced his proxy idea for the first time. ECF 2400-7 at 1. He then doubled down on it at his deposition, and Plaintiffs' brief simply repeats his deposition testimony. Opp. at 4 (stating that Dr. Shenkar "employ[ed] a proxy of past earnings to estimate loss of future earnings until information as to benefits, wealth[,] and business interest became available."). But all this talk of a "proxy" contradicts the methodology, opinions, and calculations disclosed in Dr. Shenkar's report. It appears that Dr. Shenkar (or Plaintiffs' counsel) recognized his report was defective and decided to recast it as something entirely different to avoid exclusion. Dr. Shenkar cannot save his opinion by changing it in his deposition (or by offering new opinions in an unauthorized fourth report). *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony"); *see also* Ex. 5 at 10:4–19 (disclosing new expert opinions in a deposition "turns the process upside down"); ECF 2400 at 11–14 (explaining why fourth report should be stricken). And Plaintiffs cannot save his opinion by referring to a "proxy" or "proxies" twenty-six times in their brief when Dr. Shenkar's report didn't mention it once. Dr. Shenkar should be held to the defective report he disclosed.

Setting all that aside, even if Dr. Shenkar's calculations *were* somehow based on the proxy approach he first disclosed months after the fact, his methodology is still unreliable. Citing "professional literature approving the use of proxies" that was not disclosed with Dr. Shenkar's report, Plaintiffs argue that "the scientific principle of a proxy" is "well-founded" and claim that Dr. Shenkar has used proxies in his consulting work and as an expert in a wrongful termination

4

case. Opp. at 5–6. But Plaintiffs cannot defend the *specific* proxy Dr. Shenkar claims to have used *in this case* by defending the concept of a proxy in the abstract, and they cannot cure the defects in his methodology by citing literature that Dr. Shenkar never relied on or disclosed.

Plaintiffs cite no authority supporting the use of a proxy like Dr. Shenkar's. They cite no *legal* authority endorsing the use of a proxy at all. Unsurprisingly, courts that *have* analyzed the use of proxies uniformly require the expert to show that the proxy closely resembles the data it represents. *See, e.g.*, *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 972–73 (9th Cir. 2002) (environmental case holding that deference to a proxy approach was not warranted because the proxy did not "reasonably ensure" accurate results); *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 929 (D. Minn. 2020) (securities case approving the use of a proxy because it was an "extremely accurate," "identical substitute" for missing data and there was "only one mismatch in data out of 68,121 unique data points"). And here, Plaintiffs have provided no explanation for how Mr. Seex's pre-death earnings remotely resemble his future "business and wealth income."

The best Plaintiffs have to offer is Dr. Shenkar's self-serving say-so that "newly-discovered information" confirmed his proxy was "reasonably accurate, although 'very conservative,'" but they provide no details to back up those statements. Opp. at 8. So essentially, according to Plaintiffs' own argument, Dr. Shenkar guessed Mr. Seex's total compensation in his report and then, after the deadline passed, tracked down more information to validate his guess (without properly disclosing that information under Rule 26). That cannot satisfy Rule 702. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1083 (N.D. Ill. 2022) (excluding expert opinion based on "ipse dixit").

5

## C. Dr. Shenkar's calculation of Mr. Seex's pre-death earnings is unreliable because it is based on faulty assumptions.

Dr. Shenkar's calculation of Mr. Seex's pre-death earnings is not just unreliable but demonstrably wrong. As Boeing explained, Dr. Shenkar baselessly assumed that Mr. Seex began working in 1995 and earned $202,800 that year. Mot. at 7. He further assumed that Mr. Seex's income would increase at an annual rate of 3.1% for the rest of his career, inflating his 2015–2018 earnings to somewhere between $411,000 and $457,000. *Id.*

Plaintiffs seem to misunderstand their own expert's methodology in this regard. They insist that "Dr. Shenkar's statement of Mr. Seex's *income of $202,800 for 2019* stated in his Report . . . actually is conservative." *See* Opp. at 9–10 (emphasis added). But Dr. Shenkar's report did not say that Mr. Seex earned $202,800 in 2019. It assumed he earned $202,800 in 1995, measured in 2019 dollars. Ex. 1 at 1 (identifying 1995 as "working age start" and stating that compensation "=US$ 202,800 in 2019"). Dr. Shenkar used that figure as the "initial salary" input when determining Mr. Seex's "lifetime earnings from 1995 to 2023." *Id.* at 2; *see* Ex. 14 (Dr. Shenkar's computer code: "*start year of 1995* initial_salary = 202800 # *USD, in 2019*"); *see also* Ex. 2 at n.4. There can be no dispute about this.

And these assumptions are untethered from the facts, which show that Mr. Seex began working in 1999, not 1995 (Ex. 6 at 6; Ex. 2 at 4), and earned somewhere between $53,555 and $153,716 from 2015 to 2018 (Ex. 2 at 4), not between $411,000 and $457,000 (per Dr. Shenkar's model) (*id.*). Plaintiffs seem to suggest that such inconsistencies do not matter because Plaintiffs "are not seeking damages for pre-death earnings and Dr. Shenkar only used pre-2019 earnings as a proxy." Opp. at 8–9. But if Dr. Shenkar thought it sensible to use Mr. Seex's pre-2019 earnings as a proxy, he should have used Mr. Seex's actual pre-2019 earnings. Instead, taking Plaintiffs' argument at face value, Dr. Shenkar used random numbers as a proxy for past earnings and then

6

used that figure as yet another proxy for future earnings. This is the result of Dr. Shenkar's analysis, compared to the facts known about Mr. Seex's actual earnings:[1]



This is not a reliable methodology. Dr. Shenkar's reliance on erroneous assumptions, and the numbers he produced, show that his calculations are unreliable and not "based on sufficient facts or data." Fed. R. Evid. 702.

**D.    Dr. Shenkar's lifetime earnings opinion is based on still more speculative assumptions.**

Dr. Shenkar relied on many other speculative assumptions to support his lifetime earnings opinion. For example, in determining Mr. Seex's purported investment income, Dr. Shenkar

---

[1] "Actual Earnings" are derived from produced information on Mr. Seex's income from 2015 to 2019 (annualized).

7

"assume[d] that [Mr. Seex] had at least some" investments before his death even though Dr. Shenkar had "no idea" what those investments were. Ex. 5 at 286:21–23. Plaintiffs' brief confirms that this was speculation. *See* Opp. at 10–11 (citing deposition testimony from Dr. Shenkar, Dr. Guryan, and Mrs. Seex, none of which establishes that Mr. Seex had any investments that would have generated income).

As for Dr. Shenkar's chosen retirement ages, Plaintiffs do not meaningfully rebut Boeing's argument that these were purely speculative. While it's true that Mrs. Seex "testified that Mr. Seex intended to work until age 75" (Opp. at 11), she gave that testimony more than two months *after* Dr. Shenkar wrote his report, in which he claimed to have selected age 73.5 (not 75) because it is "[t]he median mandatory retirement age of U.S. board members in the hospitality sector" (Ex. 1 at 2)—not because of anything Mrs. Seex said. So Plaintiffs' argument that Dr. Shenkar "is using age 73.5 based upon the unrebutted testimony of Mrs. Seex" (Opp. at 11) appears to be another post-hoc defense of the speculative assumptions in Dr. Shenkar's report. *See* Mot. at 8–9.

Nor did Dr. Shenkar have any adequate basis to assume Mr. Seex had "no personal expenses" to deduct from his damages calculation. As explained in the motion, deducting the decedent's personal consumption is a basic and critical part of calculating economic damages in any wrongful death case. *See In re Aircrash near Roselawn, Indiana on Oct. 31, 1994*, 1996 WL 114814 (N.D. Ill.) ("[T]he survivors' pecuniary damages in wrongful death actions are reduced by the amount the decedent would have spent on personal consumption."). Plaintiffs do not provide any contrary authority.

Instead, they insist that "Dr. Shenkar *did* consider Mr. Seex's personal consumption; he just found it to be negligible or a 'complete wash.'" Opp. at 11 (emphasis original). Plaintiffs cite

8

a host of expenses that Mr. Seex purportedly did or did not have, loosely based on Dr. Shenkar's deposition testimony. *Id.* But they do not address Boeing's argument that it is unreliable to assume that Mr. Seex would have no personal expenditures whatsoever—no clothes, no food, no entertainment, nothing—simply because his company provided him with "duty meals" and a car (or, as Plaintiffs add in their brief, because he also spent money to support his children). *See* Mot. at 9–10; Ex. 7 at 2. And Plaintiffs' assertion that damages for loss of household services "would far offset any negligible amount for personal consumption" (Opp. at 11) appears to be pure conjecture by Plaintiffs' counsel that should be given no weight. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("[U]nsubstantiated attorney argument . . . is no substitute for competent, substantiated expert testimony.").

**II.      Dr. Shenkar's opinion on the value of TML is also unhelpful, speculative, and unreliable.**

    **A.      Plaintiffs' few responsive arguments do not come close to rescuing Dr. Shenkar's TML value opinion.**

Boeing also moved to exclude Dr. Shenkar's opinion that the value of TML decreased by more than $18 million as a result of Mr. Seex's death. Mot. at 11. As Boeing explained, Dr. Shenkar relied on irrelevant literature, aspects of his methodology were arbitrary or unexplained, and inconsistencies abound between his opinions and the evidence. Plaintiffs' brief contains a total of eight sentences, plus a footnote, that are arguably responsive to these arguments. Otherwise, Plaintiffs tout Dr. Shenkar's credentials and disparage Boeing's expert and his firm. *See, e.g.*, Opp. at 13. Those efforts are not responsive to the motion.

To the extent that Plaintiffs do attempt to address Boeing's arguments, their rejoinders fail. In particular, Plaintiffs do not take seriously Boeing's point that Dr. Shenkar admitted that several of the sources he relied on are irrelevant. *See* Mot. at 11–13. In a footnote, Plaintiffs essentially ask the Court to trust their characterization that Dr. Shenkar did not *actually* criticize

9

his own sources but, rather, "was criticizing Dolgoff for his out-of-context citation of these articles." Opp. at n.6. That's wrong, but the Court can draw its own conclusion from the transcript. *See* Mot. at 12–13 (citing relevant portions).

Plaintiffs' attempt to defend the 15% growth rate Dr. Shenkar applied for 2024 to 2033 only underscores that it was "arbitrary" and "not pulled from a particular source," as Dr. Shenkar admitted. *See* Mot. at 14; Ex. 5 at 337:22–339:6. To support this growth rate, Plaintiffs broadly paraphrase Dr. Shenkar's deposition testimony about the "emerging market in Kenya" and cite purported "recently-discovered evidence"—text messages and notebook entries that Plaintiffs did not disclose with Dr. Shenkar's report and produced nearly two months later—about expansion plans Mr. Seex had for TML. Opp. at 14–15. They also refer to an alleged statement by Lucas Krank that Ascent "expected a 20% per year return on its investment" in TML. *Id.* at 15. It's not clear how Dr. Shenkar got from Mr. Krank's 20% to his own 15%, but in any event, Dr. Shenkar mentioned Mr. Krank's statement for the first time at his deposition, and that unsubstantiated hearsay remains the only evidence that Mr. Krank ever made such a statement. None of Plaintiffs' purported justifications explains how Dr. Shenkar, when preparing his report, arrived at a specific growth rate nearly double TML's average growth rate from 2014 to 2023.

### B.  Plaintiffs' failure to address many of Boeing's arguments alone warrants exclusion.

Finally, Plaintiffs' brief does not respond at all to several of Boeing's TML-related arguments, including that Dr. Shenkar:

- relied on irrelevant studies about the loss of a founder and startup companies, even though Mr. Seex was not a founder and TML is not a startup (Mot. at 11);

- applied a 3% terminal growth rate that he claimed was supported by "a mountain of sources" but identified none in his report or deposition (*id.* at 13);

- could not explain whether he relied on data from the U.S. or Kenya regarding the market value of equity (*id.*);

10

- estimated that the value of TML in 2019 with Mr. Seex as CEO was between $9.7 million and $23 million, even though Ascent—which Dr. Shenkar admitted was "an objective third party" whose valuations were "a direct indication" of TML's value—valued the company at $5 million four days before, and twenty days after, Mr. Seex's death (*id.* at 14); and

- claimed, with no evidence, that Ascent's $1.1 million offer in June 2020 "mostly reflects the lack of an equivalent CEO replacement," ignoring company documents attributing TML's struggles around that time to Covid-19. *Id.*

This is fatal to Plaintiffs' opposition because, by their silence, they "waive any opposition" to and "concede" these points. *Hodges v. Archer Daniels Midland Co.*, 474 F. Supp. 3d 956, 967 (C.D. Ill. 2020) (cleaned up); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver," and "silence" on an argument means it is "conceded"); *Baker v. City of Chicago*, 2024 WL 5114168, at *10 (N.D. Ill.) (excluding expert because "failure to respond" to an argument "result[ed] in waiver").

\* \* \*

Dr. Shenkar's lifetime earnings opinion—which counts Mr. Seex's pre-death earnings as recoverable damages and bears no relationship to fact—is neither reliable nor helpful to the jury. Nor is his opinion on the value of TML, which is based on irrelevant literature and unfounded assumptions. His testimony should be excluded under Rule 702.

11

| | |
|---|---|
| DATED March 24, 2025 | **THE BOEING COMPANY** |
| | By: /s/ *Dan K. Webb*<br>*One of Its Attorneys* |

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## CERTIFICATE OF SERVICE

      I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

      /s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600