**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE: ETHIOPIAN AIRLINES
FLIGHT ET 302 CRASH

Lead Case: 1:19-cv-02170 (Consolidated)

Honorable Jorge L. Alonso

Magistrate Judge Weisman

**BOEING'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
PLAINTIFF'S EXPERT BRENT LONGNECKER**

## TABLE OF CONTENTS

**Page**

I.   The evidence plainly contradicts Longnecker's opinion on the timing of Capt. Lewis's retirement from the Army. ................................................................................................... 1

II.  The evidence also contradicts Longnecker's assumption that Capt. Lewis would have pursued and obtained private sector jobs as a logistics vice president or executive. ................................................................................................................................... 3

III. Longnecker cannot articulate his methodology for selecting the jobs in his models, so his conclusions are not replicable. ................................................................................... 6

IV.  Longnecker's wage growth rate is admittedly arbitrary and untethered to the facts of this case. ............................................................................................................................... 7

i

Plaintiff's Response confirms that Longnecker's opinions are unsupported by facts or any reliable methodology.

First, Plaintiff apparently concedes that Capt. Lewis would have stayed in the Army until at least 2025, when he would have become eligible for a pension. But the only type of scenario Longnecker models is of Capt. Lewis retiring and entering the private sector in *2022*. These models are not just speculative, but directly contrary to all the evidence.

Second, Longnecker opines that Capt. Lewis would have gone to work as a vice president or executive at a U.S.-based logistics company after leaving the Army. But that is again directly contrary to the record. Plaintiff repeats Longnecker's speculation that Capt. Lewis would have attained such a position simply because he had worked in the same industry, but this ignores the extensive testimony that Capt. Lewis had other aspirations. And Longnecker admits that he lacked the information needed to evaluate whether Capt. Lewis would have been qualified for jobs as a logistics vice president or executive. Longnecker's inference that Capt. Lewis would have necessarily pursued and attained those positions simply because he had worked in the same general field is unreasonable and speculative.

Third, Longnecker's purported methodology is neither reliable nor replicable. Instead, he offers only vague explanations as to how he selected these as the jobs Capt. Lewis would have pursued after retiring from the Army. And Plaintiff's post-hoc justification for Longnecker's wage growth rate is contradicted by both his report and his deposition testimony.

Longnecker's opinions do not meet the requirements of Rule 702 and should be excluded.

## I.   The evidence plainly contradicts Longnecker's opinion on the timing of Capt. Lewis's retirement from the Army.

Longnecker assumes that Capt. Lewis would have left the Army in 2022. Plaintiff cites testimony that supposedly supports Longnecker, but that testimony merely says that Capt. Lewis

was considering retiring at 20 years of service, which would have been in *2025*. Plf.'s Resp. at 5; Def.'s Mot. at 3 fn 2. Moreover, the testimony shows that Capt. Lewis would have likely remained in the Army past that date. *See id.* at 5–6. Longnecker was unaware of all of this because he never received Capt. Lewis's military records and did not even consider when he would have been eligible for his military pension. Def.'s Mot. Ex. 2, 97:7–20, 135:19–25. His opinions cannot be squared with the evidence.

Plaintiff points to the testimony of Capt. Lewis's commanding officer Colonel Potoczny to support that Capt. Lewis would have retired as soon as he was eligible, but Colonel Potoczny testified that "every soldier aspires to" reach retirement and to retire at some *after* that. Pl.'s Ex. A at 34:8–12. Furthermore, when asked about Capt. Lewis's ambitions, he testified that Capt. Lewis "wanted to serve [his] country as long as [he] capably and honorably could." Def.'s Mot. Ex. 4 at 21:17–22:1, 29:17–24. He never suggested that Capt. Lewis had a plan to retire before 2025.

Plaintiff also relies on Capt. Lewis's father, Rodney Lewis, but he testified only that he thought his son *might* retire after 20 years of service. Pl.'s Ex. B at 44:20–45:1. He then went on to clarify that his son "was getting a lot of opportunities" such that he did not actually "know if it ever would have happened because [he] used to hear [Capt. Lewis] talk about becoming— getting, achieving the next rank." *Id.* And he did not testify, as Plaintiff's response suggests, that Capt. Lewis was traveling to Africa "to investigate potential business opportunities for a logistics business." Plf.'s Resp. at 5. He testified that his son undertook that trip because he was interested in "reestablishing roots in Africa." Pl.'s Ex. B at 27:24–28:11. Although they had "talked" about "import/export businesses and some of the things that we might be able to accomplish after his military career," Mr. Lewis noted that those were "just discussions." *Id.* There is simply no

evidence to support that Capt. Lewis "was taking actionable steps to start a post-military life." Plf.'s Resp. at 5. To the contrary, most witnesses expressed that Capt. Lewis wanted to stay in the Army as long as he continued to advance. *See generally* Def.'s Mot. at 5–6.

Longnecker cannot bridge the gap between this evidence and his conclusions by merely pointing to his "experience" in human resources and compensation for clients that include former military personnel. He "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Paramount Media Grp., Inc. v. Vill. of Bellwood*, No. 13 C 3994, 2015 WL 5307483, at *5 (N.D. Ill. Sept. 10, 2015) (Alonso, J.) (citing Fed. R. Evid. 702 advisory committee note). Longnecker has done no such thing, and instead readily admits that this part of his opinion was "just [his] thought." Def.'s Mot. Ex. 2 at 95:22–25.

His opinions are little more than speculation should be excluded. *See, e.g.*, *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004); *Empress Casino Joliet Corp. v. Johnston*, No. 09 C 3585, 2014 WL 6735529, at *11 (N.D. Ill. Nov. 28, 2014).

## II. The evidence also contradicts Longnecker's assumption that Capt. Lewis would have pursued and obtained private sector jobs as a logistics vice president or executive.

Plaintiff's arguments regarding the jobs Capt. Lewis would have pursued and obtained after leaving the Army fail for similar reasons. *See* Pl.'s Resp. at 6.

Longnecker does not assume that Capt. Lewis would have stayed in the same job he had at the time of his death. Rather, he opines that Capt. Lewis would have left his Army position and undertaken a completely new career path, seeking and obtaining specific logistics-related positions at private sector U.S. companies. Def.'s Mot. Ex. 1 at 11–13, 15–19. But the record contains no evidence supporting that Capt. Lewis would have chosen the positions Longnecker assumes. Instead, the evidence all points in other directions. *See* Ex. 5 at 28:4–6, 30:10–19 (Capt.

3

Lewis wanted to move to Africa to potentially start a utility or import-export business); Ex. 7 at

29:16–23 (Capt. Lewis wanted to move to Africa after retiring from the military); Ex. 3 at 56:23–

57:20, 59:19–25 (Capt. Lewis had no firm plans for what he would do if he ever retired from the

Army but expressed an interest in starting his own company or even becoming a dentist); Ex. 12

at 32:14–33:12 (discussing Capt. Lewis's dream of moving to Africa and opening a school). The

conclusion that Capt. Lewis would have become a vice president or executive for a U.S.

company in the logistics industry simply because he had previously held other logistics-related

jobs is not reasonable.

Plaintiff cites to *Rossi v. Groft* and *O'Shea v. Riverway Towing Co.*, Pl.'s Resp. at 8, but

neither provides support for Longnecker's speculative opinions. In *O'Shea*, which did not assess

the reliability of an expert's opinion, the decedent's economic damages were based on the job the

decedent had at the time of death and the Court simply analyzed evidence related to the

plaintiffs' lost wages claim. 677 F.2d 1194, 1198 (7th Cir. 1982). In *Rossi,* the plaintiff was a

college student with extremely limited work history who suffered a permanent disability. The

expert used the median age-earnings progression of all males in the same geographic area with

the same level of education to estimate what the plaintiff might have otherwise earned. Notably,

and unlike here, the Court found that "there is a sufficient factual foundation" for the expert's

opinion. 2013 WL 1632065 at *3 (N.D. Ill. Apr. 16, 2013). Neither of these cases "establishes a

solid factual foundation" for Longnecker's speculation that Capt. Lewis would have left the

Army in 2022 and gone on to the specific jobs he selected—positions that happen to pay five to

eight times more than what Capt. Lewis earned in the Army. Plf.'s Resp. at 8; Def.'s Mot. at 1.

A more relevant and factually similar case is *Joy v. Bell Helicopter Textron, Inc.*, where

the D.C. Circuit excluded an expert's models of a decedent's potential career as "wholly

speculative" because there was insufficient evidence to support his opinion that the decedent would have pursued or been qualified for that career. 999 F.2d 549, 569 (D.C. Cir. 1993). Here too, there is "simply too great an analytical gap" between Plaintiff's purported evidence that Capt. Lewis would have chosen to work in the field of logistics and Longnecker's very specific opinions about the jobs he was most likely to have pursued and obtained. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 832 (7th Cir. 2015); *see also Joy*, 999 F.2d at 569 (excluding this exact type of decedent career modeling as "wholly speculative").

Plaintiff next argues that the question of whether Longnecker's opinions about Capt. Lewis's qualifications are too speculative should be handled through cross-examination and left to the trier of fact to sort out. Pl.'s Mot. at 7. But "[a] court is expected to reject any subjective belief or speculation" regarding whether an individual is qualified for a particular position. *Ammons,* 368 F.3d at 816. That is not a task for the jury. In *Ammons*, for example, the Seventh Circuit excluded a vocational expert's opinion that the plaintiff was qualified for a position because the expert did not know whether he could perform all the duties the job required. *Id.* at 815–16. Here, Longnecker admits that he did not review Capt. Lewis's service records to see what skills he gained in the Army or even what jobs he held, and when asked to articulate what qualifications Capt. Lewis had that satisfied the criteria for the high-level vice president and executive positions in his models, he was largely unable to do so. Def.'s Mot. Ex. 2 at 135:19–25; *compare* Ex. 8 (job descriptions) *with* Ex. 2 at 310:14–313:19 (Longnecker's admissions). Longnecker relied instead on generalized descriptions of Capt. Lewis's personal qualities and broad assertions about his skills without explaining how they relate to the actual jobs he had held. *See* Def.'s Mot. Ex. 2 at 135:19–25; Def.'s Mot. at 9–10.

Boeing does not doubt that Capt. Lewis had many admirable personal qualities and capably performed his jobs in the Army. But nowhere does Longnecker provide the type of detail required to connect those qualities and prior work experience to the requirements of the specific, and admittedly scarce, senior-level positions he identifies and relies on for his opinions. That is what Rule 702 requires. *See Ammons*, 368 F.3d at 815–16 (excluding expert testimony that worker was qualified for job because expert failed to analyze specific duties and responsibilities required and whether worker could perform them); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 787–88 (7th Cir. 2017) (affirming exclusion of opinion where expert "unjustifiably extrapolated from an accepted premise to an unfounded conclusion"). Longnecker's opinion that Capt. Lewis would have been qualified for these positions is even more speculative than in *Ammons* and should be similarly excluded.

### III. Longnecker cannot articulate his methodology for selecting the jobs in his models, so his conclusions are not replicable.

Plaintiff claims that "Mr. Longnecker's methodology can easily be repeated" simply because "he applies the case specific facts to the job descriptions produced by the Economic Research Institute and Payfactors for the roles in the field of logistics." Pl.'s Resp. at 7. But Rule 702 requires more than a vague description of what the expert did; it requires an articulation of "professional methods" that are testable. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418–19 (7th Cir. 2005) ("Someone else using the same data and methods must be able to replicate the *result*.") (emphasis added). Longnecker's opinions fail that requirement.

Longnecker has never offered any details about how he applied "case specific facts to the job descriptions." He provided no explanation of how he selected these jobs in his report and when pressed to offer one during his deposition, he was utterly unable to do. He could not explain how he applied the descriptions for those jobs to Capt. Lewis's qualifications and further,

6

had no explanation for how he chose those positions over others. Def.'s Mot. Ex. 2 at 201:1–202:25, 209:1–212:7. Indeed, he was unable to recall even one other job that he considered but did not select. *Id.* He also couldn't explain how he established an initial pool of positions to consider, except that all were jobs related to "logistics." He couldn't give even a rough estimate of how many other positions he considered. *Id.* Plaintiff references the rebuttal analysis of Boeing's expert Dr. Guryan as evidence of replicability, but that misses the mark. Dr. Guryan did not attempt to replicate Longnecker's methodology. To the contrary, he offered an alternative calculation using different data sources. Plf.'s Resp. Ex. G at 5–7. And clearly, Dr. Guryan's analysis led to very different conclusions. *See id.* at 10–12 (summary of lost income calculations). Because Longnecker cannot articulate any reliable methodology for how he selected the jobs in his models, no other expert could possibly replicate his results, and his opinions are inadmissible.

## IV. Longnecker's wage growth rate is admittedly arbitrary and untethered to the facts of this case.

Plaintiff's argument that Longnecker's "wage growth rate is derived from the Bureau of Labor Statistics – U.S. Department of Labor's historical economic wage growth rate of 3.9%," Pl.'s Resp. at 9, is contradicted by both Longnecker's report and his deposition testimony.

Longnecker does not say in his report that his wage growth rate is based on BLS data.[1] *See* Def.'s Mot. Ex. 1 at 5 and Ex. 2 at 20:14–21. Rather, by his own admission, Longnecker selected a rate of three percent simply because it is what he had used in other cases. *Id.* 218:7–221:25. It is not tethered to the facts of this case at all. *Id.* at 290:14–296:17. Unlike Robert

---

[1] Plaintiff appears to be referring to a section of Longnecker's report that discusses how he "aged" his benchmark salaries "to the present value effective date of 2/1/2022" before using them in his models. Def.'s Mot. Ex. 1 at 5. However, his report does not say that his wage growth rate was based on BLS data, nor anything about how it was derived.

Johnson's rate for the Nukavarapu case, which was based an average of the "rate of wage growth for all U.S. nonagricultural workers since 1950," Def.'s Mot. Ex. 13 (Nov. 4, 2024 Hr'g) at 22:7–23:7, Longnecker's growth rate is not based on any calculation. It is connected to the existing data only by Longnecker's "say so," it is arbitrary, and it fails the requirements of Rule 702. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see, e.g.*, *Sturgis v. R & L Carriers, Inc.*, 554 F. Supp. 3d 976, 984–87 (N.D. Ind. 2021) (excluding opinion on lost wages in part because the growth rate failed to account for individualized factors).

## CONCLUSION

The Court should exclude Plaintiff's expert Brent Longnecker because his methodology is arbitrary, unreliable, and contradicted by the very evidence he purports to rely on.

DATED March 26, 2025

THE BOEING COMPANY

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Mack H. Shultz
MShultz@perkinscoie.com
Christopher M. Ledford
CLedford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600