**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Weisman |

**BOEING'S MOTION TO EXCLUDE EXPERT TESTIMONY
ABOUT INFANTS ON FLIGHT ET 302**

Boeing moves under Federal Rules of Civil Procedure 26 and 37 to exclude expert testimony about the movement of lap infants on board Flight ET 302. Tragically, Plaintiff Paul Njuguna Njoroge's infant daughter, Rubi Pauls, died in the crash. Boeing fully acknowledges the profound trauma of this loss for Mr. Njoroge. To that end, Boeing does not dispute that Mr. Njoroge can talk about his daughter and the tremendous grief caused by her loss. And Boeing also understands that, consistent with this Court's prior order, the jury may draw reasonable inferences about Rubi's experience in her final moments based on the "history of the flight" and "the aircraft's movements." *See* ECF 1749 at 7. But no expert properly disclosed an admissible opinion about lap infants on Flight ET 302. For that reason, any such expert testimony should be excluded.

## ARGUMENT

Under Rule 26(a)(2)(B)(i), an expert's report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." *See also Lexington Ins. v. Horace Mann Ins.*, 2015 WL 5174159, at *8 (N.D. Ill.) (Rule 26 "require[s] that initial reports be viewed as comprising the 'complete statement of all opinions' the retained expert will provide."). Rule 37(c)(1) enforces the requirements of Rule 26 and provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Given these rules, this Court previously excluded expert opinions that were not included in the experts' reports and were first offered during their depositions because the "purpose of the expert report . . . is to disclose an expert's opinion without the need for the deposition of the

1

witness." Ex. 1 (June 5, 2023 Hr'g) at 10:4–19. For the same reasons, the Court should exclude any expert testimony and opinions about lap infants here as well.

Of all the experts, only Troy Faaborg even mentioned infants (not lap infants specifically) in his report. He did so in a single sentence, stating that "[e]ven in infants [an] involuntary physiological response triggers an alarm or startle response, which is interpreted as a fear emotion and is expressed by crying." Ex. 2 (Faaborg Rep.) at 10. But this Court already excluded Mr. Faaborg's "mental state opinions" and barred him from testifying that any passengers "experienced any . . . concrete physiological effects, such as feeling a particular fight or flight response." Ex. 1 at 9:10–12. As a result, Mr. Faaborg cannot opine about Rubi's physiological responses or mental state. And absent any properly disclosed and admissible opinions about lap infants on ET 302, no other expert can testify on this topic at trial either. *See, e.g.*, *Midland States Bank v. United States*, 2021 WL 12094207, at *3 (N.D. Ill.) (excluding "any opinions not properly disclosed under Rule 26(a)(2)"); *Nat'l Football League Props., Inc. v. ProStyle, Inc.*, 57 F. Supp. 2d 665, 673 (E.D. Wis. 1999) (excluding expert testimony because "Rule 37(c)(1) and Rule 26(a)(2) the Federal Rules of Civil Procedure preclude an expert from testifying at trial regarding opinions not previously disclosed in an expert report").

Despite the absence of opinions about lap infants in Plaintiff's expert reports, Plaintiff's counsel attempted to elicit opinions about lap infants for the first time at deposition. For example, during the deposition of the plaintiffs' common expert Dr. Thomas Jenkyn, Plaintiff's counsel elicited testimony about the effect of G-forces on a lap infant. Ex. 3 (Jenkyn Dep.) at 319:21–322:23. The Court should bar any such testimony because Plaintiff's experts did not properly disclose in their reports any opinions about lap infants—including Rubi—on the ET 302

flight. *See* Ex. 1 at 10:4–19 (striking supplemental expert reports that incorporated opinions disclosed for the first time in depositions).

This failure to properly disclose any expert opinions about lap infants is neither substantially justified nor harmless. *See* Fed. R. Civ. P. 37(c)(1). In weighing this question, courts consider "1) the prejudice or surprise to the party against whom the evidence is offered; 2) the ability of the party to cure the prejudice; 3) the likelihood of disruption at trial; and 4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, if Plaintiff's counsel intended to offer expert testimony about what lap infants experienced on ET 302, those opinions should have been disclosed by the deadline for common expert disclosures on September 22, 2022—two and a half years ago. Indeed, at that time, Plaintiff's common experts disclosed opinions about the experience of adult passengers but not infants. And at a minimum, any expert opinions about Rubi's experience in particular should have been disclosed by the case-specific expert deadline, which passed on January 15, 2025— four months ago. *See* ECF 2239. In short, there is no substantial justification for the failure to provide timely expert opinions on lap infants. *See, e.g.*, *Vaughn v. HomeGoods, Inc.*, 2008 WL 4239505, at *4 (E.D. Mich.) (finding that plaintiff's late expert disclosure was not substantially justified when she "provided no reason she could not have hired an expert earlier in the discovery process").

Nor would it be "harmless" to permit disclosure of these opinions for the first time now, with trial just two months away. Fed. R. Civ. P. 37(c)(1). The prejudice against Boeing would be severe and could not be cured without significant changes to the current schedule. *Amari v. C.R. England, Inc.*, 2010 WL 2943686, at *3 (S.D. Ind.) (finding that allowing supplemental report

3

shortly before trial "would substantially increase the pretrial burden facing Defendants," "push the trial date back even further," and cause "prejudice . . . unlikely to be cured"). Indeed, for years now Boeing has been operating under the assumption that Plaintiff's experts would not be offering any opinions about the experience of infants on board ET 302. And at this stage, it would be nearly impossible for Plaintiff to prepare and disclose new expert reports on this issue, for Boeing to prepare and disclose any rebuttal reports, and for both sides to complete expert depositions—all while preparing for trial. And of course it would be disruptive at trial, and not at all "harmless," for Plaintiff to offer expert testimony about lap infants for the first time *at trial*, without Boeing having had any opportunity to explore those opinions beforehand or prepare responsive expert testimony.

      Plaintiff might argue that some of his experts disclosed opinions about *unbelted* passengers, so those experts should be able to opine about how G-forces would have affected Rubi (because she was unbelted). *See, e.g.*, Ex. 2 at 17 (discussing hypothetical "passengers or crew who were not belted in at the time"); Ex. 4 (Jenkyn Rep.) at 10 (discussing a hypothetical passenger who "does not have their seatbelt fastened"). That argument would fail.

      Context makes clear that these passing references to unbelted passengers in the experts' reports concern adults, not infants. For example, images from Dr. Jenkyn's simulation that are included in his report—which Plaintiff's counsel previously sought to admit for use at trial and which this Court excluded (Nov. 4, 2024 Hr'g Tr. at 29:11–18)—show only the effect of negative Gs on an *adult* unbelted passenger (Ex. 4 at 31). Mr. Faaborg's statement about unbelted passengers presupposes that they would have been either standing on "the floor" or sitting in "their seats," not in a parent's lap. Ex. 2 at 17. Nothing suggests that these statements were designed to encompass lap infants, and none of Plaintiff's experts conducted any analysis

4

regarding lap infants specifically. Indeed, as already discussed, aside from a single sentence about infants generally in Mr. Faaborg's report, Plaintiff's expert reports do not even mention lap infants or how G-forces would have affected them. Plaintiff's experts cannot circumvent these deficiencies by rebranding their speculative opinions on unbelted adult passengers—which this Court has excluded (Apr. 2, 2024 Hr'g Tr. at 34:16–24)—as applicable to lap infants like Rubi.

Moreover, while Boeing does not dispute that Rubi was a lap infant, there is no evidence that she would have been entirely *unrestrained* for some or all of the flight. Rule 702 demands that an expert's testimony be "based on sufficient facts or data." But there are no "facts or data" about whether Rubi would have been unrestrained at any point during the flight. For that reason alone, expert testimony about the movement of lap infants, like Rubi, is speculative and inadmissible. *See* Apr. 2, 2024 Hr'g Tr. at 34:9–25 (excluding opinions about unbelted passengers "because there is no evidence that any passengers were unbelted"); *see also Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (expert's opinion cannot rest on "subjective belief or unsupported speculation"). What's more, whether the G-forces on the flight would have affected the ability of an adult to restrain a lap infant like Rubi is a complex scientific question requiring expert testimony. *See, e.g.*, *Crawford v. Davis*, 597 F. Supp. 3d 1243, 1245 (S.D. Ill. 2022) (an issue "that cannot be explained to a reasonable degree of certainty without scientific, technical or specialized knowledge requires expert testimony"). No expert has performed such scientific analysis, so no expert can offer such testimony at trial.

In short, any expert testimony about Rubi's experience, and any attempt to elicit such testimony, would be pure speculation (as well as undisclosed) and thus must be excluded. *See Cole v. Perry*, 2019 WL 4165304, at *7 (S.D. Ind.) (excluding expert opinion that would "invite the jury to speculate" without support).

5

## CONCLUSION

Again, Boeing fully understands that Mr. Njoroge will speak about his daughter and the profound grief caused by her loss, and the jury may draw reasonable inferences about Rubi's final moments based on the aircraft's movements. But no expert can offer any undisclosed opinions on this topic. For these reasons, the Court should bar expert testimony about lap infants onboard ET 302.

| | |
|---|---|
| DATED May 12, 2025 | **THE BOEING COMPANY**<br><br>By: /s/ *Dan K. Webb*<br>*One of Its Attorneys*<br><br>Dan K. Webb<br>dwebb@winston.com<br>Linda T. Coberly<br>lcoberly@winston.com<br>Christopher B. Essig<br>cessig@winston.com<br>Julia M. Johnson<br>jmjohnson@winston.com<br>Samuel M. Zuidema<br>szuidema@winston.com<br>**Winston & Strawn LLP**<br>35 West Wacker Drive<br>Chicago, Illinois 60601-9703<br>Phone: (312) 558-5600<br><br>Sandra A. Edwards<br>sedwards@winston.com<br>**Winston & Strawn LLP**<br>101 California Street<br>35th Floor<br>San Francisco, CA 94111-5840<br>Phone: (415) 591-1000<br><br>Christopher M. Ledford<br>CLedford@perkinscoie.com<br>Mack H. Shultz<br>MShultz@perkinscoie.com<br>**Perkins Coie LLP**<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101-3099<br>Phone: (206) 359-8000<br>Fax: (206) 359-9000<br><br>Jon R. Buck<br>JBuck@perkinscoie.com<br>**Perkins Coie LLP**<br>131 S. Dearborn, Suite 1700<br>Chicago, Illinois 60603-5559<br>Phone: (312) 324-8400<br>Fax: (312) 324-9400 |

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600
