# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH | Lead Case: 1:19-cv-02170 (Consolidated) |
| | Honorable Jorge L. Alonso |
| | Magistrate Judge Weisman |

## BOEING'S MOTION TO STRIKE UNTIMELY EXPERT DISCLOSURES AND EXCLUDE THERAPIST OPINION TESTIMONY IN *RYAN*

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ............................................................................................................... 1

    A. Richard Day......................................................................................................... 2

    B. Mary Bergin ........................................................................................................ 3

    C. Jacinta Ryan ........................................................................................................ 4

    D. Thomas Sheehan ................................................................................................. 5

ARGUMENT ................................................................................................................... 6

    I. Plaintiff's amended expert disclosure is untimely, unjustified, and prejudicial, so Rule 37 requires the exclusion of the therapists' expert testimony................................. 6

    II. The therapists cannot offer their opinion testimony as lay witnesses under Rule 701. ................................................................................................................... 10

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chen v. Mayflower Transit, Inc.*,
224 F.R.D. 415 (N.D. Ill. 2004)................................................................................6

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview*,
94 F.4th 588 (7th Cir. 2024)...................................................................................10

*Cripe v. Henkel Corp.*,
318 F.R.D. 356 (N.D. Ind.), *aff'd*, 858 F.3d 1110 (7th Cir. 2017) .........................9

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003) ...................................................................................7

*Freedom Wireless v. Bos. Commc'ns Grp.*,
369 F. Supp. 2d 155 (D. Mass. 2005) ....................................................................10

*Glanz v. Illinois*,
2018 WL 11195497 (N.D. Ill.) ..........................................................................10, 11

*Gomez v. Palmer*,
2016 WL 212800 (N.D. Ill.) .....................................................................................6

*Johnson v. Norfolk S. Ry. Co.*,
2015 WL 3738545 (N.D. Ind.)................................................................................11

*Kmart Corp. v. Footstar, Inc.*,
2012 WL 5389727 (N.D. Ill.) .................................................................................10

*Musser v. Gentiva Health Servs.*,
356 F.3d 751 (7th Cir. 2004) ...................................................................6, 7, 8, 9, 10

*Novak v. Bd. of Trs. of S. Illinois Univ.*,
777 F.3d 966 (7th Cir. 2015) ....................................................................................6

*United States v. Oliver*,
908 F.2d 260 (8th Cir. 1990) ..................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(A) ........................................................................................6

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................2

Fed. R. Civ. P. 26(a)(2)(C) ........................................................................................2

Fed. R. Civ. P. 26(a)(2)(D) ..........................................................................................6, 7

Fed. R. Civ. P. 37(c)(1)..............................................................................................6, 10

Fed. R. Evid. 701 .......................................................................................................1, 10

Boeing moves to exclude the opinion testimony of Richard Day, Mary Bergin, Jacinta Ryan, and Thomas Sheehan, four therapists who offer opinion testimony on the emotional health and prognosis of the Plaintiff in this case and her children.

Plaintiff disclosed these therapists as *fact* witnesses, and Boeing deposed them as such before the end of fact discovery in February 2025. Many months later—more than a month after the close of expert discovery in July, and just eight days before the deadline to exchange *Daubert* motions—Plaintiff disclosed the therapists as *expert* witnesses for the first time. This expert disclosure was untimely, unjustified, and unfairly prejudicial, so Federal Rule of Civil Procedure 37 mandates the exclusion of their expert testimony from trial.

Because Rule 37 prohibits the therapists from testifying as experts, Plaintiff might seek to have them offer the same testimony as lay witnesses. But as Plaintiff has now acknowledged (*see* Ex. 1 (amended expert disclosure)), their opinions are based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," so they cannot be admitted under Federal Rule of Evidence Rule 701. Boeing moves to exclude their opinion testimony on this basis as well.

In short, these therapists cannot offer opinion testimony, whether as experts or as lay witnesses. While they can testify to facts that they personally observed and diagnoses they gave during therapy (only one of them gave any diagnoses), the rules of evidence and procedure do not permit them to testify to anything else.

## BACKGROUND

After the death of Micheál Ryan in the ET 302 crash, his wife and two young children began meeting with art therapists Richard Day and Mary Bergin, as well as psychotherapists Jacinta Ryan and Thomas Sheehan. All four therapists were identified as witnesses in Plaintiff's damages disclosures. *See* Ex. 2 (fourth amended damages disclosure). But those disclosures did

not identify any of the therapists as experts, nor did they include any of the information required for expert disclosures under Rule 26(a)(2)(B) or (C). Later, Plaintiff separately served a "Rule 26(a)(2) Expert Disclosure," which identified only an economist. *See* Ex. 3 (expert disclosure).

Based on these disclosures, all four therapists were deposed as fact witnesses before fact discovery closed on February 14, 2025. *See* ECF 2145. Their testimony is described below.

### A.     Richard Day

Day has a master's degree in art psychotherapy and has practiced art therapy in various settings for ten years. Ex. 4 (Day Dep.) at 8:3–9:23. He is not a psychiatrist and is not qualified to "prescribe medication" or "diagnose medical conditions," but his "work will sometimes contribute to a clinical diagnosis." *Id.* at 37:4–19. In August 2023, Day began working with

███████████████████████████████████████████████

███████ . *Id.* at 46:1–16. ███████████████████████ *Id.* at 13:22–14:6.

The day before Day's deposition, Plaintiff's counsel produced a "Confidential Clinical report regarding ████████████████████████████████." Ex. 5 (Day Rep.). Among other things, the report provides Day's "professional opinion[s]" about ████████████████████

████████ *Id.* at 2–4. Day opines, for example, that ██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████

At his deposition, Day elaborated on his "training and education" and "years of training and practice," explaining that he wrote ████████████████████ and reviewed "a number of books" in preparation for his testimony. Ex. 4 at 8:5–9:23, 10:3–15, 30:16–31:4. He testified about ████████████████████████████████████████

███████████████████████████████████████ *Id.* at 14:7–15:8,

16:17–17:24. ████████████████████████████████████████████████

████████████████████████████ *Id.* at 18:5–20:2. It is Day's "professional opinion" that ██

████████████████████████████████████████████████████████████

██████ *Id.* at 21:3–24, 23:17–24:18, 25:15–26:18.

During the deposition, Boeing's counsel objected that Day "has not been disclosed as an expert witness" and that much of his testimony "goes outside the scope of this witness's observations as a fact witness." *Id.* at 12:18–13:5. Plaintiff's counsel responded that he disagrees with that "characterization" and that "[t]reating physicians don't have to be retained experts to give opinions." *Id.* at 13:6–9. Boeing's counsel later noted that she was keeping the deposition open "in the event that Mr. Day is later disclosed as an expert." *Id.* at 51:12–22. Day was not disclosed as an expert by the close of expert discovery on July 30, 2025. *See* ECF 2245.

**B.     Mary Bergin**

Bergin has graduate degrees in art therapy and applied psychology. Ex. 6 (Bergin Dep.) at 7:19–21. She is a registered social worker with experience working with children, adolescents, and adults with emotional and behavioral difficulties. *Id.* at 7:18–19, 8:5–11. She is not a medical doctor and is not qualified to prescribe medications or make medical diagnoses. *Id.* at 51:9–15.

In August 2023, Bergin began working with ██████████████████████████████

████████████████████████████████ *Id.* at 8:23–9:8. Bergin testified about

████████████████████████████████████████████████████████████

*Id.* at 9:8–10:6, 24:11–25:2. Bergin opined that ████████████████████████

████████████████████████████████████████████████████████ *Id.*

at 28:8–29:4, 30:2–5. When asked, Bergin said that she did not know if she is "serving as an expert witness" in this case. *Id.* at 32:8–11. Bergin was not disclosed as an expert by the deadline.

3

### C.      Jacinta Ryan

Ryan has a graduate degree in psychotherapy and has practiced for more than twenty years. Ex. 7 (J. Ryan Dep.) at 6:6–11. She is not a medical doctor and is not qualified to prescribe medications (*id.* at 73:6–15), but she testified that she is "able to make diagnosis [*sic*]" (*id.* at 73:9–15). Ryan first began therapy sessions with ██████████████ in the week following the crash. *Id.* at 7:12–16. She continued to meet with ██████████████ ██████████████, until 2023. *Id.* at 15:23–16:7, 62:20–63:4.

Ryan prepared a report describing her ██████████████ concerning the family. Ex. 8 (J. Ryan Report); *see* Ex. 7 at 85:14–20. She opines that ██████████████ ██████████████ ██████ Ex. 8 at 3–5. The report states that ██████████████ ████ *Id.* at 4–6. The report cites scientific authorities throughout. *Id.* at 1, 3, 5–6. In her deposition, Ryan explained her decades of experience and confirmed that her opinions were based on "experience," "training," and "critical research." Ex. 7 at 6:6–21; 27:14–22, 89:11–14. She also described how ██████████████. *Id.* at 16:9–18:18, 19:1–20:9.

During the deposition, Boeing's counsel objected that Ryan "hasn't been disclosed as an expert" and that "some of this testimony is straying . . . into causation issues and into opinions about the future," which is "beyond the scope of . . . lay testimony." *Id.* at 27:1–10. Plaintiff's counsel disagreed. *Id.* at 27:11–13. Boeing's counsel later renewed the objection that "Ryan has not been disclosed under the Federal Rules of Civil Procedure as an expert" and "reserve[d] the right to take a second deposition" if Plaintiff "disclose[d] her later as an expert witness." *Id.* at 91:8–16. Plaintiff's counsel responded that he "will be disclosing her as an expert," but he also seemed to suggest—it's not quite clear—that "[t]reating physicians are allowed to give expert

4

opinions" without being disclosed as experts. *Id.* at 91:17–22. In any event, the deadline came and went with no such disclosure.

### D. Thomas Sheehan

Sheehan has degrees in counseling psychotherapy and integrative psychotherapy. Ex. 9 (Sheehan Dep.) 6:21–24. He became accredited as a psychotherapist in the early 2000s and has specialized training in trauma therapy. *Id.* at 26:1–21. Sheehan works with private clients, including clients through company employment programs, and typically sees 15–18 clients per week. *Id.* at 7:18–23.

Sheehan began working with ▇▇▇▇ in August 2023. *Id.* at 8:3–9:12. Sheehan testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇ *Id.* at 9:8–12, 20:15–17. He did not testify to any diagnoses, but he did discuss his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 11:18–12:4. He ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 26:14–27:3. While he expects that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇ *Id.* at 20:17–21:8.

When Sheehan was asked if he was serving "as an expert witness," he responded, "I'm not sure actually." *Id.* at 23:11–15. He was not disclosed as an expert by the deadline.

* * *

On September 2, 2025—months after all these depositions occurred, and more than a month after the July 30 expert discovery deadline—Plaintiff served an amended disclosure identifying all four therapists as expert witnesses for the first time. Ex. 1. The disclosure stated that the therapists "are not retained experts in this matter" but were being disclosed as experts "out of an abundance of caution." *Id.* at 1. The disclosure also stated that the therapists had

"previously testified and rendered opinions regarding their evaluation and treatment of the Ryan

family" and that

> [t]heir anticipated trial testimony includes but is not limited to: the
> evaluation and treatment rendered; the emotional and
> psychological impact of the incident; the family members' current
> conditions and prognoses; the necessity, reasonableness, and costs
> of the medical care provided; the permanency of their injuries and
> limitations; [] the anticipated need for future medical care . . . [and]
> that the Ryan family's ongoing limitations and conditions are
> attributable to the subject incident.

*Id.* at 1–2. The disclosure confirmed that this testimony was to be based on the therapists'

"education, training, and professional experience," among other things. *Id.* at 2.

## ARGUMENT

### I.    Plaintiff's amended expert disclosure is untimely, unjustified, and prejudicial, so Rule 37 requires the exclusion of the therapists' expert testimony.

Under Rule 26(a)(2)(A), "a party must disclose to the other parties the identity of any

witness it may use at trial to present evidence under Federal Rule of Evidence 702." "A party

must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ.

P. 26(a)(2)(D). By its terms, this disclosure requirement applies to "*any* witness who will provide

expert testimony" (*Gomez v. Palmer*, 2016 WL 212800, at *6 (N.D. Ill.) (emphasis original)),

including treating healthcare providers whose "testimony consists of opinions based on

scientific, technical, or other specialized knowledge" (*Musser v. Gentiva Health Servs.*, 356 F.3d

751, 756 n.2 (7th Cir. 2004) (quotations omitted); *accord Chen v. Mayflower Transit, Inc.*, 224

F.R.D. 415, 419 (N.D. Ill. 2004)).

"Failure to comply with the disclosure requirements of Rule 26(a) results in automatic

and mandatory exclusion of the proffered witness 'unless the failure was substantially justified or

is harmless.'" *Novak v. Bd. of Trs. of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015) (quoting

Fed. R. Civ. P. 37(c)(1)). In making this determination, courts consider "(1) the prejudice or

6

surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff's September 2 amended expert disclosure was not provided "at the time[] . . . the court order[ed]." Fed. R. Civ. P. 26(a)(2)(D); *see* ECF 2245 (adopting the July 30, 2025 deadline "to complete expert discovery"). And all the relevant factors show that this violation was neither justified nor harmless.

First, the violation was prejudicial. As the Seventh Circuit has explained, "[f]ormal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial," and a party "should not be made to assume" that any witness disclosed as a fact witness "could be an expert witness at trial." *Musser*, 356 F.3d at 757. Because Plaintiff did not timely *disclose* these witnesses as experts, Boeing had no reason to *depose* them as experts. "Disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts. Obviously, opposing counsel will question a witness differently (during a deposition or at trial) if the witness has been designated as an expert." *Id.* at 759.

Even after being put on notice that Boeing reserved the right to conduct additional depositions if Plaintiff disclosed the therapists as experts, Plaintiff chose not to—until long after the close of expert discovery. While Plaintiff's counsel stated at the very end of Ryan's deposition that he would disclose her as an expert, by that point it was too late "to question the witness[] in [her] expert capacity." *Id.* The whole purpose of Rule 26 disclosure requirements is to put the opposing party on notice that the witness would serve as an expert and to provide the expert's opinions *before* she is deposed. When those requirements are not met and the deadline

7

passes with no expert disclosure, the opposing party is entitled to assume that the decision had been made not to use the witness as an expert (regardless of what counsel might have suggested in the fact deposition). What's more, not only was Plaintiff's disclosure untimely, but it came just eight days before the deadline for *Daubert* motions. All these decisions deprived Boeing of a full opportunity to explore these witnesses' opinions, their reliability, and the therapists' methodologies by "holding additional depositions" and disabled Boeing from seeking "to disqualify the expert testimony on grounds set forth in *Daubert*." *Id.* at 757–58. Boeing is now faced with the prospect of confronting expert testimony at trial while "rely[ing] on depositions conducted without the knowledge that each of the witnesses would be used as experts" and without having had any fair opportunity to exclude their testimony under Rule 702. *Id.* at 759. Permitting this would reward a flagrant violation of Rule 26.

Second and third, there is no ability to cure the prejudice, and any attempt to do so would only disrupt the trial schedule. Trial is now two months away, and Boeing is preparing for five trial cases simultaneously. It should not be required to prepare for and take four more expert depositions in the time that remains before trial when, if not for the violation, Boeing could have deposed these witnesses as experts months ago. *Musser*, 356 F.3d at 759 (less than three months before trial is not "ample time . . . for further [expert] discovery"). Moreover, last-minute expert depositions of these witnesses would likely turn up limitations on their qualifications or flaws in their methodologies that would require more motion practice. For instance, it may become apparent that Ryan did not ███████████████████████████████████████ ████████████████ (Ex. 7 at 73:9–15) or that Bergin's opinions amount to diagnoses that she is not qualified to give (Ex. 6 at 51:9–15)—issues that would be explored very differently in a deposition if the examiner knew ahead of time that the witness could be subject to a *Daubert*

8

challenge. Briefing on these issues would now proceed on its own delayed timeline, which would upset the coordinated pretrial schedule, interfere with other trial preparation efforts, and require hurried action from this Court that could and should be avoided.

Finally, while bad faith or willfulness are not necessary for exclusion under Rule 37 (*Cripe v. Henkel Corp.*, 318 F.R.D. 356, 362 (N.D. Ind.), *aff'd*, 858 F.3d 1110 (7th Cir. 2017)), the failure to timely disclose all four therapists as expert witnesses was at least willful. Again, Boeing put Plaintiff's counsel on notice more than six months ago that the therapists' opinions were undisclosed expert testimony and that Boeing would insist on additional depositions if they were disclosed as experts. Plaintiff's counsel variously disagreed with Boeing's objections (Ex. 4 at 13:6–9; Ex. 7 at 27:11–13) or responded that the witness *would* be disclosed as an expert (Ex. 7 at 91:17–22). Two of the witnesses said they didn't know if they were providing expert testimony. Ex. 6 at 32:8–11; Ex. 9 at 23:11–15. All this should have caused Plaintiff's counsel to disclose them as experts before the Court's deadline if that's how he intended to use them at trial.

The language of the disclosure suggests that Plaintiff's counsel "erroneous[ly] assum[ed] that disclosing a witness is the same as disclosing an expert witness." *Musser*, 356 F.3d at 758; *see* Ex. 1 at 1 ("[A]lthough Plaintiff identified these individuals in Plaintiff's Third Amended Damage Witness Disclosures on December 19, 2024, Plaintiff again identifies them in this Amended Expert Disclosure out of an abundance of caution[.]"). But Rule 26 does not advise caution; it mandates disclosure. And "[a] misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline." *Musser*, 356 F.3d at 758. Simply put, the violation was either the result of a reckless decision not to read Rule 26 or a strategic decision to avoid fulsome expert discovery—neither of which is any justification.

For all these reasons, the Court should strike Plaintiff's untimely expert disclosure and prohibit these therapists from offering expert testimony at trial. Fed. R. Civ. P. 37(c)(1); *see Musser*, 356 F.3d at 757 (affirming decision allowing treating physicians to "testify as fact witnesses" but not "experts").

## II.    The therapists cannot offer their opinion testimony as lay witnesses under Rule 701.

Because Rule 37 prohibits these witnesses from providing expert testimony, Plaintiff might try offering the same testimony under Rule 701, which governs lay opinions. But these opinions cannot be admitted under Rule 701 either. That rule provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

As Plaintiff's untimely disclosure makes clear, these witnesses' opinions are based in part on "their respective education, training, and professional experience" as art therapists and psychotherapists. Ex. 1 at 2. That is also clear from the deposition testimony recounted above. But "lay opinion is proper only when it involves a witness 'stat[ing] his conclusions based upon *common* knowledge or experience'"—not *specialized* knowledge or experience. *Freedom Wireless, Inc. v. Bos. Commc'ns Grp., Inc.*, 369 F. Supp. 2d 155, 157 (D. Mass. 2005) (emphasis added) (quoting *United States v. Oliver*, 908 F.2d 260, 263–64 (8th Cir. 1990)). This "requirement is designed 'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 597 (7th Cir. 2024) (quoting Fed. R. Evid. 701 Advisory Comm. Note); *accord Kmart Corp. v. Footstar, Inc.*, 2012 WL 5389727, at *5 (N.D. Ill.).

These rules apply equally to "[m]edical treaters," who—if not properly disclosed as experts—are "strictly limited to [testifying about] their observations and diagnosis arising from

10

their treatment" and "cannot speak to causation, prognosis, or future disability." *Glanz v. Illinois*, 2018 WL 11195497, at *2 (N.D. Ill.); *see also Johnson v. Norfolk S. Ry. Co.*, 2015 WL 3738545, at *3 (N.D. Ind.) ("Treating physicians, if disclosed as fact witnesses, may testify only regarding personal observations, examinations, and diagnoses completed during the course of treatment and contained within the relevant medical records.").

According to Plaintiff's untimely expert disclosure, these witnesses plan to testify about "the emotional and psychological impact of the incident; the family members' current conditions and prognoses; the necessity, reasonableness, and costs of the medical care provided; the permanency of their injuries and limitations; [] the anticipated need for future medical care . . . [and] that the Ryan family's ongoing limitations and conditions are attributable to the subject incident." Ex. 1 at 1–2. In other words, the therapists plan to testify about "causation, prognosis, [] future disability," and other subjects on which they have specialized knowledge—all the things they *cannot* testify about as lay witnesses. *Glanz*, 2018 WL 11195497, at *2. The Court should not—and under Rule 701, cannot—permit such testimony.

## CONCLUSION

For the reasons above, the Court should preclude all four therapists from offering expert testimony and from offering their opinions as lay witnesses. To be clear, nothing about this motion would prevent the therapists from testifying about their observations or any diagnoses rendered during treatment and reflected in the record, as the law permits—but Ryan appears to be the only therapist who purported to offer any diagnoses; Day and Bergin both said they were not qualified to give diagnoses, and Sheehan simply didn't give any. Thus, all four therapists can testify to their personal observations, only Ryan can testify to her diagnoses, and none of them may testify beyond that.

11

DATED Sept. 15, 2025

**THE BOEING COMPANY**

By: /s/ *Dan K. Webb*
*One of Its Attorneys*

Dan K. Webb
dwebb@winston.com
Linda T. Coberly
lcoberly@winston.com
Christopher B. Essig
cessig@winston.com
Julia M. Johnson
jmjohnson@winston.com
Samuel M. Zuidema
szuidema@winston.com
**Winston & Strawn LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600

Sandra A. Edwards
sedwards@winston.com
**Winston & Strawn LLP**
101 California Street
35th Floor
San Francisco, CA 94111-5840
Phone: (415) 591-1000

Christopher M. Ledford
CLedford@perkinscoie.com
Mack H. Shultz
MShultz@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Jon R. Buck
JBuck@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Dan K. Webb*
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Phone: (312) 558-5600