**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH<br><br>This Document Relates To: NAOISE NEE CONNOLLY, *as Special Administrator of the Estate of MICHEÁL RYAN, deceased*<br><br>Case No.: 1:19-cv-03540 | Civil No.  1:19-cv-02170<br><br>District Judge:  Hon. Jorge L. Alonso<br><br>Magistrate Judge:  Hon. M. David Weisman |

**PLAINTIFF'S RESPONSE TO BOEING'S MOTION TO STRIKE
EXPERT DISCLOSURES AND EXCLUDE THERAPIST OPINION TESTIMONY**

In its Motion, Boeing purports to seek the exclusion of "opinion testimony on the emotional health and prognosis of the Plaintiff in this case and her children." ECF. No. 2663. at 1. As a threshold matter, it bears noting that the witnesses at issue—therapists who treated the Plaintiff and her minor children—will testify at trial *only* through their video-recorded depositions. Accordingly, *all* of their testimony, including all of their purported "opinions," have already been fully elicited and explored.

Moreover, even prior to the depositions, Plaintiff disclosed these witnesses not once but three times: in her Response to Boeing's First Set of Damages Request for Production, in her Damages Witness Disclosures, and in the pertinent notices for the depositions. Accordingly, Boeing cannot credibly claim any surprise at these witnesses or their testimony, which has been known for months.

1

Instead, Boeing contends that small portions of these witnesses' testimony[1] should be excluded because the witnesses expressed certain "expert" opinions, and they were not initially disclosed as "expert" witnesses.

Boeing is wrong on both fronts. First, the witnesses are treating physicians—not retained experts. Accordingly, they testified based on first-hand knowledge of the decedent's next of kin, their therapeutic treatment, their grief and their mental health. Courts in this District and Circuit have routinely held that such testimony is within the bounds of lay testimony by treating physicians, and therefore admissible.

Second, even if Boeing were correct in characterizing their testimony as containing "expert" opinions, Boeing is not entitled to evidentiary relief because any tardy disclosure of these witnesses as experts was harmless under Rule 37. Boeing has known about all of these witnesses for nearly two years, it had a fulsome opportunity to depose these witnesses, and it availed itself of that opportunity by questioning them on their background, their treatment of their client patients, and their opinions. Under similar circumstances, courts have routinely found harmlessness and denied Rule 37 relief.

For these reasons and those that follow, Boeing's Motion should be denied.

## BACKGROUND

1.  Plaintiff and her two young children began treatment with four therapists—art therapists Richard Day and Mary Bergin, and psychotherapists Jacinta Ryan and Thomas Sheehan—as a direct result of the death of her husband, Micheál Ryan, in the Ethiopia Airlines Flight 302 crash on March 10, 2019.

---

[1] It is not clear *which* purported opinion testimony Boeing's Motion seeks to specifically exclude, as Boeing's request for relief only generically refers to the purportedly excludable testimony. For purposes of this Response, Plaintiff will presume Boeing seeks to exclude some or all of the testimony quoted in the Background section of Boeing's Motion.

2. As early as October 2, 2020, Plaintiff informed Boeing that psychotherapist Ms. Ryan was treating the decedent's family following the ET 302 crash. *See* Ex. 1 (Plaintiff's Answers and Objections to Boeing's First Set of Damages Interrogatories) at 6.

3. On December 5, 2023, Plaintiff informed Boeing that the decedent's family had continued to see Ms. Ryan for psychotherapy treatment, and that the family had also begun treatment with Mr. Day, Ms. Bergin, and Mr. Sheehan. *See* Ex. 2 (Plaintiff's Supplemental Responses to Boeing's First Set of Damages Requests for Production No. 18 & 24) at 1.

4. On November 12, 2024—about a year before the now-scheduled trial—Plaintiff disclosed Ms. Ryan, Mr. Day, Ms. Bergin, and Mr. Sheehan as damage witnesses in this case. *See* Ex. 3 (Plaintiff's Third Amended Damage Witnesses Disclosure).

5. On November 14, 2024, Plaintiff produced Ms. Ryan's invoices for her therapy sessions with ▮▮▮▮▮. *See* Ex. 4 (Plaintiff's Second Supplemental Responses to Boeing's First Set of Damages Request for Production No. 18).

6. On November 15, 2024, Plaintiff and Boeing's respective counsel deposed psychotherapist Ms. Ryan. *See* Ex 5 (Ryan Dep.).

7. Ms. Ryan's deposition was explicitly conducted as a video-recorded trial preservation deposition. *See id.* 5:20–22; 7:23–24; 31:13–16; 34:16–17. During that deposition, Boeing's counsel enjoyed a full and unfettered opportunity to question Ms. Ryan, including about her compensation, *id.* 36:6–7, her treatment of the decedent's relatives, *id.* 61:3 – 65:23, her credentials and methodologies as a psychotherapist, *id.* 72: 7 – 74:15, and the application of those methodologies in her treatment of the decedent's family *id.* 77:9 – 81:15.

8. As part of this thorough questioning, Boeing asked Ms. Ryan numerous questions regarding her "views" and opinions in the case. *See, e.g., id.* 78:5–8 ▮▮▮▮▮

3

███████████████████████████████████████████

9. On January 16, 2025, Plaintiff produced Mr. Sheehan's invoices for his therapy sessions with ██████████████. *See* Ex. 6 (Plaintiff's Third Supplemental Responses to Boeing's First Set of Damages Request for Production No. 18).

10. On January 22, 2025, Plaintiff and Boeing's respective counsel deposed Mr. Sheehan. *See* Ex. 7 (Sheehan Dep.).

11. As with Ms. Ryan, Mr. Sheehan's deposition was explicitly conducted as a trial deposition due to his likely inability to travel to the United States for the trial. *Id.* 6:6–16. Accordingly, Boeing's counsel explicitly understood his testimony as "things you have told the jury today." *Id.* 22: 23–25.

12. Boeing's counsel enjoyed full opportunity to question Mr. Sheehan, including about his compensation, *id.* 23: 2–10, his education and credentials as a psychotherapist, *id.* 25:15 – 26:13, and his treatment of the decedent's family members, *id.* 28:10-29:7. As part of this thorough questioning, Boeing asked Mr. Sheehan numerous questions regarding his views, perspectives and opinions. *See, e.g., id.* 28:23–25 ████████████████████████████████████████████████████████████████████████████████████████████

13. On February 4, 2025, Plaintiff produced Ms. Bergin's invoices and notes for her therapy sessions with ██████████. *See* Ex. 8 (Plaintiff's Fifth Supplemental Responses to Boeing's First Set of Damages Request for Production No. 18).

14. On February 11, 2025, Plaintiff and Boeing's respective counsel deposed Ms. Bergin. *See* Ex. 9 (Bergin Dep.). Again, this deposition was conducted as a trial preservation

4

deposition. *Id.* 7: 9–15. Also during that deposition, Boeing's counsel enjoyed full opportunity to question Ms. Bergin, including about her compensation, *id.* 30:24 – 31:2, her sessions with the decedent's family, *id.* 44:22 – 45:3, and her methodology as an art therapist, *id.* 50:25 – 51:18. As part of this thorough questioning, Boeing asked Ms. Bergin numerous questions regarding her views and opinions. *See*, *e.g.*, *id.* 44:8–10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

15. On February 5, 2025, Plaintiff produced Mr. Day's invoices for his therapy sessions with ▇▇▇▇▇▇▇. *See* Ex. 10 (Plaintiff's Sixth Supplemental Responses to Boeing's First Set of Damages Request for Production No. 18). On February 12, 2025, Plaintiff also produced Mr. Day's Confidential Clinical Report regarding his therapy sessions with ▇▇▇▇▇▇▇, and his updated C.V. *See* Ex. 11 (Plaintiff's Seventh Supplemental Responses to Boeing's First Set of Damages Request for Production No. 18).

16. On February 13, 2025, Plaintiff and Boeing's respective counsel deposed Mr. Day. *See* Ex. 12 (Day Dep.).

17. This, too, was understood to be a trial preservation deposition due to Mr. Day's inability to travel for the trial. *Id.* 7:7–9. Boeing's counsel enjoyed full opportunity to question Mr. Day, including about his compensation, *id.* 31:10–13, his education and credentials as an art therapist, *id.* 34:4 – 37:20, and the opinions and observations Mr. Day gathered throughout his treatment with the Ryan family, *id.* 46:17 – 49:14. During the deposition, Boeing asked Mr. Day numerous questions regarding his "opinions" in the case. *See*, *e.g.*, *id.* 47:22 – 48:3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

5

18.     None of the therapists at issue here are retained experts in this matter. Plaintiff, moreover, has made clear to Boeing that none of these witnesses are expected to testify live or virtually at trial, and the entirety of their testimony will be the video-recorded depositions Plaintiff and Boeing's counsel participated in. *See* Ex. 13. (Plaintiff's Deposition Designations) (indicating that Plaintiff intends to call Ms. Ryan, Mr. Sheehan, Ms. Bergin, and Mr. Day via video deposition at trial).

19.     In addition to the previous disclosures of these witnesses and their thorough depositions, Plaintiff also disclosed them as expert witnesses in an abundance of thoroughness on September 2, 2025. *See* Ex. 14. (Plaintiff's Amended Expert Disclosure).

## ARGUMENT

Boeing does not appear to object—nor can it object—to the vast majority of these witnesses' testimony. Similarly, Boeing makes no *substantive* argument that any of the testimony is improper, whether under *Daubert* or any other substantive standard. The reason is simple: the overwhelming majority of the witnesses' testimony is plainly unobjectionable.

Instead, Boeing's sole argument is procedural: that these witnesses offer "expert" (rather than lay) testimony, and that such "expert" testimony must be excluded because they were not listed on the original Rule 26 expert witness disclosure. This argument is without merit. First, the witnesses testified to their lay opinions as treating physicians, not as experts. Second, even if Boeing were right in characterizing small snippets of the testimony as "expert" opinions, those opinions are not excludable because Boeing suffered no harm or prejudice. Quite the contrary: Boeing has known about these witnesses for years, and thoroughly deposed them months ago.

To prevail on its request for Rule 37 relief, Boeing must show *both* that the witnesses offered expert testimony *and* that it suffered prejudice that cannot be characterized as harmless. Boeing can

6

do neither, and the Motion should be denied.

I. **The witnesses offered unobjectionable and plainly admissible testimony as treating physicians.**

It is well-settled that treating physicians acts as a fact witness—for which no Rule 26(a)(2)(C) disclosures are required—when testifying as to "their personal observations, the diagnoses they made, Plaintiff's history, and the treatments they provided." *Rivera v. Aerovias de Mexico, S.A. de C.V.*, 690 F. Supp. 3d 906, 909–10 (N.D. Ill. 2023) (citation omitted).

Treating physicians may also offer lay testimony about their patient's "prognosis." *See, e.g., Keller v. Crawford*, 465 F. Supp. 3d 472, 484 (E.D. Pa. 2020) ("[I]t is well-established that 'doctors are free to testify as to Plaintiff's statements to them during their care and treatment; as to their own examination, diagnosis, and treatment of Plaintiff; and as to Plaintiff's prognosis based on their observations during treatment' as lay witnesses." (citation omitted)). *Accord, e.g., Carrillo v. Lowe's HIW, Inc*, 2011 WL 2580666, at *3 (S.D. Cal. June 29, 2011).

That is exactly what the four treater witnesses did here. Ms. Ryan, for example, testified to the circumstances she personally knew and observed as she began her treatment, *see, e.g.*, Ryan Dep. at 7:6 – 12:20  *see. e.g., id.* 13:21–25 ( and *see, e.g., id.* 22:11 – 23:9

Similarly, the other three treater witnesses testified about their treatment of their clients and the symptoms they observed. *See, e.g.*, Day Dep. at 14:9 – 19:8 *id.* 19:12 – 21:2

7

███████████████████████; Sheehan Dep. at 9:10 – 11:15 ███████████

████████████████████████████████████████████████████████████

██████████; Bergin Dep. at 12:4 – 14:9 ██████████████████████

████████████████████████

Tellingly, Boeing fails to specifically explain which part of these witnesses' testimony violates these well-settled principles, and why. Instead, Boeing vaguely alleges that some testimony is problematic because it was based in part on the witnesses' specialized knowledge and training. *See* ECF No. 2663 at 10–11. But these vague statements alone are not a basis to exclude the testimony. In fact, the law compels the opposite conclusion. "A physician who testifies about his observation, diagnosis and treatment of a patient is testifying about what he saw and why he did it, **even though the physician's treatment and his testimony about the treatment are based on his specialized knowledge and training**." *Krischel v. Hennessy*, 533 F. Supp. 2d 790, 795 (N.D. Ill. 2008) (emphasis added). *Accord, e.g., Deeds v. Whirlpool Corp.*, 2016 WL 6070552, at *7 (S.D. Tex. Oct. 17, 2016); *Scott v. United States*, 2007 WL 9723909, at *1 (W.D. Ark. Nov. 1, 2007).

In sum, all of these witnesses' testimony—*including* testimony based in part on specialized knowledge and training—was within the bounds of admissible testimony by treating physicians. Boeing's characterizations to the contrary are unavailing.[2] And for this reason alone, Boeing's Motion must be denied.

---

[2] Unable to identify any problematic "expert" opinions by these witnesses, Boeing cites to Plaintiff's amended Rule 26 disclosures, ostensibly as a tacit admission that the witnesses offered "expert" testimony. Boeing's reliance on Plaintiffs' disclosures is misplaced. Although Plaintiff listed these witnesses as potential experts in an abundance of thoroughness, that alone does not mean that—in actual fact—the witnesses offered "expert" opinions at deposition. It was incumbent upon Boeing to identify such opinions, and its Motion fails to do that.

**II.  Even if Boeing were correct that the witnesses offered "expert" testimony, it is not entitled to Rule 37 evidentiary relief.**

To prevail on its Motion, Boeing must do more than merely identify any purported "expert" opinions by these witnesses (which its Motion fails to do). For Boeing to obtain evidentiary relief, the alleged tardy disclosure of expert opinions must *in fact* have been prejudicial, and not "harmless."

Rule 37(c)(1) provides that when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion at a hearing, or at a trial, *unless the failure was substantially justified or harmless*." (emphasis added). To determine whether a Rule 26 violation is justified or harmless, courts consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, although Plaintiff added the treating physicians to her Rule 26 disclosure in an abundance of thoroughness, Boeing suffered no prejudice or surprise from that disclosure. Far from seeking to blindside Boeing, Plaintiff made these witnesses known and available to Boeing many months ago, and coordinated their depositions. Moreover, those depositions constitute the *entirety* of the testimony that these witnesses may give at trial. Accordingly, Boeing now has in its possession *every* relevant record for these witnesses, as well as all of their potential trial testimony. There is no surprise, and certainly no bad faith or willfulness on Plaintiff's behalf.

In similar circumstances, courts in the Seventh Circuit routinely find harmlessness, and deny Rule 37 relief. For example, a plaintiff's belated Rule 26 expert disclosure is "harmless" where the defendant had received all relevant records, deposed the witness, and was on notice of the scope of

the witness's trial testimony. *Gecker v. Menard, Inc.*, 2019 WL 4166859, at *2 (N.D. Ill. Sep. 3, 2019). *See also Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 859–60 (N.D. Ill. 2001) (explaining that "failure to file a formal [expert] disclosure" for a treating physician "would be harmless" where the defendant had deposed the witness and knew the substance of his opinions).

More broadly, "courts agree that untimely Rule 26 disclosures may be harmless where the opposing party had an opportunity to depose the expert or was otherwise aware of the substance of the expert's opinion." *Gecker*, 2019 WL 4166859, at *2 (citing cases). In *Banister v. Burton*, the Seventh Circuit concluded that "the failure to file" an expert report "was clearly harmless" where the adverse party "wasn't surprised by the doctor's testimony" and "provides no evidence that the failure to file the report was in bad faith." 636 F.3d 828, 833–34 (7th Cir. 2011).

In this regard, the law in this Circuit is consistent with the law across the federal courts. *See, e.g.*, *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003) (finding late disclosure harmless where opposing counsel was already aware of the substance of the expert's testimony); *Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011) ("A party is not harmed where, even though an expert disclosure fails to satisfy [Rule 26], the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert."); *Est. of Hammers v. Douglas Cnty., Kansas Bd. of Commissioners*, 2018 WL 1366265, at *3 (D. Kan. Mar. 16, 2018) ("The tardy disclosure of these witnesses, however, may be harmless 'if the other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge well before trial.'" (citation omitted)).

This is because the purpose of the Rule 26 expert disclosure requirements is to prevent surprise or prejudice to the opposing party. *See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (explaining that Rule 26's "expert witness discovery rules are designed to aid the court in

its fact-finding mission [. . .] and to prevent the tactic of *surprise* from affecting the outcome of the case") (emphasis added). And that purpose is met in situations where—like here—there is nothing in a Rule 26 disclosure that is capable of surprising the opposing party. *See Gecker*, 2019 WL 4166859, at *2 (explaining that the "supposed surprise [defendant suggested it suffered because of a delayed Rule 26(a)(2)(C) disclosure] was harmless . . . especially in terms of Defendant's ability to prepare for trial"). C*f. Musser v. Gentiva Health Services*, 356 F.3d 751, 758–59 (7th Cir. 2004) (defendants were surprised by plaintiff's belated attempt to use treating physician's testimony to prove an element of liability).

Boeing complains of a purported inability to seek to exclude the treaters' testimony on *Daubert* grounds, but it points to no testimony that even *would be* excludable on that basis. There can be no prejudice from a purported impediment to filing a hypothetical—and meritless—motion. In other cases involving belated Rule 26 disclosures, litigants seeking to exclude certain "expert" testimony move for relief both under Rule 37 and under *Daubert*. *See Gecker*, 2019 WL 4166859, at *6 (granting in part, and denying in part, a defendant's *Daubert* challenge). The fact that Boeing did not seek *Daubert* relief here—and does not even identify which testimony could be problematic under *Daubert*—is an additional reason it is not entitled to Rule 37 relief.

## CONCLUSION

For Boeing to prevail, it must show (1) that the challenged witnesses offered "expert" testimony, and (2) that it suffered prejudice as a result of Plaintiff's expert disclosure. Because Boeing can do neither, the Motion should be denied.

11

12

|  |  |
|---|---|
| Dated: September 26, 2025. | Respectfully submitted,<br><br>/s/ Steven C. Marks<br>Steven C. Marks<br>FL Bar No.: 516414<br>smarks@podhurst.com<br>Pablo Rojas<br>projas@podhurst.com<br>FL Bar No.: 1022427<br>**PODHURST ORSECK, PA**<br>2525 Ponce de Leon, Suite 500<br>Coral Gables, FL 33134<br>(305) 358-2800/Fax (305) 358-2381<br><br>ATTORNEYS FOR THE PLAINTIFF<br>ADMITTED PRO HAC VICE<br><br>-and-<br><br>Andrew T. Hays<br>Atty. #46467<br>ahays@haysfirm.com<br>HAYS FIRM, LLC<br>2020 N. LaSalle Street, Suite 2150<br>Chicago, IL 60601<br>(312) 626-2537 |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Steven C. Marks
Steven C. Marks, Esq.
Attorneys for Plaintiffs