**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ETHIOPIAN AIRLINES FLIGHT ET 302 CRASH** | **Case No. 19 C 2170 (Consolidated)** <br><br> **Hon. Jorge L. Alonso** |

| | | |
|---|---|---|
| EMILY and JOSHUA BABU, as personal representatives of the ESTATE OF JARED BABU MWAZO, | ) ) ) ) | |
| Plaintiffs, | ) ) | This Order Relates to: Case No. 19 C 5562 |
| v. | ) ) | Hon. Jorge L. Alonso |
| THE BOEING COMPANY, ROSEMOUNT AEROSPACE, and ROCKWELL COLLINS, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This suit, *Babu ex rel. Estate of Babu v. Boeing Co.*, Case No. 19 C 5562, is one of the many consolidated cases filed against the Boeing Co. ("Boeing") following the crash of Ethiopian Airlines flight ET 302 on March 10, 2019. Plaintiffs have filed various motions related to the Court's appointment of a guardian ad litem to represent a minor beneficiary of this suit, which Plaintiffs have opposed. For the following reasons, the Court denies the motions in large part. The parties shall confer and cooperate to proceed toward discovery and/or mediation, as further explained herein.

**I.    Background**

Plaintiffs are Emily and Joshua Babu, the parents of Jared Babu Mwazo, one of the ET 302 passengers. Plaintiffs are proceeding "as Co-Personal Representatives of the Estate of Jared

Babu Mwazo, . . . on behalf of [1] Jared Babu Mwazo, Deceased, [2] themselves, [and] [3] his child." (Compl. ¶ 9, ECF No. 1, Case No. 19 C 5562.) The parties have referred to the child, a minor, as "E.C.B." Plaintiff's previous counsel, Clifford Law Offices and Cotchett, Pitre & McCarthy, LLP (collectively, "CLO"), notified the Court in December 2023 that differences had arisen between Plaintiffs and their counsel over litigation strategy, and the Babus sought new representation. (Mot. to Apprise Court, Dkt. No. 1949.) CLO subsequently withdrew from the representation due to these differences, which largely concerned whether to accept Boeing's offer to stipulate to the application of Illinois law as to the issue of compensatory damages, among other issues, including Boeing's liability for compensatory damages. Nearly all other ET 302 plaintiffs had entered into such a stipulation in November 2021, but the Babus had abstained (Agr. Stipulation of the Parties at 6 n. 4, Dkt. No. 1217-1), although they had negotiated a tolling agreement, under which Boeing would afford them the opportunity to enter into the same stipulation at a later date. The reason for their abstention, as was later revealed, was that the Babus feared that Illinois law might be less generous than the law of Kenya, where they reside. (*See* Apr. 23, 2024 Order, ECF No. 2051.)

In July 2024, before leave to withdraw was granted, CLO asked the Court to appoint a guardian ad litem ("GAL") to represent E.C.B. In a brief filed under seal to protect confidential information concerning "litigation strategy and attorney-client communications" (*see* Mot. to Seal ¶ 2, Dkt. No. 2173), they explained that they believed that they had an ethical duty to request a GAL because, in their professional opinion, Plaintiffs' preferred litigation strategy to seek damages under Kenyan rather than Illinois law was likely to cause prejudice to E.C.B.'s interests as a beneficiary of her father's estate. Specifically, CLO asked for appointment of a GAL who would have "authority to accept the [November 2021] Stipulation on behalf of the minor and obtain

2

counsel to negotiate settlement or otherwise prepare for trial." (Sealed Mot. to Appoint at 11, Dkt. No. 2174.)[1]

Although CLO's motion to withdraw was still pending, Plaintiffs hired new counsel, Eric Onyango, who sought leave to file an appearance (Dkt. No. 2180) and began to file documents on their behalf. Plaintiffs are now also represented by Bruce Fein, in addition to Mr. Onyango. (Dkt. Nos. 2643, 2725.) Through their new counsel, Plaintiffs filed a response (Dkt. No. 2233) to the motion to appoint a GAL, in which they vociferously opposed it. They argued, among other things, that the Court lacks authority to appoint a GAL with any power to direct this litigation because Plaintiffs are the duly appointed administrators of Jared's estate, and the only claims in this case are being raised by and through the estate. They simultaneously filed a motion "for a choice-of-law ruling applying Kenyan law to the issue of compensatory damages." (Dkt. No. 2232.)

In an unsealed reply, CLO explained that the "appointment of a [GAL] does not require the termination of other guardianships." (CLO Reply Br. ¶ 15 (citing *In re Mark W.*, 888 N.E.2d 15, 22 (Ill. 2008)), Dkt. No. 2246.) "The only question," CLO argued, was "whether a GAL should be appointed to make decisions for E.C.B. related to the instant litigation." (*Id.*) Appointing a GAL would simply "afford the Court the opportunity to have independent, non-adversarial input to make a fair and proper decision that serves the best interests of E.C.B." (*Id.* ¶ 20.) CLO pointed out that

---

[1] The Court and most of the lawyers have been careful to make and maintain filings under seal if they concern confidential information, but Plaintiffs and their present counsel seem to have a different view of what information is sensitive, and much information that was initially submitted under seal seems to have been revealed. (*See* GAL Resp. in Opp'n to Mot. to Disqualify at 6, Dkt. No. 2864 ("The record in this matter, due to the Babus' own filings, makes the Babus' settlement views, opposition to the appointment of the GAL, the Stipulation offered by Boeing, and thoughts about the applicability of Kenyan law abundantly clear.") (emphasis removed).) To the extent this Memorandum Opinion and Order refers to information first submitted in sealed materials, it is because the information has become public knowledge since the materials were filed and/or because it is necessary to resolve the present dispute. The Court will not yet unseal the documents, as they contain much information that remains privileged and has not been disclosed.

Plaintiffs had hired counsel who has "prematurely advanced choice of law positions that no other attorney has sought to advance in the entirety of the litigation of the ET 302 disaster after no other attorney was willing to take their case and advance those positions." (*Id.* ¶ 26.) Given these circumstances, CLO argued, "it would be most beneficial to E.C.B. to be protected by a GAL who is also a lawyer and has the capacity to, at a minimum, appropriately compare state, federal, and foreign law on issues of damages to make sound decisions that serve E.C.B.'s best interests." (*Id.*)

While the motion to appoint a GAL remained pending, CLO and Boeing jointly asked the Court not to decide the choice-of-law issue, writing that "any briefing and decision on choice of law is unnecessary to resolve the guardian ad litem issue and, worse, may harm the interests of the minor child." (Aug. 29, 2024 Status Report at 1-2, Dkt. No. 2261.) On the substance of the issue, CLO was circumspect about precisely what their advice had been to Plaintiffs and how it pointed away from the positions Plaintiffs wanted to take, explaining that they did not want to reveal privileged communications or work-product evidencing litigation strategy, but they offered to provide more information about the matter under seal if the Court desired. (CLO Reply ¶ 21 n. 7, Dkt. No. 2246.)

The Court was reluctant to appoint a GAL without more information, as courts should not lightly interfere with representation of a minor by her family members. *See T.W. v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997). Therefore, the Court ordered the parties to explain their positions under seal, so that the Court could better understand the dispute. (*See* Dkt. Nos. 2266, 2338.) In its ensuing brief, CLO suggested, among other things, that if Plaintiffs insisted on advocating for the application of Kenyan law, the Court could apply Kenyan law to Plaintiffs' claims, while appointing a GAL who would remain free to seek the application of Illinois law to any claims

benefiting E.C.B., either by agreeing to accept Boeing's stipulation or advocating for an appropriate choice of law decision from the Court. (CLO Sealed Br. ¶ 5 n. 2, Dkt. No. 2266.)

The Court reviewed the parties' submissions and granted the motion to appoint a GAL, agreeing with CLO that Plaintiffs' actions did not "reflect appropriate consideration of sound professional advice in the interest of all interested parties, including E.C.B." Therefore, the Court "reluctantly" ruled that there was "a potential conflict of interest that require[d] the appointment of a guardian ad litem to protect E.C.B." (Mar. 10, 2025 Order at 2, Dkt. No. 2437.) The Court directed CLO to contact certain candidates suggested by Judge O'Connell, who has served as a mediator in many of these consolidated cases, to assess their availability and willingness to serve. In a subsequent order, on April 5, 2025, the Court appointed Elizabeth Budzinski as guardian ad litem. (Dkt. No. 2543.) Plaintiffs attempted to appeal these orders, but the Seventh Circuit dismissed both appeals for lack of jurisdiction, deeming them premature. *See In re Ethiopian Airlines Flight ET 302 Crash*, No. 25-1418, 2025 WL 1178572, at *2 (7th Cir. Apr. 23, 2025); *In re Ethiopian Airlines Flight ET 302 Crash*, No. 25-1733, 2025 WL 1379413, at *1 (7th Cir. May 13, 2025), *reh'g denied,* No. 25-1733, 2025 WL 1655301 (7th Cir. June 11, 2025).

On October 22, 2025, the GAL submitted a status report—under seal, to protect confidential information about litigation strategy, settlement, and the representation of E.C.B.—in which she sought "leave to execute the liability stipulation and retain counsel on behalf of the minor beneficiary E.C.B." (*See* Oct. 28, 2025 Minute Entry, Dkt. No. 2709 (describing status report and explaining that it was properly filed under seal); *see also* Nov. 18, 2024 Minute Entry (explaining why matters concerning the appointment of a GAL, including Plaintiffs' brief (Dkt. No. 2338), should remain under seal).) The Court "granted" her "requests." (*Id.*)

5

Plaintiffs challenged the Court's order by filing a petition for writ of mandamus with the Seventh Circuit, but the Seventh Circuit dismissed the appeal, warning Plaintiffs that "any further petitions for mandamus, or notices of appeal in advance of the district court's final decision, will be filed without judicial action." *Babu v. Boeing Co.*, No. 25-3100 (7th Cir. Nov. 25, 2025), Dkt. No. 4. The Seventh Circuit explained that, as it had "twice before stated in this litigation—in *Babu v. Boeing Co.*, No. 25-1418 (7th Cir. Apr. 23, 2025), and *Babu v. Boeing Co.*, No. 25-1733 (7th Cir. May 13, 2025)—the proper avenue to seek any remedy for these issues is by appeal from the district court's final decision." *Id.*

Three attorneys from Power Rogers, LLP ("Power Rogers") filed appearances for the GAL in December 2025. (Dkt. Nos. 2755, 2756, 2757.) Plaintiffs filed a motion to strike these attorneys' appearances, arguing that the GAL is not a party and only Plaintiffs have any legal right to litigate this case, as they are the only duly appointed administrators of their son's estate. (Dkt. No. 2791.) They also filed a motion to reconsider the Court's orders appointing the GAL, in which they asserted another iteration of the same argument. (Dkt. No. 2790.)

In a response brief, the GAL argued that the motions were meritless, the Court's decisions were correct, and Plaintiffs were only rehashing issues the Court had already decided. (Dkt. No. 2812.) The Court agreed and denied the motions for merely "rehash[ing] issues and retrac[ing] ground the Court has already covered in other rulings on other motions," as the GAL had explained. (Jan. 23, 2026 Minute Entry, Dkt. No. 2838.)

The GAL has since reported that, through counsel, she "accepted the stipulation" on Illinois law as to compensatory damages, and she is prepared to move forward with discovery. (Feb. 6, 2026 Joint Status Report at 1, Dkt. No. 2847.) In the same status report, however, Boeing stated that, while it had stipulated to Illinois law with most of the other ET 302 plaintiffs, its position was

that the November 2021 stipulation is "no longer available to any party to sign." (*Id.* at 5.) However, Boeing acknowledged that it had previously expressed a willingness to "negotiate with new counsel for [E.C.B.] . . . to see if the parties can come to a new agreement that satisfies both sides" as to choice of law and other issues addressed in the November 2021 stipulation. (*Id.*)

Two weeks later, the parties filed another joint status report, which showed that little had changed, and Plaintiffs simultaneously filed the present motions. These include a motion to disqualify Power Rogers from representing the GAL, due to the firm's prior consultation with the Babus; a motion to discharge the GAL; a motion for relief from paragraph 7 of the Plaintiffs' Executive Committee ("PEC") Leadership Order (Dkt. No. 426), which gives the PEC certain limited authority to act for all plaintiffs in the consolidated ET 302 litigation; and a motion to amend Plaintiffs' notice of adoption of master complaint to withdraw any individual claims.[2]

## II.  Discussion

The Court set a briefing schedule on the motion to disqualify, deeming that motion the most urgent, and it is now fully briefed and ripe for decision. Having reviewed all four pending motions, which are interrelated, the Court judges that briefing on the remaining motions would not be helpful, so it disposes of all four motions in this ruling, for the following reasons. It will also provide some clarification of how it conceives of the GAL's role at this point.

### A.  Motion to Disqualify Power Rogers

The GAL will need qualified counsel to perform the work that the Court appointed her to do, so the Court begins with the motion to disqualify Power Rogers.

---

[2] During the preparation of this Memorandum Opinion and Order, Plaintiffs filed a motion for recusal. (Dkt. No. 2966.) The Court has reviewed that motion and finds no basis in it for delaying the present decision, for reasons it will explain more fully in a forthcoming order.

The basis for this motion is Power Rogers's consultation with Plaintiffs in 2024, after their relationship with CLO had soured, when Plaintiffs were seeking other counsel. Plaintiffs argue that Power Rogers cannot now represent the GAL because her interests are materially adverse to theirs. They rely on Model Rule of Professional Conduct 1.18, which Illinois has adopted. The rule provides, in pertinent part, that a lawyer "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Ill. S. Ct. R. Prof'l Conduct 1.18(c).

Power Rogers responds that this rule does not apply because the GAL and the Babus do not have materially adverse interests and, even if they did, the Babus have not identified any confidential information the Babus shared with Power Rogers that could be significantly harmful to them now. The Court agrees. The GAL is not seeking relief from Plaintiffs or vice versa. True, Plaintiffs have filed a declaratory action naming the GAL as the defendant, but that suit is a procedural irregularity, the substance of which will be resolved by the present Memorandum Opinion and Order. Power Rogers will not have to attack any prior work performed for the Babus—which was negligible, if any—to represent the GAL. *See* Conflicts Involving Materially Adverse Interests, ABA Formal Op. 21-497, notes 13-28 and accompanying text. Power Rogers will not likely have to cross-examine Plaintiffs, and even if it does, it will not have to use any confidential information to do so—indeed, it does not appear that Power Rogers received any confidential information that has not since been disclosed by the Babus or otherwise. *See id.* at notes 30-32 and accompanying text. No benefit Power Rogers might obtain for the GAL and E.C.B. by way of its participation in this case would entail any appreciable risk of causing a "legal, financial, or other identifiable detriment" to Plaintiffs. *Cf. id.* at n. 12 (citing *Zerger & Mauer LLP*

*v. City of Greenwood*, 751 F.3d 928, 933 (8th Cir. 2014)) & n. 26 (citing Ill. State Bar Ass'n Comm. On Prof'l Conduct Advisory Op. 16-03 (2016)[3]), and accompanying text. Therefore, the Illinois Rules of Professional Conduct do not bar Power Rogers from representing the GAL in this case.

### B. Motion to Discharge the GAL

In its brief, Power Rogers observes that the Babus' central argument in support of their motion to disqualify—that there is a conflict between Plaintiffs and the GAL—seems to be at odds with the position they have taken in their pending motion to discharge the GAL, and their contemporaneous status report (Dkt. No. 2857), as well as in other documents they have filed, such as the December 30, 2025 motion to reconsider (Dkt. No. 2790), which is that there is *no* conflict between Plaintiffs and E.C.B., and therefore no need for a GAL to protect her interests. Because the Court stated, in appointing the GAL, that there is a "potential conflict of interest," some further explanation is necessary.

When the Court appointed the GAL, it was concerned that Plaintiffs' preferred strategy, particularly as it related to the choice of law issue, might not serve E.C.B.'s interests because it might dramatically reduce the damages available, leaving E.C.B. with a fraction of what she would otherwise recover. Regardless of the merits of the choice-of-law positions the Babus have taken, it is beyond dispute that the theory that caused the division between Plaintiffs and CLO—namely, that Kenyan law will lead to a higher verdict or settlement than Plaintiffs would otherwise obtain— is untested and, essentially, speculative. After reviewing CLO and Plaintiffs' respective submissions on the issue, the Court feared that the risk inherent in attempting to proceed under Kenyan law, when so many plaintiffs were obtaining results that were satisfactory to them under

---

[3] https://www.isba.org/ethics/opinions/1603.

Illinois law, was unjustifiable. The Court concluded that Plaintiffs are intent on pursuing a litigation strategy that is, if not frivolous, at least reckless. An estate administrator's fiduciary responsibilities—which she discharges subject to the Court's supervision—require her to "exercis[e] at the very least that degree of skill and diligence any reasonably prudent person would devote to her own personal affairs." *Will v. Nw. Univ.*, 881 N.E.2d 481, 494 (Ill. App. Ct. 2007). Of course, as the trial court recognized in *Will*, recklessness falls short of that standard. *See id.* at 489.

The alarm having been raised and Plaintiffs having failed to assuage the Court's concerns, "it was incumbent upon the [Court] to determine whether [E.C.B.'s] interests were adequately protected by [Plaintiffs'] representation." *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 988 (5th Cir. 1984) (citing, *inter alia*, *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161, 164 (5th Cir. 1981)); *see M. S. v. Wermers*, 557 F.2d 170, 175–76 (8th Cir. 1977). The Babus spill much ink arguing over the Court's power, or lack thereof, to appoint a representative with any control over this action under the law of either Kenya or Illinois, but this is largely beside the point, as a federal district court has its own power to protect the interest of a minor in litigation before it. Federal Rule of Civil Procedure 17(c)(2) empowers—and, indeed, obligates—the Court to appoint a GAL or other representative for an infant whose interest is "not adequately represented." *Guardian Life Ins. Co. v. Weil*, No. 10 C 50048, 2010 WL 4093941, at *2 (N.D. Ill. Oct. 12, 2010) (citing *Matter of Chicago, Rock Island & Pac. R. Co.*, 788 F.2d 1280, 1282 (7th Cir. 1986) ("If there were some reason to think that [a child-plaintiff's] mother would not represent his interests adequately, the district court would, we may assume, be required (and certainly would be empowered) to appoint a guardian *ad litem* to represent him.")). After reviewing CLO's motion and the associated briefing, the Court "c[ouldn]'t know [whether] Plaintiff[s] adequately protected the interests" of

10

E.C.B., which suggested that there was some "potential for conflict of interest" requiring the appointment of a guardian ad litem under Federal Rule of Civil Procedure 17. *Williams v. City of Flint*, No. 06-10427, 2008 WL 220626, at *1 (E.D. Mich. Jan. 25, 2008); *Rubin v. Smith*, 882 F. Supp. 212, 216 (D.N.H. 1995) ("[T]he courts possess an 'inherent power to appoint a guardian ad litem when it appears that the minor's general representative has interests which *may* conflict with those of the person [she] is supposed to represent.'" (quoting *Hoffert*, 656 F.2d at 164) (emphasis added in *Rubin*)); *see also Will*, 881 N.E.2d at 495 (explaining that trial court properly assumed the responsibilities of a co-administrator who "continu[ed] to insist" on seeking relief that was "unobtainable via any court proceeding" in accord with her "personal interests," although it "prevent[ed her decedent's] beneficiaries from expeditiously receiving their entitled benefits"). The Court's concern was that an "appropriate order" was necessary "to protect a minor" whose interests were not being adequately represented, *see* Fed. R. Civ. P. 17(c)(2), because—to put it bluntly—Plaintiffs appeared to be behaving "irrational[ly] regarding this case." *Sturdza v. United Arab Emirates*, 644 F. Supp. 2d 50, 75 (D.D.C. 2009); *see Will*, 881 N.E.2d at 495.

More recent events have only strengthened the Court's conviction that E.C.B. needs an independent guardian to watch out for her interests. Since CLO moved to withdraw and the Babus started down the path that resulted in the appointment of the GAL, the Court has heard two trials in these consolidated cases, both of which were governed by Illinois law, and they resulted in verdicts of $28.45 million and $49.5 million. Boeing has settled almost all of the other ET 302 cases, operating under the stipulation that Illinois law applies to the issue of compensatory damages. The terms of those settlements are confidential, but the Court is aware of the figures, having been asked to approve the settlements prior to dismissal of those cases. Without getting into specifics, those settlements have provided victims' families with substantial relief. Indeed,

one of E.C.B.'s own relatives, the father of Jared's wife, Mercy, stood in open court and profusely thanked this Court and the American legal system for "upholding rights and justice," after he stipulated to Illinois law and reached an "amicable settlement" of his own case against Boeing. (Nov. 5, 2025 Tr. at 363:1, 20-21 Dkt. No. 2747.) It has been argued to this Court that it is only Plaintiffs' idiosyncratic views on the November 2021 stipulation and choice-of-law that are preventing them from reaching a similarly substantial settlement, and Plaintiffs have done nothing to dispel the Court's suspicion.

Indeed, the Court's suspicion only grows based on Plaintiffs' litigation tactics, which seem to run counter to Plaintiffs' own interests in bringing this litigation to a speedy conclusion, not to mention Plaintiffs' fiduciary responsibility to ensure that Jared's estate's beneficiaries are "expeditiously receiving their entitled benefits." *Will*, 881 N.E.2d at 495. As the GAL put it in the February 20, 2026 Joint Status Report, Plaintiffs' "continued motions, attempted appeals, and the briefing and re-hashing of issues previously decided by the Court . . . are further evidence to support the Court's prior appointment" of the GAL. (Dkt. No. 2857 at 8, ¶ 9.) Particularly since Mr. Onyango began to represent Plaintiffs, Plaintiffs have filed stacks of paper, frequently re-raising issues that the Court has already resolved, which only delays the resolution of this case. Every other ET 302 case—of which there were more than 150—has either been resolved or is set for trial this year except for the Abdalla cases (Case Nos. 19 C 3677 and 19 C 2348), in which the parties are awaiting a decision on marital status by a slow-moving Moroccan court. There is no such roadblock in this case, and yet Plaintiffs take every opportunity to dig their heels in, rather than to push this case to a conclusion. *See Will*, 881 N.E.2d at 495. This case contrasts starkly with *Stumo ex. rel. Estate of Stumo v. Boeing Co.*, Case No. 19 C 2281, the only other ET 302 case in which the plaintiffs did not accept the November 2021 stipulation. Although the plaintiffs in *Stumo*

12

likewise raised unique issues that other plaintiffs did not raise, and the Court ruled against them, they accepted the Court's rulings and moved forward with their case, which has been tried to verdict—whereas this case languishes, with no end in sight, due to Plaintiffs' inability to move on from adverse rulings.

Plaintiffs' alarming recklessness has persisted right up to the filing of the present motions. In the February 20, 2026 Joint Status Report, Plaintiffs wrote that they "remain dumbfounded and exasperated that this Court has evaded their motion for a Rule 44.1 motion to determine Kenyan law." (Feb. 20, 2025 Jt. Status Report at 4, Dkt. No. 2857.) This statement provides more cause for the Court's concern about how Plaintiffs are litigating this case. The Court had thought it obvious why it had put off a ruling on the choice-of-law issue, as CLO and Boeing long ago advised: a choice-of-law ruling could destabilize settlement negotiations by altering the parties' respective balance of bargaining positions, and it could, potentially, damage Plaintiffs' prospects of obtaining a recovery commensurate with what similarly situated plaintiffs have obtained in other ET 302 cases. Besides, the Court failed to see—and still fails to see—why such a ruling is necessary now, prior to discovery. Notably, in the *Stumo* case, the Court addressed choice of law for compensatory damages only after discovery and just prior to the deadlines for filing motions in limine, in preparation for the final pretrial conference.

For all these reasons, the Court continues to be concerned that Plaintiffs may not be "capable of making responsible decisions concerning this pending litigation." *Sturdza*, 644 F. Supp. 2d at 70; *see id.* at 74-77; *see also Will*, 881 N.E.2d at 497-98 (affirming decision reasoning that co-administrator's preferred course of action was not in the "best interest of the minor" beneficiary due to the "risks of trial and the gamble they presented," which "amounted to waste and mismanagement of [the] estate"). Given Plaintiffs' failure to appreciate the risk inherent in

their preferred approach, the Court can hardly proceed without ensuring that a GAL at least takes an independent look at these issues to make sure that E.C.B.'s interest is protected. For these reasons, the motion to discharge the GAL is denied.

### C. Clarification of GAL's Role and Other Issues

Based on the parties' recent status reports, all parties appear to agree that clarification of the GAL's role would be helpful. The Court will endeavor to clarify, although much may yet change, depending on whether all parties are able to make reasonable and good-faith efforts to push this case toward a resolution.

The Babus seem to fear that the Court's order appointing a GAL means that their role as the administrators of their son's estate and the plaintiffs in this action has been taken away from them. That is not yet the case, and the Court is at a loss as to how or why they leapt to this conclusion. Common sense dictates that "[t]he starting point for understanding the order is the motion it was addressing." *see Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2022 WL 22412618, at *1 (N.D. Ill. Sept. 13, 2022); *see Williams v. Colvin*, No. 12 C 7852, 2014 WL 1340233, at *10 (N.D. Ill. Mar. 31, 2014) (explaining that a court's order "must be interpreted in its entirety, having reference to other parts of the record, including the pleadings, the motions before the court and the issues to be decided") (internal quotation marks omitted). CLO did not ask for the replacement of the Babus as administrators of Jared's estate, and that is not the order the Court issued, nor was that relief inherent in that order. The appointment of a GAL to protect a minor's interests for purposes of a particular case need not "displace" the minor's general guardian or another representative. *See Faison v. Sex Crimes Unit of Philadelphia*, 845 F. Supp. 1079, 1083 (E.D. Pa. 1994) (citing *Horacek v. Exon*, 357 F. Supp. 71, 74 (D. Neb. 1973)). CLO asked for appointment of a GAL to evaluate whether it would be possible and/or desirable to work

14

out a separate settlement between E.C.B. and Boeing. At the time of appointment, this was the Court's understanding of what the GAL was to do in this case. As the Court intimated at the February 10, 2026 status hearing, it has envisioned the GAL operating as a kind of co-party with Plaintiffs who will be apprised of discovery and attend proceedings, in a manner somewhat similar to that described in *Szymakowski v. Szymakowski*, 542 N.E.2d 372, 373 (Ill. App. Ct. 1989), although the Court mentioned that case only by way of one concise example, not a strict model. The Court's hope was that the GAL could negotiate a settlement with Boeing on E.C.B.'s behalf, which the Court (rightly or wrongly) understood Boeing to be amenable to doing, or, if no settlement was possible, report to the Court and recommend any further action necessary to protect E.C.B.'s interests.

More than a year later, it is unclear how realistic the prospect of any such settlement might be. Relatedly, there remains much confusion over the status of the stipulation. Much of the initial briefing and motion practice concerning the appointment of the GAL assumed that the November 2021 stipulation or something similar to it would be available to her if she determined it was in E.C.B.'s interests to accept it. Of course, it takes two parties to stipulate to anything, and Boeing's recent statements, especially in the February 6, 2026 Joint Status Report, seem to suggest that it is no longer holding open any offer to accept the old stipulation, although it might be willing to negotiate a new one. Mr. Clifford reiterated at a recent status hearing (Tr. of Feb. 10, 2026 Hr'g at 6:8-19, Dkt. No. 2852) that he still understands a longstanding tolling agreement to allow the Babus, at least, to accept the stipulation, if they decide to do so. Boeing seems to have indicated that it does not agree. Regardless, the Court is unaware of any basis for forcing Boeing to accede to the GAL's purported adoption of the stipulation. If the parties have a different understanding, they should briefly state their positions in the next joint status report.

In the February 20, 2026 Joint Status Report, Boeing asked the Court to "order mediation before Judge O'Connell with the participation of all parties, including the GAL and her counsel." (Dkt. No. 2857, at 10.) Mediation strikes the Court as a good idea; the parties need to be able to have frank and fulsome discussions with a neutral mediator who can help them test the strength of their relative positions without giving away settlement leverage, which cannot be effectively done in public court proceedings or on a court's docket. Additionally, as the Court has explained, much has changed since this dispute first arose, and the parties should have the opportunity to discuss and reconsider their positions. Plaintiffs object to the participation of Judge O'Connell as mediator because they believe he is biased against them. (*Id.* at 6.) But Plaintiffs do not provide any support for the allegation of bias, apart from stating that they believe Judge O'Connell did not agree with all of their positions in prior proceedings. If this were enough to demonstrate bias, litigation would be practically impossible. *See Kline v. United Airlines, Inc.*, No. 19 C 5291, 2019 WL 13071986, at *1 (N.D. Ill. Dec. 3, 2019); *see also Firchau, Tr. of Craig Heath Revocable Tr. Dated Oct. 4, 2019 v. Quick*, No. 25 CV 333, 2025 WL 3063710, at *5 (N.D. Ill. Nov. 3, 2025); *Hayne, Miller & Farni, Inc. v. Flume*, 888 F. Supp. 949, 954 (E.D. Wis. 1995) (citing *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992)). Judge O'Connell is an experienced mediator with an outstanding reputation whose assistance has been invaluable in resolving many of the ET 302 cases. The parties are directed to confer as to whether they can agree on a mediator and when mediation should take place. After conferring, they shall submit a joint status report—which shall be no more than two pages in length—by July 20, 2026. A telephonic status hearing is set for July 23, 2026 at 9:30 a.m..

As mentioned above, Plaintiffs have filed a separate declaratory action arising out of these issues, seeking the following relief:

16

Plaintiffs respectfully request this Court to enter a final judgment declaring that:

A. Plaintiffs are the sole and exclusive Co-Personal Representatives of the Estate;

B. Defendant's signing the Stipulation on behalf of E.C.B. did not disturb Plaintiff's exclusive representation of the Estate and does not bind the Estate or its beneficiaries in any respect;

C. E.C.B. as an Estate beneficiary is without authority to litigate or speak on behalf of the Estate; AND

D. Plaintiffs be granted such further relief as this Court deems just and proper.

(Compl. at 4, *Babu v. Budzinski*, Case No. 26 C 1325, Dkt. No. 1.) The case was initially assigned to Judge Chang, then transferred to this Court by agreement under Internal Operating Procedure 13(d), for reasons of judicial economy and the efficient administration of justice. The declaratory suit appears to be, essentially, a request for clarification of the Court's orders appointing the GAL.[4] If any more clarification is needed, the Court now clarifies that it has not displaced Plaintiffs as the representatives of their son's estate; it has appointed a GAL to watch out for E.C.B.'s independent interests in this litigation and undertake on E.C.B.'s behalf whatever action a reasonably prudent adult in her position would take. The GAL shall have the right to file documents with the Court and participate in discovery, court hearings, mediations, and any other proceedings related to this case. The Court expects Plaintiffs to treat the GAL not as an adversary but as a source of support to them in the discharge of their duties as administrators of their son's estate. The Court assumes that Plaintiffs are sincere when they claim that their interests are aligned with those of E.C.B. because it is in all parties' interest to obtain the full extent of their fair and reasonable damages; if so, then Plaintiffs have nothing to fear from the GAL's participation in this case and no reason not to cooperate fully with the GAL.

---

[4] The procedural impropriety of Plaintiffs' separate suit, which needlessly multiplies proceedings, only reinforces the Court's view that the appointment of a GAL is necessary to provide an independent perspective.

17

For the foregoing reasons, Plaintiffs' motions to disqualify counsel for the GAL and to discharge the guardian ad litem are denied. Plaintiffs' motion for relief from paragraph 7 of the PEC Leadership Order (Dkt. No. 426) is denied as moot because that paragraph pertains only to "liability discovery," which Boeing's concession of liability has made unnecessary. Plaintiffs' motion to amend notice of adoption of master complaint to withdraw any individual claims is granted, although the Court notes that the motion seems to have been premised on the false notion that the Court appointed a GAL because it believed that there was a conflict of interest between Plaintiffs and E.C.B. based on the existence of Plaintiffs' individual claims. As the Court has explained above, this was never the basis for the appointment of a GAL. Nevertheless, any clarification or narrowing of the issues in dispute in this case is welcome, so the motion is granted. Based on the foregoing, the declaratory action appears to be moot, and in any case, it is duplicative of the present action. The Court will, therefore, dismiss the declaratory action by separate order, with the understanding that the issues raised in that action are to be resolved in this one.

## CONCLUSION

Plaintiffs' motion to disqualify counsel for the guardian ad litem [2856] is denied. Plaintiffs' motion to discharge the guardian ad litem [2858] is denied. Plaintiffs' motion [2855] for relief from paragraph 7 of the PEC Leadership Order [426] is denied as moot. Plaintiffs' motion to amend complaint [2854] to withdraw any individual claims is granted. Plaintiffs shall promptly file an amended notice of adoption of master complaint as a separate document making up its own docket entry. A joint status report—which shall be no more than two pages in length— is due by July 20, 2026. A telephonic status hearing is set for July 23, 2026 at 9:30 a.m..

**SO ORDERED.**                              **ENTERED: June 15, 2026**

_____
**HON. JORGE ALONSO**
**United States District Judge**